## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CB HOLDING CORP., et al.,[1] | ) | Case No. 10-_____ (   ) |
| | ) | |
| | ) | Joint Administration Requested |
| Debtors. | ) | |
| | ) | |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING DEBTORS TO EMPLOY AND RETAIN THE GARDEN CITY GROUP, INC. AS NOTICE, CLAIMS AND SOLICITATION AGENT

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), file this motion (the "Motion") for entry of an order, substantially in the form

---

[1] The other Debtors, and the last four digits of each of their tax identification numbers, are: 1820 Central Park Avenue Restaurant Corp (5151); Bugaboo Creek Acquisition, LLC (4629); Bugaboo Creek Holdings, Inc. (0966); Bugaboo Creek of Seekonk, Inc (1669); CB Holding Corp. (8640); CB VII, Inc (9120); CB VIII, Inc. (1468); Charlie Brown North (6721); Charlie Brown's Acquisition Corp (8367); Charlie Brown's at Clifton, Inc (7309); Charlie Brown's Mark Corp (3569); Charlie Brown's Montclair, Inc (4223); Charlie Brown's 1981, Inc (7781); Charlie Brown's of Allentown, L.L.C. (8420); Charlie Brown's of Alpha, Inc. (9083); Charlie Brown's of Berwyn, LLC (3347); Charlie Brown's of Blackwood, L.L.C (5698); Charlie Brown's of Bloomsburg, LLC (3326); Charlie Brown's of Brielle, Inc (8115); Charlie Brown's of Carlstadt, Inc. (6936); Charlie Brown's of Chatham, Inc (2452); Charlie Brown's of Commack LLC (4851); Charlie Brown's of Denville, Inc (1422); Charlie Brown's of East Windsor, LLC (2747); Charlie Brown's of Edison, Inc (8519); Charlie Brown's of Egg Harbor Twp, LLC (none); Charlie Brown's of Franklin, LLC (5232); Charlie Brown's of Garden City, LLC (7440); Charlie Brown's of Hackettstown, L.L.C (7493); Charlie Brown's of Harrisburg, LLC (1085); Charlie Brown's of Hillsborough, Inc. (0344); Charlie Brown's of Holtsville, LLC (0138); Charlie Brown's of Jackson, LLC (3478); Charlie Brown's of Lacey, L.L.C. (6282); Charlie Brown's of Lakewood, Inc (0156); Charlie Brown's of Langhorne, LLC (3392); Charlie Brown's of Lynbrook LLC (2772); Charlie Brown's of Maple Shade, Inc. (0404); Charlie Brown's of Matawan, Inc. (8337); Charlie Brown's of Middletown LLC (7565); Charlie Brown's of Oradell, Inc. (0348); Charlie Brown's of Pennsylvania, Inc. (6918); Charlie Brown's of Piscataway, LLC (8285); Charlie Brown's of Reading, LLC (1214); Charlie Brown's of Scranton, LLC (9817); Charlie Brown's of Selinsgrove, LLC (6492); Charlie Brown's of Springfield, LLC (9892); Charlie Brown's of Staten Island, LLC (1936); Charlie Brown's of Tinton Falls, Inc (6981); Charlie Brown's of Toms River, LLC (5492); Charlie Brown's of Union Township, Inc. (8910); Charlie Brown's of Trexlertown, LLC (6582); Charlie Brown's of Wayne, Inc (4757); Charlie Brown's of West Windsor, Inc (0159); Charlie Brown's of Williamsport LLC (8218); Charlie Brown's of Woodbury, Inc. (0601); Charlie Brown's of York, LLC (0980); Charlie Brown's of Yorktown, LLC (7855); Charlie Brown's Restaurant Corp (7782); Charlie Brown's Steakhouse Fishkill, Inc (9139); Charlie Brown's Steakhouse Woodbridge, Inc (1906); Charlie Brown's, Inc. (4776); Jonathan Seagull Property Corp (7248); Jonathan Seagull, Inc (9160); The Office at Bridgewater, Inc (3132); The Office at Cranford, Inc (3131);   The Office at Keyport, Inc. (1507); The Office at Montclair, Inc (3128); The Office at Morristown, Inc. (3127); The Office at Ridgewood, Inc (2949); The Office at Summit, Inc (3126); and What's Your Beef V, Inc. (4719).

attached hereto as <u>Exhibit A</u> (the "Proposed Order"), authorizing Debtors to employ and retain The Garden City Group, Inc. ("Garden City") as notice, claims and solicitation agent in connection with these chapter 11 cases (the "Chapter 11 Cases"). In support of this Motion, the Debtors rely on the declaration of Emly S. Gottlieb of Garden City (the "Gottlieb Declaration"), a copy of which is attached hereto as <u>Exhibit B</u> and incorporated by reference herein. In further support of this Motion, the Debtors respectfully state as follows:

## Jurisdiction

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The bases for the relief requested herein are section 156(c) of title 28 of the United States Code, 28 U.S.C. § 156(c) (the "U.S. Code") and Rule 2002-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

## Background[2]

3.      On November 17, 2010 (the "Petition Date"), the Debtors filed with this Court separate, voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The Debtors have sought an order directing that their Chapter 11 cases be jointly administered by this Court, and they have filed additional motions (some of which seek emergency relief) in the proposed lead case of CB Holding Corp.

---

[2] A description of the Debtors' business, the reasons for filing these Chapter 11 Cases and the relief sought from this Court to allow for a smooth transition into chapter 11 are set forth in the Declaration of Gary Lembo, Chief Restructuring Officer of the Debtors of CB Holding Corp , in Support of First Day Pleadings (the "Lembo Declaration") filed contemporaneously with this Motion.

2

4.      The Debtors continue to manage their properties and operate their business as debtors-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108. No trustee, examiner, or official committee has been appointed in these cases.

The Debtors and Their Business

5.      CB Holding Corp., a Delaware corporation, is the direct or indirect corporate parent of all of the other Debtors. All of CB Holding Corp.'s outstanding common and preferred stock is privately held.[3]

6.      The Debtors own and operate the *Charlie Brown's Steakhouse* ("Charlie Brown's"), *Bugaboo Creek Steak House* ("Bugaboo Creek"), and *The Office Beer Bar & Grill* ("The Office"). Charlie Brown's and Bugaboo Creek are steakhouses, offering their customers exceptional service, value, and fresh food, along with seasonal specialties, while The Office is more casual, offering over 60 bottled beers, seasonal draft beers, and classic pub appetizers and dining options.

7.      There are currently 20 Charlie Brown's restaurants in New York, New Jersey, and Pennsylvania; 12 Bugaboo Creek restaurants in Massachusetts, Delaware, Maryland, New Hampshire, and Maine; and seven The Office restaurants in New Jersey. Shortly before the Petition Date, the Debtors closed 29 Charlie Brown's and 18 Bugaboo Creek restaurants.

8.      The Debtors have approximately 185 full-timed salaried employees and more than 2,200 full-time and part-time hourly employees. None of the Debtors' employees are members of a union.

---

[3]      A detailed summary of the corporate structure of the Debtors is included as an exhibit to the Debtors' bankruptcy petitions and in the [Declaration of Gary Lembo] in Support of First-Day Motions that was filed contemporaneously herewith.

3

Capital Structure

*Secured Debt*

9.    On June 21, 2007, in connection with the acquisition of Bugaboo Creek by Charlie Brown's, the Debtors entered into a financing agreement with Ableco Finance LLC ("Ableco"); Wells Fargo Capital Finance, Inc. (f/k/a Wells Fargo Foothill, Inc.) ("Wells"); and GMAC Commercial Finance LLC (n/k/a Ally Commercial Finance LLC) ("Ally" and collectively with Wells and Ableco, the "Senior Secured Lenders"), providing for a revolving line of credit, under which the Debtors may borrow up to an aggregate amount equal to the lesser of $15 million and a defined borrowing base with a letter of credit sublimit, and two tranches of term loans, all of which are secured by liens on substantially all of the Debtors' assets. As of the Petition Date, the Debtors had approximately $70 million outstanding under this facility.[4]

10.    On September 28, 2008, the Debtors issued $10 million in senior subordinated second lien notes pursuant to a note purchase agreement to Trimaran Fund II, L.L.C.; Trimaran Parallel Fund II, L.P.; Trimaran Capital, L.L.C.; CIBC Employee Private Equity Fund (Trimaran) Partners; and CIBC Capital Corp. (collectively, the "Second Lien Lenders"). As of the Petition Date, approximately $14 million, including accrued and unpaid interest, was outstanding under these second lien notes.

