IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CB HOLDING CORP., et al.,[1] | ) | Case No. 10-_____ ( ) |
| | ) | |
| | ) | Joint Administration Requested |
| Debtors. | ) | |
| | ) | |

## DEBTORS' MOTION FOR ORDER AUTHORIZING CONTINUED USE OF EXISTING BANK ACCOUNTS, CASH MANAGEMENT SYSTEM, AND CHECKS AND BUSINESS FORMS

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through their undersigned attorneys, hereby file this motion (the "Motion")

---

[1] The other Debtors, and the last four digits of each of their tax identification numbers, are: 1820 Central Park Avenue Restaurant Corp. (5151); Bugaboo Creek Acquisition, LLC (4629); Bugaboo Creek Holdings, Inc. (0966); Bugaboo Creek of Seekonk, Inc. (1669); CB Holding Corp. (8640); CB VII, Inc. (9120); CB VIII, Inc. (1468); Charlie Brown North (6721); Charlie Brown's Acquisition Corp. (8367); Charlie Brown's at Clifton, Inc. (7309); Charlie Brown's Mark Corp. (3569); Charlie Brown's Montclair, Inc. (4223); Charlie Brown's 1981, Inc. (7781); Charlie Brown's of Allentown, L.L.C. (8420); Charlie Brown's of Alpha, Inc. (9083); Charlie Brown's of Berwyn, LLC (3347); Charlie Brown's of Blackwood, L.L.C. (5698); Charlie Brown's of Bloomsburg, LLC (3326); Charlie Brown's of Brielle, Inc. (8115); Charlie Brown's of Carlstadt, Inc. (6936); Charlie Brown's of Chatham, Inc. (2452); Charlie Brown's of Commack LLC (4851); Charlie Brown's of Denville, Inc. (1422); Charlie Brown's of East Windsor, LLC (2747); Charlie Brown's of Edison, Inc. (8519); Charlie Brown's of Egg Harbor Twp, LLC (none); Charlie Brown's of Franklin, LLC (5232); Charlie Brown's of Garden City, LLC (7440); Charlie Brown's of Hackettstown, L.L.C. (7493); Charlie Brown's of Harrisburg, LLC (1085); Charlie Brown's of Hillsborough, Inc. (0344); Charlie Brown's of Holtsville, LLC (0138); Charlie Brown's of Jackson, LLC (3478); Charlie Brown's of Lacey, L.L.C. (6282); Charlie Brown's of Lakewood, Inc. (0156); Charlie Brown's of Langhorne, LLC (3392); Charlie Brown's of Lynbrook LLC (2772); Charlie Brown's of Maple Shade, Inc. (0404); Charlie Brown's of Matawan, Inc. (8337); Charlie Brown's of Middletown LLC (7565); Charlie Brown's of Oradell, Inc. (0348); Charlie Brown's of Pennsylvania, Inc. (6918); Charlie Brown's of Piscataway, LLC (8285); Charlie Brown's of Reading, LLC (1214); Charlie Brown's of Scranton, LLC (9817); Charlie Brown's of Selinsgrove, LLC (6492); Charlie Brown's of Springfield, LLC (9892); Charlie Brown's of Staten Island, LLC (1936); Charlie Brown's of Tinton Falls, Inc. (6981); Charlie Brown's of Toms River, LLC (5492); Charlie Brown's of Union Township, Inc. (8910); Charlie Brown's of Trexlertown, LLC (6582); Charlie Brown's of Wayne, Inc. (4757); Charlie Brown's of West Windsor, Inc. (0159); Charlie Brown's of Williamsport LLC (8218); Charlie Brown's of Woodbury, Inc. (0601); Charlie Brown's of York, LLC (0980); Charlie Brown's of Yorktown, LLC (7855); Charlie Brown's Restaurant Corp. (7782); Charlie Brown's Steakhouse Fishkill, Inc. (9139); Charlie Brown's Steakhouse Woodbridge, Inc. (1906); Charlie Brown's, Inc. (4776); Jonathan Seagull Property Corp (7248); Jonathan Seagull, Inc. (9160); The Office at Bridgewater, Inc. (3132); The Office at Cranford, Inc. (3131); The Office at Keyport, Inc. (1507); The Office at Montclair, Inc. (3128); The Office at Morristown, Inc. (3127); The Office at Ridgewood, Inc. (2949); The Office at Summit, Inc. (3126); and What's Your Beef V, Inc. (4719).