*Mezzanine Debt*

11.    Also as part of the Bugaboo Creek acquisition, on June 21, 2007, the Debtors issued $20 million in unsecured, senior subordinated notes pursuant to four note purchase agreements to Kohlberg Capital Corporation; Archer Capital Master Fund, L.P.; Camofi Master LDC; Camhzn Master LDC; and Raven Credit Opp Master Fund Ltd.

---

[4]    Specifically, the Debtors had approximately $6 million outstanding under the revolver, $12 million outstanding under Term Loan A, and $52 million outstanding under Term Loan B

(collectively, the "Subordinated Lenders"). As of the Petition Date, the Debtors had approximately $30 million of mezzanine debt obligations, including accrued and unpaid interest, outstanding to the Subordinated Lenders.

Circumstances Leading to Filing

12. A variety of external factors have led to a decline in the Debtors' revenue over the last several years, at the same time that costs have increased. For instance, the restaurant industry has grown more competitive, the fast-food industry has improved their product offerings and increased its market share to the detriment of casual dining restaurants, such as the Debtors, and consumers have changed their ordering habits. In addition, the "Great Recession" has led to a decline in discretionary spending among the Debtors' former and current customers, and fewer families are frequenting restaurants while food and labor costs have increased, compounding the Debtors' distress.

13. Accordingly, for some time, the Debtors have been in discussions with their lenders and other parties regarding a financial restructuring, and they have entered into several amendments to their various credit and related facilities, but the Debtors' need for additional liquidity has not been resolved, and the economy has not improved. At this time, the only party willing to provide the Debtors with any funding is Ally, which has informed the Debtors that it is only willing to do so as a DIP loan in Chapter 11 cases where the Debtors market their assets in anticipation of a global asset sale.

14. Thus, in an effort to maximize their value, the Debtors have entered into a DIP arrangement with Ally, and along with other first-day motions designed to ensure a smooth transition into Chapter 11, the Debtors intend to file a motion to approve a DIP financing

5

arrangement and to attempt to sell substantially all of their assets expeditiously pursuant to Bankruptcy Code § 363.

<h3 align="center">Relief Requested</h3>

15. By this Motion, the Debtors seek to retain and employ Garden City, subject to further order of the Court and that certain Bankruptcy Administration Agreement, dated as of November 16, 2008, by and between Garden City and the Debtors (such agreement together with all amendments, modifications, renewals thereof and all documents ancillary thereto or otherwise entered into in connection therewith, are collectively referred to herein as the "Administration Agreement"), a copy of which is attached hereto as <u>Exhibit C</u> and incorporated by reference herein.

<h3 align="center">Garden City's Qualifications</h3>

16. Garden City is a bankruptcy administrator that specializes in providing comprehensive chapter 11 administrative services including noticing, claims processing, balloting and other related services critical to the effective administration of chapter 11 cases. Indeed, Garden City has developed efficient and cost-effective methods to handle properly the voluminous mailings associated with the noticing, claims processing and balloting portions of chapter 11 cases to ensure the orderly and fair treatment of creditors, equity security holders and all parties in interest. Further, Garden City will work with the Clerk's Office to ensure that such methodology conforms with all of the Court's procedures, the Local Rules and the provisions of any orders entered by this Court.

17. Garden City has substantial experience in matters of this size and complexity and has acted as the official notice, claims and solicitation agent in many large bankruptcy cases in this District and other districts nationwide. <u>See, e.g., In re Xerium</u>

6

Technologies, Inc., Case No. 10-11031 (KJC), In re Atrium Corporation, Case No. 10-10150 (BLS), In re Teton Energy Corporation, Inc., Case No. 09-13946 (PJW), In re Advanta Corporation, Case No. 09-13931 (KJC), In re Catholic Diocese of Wilmington, Inc., Case No. 09-13560 (CSS), In re Accuride Corporation, Case No. 09-13449 (BLS), In re Global Charter Services, Ltd., Case No. 09-12918 (CSS), In re CommerceConnect Media Holdings, Inc., Case No. 09-12765 (BLS), In re Stant Parent Corp., Case No. 09-12647 (BLS), In re Lang Holdings, Inc., Case No. 09-12543 (KJC), In re RathGibson, Inc., Case No. 09-12452 (CSS), In re Proliance International, Inc., Case No. 09-12278 (CSS), In re Pumpkin Patch LLC, Case No. 09-12200 (BLS), In re MIG, Inc., Case No. 09-12118 (KG), In re Building Materials Holding Corporation, Case No. 09-12074 (KJC), In re R.H. Donnelley Corporation, Case No. 09-11833 (KG), In re Hayes Lemmerz International, Inc., Case No. 09-11655 (MFW), In re White Energy, Inc., Case No. 09-11601 (CSS), In re Aventine Renewable Energy Holdings, Inc., Case No. 09-11214 (KG), In re Forward Foods, LLC, Case No. 09-10545 (KJC), In re Nailite International, Inc., Case No. 09-10526 (MFW), In re Foothills Texas, Inc., Case No. 09-10452 (CSS), In re Comfort Co., Inc., Case No. 08-12305 (MFW), In re VI Acquisition Corp., Case No. 08-10623 (KG), In re DG Liquidation Corp., Case No. 08-10601 (CSS), In re KCMVNO, Inc., Case No. 08-10600 (BLS), In re Supplements LT Inc., Case No. 08-10446 (KJC), In re ProRhythm, Inc., Case No. 07-11861 (KJC), In re S-Tran Holdings, Inc., Case No. 05-11391 (RB), In re Flintkote Company, Case No. 04-11300 (JKF), In re ACandS, Inc., Case No. 02-12687 (RJN) and In re Federal-Mogul Global, Inc., Case No. 01-10578 (JKF), which were filed in the District of Delaware; and In re Motors Liquidation Company, Case No. 09-50026 (REG), In re Fortunoff Holdings, LLC, Case No. 09-10497 (RDD), In re Star Tribune Holdings Corporation, Case No. 09-10244 (RDD), and In re

7

*Lenox Sales, Inc.*, Case No. 08-14679 (ALG), which were filed in the Southern District of New York.

## Services to be Provided

18.     Specifically, the Debtors seek to engage Garden City to provide certain noticing, claims processing and balloting administration services including, without limitation:

    a.   Noticing.  Preparing and serving a variety of documents on behalf of the Debtors in these Chapter 11 Cases, including:

        i.   notice of the commencement of the Debtors' Chapter 11 Cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code;

        ii.   notice of any claims bar date;

        iii.   motions, applications and other requests for relief and related documents;

        iv.   objections, responses and replies with respect to requests for relief;

        v.   hearing agendas;

        vi.   objections to claims;

        vii.   any disclosure statements, chapter 11 plans and all documents related thereto; and

        viii.   all notices of the filing of the documents listed above, hearings and such other miscellaneous notices as the Debtors or the Court may deem necessary or appropriate for orderly administration of these Chapter 11 Cases.

b. <u>Claims Administration</u>.

    i.    maintaining an official claims register in the Debtors' Chapter 11 Cases by docketing all proofs of claim and proofs of interest in a database;[5]

    ii.    maintaining copies of all proofs of claim and proofs of interest filed in these Chapter 11 Cases;

    iii.    updating the official claims registers in accordance with Court orders;

    iv.    implementing necessary security measures to ensure the completeness and integrity of the claims registers;

    v.    transmitting to the Clerk's Office a copy of the claims registers as requested;

    vi.    maintaining an up-to-date mailing list for all entities that have filed proofs of claim or proofs of interest and make such list available upon request to the Clerk's Office or any party in interest;

    vii.    providing access to the public for examination of copies of the proofs of claim and proofs of interest filed in these Chapter 11 Cases;

    viii.    recording all transfers of claims pursuant to Rule 3001(e) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and, if directed to do so by the Court, provide notice of such transfers as required by Bankruptcy Rule 3001(e); and

    ix.    establishing a case website with case information, including key dates, service lists and free access to the case docket within three days of docketing.