for an order authorizing the continued use of their existing bank accounts, cash management system, and checks and business forms. In support of the relief requested in the Motion, the Debtors respectfully represent as follows:

## JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This District is the proper venue for these cases and this Motion under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief requested in this Motion are Bankruptcy Code § 105(a), Bankruptcy Rule 2015, and Local Rule 2015-2.

## INTRODUCTION

2. On November 17, 2010 (the "Petition Date"), the Debtors filed with this Court separate, voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The Debtors have sought an order directing that their Chapter 11 cases be jointly administered by this Court, and they have filed additional motions (some of which seek emergency relief) in the proposed lead case of CB Holding Corp.

3. The Debtors continue to manage their properties and operate their business as debtors-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108. No trustee, examiner, or official committee has been appointed in these cases.

The Debtors and Their Business

4. CB Holding Corp., a Delaware corporation, is the direct or indirect corporate parent of all of the other Debtors. All of CB Holding Corp.'s outstanding common and preferred stock is privately held.

5. The Debtors own and operate the *Charlie Brown's Steakhouse* ("Charlie Brown's"), *Bugaboo Creek Steak House* ("Bugaboo Creek"), and *The Office Beer Bar & Grill*

2

("The Office"). Charlie Brown's and Bugaboo Creek are steakhouses, offering their customers exceptional service, value, and fresh food, along with seasonal specialties, while The Office is more casual, offering over 60 bottled beers, seasonal draft beers, and classic pub appetizers and dining options.

6. There are currently 20 Charlie Brown's restaurants in New York, New Jersey, and Pennsylvania; 12 Bugaboo Creek restaurants in Massachusetts, Delaware, Maryland, New Hampshire, and Maine; and seven The Office restaurants in New Jersey. Shortly before the Petition Date, the Debtors closed 29 Charlie Brown's and 18 Bugaboo Creek restaurants.

7. The Debtors have approximately 185 full-timed salaried employees and more than 2,200 full-time and part-time hourly employees. None of the Debtors' employees are members of a union.

Capital Structure

*Secured Debt*

8. On June 21, 2007, in connection with the acquisition of Bugaboo Creek by Charlie Brown's, the Debtors entered into a financing agreement with Ableco Finance LLC ("Ableco"); Wells Fargo Capital Finance, Inc. (f/k/a Wells Fargo Foothill, Inc.) ("Wells"); and GMAC Commercial Finance LLC (n/k/a Ally Commercial Finance LLC) ("Ally" and collectively with Wells and Ableco, the "Senior Secured Lenders"), providing for a revolving line of credit, under which the Debtors may borrow up to an aggregate amount equal to the lesser of $15 million and a defined borrowing base with a letter of credit sublimit, and two tranches of

term loans, all of which are secured by liens on substantially all of the Debtors' assets. As of the Petition Date, the Debtors had approximately $70 million outstanding under this facility.[2]

9. On September 28, 2008, the Debtors issued $10 million in senior subordinated second lien notes pursuant to a note purchase agreement to Trimaran Fund II, L.L.C.; Trimaran Parallel Fund II, L.P.; Trimaran Capital, L.L.C.; CIBC Employee Private Equity Fund (Trimaran) Partners; and CIBC Capital Corp. (collectively, the "Second Lien Lenders"). As of the Petition Date, approximately $14 million, including accrued and unpaid interest, was outstanding under these second lien notes.