---

[5] The database will include: (a) the name and address of the claimant or interest holder and any agent thereof, if appropriate; (b) the date the proof of claim or proof of interest was received by Garden City or the Court; (c) the claim number assigned to the proof of claim or proof of interest; and (d) the asserted amount and classification of the claim.

c. <u>Balloting Services</u>. Acting as balloting agent, which may include some or all of the following services:

    i.    printing ballots and coordinating the mailing of solicitation packages (*i.e.*, ballots, disclosure statement and chapter 11 plan) to all voting and non-voting parties and providing a certificate or affidavit of service with respect thereto;

    ii.    establishing a toll-free "800" number to receive and answer questions regarding voting with respect to any chapter 11 plan;

    iii.    receiving ballots at a post office box, inspecting ballots for conformity to voting procedures, date stamping and numbering ballots consecutively and tabulating and certifying the results; and

    iv.    preparing voting reports by plan class, creditor or shareholder and amount for review and approval by the Debtors and their counsel.

19.    In addition to the foregoing services, Garden City will provide such other noticing, claims processing, balloting and related administrative services as the Debtors or Clerk's Office may request from time to time. The Administration Agreement also contains standard indemnification language with respect to Garden City's services. Accordingly, as part of this Motion, the Debtors request that the Court approve the indemnification provisions as modified by the Proposed Order.

### Professional Compensation

20.    The fees to be charged by Garden City in connection with these Chapter 11 Cases are set forth in the Administration Agreement. The Debtors respectfully submit that Garden City's rates for its services in connection with the notice, claims processing and balloting services are competitive and comparable to the rates charged by their competitors for similar services.

10

21.    Furthermore, the Debtors respectfully submit that the fees and expenses incurred by Garden City are administrative in nature and, therefore, should not be subject to the standard fee application procedures for professionals.    Specifically, the Debtors request authorization to compensate Garden City on a monthly basis, in accordance with the terms and conditions set forth in the Administration Agreement, upon Garden City's submission to the Debtors of monthly invoices summarizing in reasonable detail the services rendered and expenses incurred in connection with services provided by Garden City to the Debtors.

## Garden City's Disinterestedness

22.    Although the Debtors do not propose to retain Garden City under section 327 of the Bankruptcy Code, Garden City has nonetheless conducted a conflicts analysis and, to the best of its knowledge and except to the extent disclosed in the Gottlieb Declaration, Garden City neither holds nor represents an interest adverse to the Debtors' estates nor has a connection to the Debtors, their creditors or their related parties.  Should Garden City discover any new relevant facts or relationships bearing on the matters described herein during the period of its retention, Garden City will use reasonable efforts to file promptly a supplemental declaration.

## Basis for Relief

23.    Section 156(c) of the U.S. Code, which governs the staffing and expenses of the Bankruptcy Court, authorizes the Court to use facilities other than the Clerk's Office for administration of bankruptcy cases:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States.  The utilization of such facilities or services

11

shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c).

> 24.     In addition, Local Rule 2002-1(f) provides, in relevant part, as follows:
>
> Notice and Claims Clerk.  Upon motion of the debtor or trustee, at any time without notice or hearing, the Court may authorize the retention of a notice and/or claims clerk under 28 U.S.C. § 156(c).  In all cases with more than 200 creditors, unless the Court orders otherwise, the debtor shall file such motion on the first day of the case or within ten (10) days thereafter.  The notice and/or claims clerk may be retained to do any or all of the following:  (i) prepare and serve all notices required in the case; (ii) maintain copies of all proofs of claim and proofs of interest filed in the case; (iii) maintain the official claims register; (iv) maintain an up-to-date mailing list of all creditors and all entities who have filed proofs of claim or interest and/or requests for notices in the case; (v) assist the debtors with the reconciliation and resolution of claims; and (vi) mail and tabulate ballots for purposes of voting in chapter 11 cases.  Within five (5) days of the mailing of any notice, the notice/claims clerk shall file with the Court such notice, along with an affidavit of service.

DEL. BANKR. L.R. 2002-1(f).

25.     Accordingly, section 156(c) of the U.S. Code empowers the Court to utilize outside agents and facilities for notice, claims and solicitation purposes, provided the Debtors' estates pay the cost of such services.  Additionally, Local Rule 2002-1(f) requires, in all cases with over 200 creditors (such as these Chapter 11 Cases), a debtor to file a motion to retain a claims agent on the first day of the case or within ten (10) days thereafter.  Therefore, for all of the foregoing reasons, the Debtors believe that the retention of Garden City as the notice, claims and solicitation agent in these Chapter 11 Cases is in the best interests of the Debtors, their estates and creditors.

26.     Courts in this jurisdiction and other jurisdictions have approved similar relief in other chapter 11 cases.  See, e.g., In re Urban Brands, Inc., No. 10-13005 (KJC) (Bankr. D. Del. Sept. 22, 2010); In re Caribbean Petroleum Corporation, No. 10-12553 (KG) (Bankr. D.

Del. Sept. 8, 2010); In re Electrical Components International, Inc., No. 10-11054 (KJC) (Bankr. D. Del. Apr. 26, 2010); In re Deel, LLC, No. 10-11310 (BLS) (Bankr. D. Del. Apr. 23, 2010); In re Xerium Technologies, Inc., No. 10-11031 (KJC) (Bankr. D. Del. Mar. 31, 2010); In re Wickes Holdings, LLC, No. 08-10212 (KJC) (Bankr. D. Del. Feb. 5, 2008); In re Tweeter Home Entm't Group, Inc., No. 07-10787 (PJW) (Bankr. D. Del. June 13, 2007); In re Hancock Fabrics, Inc., No. 07-10353 (BLS) (Bankr. D. Del. April, 13 2007); In re Dura Auto. Sys., Inc., No. 06-11202 (Bankr. D. Del. Oct. 31, 2006); In re Calpine Corp., No. 05-60200 (Bankr. S.D.N.Y. Dec. 22, 2005); In re Tower Auto., Inc., No. 05-10578 (Bankr. S.D.N.Y. Feb. 8, 2005); In re NRG Energy, Inc., No. 03-13024 (Bankr. S.D.N.Y. May 16, 2003).

## Notice

27.     Notice of this Motion has been given via overnight delivery service, e-mail, facsimile, telephone, and/or hand delivery, as appropriate, to the United States Trustee, the 20 largest unsecured non-insider creditors of the Debtors on a consolidated basis, the Senior Secured Lenders, the Second Lien Lenders, the Subordinated Lenders, the Debtors' equity sponsor, the United States Attorney's Office for the District of Delaware, the United States Attorney General, and the Internal Revenue Service. As this Motion is seeking first-day relief,

13

notice hereof and of any order entered hereon will be served in accordance with Local Bankruptcy Rule 9013-1(m). Due to the urgency of the circumstances, the Debtors submit that no other or further notice of this Motion is required.

**No Prior Request**

17.    No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, for the reasons set forth herein and in the Lembo Declaration, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as Exhibit A, (a) authorizing the Debtors to employ and retain Garden City as notice, claims and solicitation agent in connection with these Chapter 11 Cases and (b) granting such other and further relief as is appropriate.

Dated: November 17, 2010
       Wilmington, Delaware

Name: Samuel N. Borgese
Title: President and CEO of CB Holding Corp.