*Mezzanine Debt*

10. Also as part of the Bugaboo Creek acquisition, on June 21, 2007, the Debtors issued $20 million in unsecured, senior subordinated notes pursuant to four note purchase agreements to Kohlberg Capital Corporation; Archer Capital Master Fund, L.P.; Camofi Master LDC; Camhzn Master LDC; and Raven Credit Opp Master Fund Ltd. (collectively, the "Subordinated Lenders"). As of the Petition Date, the Debtors had approximately $30 million of mezzanine debt obligations, including accrued and unpaid interest, outstanding to the Subordinated Lenders.

Circumstances Leading to Filing

11. A variety of external factors have led to a decline in the Debtors' revenue over the last several years, at the same time that costs have increased. For instance, the restaurant industry has grown more competitive, the fast-food industry has improved their product offerings and increased its market share to the detriment of casual dining restaurants, such as the Debtors, and consumers have changed their ordering habits. In addition, the "Great

---

[2] Specifically, the Debtors had approximately $6 million outstanding under the revolver, $12 million outstanding under Term Loan A, and $52 million outstanding under Term Loan B.

4

Recession" has led to a decline in discretionary spending among the Debtors' former and current customers, and fewer families are frequenting restaurants while food and labor costs have increased, compounding the Debtors' distress.

12. Accordingly, for some time, the Debtors have been in discussions with their lenders and other parties regarding a financial restructuring, and they have entered into several amendments to their various credit and related facilities, but the Debtors' need for additional liquidity has not been resolved, and the economy has not improved. At this time, the only party willing to provide the Debtors with any funding is Ally, which has informed the Debtors that it is only willing to do so as a DIP loan in Chapter 11 cases where the Debtors market their assets in anticipation of a global asset sale.

13. Thus, in an effort to maximize their value, the Debtors have entered into a DIP arrangement with Ally, and along with other first-day motions designed to ensure a smooth transition into Chapter 11, the Debtors intend to file a motion to approve a DIP financing arrangement and to attempt to sell substantially all of their assets expeditiously pursuant to Bankruptcy Code § 363.

## FACTUAL BACKGROUND

14. The Debtors have a number of bank accounts (collectively, as described below, the "Accounts")[3] that they use in the ordinary course of business to enable them to manage their cash and to meet their obligations in a timely and efficient manner. All of the Accounts are in the name of debtor Charlie Brown's Acquisition Corp.

---

[3] A list of the Accounts is attached hereto as Exhibit A and is incorporated herein by reference.

5

Depository, Operating, and Local Accounts

15. Every night, at the close of business, the managers of most of the Debtors' restaurants deposit daily receipts into an account maintained at Bank of America (account number 004146041962, the "Depository Account"). Although the Debtors' restaurants are located throughout the United States, the managers are generally able (with exceptions discussed below) to make nightly deposits at nearby Bank of America branches.

16. The Depository Account is swept daily into an operating account also maintained at Bank of America (account number 003812670395, the "Operating Account"). The balance in the Operating Account is typically less than $1 million, and it rarely exceeds $2 million, on a given day.

17. Due to various restaurant policies, and because certain restaurants are not located in the proximity of a Bank of America branch, the Debtors also maintain local accounts at other banks:

  a.  account number 2000001210729 with Wachovia/Wells Fargo (the "Wachovia Account");

  b.  account number 9012378896 with PNC Bank (the "PNC Account"); and

  c.  account number 4240935796 with TD North Bank (the "TD North Account"); and

  d.  account number 0538283334 with Metro Bank (the "Metro Account").[4]

18. Both the Wachovia Account and the PNC Account are depository accounts. Any balance in the Wachovia Account is swept nightly into the Operating Account, and any balance in the PNC Bank Account is electronically transferred weekly into the Operating

---

[4] The Metro Account has a balance of $0.00 and the Debtors will likely seek to close the Metro Account.

6

RLF1 3630025v 1

Account. The TD North Account is a checking account, and checks are written on a weekly basis to transfer any balance in the TD North Account to the Operating Account. The Debtors do not believe that the deposits in any of these local accounts ever exceed $60,000 prior to being moved to the Operating Account.