On behalf of the Debtors

**EXHIBIT A**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CB HOLDING CORP., et al.,[1] | ) Case No. 10-_____ (  ) |
| | ) |
| | ) Joint Administration Requested |
| Debtors. | ) |
| | ) |

## ORDER AUTHORIZING DEBTORS TO EMPLOY AND RETAIN THE GARDEN CITY GROUP, INC. AS NOTICE, CLAIMS AND SOLICITATION AGENT

Upon the motion (the "Motion") of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for an order (this "Order") authorizing the Debtors to employ and retain The Garden City Group, Inc. ("Garden City") as notice, claims and

---

[1] The other Debtors, and the last four digits of each of their tax identification numbers, are: 1820 Central Park Avenue Restaurant Corp. (5151); Bugaboo Creek Acquisition, LLC (4629); Bugaboo Creek Holdings, Inc. (0966); Bugaboo Creek of Seekonk, Inc. (1669); CB Holding Corp. (8640); CB VII, Inc. (9120); CB VIII, Inc. (1468); Charlie Brown North (6721); Charlie Brown's Acquisition Corp. (8367); Charlie Brown's at Clifton, Inc. (7309); Charlie Brown's Mark Corp. (3569); Charlie Brown's Montclair, Inc. (4223); Charlie Brown's 1981, Inc. (7781); Charlie Brown's of Allentown, L.L.C. (8420); Charlie Brown's of Alpha, Inc. (9083); Charlie Brown's of Berwyn, LLC (3347); Charlie Brown's of Blackwood, L.L.C. (5698); Charlie Brown's of Bloomsburg, LLC (3326); Charlie Brown's of Brielle, Inc. (8115); Charlie Brown's of Carlstadt, Inc. (6936); Charlie Brown's of Chatham, Inc. (2452); Charlie Brown's of Commack LLC (4851); Charlie Brown's of Denville, Inc. (1422); Charlie Brown's of East Windsor, LLC (2747); Charlie Brown's of Edison, Inc. (8519); Charlie Brown's of Egg Harbor Twp, LLC (none); Charlie Brown's of Franklin, LLC (5232); Charlie Brown's of Garden City, LLC (7440); Charlie Brown's of Hackettstown, L.L.C. (7493); Charlie Brown's of Harrisburg, LLC (1085); Charlie Brown's of Hillsborough, Inc. (0344); Charlie Brown's of Holtsville, LLC (0138); Charlie Brown's of Jackson, LLC (3478); Charlie Brown's of Lacey, L.L.C. (6282); Charlie Brown's of Lakewood, Inc. (0156); Charlie Brown's of Langhorne, LLC (3392); Charlie Brown's of Lynbrook LLC (2772); Charlie Brown's of Maple Shade, Inc. (0404); Charlie Brown's of Matawan, Inc. (8337); Charlie Brown's of Middletown LLC (7565); Charlie Brown's of Oradell, Inc. (0348); Charlie Brown's of Pennsylvania, Inc. (6918); Charlie Brown's of Piscataway, LLC (8285); Charlie Brown's of Reading, LLC (1214); Charlie Brown's of Scranton, LLC (9817); Charlie Brown's of Selinsgrove, LLC (6492); Charlie Brown's of Springfield, LLC (9892); Charlie Brown's of Staten Island, LLC (1936); Charlie Brown's of Tinton Falls, Inc. (6981); Charlie Brown's of Toms River, LLC (5492); Charlie Brown's of Union Township, Inc. (8910); Charlie Brown's of Trexlertown, LLC (6582); Charlie Brown's of Wayne, Inc. (4757); Charlie Brown's of West Windsor, Inc. (0159); Charlie Brown's of Williamsport LLC (8218); Charlie Brown's of Woodbury, Inc. (0601); Charlie Brown's of York, LLC (0980); Charlie Brown's of Yorktown, LLC (7855); Charlie Brown's Restaurant Corp. (7782); Charlie Brown's Steakhouse Fishkill, Inc. (9139); Charlie Brown's Steakhouse Woodbridge, Inc. (1906); Charlie Brown's, Inc. (4776); Jonathan Seagull Property Corp. (7248); Jonathan Seagull, Inc. (9160); The Office at Bridgewater, Inc. (3132); The Office at Cranford, Inc. (3131); The Office at Keyport, Inc. (1507); The Office at Montclair, Inc. (3128); The Office at Morristown, Inc. (3127); The Office at Ridgewood, Inc. (2949); The Office at Summit, Inc. (3126); and What's Your Beef V, Inc. (4719).

solicitation agent in connection with the above-captioned chapter 11 cases; and upon the Lembo Declaration; and it appearing that the relief requested is in the best interests of the Debtors' estates, their creditors and other parties in interest; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having reviewed the Motion and the Gottlieb Declaration;[2] and the Court being satisfied based on the representations made in the Motion and the Gottlieb Declaration that Garden City neither holds nor represents an interest adverse to the Debtors' estates nor has a connection to the Debtors, their creditors or their related parties; and notice of the Motion having been adequate and appropriate under the circumstances; and after due deliberation and sufficient cause appearing therefore, it is hereby

ORDERED, that the Motion is granted; and it is further

ORDERED, that the Debtors shall be, and hereby are, authorized to employ and retain Garden City as their notice, claims and solicitation agent in accordance with the terms and conditions set forth the Administration Agreement; and it is further

ORDERED, that Garden City is appointed as agent for the office of the Clerk of the Court (the "Clerk's Office") and custodian of Court records and, as such, is designated as the authorized repository for all proofs of claims filed in these Chapter 11 Cases and is authorized and directed to maintain official claims registers for each of the Debtors and to provide the Clerk's Office with a certified duplicate thereof on a monthly basis unless otherwise directed by the Clerk's Office; and it is further

---

[2]     Capitalized terms not otherwise defined herein shall have the meaning ascribed in the Motion.

2

ORDERED, that upon the Debtors' request, Garden City will assist the Debtors with any other additional services requested by the Debtors; and it is further

ORDERED, that Garden City is authorized and directed to perform all related tasks to process the proofs of claims and maintain a claims register; and it is further

ORDERED, that Garden City is authorized to take such other action to comply with all duties set forth in the Motion, the Administration Agreement, and this Order; and it is further

ORDERED, that the Debtors are authorized to compensate Garden City on a monthly basis, in accordance with the Administration Agreement, upon the receipt of reasonably detailed invoices setting forth the services provided by Garden City in the prior month and the rates charged for each, and to reimburse Garden City for all reasonable and necessary expenses it may incur upon the presentation of appropriate documentation; and it is further

ORDERED, that, notwithstanding any provision of the Motion or the Administration Agreement to the contrary, the Debtors shall have no obligation to indemnify Garden City, or provide contribution or reimbursement to Garden City for any claim or expense that is either: (a) judicially determined (the determination having become final) to have arisen primarily from Garden City's gross negligence, willful misconduct or fraud; or (b) settled prior to judicial determination as to Garden City's gross negligence, willful misconduct or fraud, but determined by this Court, after notice and a hearing, to be a claim or expense for which Garden City should not receive indemnity, contribution or reimbursement under the terms of Garden City's retention; and it is further

ORDERED, that if before the earlier of: (a) entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal); and (b) the entry of an order closing these chapter 11 cases, Garden City believes that it is entitled to

the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations including, without limitation, the advancement of defense costs, Garden City must file an application therefore in this Court, and the Debtors may not pay any such amounts to Garden City before the entry of an order by this Court approving the payment. This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Garden City for indemnification, contribution and/or reimbursement and not a provision limiting the duration of the Debtors' obligation to indemnify Garden City. All parties in interest shall retain the right to object to any demand by Garden City for indemnification, contribution and/or reimbursement; and it is further

ORDERED, that, notwithstanding the possible applicability of Rules 6004(h), 7062 or 9014 of the Federal Rules of Bankruptcy Procedure, the terms and conditions of this Order shall be effective immediately and enforceable upon its entry; and it is further

ORDERED, that, notwithstanding anything to the contrary contained herein, any payment to be made, or authorization contained, hereunder shall be subject to the requirements imposed on the Debtors under any approved debtor-in-possession financing facility, or budget in connection therewith, or any order regarding the use of cash collateral; and it is further

ORDERED, that the Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion; and it is further

ORDERED, that to the extent this Order is inconsistent with any prior order or pleading with respect to the Motion in these cases, the terms of this Order shall govern; and it is further

RLF1 3630019v 1

ORDERED, that the Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated:   November __, 2010
         Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

RLF1 3630019v 1

**EXHIBIT B**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CB HOLDING CORP., et al.,[1] | ) | Case No. 10-_____ ( ) |
| | ) | |
| | ) | Joint Administration Requested |
| Debtors. | ) | |
| | ) | |

## DECLARATION OF EMILY S. GOTTLIEB IN SUPPORT OF
## DEBTORS' MOTION FOR ENTRY OF AN ORDER
## AUTHORIZING THEM TO EMPLOY AND RETAIN THE GARDEN
## CITY GROUP, INC. AS NOTICE, CLAIMS AND SOLICITATION AGENT

I, Emily S. Gottlieb, being duly sworn, state the following under penalty of perjury.