AP, Payroll, and Sales Tax Accounts

19. To fund its operations, the Debtors write checks and send wires from two accounts: an accounts payable disbursement account (account number 000080252223, the "AP Account") and a payroll account (account number 000080252231, the "Payroll Account"). Both the AP Account and the Payroll Account are maintained at Bank of America, and they are funded from the Operating Account, when necessary. The Debtors maintain a $10,000 balance overnight in the AP Account, and due to prefunding requirements for payroll and other employee benefits, larger balances remain in the Payroll Account, but only for the particular day that funds are required. Prior to the Petition Date, approximately $1.460 million[5] was transferred from the Operating Account to the Payroll Account to fund the Debtors' payroll.[6]

20. The Debtors also maintain a state sales tax trust fund account at Bank of America (account number 381023399239, the "Sales Tax Account"). Funds are transferred to the Sales Tax Account from the Operating Account and are kept in the Sales Tax Account until they become due. Sales tax withholdings are then returned to the Operating Account when due to be submitted to the applicable taxing authority.

---

[5] Certain of these funds may have already been withdrawn by third-parties in connection with processing of the payroll.

[6] On the Petition Date, the Debtors filed an emergency motion seeking authority, among other things, to pay all pre-petition wages, salary, and other benefits that accrued pre-petition. Should the Court grant that motion but deny the relief requested in this Motion, the Debtors could be forced to re-issue checks to employees or deal with interruptions to payments the Debtors deposit directly into their employees' accounts.

7

RLF1 3630025v 1

Liquor Accounts

21. Pennsylvania, Maryland, Maine, New Hampshire, and Delaware require that liquor (whether it be beer, alcohol, or both) be paid for at the time of delivery. Accordingly, the Debtors opened checking accounts with Bank of America (collectively, the "Liquor Accounts") to permit store managers for restaurants in those states to write checks to pay for liquor upon delivery, in satisfaction of these requirements. Each of the Liquor Accounts is funded from the Operating Account, when necessary, and generally does not contain more than $6,000.[7]

## RELIEF REQUESTED

22. In connection with its supervisory role in the administration of Chapter 11 cases, the Office of the United States Trustee has established operating guidelines for debtors-in-possession. Among other things, these guidelines require Chapter 11 debtors to close all existing bank accounts, to open new debtor-in-possession bank accounts, and to obtain new business forms, including checks that bear the designation "debtor-in-possession", the bankruptcy case number, and the type of account. These requirements are designed to demarcate between pre-petition and post-petition transactions and operations and to prevent the inadvertent post-petition payment of pre-petition claims through the presentation of checks drawn prior to the filing of a bankruptcy petition.

23. Accordingly, the Debtors respectfully request an order (a) authorizing them to continue to maintain the Accounts and to utilize their cash management system in effect

---

[7] On the Petition Date, the Debtors filed an emergency motion seeking authority, among other things to pay their liquor vendors. Should the Court grant that motion but deny the relief requested in this Motion, the Debtors could be forced to re-issue checks to their liquor vendors and may be unable to obtain liquor from such vendors post-petition.

prior to the Petition Date and (b) authorizing them to continue to utilize their existing business forms, including checks.

24. Moreover, the Debtors request that all banks at which they maintain the Accounts be enjoined from offsetting, affecting, or otherwise impeding the transfer of any funds of the Debtors deposited by, or on behalf of, the Debtors in the Accounts, on account of or by reason of any claim (as such term is defined in Bankruptcy Code § 101(5)), of any such bank against the Debtors that arose before the Petition Date.

25. Finally, the Debtors request authority to open any new bank accounts or close any of the Accounts as they may deem necessary and appropriate in their sole discretion; provided they give prompt notice to the United States Trustee and any official committees appointed in these cases prior to doing so.