1.    I am a Senior Director of The Garden City Group, Inc. ("Garden City"), a

bankruptcy administrator that specializes in providing comprehensive chapter 11 administrative

---

[1] The other Debtors, and the last four digits of each of their tax identification numbers, are: 1820 Central Park Avenue Restaurant Corp (5151); Bugaboo Creek Acquisition, LLC (4629); Bugaboo Creek Holdings, Inc (0966); Bugaboo Creek of Seekonk, Inc (1669); CB Holding Corp (8640); CB VII, Inc (9120); CB VIII, Inc. (1468); Charlie Brown North (6721); Charlie Brown's Acquisition Corp (8367); Charlie Brown's at Clifton, Inc (7309); Charlie Brown's Mark Corp. (3569); Charlie Brown's Montclair, Inc. (4223); Charlie Brown's 1981, Inc (7781); Charlie Brown's of Allentown, L L C (8420); Charlie Brown's of Alpha, Inc (9083); Charlie Brown's of Berwyn, LLC (3347); Charlie Brown's of Blackwood, L L C (5698); Charlie Brown's of Bloomsburg, LLC (3326); Charlie Brown's of Brielle, Inc (8115); Charlie Brown's of Carlstadt, Inc. (6936); Charlie Brown's of Chatham, Inc (2452); Charlie Brown's of Commack LLC (4851); Charlie Brown's of Denville, Inc. (1422); Charlie Brown's of East Windsor, LLC (2747); Charlie Brown's of Edison, Inc. (8519); Charlie Brown's of Egg Harbor Twp, LLC (none); Charlie Brown's of Franklin, LLC (5232); Charlie Brown's of Garden City, LLC (7440); Charlie Brown's of Hackettstown, L L C (7493); Charlie Brown's of Harrisburg, LLC (1085); Charlie Brown's of Hillsborough, Inc (0344); Charlie Brown's of Holtsville, LLC (0138); Charlie Brown's of Jackson, LLC (3478); Charlie Brown's of Lacey, L L C (6282); Charlie Brown's of Lakewood, Inc (0156); Charlie Brown's of Langhorne, LLC (3392); Charlie Brown's of Lynbrook LLC (2772); Charlie Brown's of Maple Shade, Inc (0404); Charlie Brown's of Matawan, Inc. (8337); Charlie Brown's of Middletown LLC (7565); Charlie Brown's of Oradell, Inc (0348); Charlie Brown's of Pennsylvania, Inc (6918); Charlie Brown's of Piscataway, LLC (8285); Charlie Brown's of Reading, LLC (1214); Charlie Brown's of Scranton, LLC (9817); Charlie Brown's of Selinsgrove, LLC (6492); Charlie Brown's of Springfield, LLC (9892); Charlie Brown's of Staten Island, LLC (1936); Charlie Brown's of Tinton Falls, Inc. (6981); Charlie Brown's of Toms River, LLC (5492); Charlie Brown's of Union Township, Inc (8910); Charlie Brown's of Trexlertown, LLC (6582); Charlie Brown's of Wayne, Inc (4757); Charlie Brown's of West Windsor, Inc (0159); Charlie Brown's of Williamsport LLC (8218); Charlie Brown's of Woodbury, Inc. (0601); Charlie Brown's of York, LLC (0980); Charlie Brown's of Yorktown, LLC (7855); Charlie Brown's Restaurant Corp (7782); Charlie Brown's Steakhouse Fishkill, Inc. (9139); Charlie Brown's Steakhouse Woodbridge, Inc. (1906); Charlie Brown's, Inc (4776); Jonathan Seagull Property Corp (7248); Jonathan Seagull, Inc (9160); The Office at Bridgewater, Inc (3132); The Office at Cranford, Inc (3131); The Office at Keyport, Inc (1507); The Office at Montclair, Inc (3128); The Office at Morristown, Inc (3127); The Office at Ridgewood, Inc (2949); The Office at Summit, Inc (3126); and What's Your Beef V, Inc (4719)

services including noticing, claims processing, balloting and other related services critical to the effective administration of chapter 11 cases. I am authorized to make this declaration on behalf of Garden City and in support of the motion (the "Motion") of the above-captioned debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") for entry of an order authorizing the Debtors to employ and retain Garden City as notice, claims and solicitation agent in connection with their Chapter 11 Cases pursuant to the terms of that certain Bankruptcy Administration Agreement, dated as of November 16, 2010 by and between Garden City and the Debtors (such agreement together with all amendments, modifications, renewals thereof and all documents ancillary thereto or otherwise entered into in connection therewith, are collectively referred to herein as the "Administration Agreement"), a copy of which is attached to the Motion as Exhibit C and incorporated by reference herein. Except as otherwise noted, I have personal knowledge of the matters set forth herein.

## Garden City's Qualifications

2. Garden City is a bankruptcy administrator that specializes in providing comprehensive chapter 11 administrative services including noticing, claims processing, balloting and other related services critical to the effective administration of chapter 11 cases. Garden City has substantial experience in matters of this size and complexity and has acted as the official notice, claims and solicitation agent in many large bankruptcy cases in this District and other districts nationwide. Indeed, Garden City has developed efficient and cost-effective methods to handle properly the voluminous mailings associated with the noticing, claims processing and balloting portions of chapter 11 cases to ensure the orderly and fair treatment of creditors, equity security holders and all parties in interest. Further, Garden City will work with

-2-

the Clerk's Office to ensure that such methodology conforms with all of the Court's procedures, the Local Rules and the provisions of any orders entered by this Court.

## Services to be Provided

3.     In accordance with the terms and conditions of the Administration Agreement, Garden City will provide certain noticing, claims processing and balloting administration services including, without limitation:

> a.     <u>Noticing</u>.  Preparing and serving a variety of documents on behalf of the Debtors in these Chapter 11 Cases, including:
>
>> i.     notice of the commencement of the Debtors' Chapter 11 Cases and the initial meeting of creditors under section 341(a) of title 11 of the United States Bankruptcy Code (the "Bankruptcy Code");
>>
>> ii.    notice of any claims bar date;
>>
>> iii.   motions, applications and other requests for relief and related documents;
>>
>> iv.    objections, responses and replies with respect to requests for relief;
>>
>> v.     hearing agendas;
>>
>> vi.    objections to claims;
>>
>> vii.   any disclosure statements, chapter 11 plans and all documents related thereto; and
>>
>> viii.  all notices of the filing of the documents listed above, hearings and such other miscellaneous notices as the Debtors or the Court may deem necessary or appropriate for orderly administration of these Chapter 11 Cases.

RLF1 3629733v 1

b.  Claims Administration.

    i.    maintaining an official claims register in the Debtors' Chapter 11 Cases by docketing all proofs of claim and proofs of interest in a database;[2]

    ii.    maintaining copies of all proofs of claim and proofs of interest filed in these Chapter 11 Cases;

    iii.    updating the official claims registers in accordance with Court orders;

    iv.    implementing necessary security measures to ensure the completeness and integrity of the claims registers;

    v.    transmitting to the Office of the Clerk of the Court (the "Clerk's Office") a copy of the claims registers as requested;

    vi.    maintaining an up-to-date mailing list for all entities that have filed proofs of claim or proofs of interest and make such list available upon request to the Clerk's Office or any party in interest;

    vii.    providing access to the public for examination of copies of the proofs of claim and proofs of interest filed in these Chapter 11 Cases;

    viii.    recording all transfers of claims pursuant to Rule 3001(e) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and, if directed to do so by the Court, provide notice of such transfers as required by Bankruptcy Rule 3001(e); and

    ix.    establishing a case website with case information, including key dates, service lists and free access to the case docket within three days of docketing.