## BASIS FOR RELIEF REQUESTED

Maintenance of Existing Bank Accounts

26. Authorizing the Debtors to continue to use their existing Accounts is essential to a smooth transition into Chapter 11 and to avoid disruption to the Debtors' business. For instance, the Debtors' employees would suffer great hardship if the Debtors were compelled to substitute a new debtor-in-possession payroll account, which could cause delays, confusion, and disruption of payments (including with respect to checks relating to the current payroll that have been issued but not cashed) that would adversely affect employee morale. Similar consequences could result if the Debtors had to change accounts used by their vendors or suppliers during these cases.

27. Additionally, opening all new bank accounts would be specifically burdensome on the restaurant managers in areas where Bank of America branches are not convenient. The cost and burden associated with opening new accounts in such areas and then

9

changing procedures to transfer those funds to the Operating Account greatly outweigh any benefit that could be received therefrom, and any delay in transferring deposits from those accounts could be devastating to the Debtors' business.

28. Courts in this district routinely recognize that strictly applying the requirement that a debtor-in-possession close its bank accounts does not serve the Chapter 11 rehabilitative process and routinely waive this requirement. See e.g., In re The Fairchild Corp., Case No. 09-10899 (CSS) (Bankr. D. Del. March 20, 2009); In re Ritz Camera Ctrs., Inc., Case No. 09-10617 (MFW) (Bankr. D. Del. Feb. 25, 2009); In re Smurfit-Stone Container Corp., Case No. 09-10235 (BLS) (Bankr. D. Del. Feb. 23, 2009); In re Hines Horticulture, Inc., Case No. 08-11922 (KJC), (Bankr. D. Del. Aug. 22, In re WCI Cmtys., Inc., Case No. 08-11643 (KJC) (Bankr. D. Del. Aug. 6, 2008); In re Linens Holding Co., Case No. 08-10832 (CSS) (Bankr. D. Del. May 2, 2008); In re Delta Fin. Corp., Case No. 07-11880 (CSS) (Bankr. D. Del. Dec. 19, 2007).

29. The Debtors have used the cash management procedures described in this Motion for quite some time. The Debtors submit that these procedures constitute ordinary and essential business practices similar to those used by other similar enterprises, particularly those in the Debtors' industry. The Debtors' cash management system enables them to provide necessary operational funds, to reduce the costs of borrowing funds by using all funds within the system, to develop more timely and accurate account balance information, and to comply with various statutes and regulations and the intricacies of their particular business. See generally In re Columbia Gas Sys., Inc., 136 B.R. 930 (Bankr. D. Del. 1992) (stressing the utility of continuing a debtor's pre-petition cash management system).

10

30. The Debtors' continued use of their existing cash management system during these Chapter 11 cases is critical. Any disruption to the Debtors' ordinary business affairs could have dire effects on their ability to transition smoothly into Chapter 11 and conduct an orderly sale process to maximize value for all parties. The Debtors will continue to maintain strict records in accordance with past practices with respect to all transfers of cash for reporting and accounting purposes and to ensure that all transactions (including intercompany transactions) can be readily ascertained, traced, recorded properly, and distinguished between pre-petition and post petition transactions.

Continued Use of Business Forms

31. The Debtors also request permission to continue to use their existing business forms, including checks, which they submit would not prejudice any parties-in-interest. On the other hand, if forced to replace their existing business forms, the Debtors would need to spend a substantial amount of time and money printing new business forms and stationery, which would disrupt the Debtors' ordinary business affairs and interrupt the normal payment of wages, salaries, and necessary supplies.