---

[2] The database will include: (a) the name and address of the claimant or interest holder and any agent thereof, if appropriate; (b) the date the proof of claim or proof of interest was received by Garden City or the Court; (c) the claim number assigned to the proof of claim or proof of interest; and (d) the asserted amount and classification of the claim

c.     Balloting Services.  Acting as balloting agent, which may include some or all of the following services:

i.     printing ballots and coordinating the mailing of solicitation packages (*i.e.*, ballots, disclosure statement and chapter 11 plan) to all voting and non-voting parties and provide a certificate or affidavit of service with respect thereto;

ii.    establishing a toll-free "800" number to receive questions regarding voting with respect to any chapter 11 plan;

iii.   receiving ballots at a post office box, inspecting ballots for conformity to voting procedures, date stamping and numbering ballots consecutively and tabulating and certifying the results; and

iv.    preparing voting reports by plan class, creditor or shareholder and amount for review and approval by the Debtors and their counsel.

4.     In addition to the foregoing services, Garden City will provide such other noticing, claims processing, balloting and related administrative services as the Debtors or Clerk's Office may request from time to time.  The Administration Agreement also contains standard indemnification language with respect to Garden City's services which was negotiated at arm's-length and in good faith and were agreed to by both the Debtors and Garden City.  The indemnification language has been modified by the proposed order attached to the Motion as Exhibit B.

## Professional Compensation

5.     The compensation arrangement provided for in the Administration Agreement is consistent with and typical of arrangements entered into by Garden City and other such firms with respect to rendering similar services for clients such as the Debtors.  The Debtors will pay Garden City's fees and expenses upon the submission of monthly invoices by Garden City summarizing, in reasonable detail, the services for which compensation is sought.

-5-

## Garden City's Disinterestedness

6.     I acknowledge and respectfully represent that the elements of section 327 of the Bankruptcy Code and Rule 2014 of the Bankruptcy Rules are not necessary or relevant in connection with Garden City's employment and retention, which is being sought under section 156(c) of title 28 of the United States Code. Nevertheless, in connection with the proposed employment and retention of Garden City by the Debtors, Garden City undertook a lengthy conflicts analysis process to determine whether it had any conflicts or other relationships that might cause it not to be disinterested or to hold or represent an interest adverse to the Debtors' estates. To check and clear potential conflicts of interest in these cases, Garden City reviewed its client relationships to determine whether it had any relationships with the following entities, which were provided to Garden City by the Debtors (collectively, the "Potential Parties in Interest").

7.     As part of its diverse practice, Garden City appears in numerous cases, proceedings and transactions involving many different attorneys, accountants, investment bankers and financial consultants, some of whom may represent claimants and parties in interest in the Debtors' Chapter 11 Cases. Further, Garden City has in the past, and may in the future, be represented by several attorneys and law firms, some of whom may be involved in these Chapter 11 Cases. In addition, Garden City has been in the past, and likely will be in the future, engaged in matters unrelated to the Debtors or these Chapter 11 Cases in which it works with or against other professionals involved in these cases. To the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, none of these business relations constitute interests adverse to the Debtors.

8.      To the best of my knowledge, information and belief, insofar as I have been able

to ascertain after reasonable inquiry, neither I nor any of Garden City's professional employees:

(a) have any connection with the Debtors, their creditors, the United States Trustee for the

District of Delaware (the "U.S. Trustee") or any other Potential Parties in Interest in these

Chapter 11 Cases or their respective attorneys or accountants; or (b) are related or connected to

any United States Bankruptcy Judge for the District of Delaware, any of the District Judges for

the District of Delaware who handle bankruptcy cases, the U.S. Trustee or any employee in the

Office of the U.S. Trustee, except as set forth below:

a.      From time to time, Garden City may perform or may have performed services for, or maintained other commercial or professional relationships with, certain creditors of the Debtors and various other parties that are adverse to the Debtors, in each case in matters unrelated to these Chapter 11 Cases. Garden City has and will continue to represent clients in matters unrelated to these Chapter 11 Cases and has had and will continue to have relationships in the ordinary course of business with certain vendors in connection with matters unrelated to these Chapter 11 Cases.

b.      Garden City personnel may have relationships with some of the Debtors' creditors; however, such relationships are of a personal financial nature and completely unrelated to these Chapter 11 Cases.

c.      Patrick M. Leathem, an Assistant Director at Garden City, is an attorney formerly associated with the Debtors' bankruptcy co-counsel, Richards, Layton & Finger, P.A. ("RL&F"). Mr. Leathem was employed by RL&F from January 2001 through September 2003. While employed at RL&F, Mr. Leathem did not work on any matters involving the Debtors. In fact, Mr. Leathem was no longer employed by RL&F when these cases were filed.

d.      From time to time, Garden City also may have had dealings on other unrelated matters with certain of the other professionals who are providing, or are expected to provide, services in these cases.

e.      Garden City will continue to have relationships in the ordinary course of business with certain professionals in connection with matters unrelated to these Chapter 11 Cases.

-7-

f. Garden City has relationships with some of the Debtors' creditors in cases where Garden City serves in a neutral capacity as a class action settlement claims administrator. Garden City's assistance in the cases where it serves as a class action claims administrator has been primarily related to the design and dissemination of legal notice and other administrative functions in class actions.

g. Since 1999, Garden City has been a wholly owned subsidiary of Crawford & Company ("Crawford"), an insurance risk-adjusting firm. Crawford has no material relationship with the Debtors and, while, Crawford may have rendered services or had a vendor relationship with some of the Debtors' creditors, any relationships are in no way connected to Garden City's representation of the Debtors in these Chapter 11 Cases.

h. Ernst & Young LLP serves as Crawford's auditor.

9. To the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, Garden City is a "disinterested person," as such term is defined in section 101(14) of the Bankruptcy Code, in that Garden City and its professional personnel:

a. are not creditors, equity security holders or insiders of the Debtors;

b. are not and were not, within two years before the date of the filing of the Debtors' Chapter 11 Cases, directors, officers or employees of the Debtors; and

c. do not have an interest materially adverse to the interests of the Debtors' estates or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors.

10. To the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, Garden City has not been retained to assist any entity or person other than the Debtors on matters relating to, or in direct connection with, the Debtors' Chapter 11 Cases. If the Debtors are authorized by the Court to employ and retain Garden City, Garden City will not accept any engagement or perform any service for any entity other than the Debtors in these Chapter 11 Cases. Garden City will, however, continue to provide professional

-8-

services to entities that may be creditors or equity security holders of the Debtors or parties in interest in these cases, provided that such services do not relate to, or have any direct connection with, these cases or the Debtors.

11.     Furthermore, in connection with the retention of Garden City as notice, claims, balloting and solicitation agent, Garden City represents, among other things, that:

> a.     Garden City will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the notice, claims and solicitation agent in these Chapter 11 Cases;
>
> b.     By accepting employment in these Chapter 11 Cases, Garden City waives any rights to receive compensation from the United States government;
>
> c.     In its capacity as the notice, claims and solicitation agent in these Chapter 11 Cases, Garden City will not be an agent of the United States and will not act on behalf of the United States; and
>
> d.     Garden City will not employ any past or present employees of the Debtors in connection with its work as the notice, claims and solicitation agent in these Chapter 11 Cases.

12.     If Garden City discovers any additional information that requires disclosure, Garden City will file promptly a supplemental declaration with the Court.

13.     No agreement presently exists to share with any other person or firm any compensation received by Garden City for its services in this case. If any such agreement is entered into, Garden City undertakes to amend and supplement this declaration to disclose the terms of any such agreement.

14.     No promises have been received by Garden City, or by any employee thereof, as to compensation in connection with these Chapter 11 Cases other than in accordance with the provisions of the Bankruptcy Code.