32. Courts in this district typically grant Chapter 11 debtors authority to continue to use their existing cash business forms. See, e.g., In re Tropicana Entertainment, LLC, Case No. 08-10856 (KJC) (Bankr. D. Del. May 6, 2008); In re Wickes Holdings, LLC, Case No. 08-10212 (KJC) (Bankr. D. Del. Feb. 5, 2008); In re Delta Fin. Corp., Case No. 07-11880 (CSS) (Bankr. D. Del. Dec. 19, 2007); In re Pope & Talbot, Inc., Case No. 07-11738 (CSS) (Bankr. D. Del. Nov. 21, 2007); In re Tweeter Home Entm't Group, Inc., Case No. 07-10787 (PJW) (Bankr. D. Del. June 13, 2007); In re Hancock Fabrics, Inc., et al., No. 07-10353 (BLS) (Bankr. D. Del. March 22, 2007); In re Delta Mills, Inc., Case No. 06-11144 (CSS)

(Bankr. D. Del. Oct. 13, 2006); In re Global Home Prods., LLC, No. 06-10340 (KG) (Bankr. D. Del. Apr. 11, 2006).

## NOTICE

33. Notice of this Motion has been given via overnight delivery service, e-mail, facsimile, telephone, and/or hand delivery, as appropriate, to the United States Trustee, the 20 largest unsecured non-insider creditors of the Debtors on a consolidated basis, the Senior Secured Lenders, the Second Lien Lenders, the Subordinated Lenders, the Debtors' equity sponsor, the United States Attorney's Office for the District of Delaware, the United States Attorney General, the Internal Revenue Service, and the various banks at which the Accounts are maintained. As this Motion is seeking first-day relief, notice hereof and of any order entered hereon will be served in accordance with Local Rule 9013-1(m). Due to the urgency of the circumstances, the Debtors submit that no other or further notice of this Motion is required.

## NO PRIOR APPLICATION

34. No previous request for the relief sought in this Motion has been made to this or to any other court.

RLF1 3630025v 1

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as Exhibit B, granting the relief requested in this Motion and such other and further relief as may be just and proper under the circumstances.

Dated: November 18, 2010  
       Wilmington, Delaware

Respectfully submitted,

/s/ Mark D. Collins

Mark D. Collins (No. 2981)  
Christopher M. Samis (No. 4909)  
Julie Finocchiaro (No. 5303)  
RICHARDS, LAYTON & FINGER, P.A.  
One Rodney Square  
920 North King Street  
Wilmington, Delaware 19801  
Telephone: (302) 651-7700  
Facsimile: (302) 651-7701

-and-

Joel H. Levitin  
Richard A. Stieglitz Jr.  
Maya Peleg  
CAHILL GORDON & REINDEL LLP  
Eighty Pine Street  
New York, New York 10005  
Telephone: (212) 701-3000  
Facsimile: (212) 269-5420

*Proposed Attorneys for the Debtors and Debtors-in-Possession*

# EXHIBIT A

## List of Bank Accounts

| Bank | Account Number | General Account Description |
|---|---|---|
| Wachovia/Wells Fargo<br>266 Harrison Road<br>Glen Rock, NJ | 2000001210729 | Local Depository Account |
| Bank of America<br>100 Federal Street<br>Boston, MA 02210 | 004146041962 | Depository Account |
| | 003812670395 | Operating Account |
| | 000080252231 | Payroll Account |
| | 000080252223 | AP Account |
| | 381023399239 | Sales Tax Account |
| | 009429418275 | Liquor Account |
| | 009429418291 | Liquor Account |
| | 003812670272 | Liquor Account |
| | 003812670269 | Liquor Account |
| | 003812670324 | Liquor Account |
| | 003812670340 | Liquor Account |
| | 381004091161 | Liquor Account |
| | 381004091187 | Liquor Account |
| | 381004091174 | Liquor Account |
| | 381004091190 | Liquor Account |
| | 381004091200 | Liquor Account |
| | 381004091213 | Liquor Account |
| | 381004091271 | Liquor Account |
| | 381004091284 | Liquor Account |
| PNC Bank<br>101 East Front Street<br>Berwick, PA 18603 | 9012378896 | Local Depository Account |
| TD North Bank<br>3234 North Avenue<br>Dunellen, NJ 08812 | 4240935796 | Local Checking Account |
| Metro Bank<br>3801 Paxton Street<br>Harrisburg PA 17111-1418<br>Tel 888-937-0004 | 0538283334 | Checking Account |