RLF1 3629733v 1

15.    I am generally familiar with the Bankruptcy Rules, and Garden City will comply with them, subject to the orders of this Court.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 17, 2010

Name:    Emily S. Gottlieb
Title:     Senior Director of
           The Garden City Group, Inc.

-10-

**EXHIBIT C**



## BANKRUPTCY ADMINISTRATION AGREEMENT

This Bankruptcy Administration Agreement, dated as of November 16, 2010 is between The Garden City Group, Inc., a Delaware corporation (the "Company"), and CB Holding Corp. and certain of its affiliated debtor entities (collectively, the "Debtors" or the "Clients").

The Clients desire to retain the Company to perform certain noticing, claims processing and balloting administration services for the Clients in their Chapter 11 cases anticipated to be filed in the United States Bankruptcy Court for the District of Delaware (such Court or such other Bankruptcy Court where said case may actually be filed in lieu thereof, the "Bankruptcy Court"), and the Company desires to be so retained, in accordance with the terms and conditions of this Agreement.

In consideration of the mutual covenants herein contained, the parties hereby agree as follows:

1       Services  The Company agrees to provide the services necessary to perform the tasks specified in the pricing schedule that has been supplied to the Clients.  Such services are hereinafter referred to as "Services."  The Clients agree and understand that none of the Services constitute legal advice

2.      Payment for Services; Expenses.

2.1     Compensation.  As full compensation for the Services to be provided by the Company, the Clients agree to pay the Company its fees as outlined in the pricing schedule that has been supplied to the Clients (subject to Bankruptcy Court approval in the event of an unresolved dispute) Billing rates may be adjusted from time to time by the Company in its reasonable discretion, although billing rates generally are changed on an annual basis.  Clients agree to pay the Company a retainer of $15,000 (which may be replenished from time to time), to be applied first against the pre-petition fees and expenses incurred by the Clients in connection with Services rendered by the Company and then against the first bill that will be rendered by the Company to the Clients for the post-petition fees and expenses incurred by the Clients in connection with Services rendered by the Company.

2.2     Expenses.  In addition to the compensation set forth in Section 2.1, the Clients shall reimburse the Company for all out-of-pocket expenses reasonably incurred by the Company in connection with the performance of the Services (subject to Bankruptcy Court determination in the event of an unresolved dispute)  The out-of-pocket expenses will be billed on the expense (non-fee) portion of the Company's invoice to the Clients and may include, but are not limited to, postage, banking fees, brokerage fees, costs of messenger and delivery service, travel, filing fees, staff overtime meal expenses and other similar expenses.  In some cases, the Company may receive a rebate at the end of a year from a vendor.

2.3     Billing and Payment.  Except as provided in Section 2.2, the Company shall bill the Clients for its fees and expenses on a monthly basis, and the Clients shall pay the Company within thirty (30) days of its receipt of each such bill in the ordinary course of business (subject to Bankruptcy Court approval in the event of an unresolved dispute).  Unless otherwise agreed to in writing, the fees for print notice and media publication (including commissions) as well as certain expenses such as postage

must be paid at least three (3) business days in advance of those fees and expenses being incurred. Each of the Clients is jointly and severally liable for the Company's fees and expenses.

3    Term and Termination

3.1    Term    The term of this Agreement shall commence on the date hereof and shall continue until performance in full of the Services, unless earlier terminated as set forth herein.

3.2    Termination

(a)    In the event of any material breach of this Agreement by either party hereto, either party may apply to the Bankruptcy Court for an order allowing termination of the Agreement. Grounds for termination include: (i) failure to cure a material breach within thirty (30) days after receipt of the notice by the non-breaching party or (ii) in the case of any breach which requires more than thirty (30) days to effect a cure, failure to commence and continue in good faith efforts to cure such breach, provided that such cure shall be effected no later than ninety (90) days after receipt of such notice of such breach. Waiver of any such default or material breach by either party hereto shall not be construed as limiting any right of termination for a subsequent default or material breach.

(b)    The Company shall be entitled to an administrative claim for all fees and expenses outstanding at the time of termination (subject to Bankruptcy Court approval in the event of an unresolved dispute).

(c)    In accordance with the Bankruptcy Court's Local Rules, procedures and/or directives, or in the absence thereof, as soon as practicable (1) following the entry of a final decree closing the case, or (2) following the conversion of the case to Chapter 7, the Company shall forward to the Bankruptcy Court all paper copies of documents required to be provided thereto. For all other documents, the Company shall retain paper copies and electronic copies for one (1) year (1) following the entry of a final decree closing the case, or (2) following the conversion of the case to Chapter 7. Following the one (1) year retention period, the Company shall have the right to destroy all such documents. This provision shall not affect the Company's normal course business processes for archives and back-up tapes.

4.    Independent Contractor    It is understood and agreed that the Company, through itself or any of its agents, shall perform the Services as an independent contractor. Neither the Company nor any of its employees shall be deemed to be an employee of the Clients. Neither the Company nor any of its employees shall be entitled to any benefits provided by the Clients to their employees, and the Clients will make no deductions from any of the payments due to the Company hereunder for state or federal tax purposes. The Company agrees that the Company shall be responsible for any and all taxes and other payments due on payments received hereunder by the Company from the Clients. Nothing in this Agreement requires the Clients to use the Company for any future work relating to the Services, and, in the event the Clients decide to use another party for such future work, the Company agrees to cooperate fully with the Clients to ensure a smooth transition to the new party.

5    Accuracy of Client Supplied Information.    The Clients are responsible for the accuracy of all programs, data and other information they submit to the Company (including all information for schedule and statement preparation) and for the output of such information. The Company may undertake to place that data and information into certain systems and programs, including in connection with the generation of Schedules of Assets and Liabilities ("Schedules") and Statements of Financial Affairs ("Statements"). The Company does not verify information provided by the Clients and, with respect to

2

Schedules and Statements preparation, all decisions are at the sole discretion and direction of the Clients. All Schedules and Statements filed on behalf of, or by, the Clients are reviewed and ultimately approved by the Clients, and the Company bears no responsibility for the accuracy or contents therein

6.    Confidential Information

6 1    Confidentiality  In connection with this Agreement, each of the Clients and the Company (as the case may be, the "Disclosing Party") may disclose to the Company or the Clients (as the case may be, the "Receiving Party") certain information (a) that is marked or otherwise identified in writing as confidential or proprietary information of the Disclosing Party ("Confidential Information") prior to or upon receipt by the Receiving Party; or (b) which the Receiving Party reasonably should recognize from the circumstances surrounding the disclosure to be Confidential Information  The Receiving Party (x) shall hold all Confidential Information in confidence and will use such information only for the purposes of fulfilling the Receiving Party's obligations hereunder and for no other purpose, and (y) shall not disclose, provide, disseminate or otherwise make available any Confidential Information to any third party other than for the purposes of fulfilling the Receiving Party's obligations hereunder, in either case without the express prior written permission of the Disclosing Party. Notwithstanding the foregoing, the Receiving Party may disclose Confidential Information pursuant to a validly issued subpoena or order of a court of competent jurisdiction

6.2    Protection of Intellectual Property.  The Clients acknowledge that the Company's intellectual property, including, without limitation, the Company's inventions (whether or not patentable), processes, trade secrets and know how are of ultimate importance to the Company  Accordingly, the Clients agree to use their best efforts to protect such intellectual property, and shall not, either during the term of this Agreement or subsequent to its termination, utilize, reveal or disclose any of such intellectual property  The Clients understand that the software programs and other materials furnished by the Company pursuant to this Agreement and/or developed during the course of this Agreement by the Company are the sole property of the Company. The term "program" shall include, without limitation, data processing programs, check printing programs, specifications, applications, routines, sub-routines, procedural manuals, and documentation  The Clients further agree that any ideas, concepts, know-how or techniques relating to the claims management software used or developed by the Company during the course of this Agreement shall be the exclusive property of the Company