# **EXHIBIT B**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CB HOLDING CORP., et al.,[1] | ) | Case No. 10-_____ ( ) |
| | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |

## ORDER AUTHORIZING CONTINUED USE OF EXISTING BANK ACCOUNTS, CASH MANAGEMENT SYSTEM, AND CHECKS AND BUSINESS FORMS

Upon consideration of the motion (the "Motion")[2] of the Debtors for an order authorizing them to continue use of the Accounts, cash management system, and checks and

---

[1] The other Debtors, and the last four digits of each of their tax identification numbers, are: 1820 Central Park Avenue Restaurant Corp. (5151); Bugaboo Creek Acquisition, LLC (4629); Bugaboo Creek Holdings, Inc. (0966); Bugaboo Creek of Seekonk, Inc. (1669); CB Holding Corp. (8640); CB VII, Inc. (9120); CB VIII, Inc. (1468); Charlie Brown North (6721); Charlie Brown's Acquisition Corp. (8367); Charlie Brown's at Clifton, Inc. (7309); Charlie Brown's Mark Corp. (3569); Charlie Brown's Montclair, Inc. (4223); Charlie Brown's 1981, Inc. (7781); Charlie Brown's of Allentown, L.L.C. (8420); Charlie Brown's of Alpha, Inc. (9083); Charlie Brown's of Berwyn, LLC (3347); Charlie Brown's of Blackwood, L.L.C (5698); Charlie Brown's of Bloomsburg, LLC (3326); Charlie Brown's of Brielle, Inc. (8115); Charlie Brown's of Carlstadt, Inc. (6936); Charlie Brown's of Chatham, Inc. (2452); Charlie Brown's of Commack LLC (4851); Charlie Brown's of Denville, Inc. (1422); Charlie Brown's of East Windsor, LLC (2747); Charlie Brown's of Edison, Inc. (8519); Charlie Brown's of Egg Harbor Twp, LLC (none); Charlie Brown's of Franklin, LLC (5232); Charlie Brown's of Garden City, LLC (7440); Charlie Brown's of Hackettstown, L.L.C. (7493); Charlie Brown's of Harrisburg, LLC (1085); Charlie Brown's of Hillsborough, Inc. (0344); Charlie Brown's of Holtsville, LLC (0138); Charlie Brown's of Jackson, LLC (3478); Charlie Brown's of Lacey, L.L.C. (6282); Charlie Brown's of Lakewood, Inc. (0156); Charlie Brown's of Langhorne, LLC (3392); Charlie Brown's of Lynbrook LLC (2772); Charlie Brown's of Maple Shade, Inc. (0404); Charlie Brown's of Matawan, Inc. (8337); Charlie Brown's of Middletown LLC (7565); Charlie Brown's of Oradell, Inc. (0348); Charlie Brown's of Pennsylvania, Inc. (6918); Charlie Brown's of Piscataway, LLC (8285); Charlie Brown's of Reading, LLC (1214); Charlie Brown's of Scranton, LLC (9817); Charlie Brown's of Selinsgrove, LLC (6492); Charlie Brown's of Springfield, LLC (9892); Charlie Brown's of Staten Island, LLC (1936); Charlie Brown's of Tinton Falls, Inc. (6981); Charlie Brown's of Toms River, LLC (5492); Charlie Brown's of Union Township, Inc. (8910); Charlie Brown's of Trexlertown, LLC (6582); Charlie Brown's of Wayne, Inc. (4757); Charlie Brown's of West Windsor, Inc. (0159); Charlie Brown's of Williamsport LLC (8218); Charlie Brown's of Woodbury, Inc. (0601); Charlie Brown's of York, LLC (0980); Charlie Brown's of Yorktown, LLC (7855); Charlie Brown's Restaurant Corp. (7782); Charlie Brown's Steakhouse Fishkill, Inc (9139); Charlie Brown's Steakhouse Woodbridge, Inc. (1906); Charlie Brown's, Inc. (4776); Jonathan Seagull Property Corp. (7248); Jonathan Seagull, Inc (9160); The Office at Bridgewater, Inc. (3132); The Office at Cranford, Inc (3131); The Office at Keyport, Inc. (1507); The Office at Montclair, Inc (3128); The Office at Morristown, Inc. (3127); The Office at Ridgewood, Inc. (2949); The Office at Summit, Inc (3126); and What's Your Beef V, Inc. (4719).