6 3    Scope.  The foregoing obligations in Sections 6.1 and 6.2 shall not apply to (a) information that is or becomes generally known or available by publication, commercial use or otherwise through no fault of the Receiving Party; (b) information that is known by the Receiving Party prior to the time of disclosure by the Disclosing Party to the Receiving Party; (c) information that is obtained from a third party who, to the Receiving Party's knowledge, has the right to make such disclosure without restriction; (d) any disclosure required by applicable law; or (e) information that is released for publication by the Disclosing Party in writing  The obligations set forth under Sections 6 1 and 6 2 shall survive the termination of this Agreement

7.    Indemnification  The Clients, jointly and severally, hereby indemnify and hold harmless the Company and its directors, officers, employees, affiliates and agents against any Losses incurred by the Company arising out of or in connection with or related to (a) any gross negligence or willful misconduct by Clients, their employees, agents or representatives, or any misrepresentations made by such persons to third parties in connection with the Company's acts or omissions in connection with its rendition of the Services; (b) any breach of this Agreement by any of the Clients; or (c) any erroneous instructions or information provided to the Company by any of the Clients for use in providing the Services  Notwithstanding any provision in the Application or the Agreement to the contrary, the Clients have no obligation to indemnify the Company, or provide contribution or reimbursement to the Company,

3

for any claim or expense that is either (a) judicially determined (the determination having become final) to have arisen from the Company's gross negligence or willful misconduct or (b) settled prior to a judicial determination as to the Company's gross negligence or willful misconduct, but determined by the Bankruptcy Court, after notice and a hearing, to be a claim or expense for which the Company should not receive indemnity, contribution or reimbursement under the terms of the Application and this Bankruptcy Agreement, as modified by the Bankruptcy Court Order ("Order"). If, before the earlier of (a) the entry of an order confirming a Chapter 11 plan in this case (that Order having become a final order no longer subject to appeal), and (b) the entry of an Order closing this Chapter 11 case, the Company believes that it is entitled to the payment of any amounts by the Clients on account of the Clients' indemnification, contribution and/or reimbursement obligations under this Bankruptcy Agreement (as modified by this Order), including without limitation the advancement of defense costs, the Company must file an application therefore in the Bankruptcy Court, and the Clients may not pay any such amounts to the Company before the entry of an Order approving the payment.

       8     Jurisdiction. This Agreement is subject to the approval of the Bankruptcy Court, and such Court shall retain jurisdiction over all matters regarding this Agreement.

       9     Force Majeure. Whenever performance by the Company of any of its obligations hereunder is substantially prevented by reason of any act of God, strike, lock-out or other industrial or transportational disturbance, fire, lack of materials, law, regulation or ordinance, war or war conditions, or by reason of any other matter beyond the Company's reasonable control, then such performance shall be excused and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

       10.    Notice. Any notice or other communication required or permitted hereunder shall be in writing and shall be delivered personally, or sent by registered mail, postage prepaid, or overnight courier. Any such notice shall be deemed given when so delivered personally, or, if mailed, five days after the date of deposit in the United States mail, or, if sent by overnight courier, one business day after delivery to such courier, as follows: if to the Company, to The Garden City Group, Inc., 105 Maxess Road, Melville, New York 11747-3836, Attention: David Isaac, Chief Executive Officer; and if to the Clients, to Cahill Gordon & Reindel LLP, 80 Pine Street, New York, NY 10005 Attention: Richard A. Stieglitz, Jr., Esq.

       11     Governing Law. This contract will be governed by and construed in accordance with the laws of the State of New York (without reference to its conflict of laws provisions).

       12     Severability. All clauses and covenants contained in this Agreement are severable and in the event any of them are held to be invalid by any court, such clause or covenant shall be valid and enforced to the maximum extent as to which it may be valid and enforceable, and this Agreement will be interpreted as if such invalid clauses or covenants were not contained herein.

       13     Assignment. This Agreement and the rights and obligations of the Company and the Clients hereunder shall bind and inure to the benefit of any successors or assigns thereto.

       14     General. This Agreement supersedes and replaces any existing agreement entered into by the Company and the Clients relating generally to the same subject matter, and may be modified only in a writing signed by the Company and the Clients. The paragraph headings in this Agreement are included only for convenience, do not in any manner modify or limit any of the provisions of this Agreement and may not be used in the interpretation of this Agreement. Failure to enforce any provision of this Agreement shall not constitute a waiver of any term hereof. This Agreement contains the entire agreement between the parties with respect to the subject matter hereof. This Agreement may be

executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one in the same instrument. The Clients shall file an application with the Bankruptcy Court seeking approval of this Agreement (the "Application"). If an order is entered approving such Application (the "Order"), any discrepancies between this Agreement, the Application and the Order shall be controlled by the Application and Order.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year set forth above.

CB HOLDING CORP                                    THE GARDEN CITY GROUP, INC.

By: _Edmund J Schwartz_                            By: _____
Name: Edmund J. Schwartz                           Name: Karen J main
Title: CFO                                         Title: SVP & L-C

5



# GCG Pricing

## Set-Up Creditor File

Set-up fee ................................................................................................................Waived

Electronic import of creditor data ....................................................................No per creditor charge

Assist with production of Schedules and Statements of Financial Affairs ........................Standard hourly rates


## Noticing

Laser printing (includes folding, insertion, and envelopes) ..................................$0.10 per page
(volume discounts apply)

Electronic noticing (e-mail) ..............................................................................$100 per 1,000

Facsimile noticing (domestic facsimile) .............................................................$0.10 per page

Personalization/labels........................................................................................$0.05 each

Legal publication of notice................................................................................Quote

Processing undeliverables...................................................................................$0.25 each


## Document Management

Sort and prep mail (including handling remails) ...............................................Standard hourly rates

Document scanning ..........................................................................................$0.12 per image

Document monthly storage  (paper) ...................................................................$1.50 per box
(electronic).................................................................$0.02 per creditor/image
(waived for first three months)

## Claims Administration

Association of claimant name and address to database......................................$0.15 per claim

Processing of claims, including non-conforming claims, supervisory review,
and application of message codes .....................................................................Standard hourly rates


## Balloting

Balloting (including coordination with nominees and Broadridge and
processing of master ballots, tabulation, verification and certification of vote) ............... Standard hourly rates


## GCG's Proprietary Electronic Database

License fee .......................................................................................................No charge

Remote access/Permitted users .........................................................................$250 per month/unlimited
users



## Web Site

Creating customized, interactive web site (including e-mail box for creditors) ............... Standard hourly rates

Monthly maintenance fee ............................................................................................ $200 per month

## Contact Services

Case-specific voice-mail box for creditors .............................................................. No charge

Interactive Voice Response ("IVR") ........................................................................ $1,900 set up
$0.39 per minute

Monthly maintenance charge .................................................................................... $100 per month

Management of Call Center (including handling of claimant
communications, call backs, e-mails, and other correspondences) ........................... Standard hourly rates

## Disbursements

Disbursements ......................................................................................................... Quote prior to distribution

## Miscellaneous Expenses

Travel, postage, courier, etc .................................................................................... At cost

Copying, facsimile .................................................................................................. $0.10 per page

### The Garden City Group, Inc. Hourly Billing Rates[*][1]

| Title | Standard Hourly Rates |
|---|---|
| Administrative & Data Entry | $45-$55 |
| Mailroom and Claims Control | $55 |
| Customer Service Representatives | $57 |
| Project Administrators | $70-$85 |
| Quality Assurance Staff | $80-$125 |
| Project Supervisors | $95-$110 |
| Systems & Technology Staff | $100-$200 |
| Graphic Support for web site | $125 |
| Project Managers | $125-$175 |
| Directors, Sr. Consultants and Asst VP | $200-$295 |
| Vice President and above | $295* |

---

[*] Expert services provided by Vice President Jeff Stein in connection with solicitation (including of public securities) and tabulation will be at a rate of $310 per hour  Any additional professional services not covered by this proposal will be charged at GCG hourly rates including any outsourced data input performed under GCG supervision and controls.  GCG does not charge a premium or overtime charge for any of the services it performs.

[1] GCG has agreed to provide additional discounts to its standard hourly rates as memorialized in an email sent by Angela Ferrante, dated November 16, 2010.