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

business forms; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and the Court having found that good and sufficient cause exists for granting the Motion; and upon consideration of the Declaration of Gary Lembo in Support of Debtors First Day Pleadings; and upon the record of these Chapter 11 cases and any hearings held to consider the Motion; and it appearing that the relief requested in the Motion is appropriate in the context of these cases and in the best interests of the Debtors and their respective estates, their creditors, and all other parties-in-interest; and it appearing that notice of the Motion was adequate and proper under the circumstances of these cases, and it appearing that no other or further notice need be given; it is hereby

ORDERED that the Motion is granted as set forth herein; and it is further

ORDERED that the Debtors are authorized and empowered: (a) to designate, maintain, and continue to use the Accounts with the same names and account numbers; (b) to treat the Accounts for all purposes as accounts of the Debtors, in their capacity as debtors-in-possession; and (c) to deposit or cause funds to be deposited in or withdrawn from such accounts by all usual means including, without limitation, checks, wire transfers, electronic funds and automatic transfers, direct debits, and other debits; and it is further

ORDERED that all banks at which the Accounts are maintained are authorized and directed to continue to service and administer the Accounts as accounts of the Debtors, in their capacity as debtors-in-possession, without interruption and in the usual and ordinary course, and to receive, process, honor, and pay, to the extent of available funds in the Accounts, any and all checks and drafts issued on the Accounts post-petition; and it is further

ORDERED that, except as provided below, all banks at which the Accounts are maintained are enjoined from offsetting, affecting, or otherwise impeding any funds of the Debtors deposited by or on behalf of the Debtors in the Accounts, on account or by reason of any

claim (as such term is defined in Bankruptcy Code § 101(5)), of any such bank against the Debtors that arose before the Petition Date; and it is further

ORDERED that any requirement that the Debtors open new bank accounts is waived; and it is further

ORDERED that the Debtors are authorized to open any new bank accounts or close any of the Accounts as they may deem necessary and appropriate in their sole discretion; provided, however, that the Debtors shall give prompt notice to the United States Trustee and any official committees appointed in these cases prior to opening any new accounts or closing any of the Accounts; and it is further

ORDERED that the Debtors are authorized and empowered to continue to manage their cash in the ordinary course of business in the same manner as during the pre-petition period; and it is further

ORDERED that the Debtors shall continue to maintain customary records in accordance with past practices with respect to all transfers of cash so that all transactions (including intercompany transactions) may be readily ascertained, traced, recorded properly, and distinguished between pre-petition and post petition transactions; and it is further

ORDERED that the Debtors are authorized to continue to use their existing correspondence and business forms, checks, and documents related to the Accounts; provided however, that once the Debtors pre-petition check stock runs out, the Debtors will obtain new stock reflecting their status as debtors-in-possession; and it is further

ORDERED that the Debtor shall promptly serve a copy of this Order on all banks listed on Exhibit A to the Motion; and it is further

ORDERED that service of a copy of this Order on the banks where the Accounts are maintained in accordance with this Order shall constitute notice by the Debtors to such banks to designate the Accounts as debtor-in-possession accounts, and the Accounts shall be so deemed debtor-in-possession accounts without further action required; and it is further

ORDERED that the Debtors are authorized and empowered to take any necessary actions to implement and effectuate the terms of this Order; and it is further

ORDERED that the terms and conditions of this Order shall be immediately enforceable and effective upon its entry; and it is further

ORDERED that this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2010
Wilmington,, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE