IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CB HOLDING CORP., et al.,[1] | ) | Case No. 10-_____ ( ) |
| | ) | |
| | ) | Joint Administration Requested |
| Debtors. | ) | |
| | ) | |

## DEBTORS' MOTION FOR INTERIM AND FINAL ORDER AUTHORIZING DEBTORS TO PAY CLAIMS UNDER PERISHABLE AGRICULTURAL COMMODITIES ACT

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through their undersigned attorneys, hereby file this motion (the "Motion") for interim and final orders authorizing them to pay pre-petition claims of creditors that provided

---

[1] The other Debtors, and the last four digits of each of their tax identification numbers, are: 1820 Central Park Avenue Restaurant Corp. (5151); Bugaboo Creek Acquisition, LLC (4629); Bugaboo Creek Holdings, Inc. (0966); Bugaboo Creek of Seekonk, Inc. (1669); CB Holding Corp (8640); CB VII, Inc. (9120); CB VIII, Inc (1468); Charlie Brown North (6721); Charlie Brown's Acquisition Corp. (8367); Charlie Brown's at Clifton, Inc. (7309); Charlie Brown's Mark Corp (3569); Charlie Brown's Montclair, Inc. (4223); Charlie Brown's 1981, Inc. (7781); Charlie Brown's of Allentown, LLC (8420); Charlie Brown's of Alpha, Inc. (9083); Charlie Brown's of Berwyn, LLC (3347); Charlie Brown's of Blackwood, LLC (5698); Charlie Brown's of Bloomsburg, LLC (3326); Charlie Brown's of Brielle, Inc. (8115); Charlie Brown's of Carlstadt, Inc. (6936); Charlie Brown's of Chatham, Inc (2452); Charlie Brown's of Commack LLC (4851); Charlie Brown's of Denville, Inc (1422); Charlie Brown's of East Windsor, LLC (2747); Charlie Brown's of Edison, Inc. (8519); Charlie Brown's of Egg Harbor Twp, LLC (none); Charlie Brown's of Franklin, LLC (5232); Charlie Brown's of Garden City, LLC (7440); Charlie Brown's of Hackettstown, LLC (7493); Charlie Brown's of Harrisburg, LLC (1085); Charlie Brown's of Hillsborough, Inc. (0344); Charlie Brown's of Holtsville, LLC (0138); Charlie Brown's of Jackson, LLC (3478); Charlie Brown's of Lacey, LLC (6282); Charlie Brown's of Lakewood, Inc. (0156); Charlie Brown's of Langhorne, LLC (3392); Charlie Brown's of Lynbrook LLC (2772); Charlie Brown's of Maple Shade, Inc. (0404); Charlie Brown's of Matawan, Inc. (8337); Charlie Brown's of Middletown LLC (7565); Charlie Brown's of Oradell, Inc. (0348); Charlie Brown's of Pennsylvania, Inc (6918); Charlie Brown's of Piscataway, LLC (8285); Charlie Brown's of Reading, LLC (1214); Charlie Brown's of Scranton, LLC (9817); Charlie Brown's of Selinsgrove, LLC (6492); Charlie Brown's of Springfield, LLC (9892); Charlie Brown's of Staten Island, LLC (1936); Charlie Brown's of Tinton Falls, Inc (6981); Charlie Brown's of Toms River, LLC (5492); Charlie Brown's of Union Township, Inc. (8910); Charlie Brown's of Trexlertown, LLC (6582); Charlie Brown's of Wayne, Inc. (4757); Charlie Brown's of West Windsor, Inc. (0159); Charlie Brown's of Williamsport LLC (8218); Charlie Brown's of Woodbury, Inc (0601); Charlie Brown's of York, LLC (0980); Charlie Brown's of Yorktown, LLC (7855); Charlie Brown's Restaurant Corp. (7782); Charlie Brown's Steakhouse Fishkill, Inc. (9139); Charlie Brown's Steakhouse Woodbridge, Inc. (1906); Charlie Brown's, Inc. (4776); Jonathan Seagull Property Corp (7248); Jonathan Seagull, Inc. (9160); The Office at Bridgewater, Inc. (3132); The Office at Cranford, Inc. (3131); The Office at Keyport, Inc. (1507); The Office at Montclair, Inc (3128); The Office at Morristown, Inc. (3127); The Office at Ridgewood, Inc (2949); The Office at Summit, Inc. (3126); and What's Your Beef V, Inc. (4719)

goods covered by the Perishable Agricultural Commodities Act of 1930, as amended, 7 U.S.C. §§ 499, et seq. ("PACA"). In support of the relief requested in this Motion, the Debtors respectfully represent as follows:

## JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue of these cases and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicate for the relief requested herein is Bankruptcy Code § 105(a).

## INTRODUCTION

2. On November 17, 2010 (the "Petition Date"), the Debtors filed with this Court separate, voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The Debtors have sought an order directing that their Chapter 11 cases be jointly administered by this Court, and they have filed additional motions (some of which seek emergency relief) in the proposed lead case of CB Holding Corp.

3. The Debtors continue to manage their properties and operate their business as debtors-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108. No trustee, examiner, or official committee has been appointed in these cases.

The Debtors and Their Business

4. CB Holding Corp., a Delaware corporation, is the direct or indirect corporate parent of all of the other Debtors. All of CB Holding Corp.'s outstanding common and preferred stock is privately held.

5. The Debtors own and operate the *Charlie Brown's Steakhouse* ("Charlie Brown's"), *Bugaboo Creek Steak House* ("Bugaboo Creek"), and *The Office Beer Bar & Grill* ("The Office"). Charlie Brown's and Bugaboo Creek are steakhouses, offering their customers

exceptional service, value, and fresh food, along with seasonal specialties, while The Office is more casual, offering over 60 bottled beers, seasonal draft beers, and classic pub appetizers and dining options.

6. There are currently 20 Charlie Brown's restaurants in New York, New Jersey, and Pennsylvania; 12 Bugaboo Creek restaurants in Massachusetts, Delaware, Maryland, New Hampshire, and Maine; and seven The Office restaurants in New Jersey. Shortly before the Petition Date, the Debtors closed 29 Charlie Brown's and 18 Bugaboo Creek restaurants.

7. The Debtors have approximately 185 full-timed salaried employees and more than 2,200 full-time and part-time hourly employees. None of the Debtors' employees are members of a union.

Capital Structure

*Secured Debt*

8. On June 21, 2007, in connection with the acquisition of Bugaboo Creek by Charlie Brown's, the Debtors entered into a financing agreement with Ableco Finance LLC ("Ableco"); Wells Fargo Capital Finance, Inc. (f/k/a Wells Fargo Foothill, Inc.) ("Wells"); and GMAC Commercial Finance LLC (n/k/a Ally Commercial Finance LLC) ("Ally" and collectively with Wells and Ableco, the "Senior Secured Lenders"), providing for a revolving line of credit, under which the Debtors may borrow up to an aggregate amount equal to the lesser of $15 million and a defined borrowing base with a letter of credit sublimit, and two tranches of term loans, all of which are secured by liens on substantially all of the Debtors' assets. As of the Petition Date, the Debtors had approximately $70 million outstanding under this facility.[2]

---

[2] Specifically, the Debtors had approximately $6 million outstanding under the revolver, $12 million outstanding under Term Loan A, and $52 million outstanding under Term Loan B.

9. On September 28, 2008, the Debtors issued $10 million in senior subordinated second lien notes pursuant to a note purchase agreement to Trimaran Fund II, L.L.C.; Trimaran Parallel Fund II, L.P.; Trimaran Capital, L.L.C.; CIBC Employee Private Equity Fund (Trimaran) Partners; and CIBC Capital Corp. (collectively, the "Second Lien Lenders"). As of the Petition Date, approximately $14 million, including accrued and unpaid interest, was outstanding under these second lien notes.

*Mezzanine Debt*

10. Also as part of the Bugaboo Creek acquisition, on June 21, 2007, the Debtors issued $20 million in unsecured, senior subordinated notes pursuant to four note purchase agreements to Kohlberg Capital Corporation; Archer Capital Master Fund, L.P.; Camofi Master LDC; Camhzn Master LDC; and Raven Credit Opp Master Fund Ltd. (collectively, the "Subordinated Lenders"). As of the Petition Date, the Debtors had approximately $30 million of mezzanine debt obligations, including accrued and unpaid interest, outstanding to the Subordinated Lenders.

Circumstances Leading to Filing

11. A variety of external factors have led to a decline in the Debtors' revenue over the last several years, at the same time that costs have increased. For instance, the restaurant industry has grown more competitive, the fast-food industry has improved their product offerings and increased its market share to the detriment of casual dining restaurants, such as the Debtors, and consumers have changed their ordering habits. In addition, the "Great Recession" has led to a decline in discretionary spending among the Debtors' former and current customers, and fewer families are frequenting restaurants while food and labor costs have increased, compounding the Debtors' distress.

12. Accordingly, for some time, the Debtors have been in discussions with their lenders and other parties regarding a financial restructuring, and they have entered into several amendments to their various credit and related facilities, but the Debtors' need for additional liquidity has not been resolved, and the economy has not improved. At this time, the only party willing to provide the Debtors with any funding is Ally, which has informed the Debtors that it is only willing to do so as a DIP loan in Chapter 11 cases where the Debtors market their assets in anticipation of a global asset sale.

13. Thus, in an effort to maximize their value, the Debtors have entered into a DIP arrangement with Ally, and along with other first-day motions designed to ensure a smooth transition into Chapter 11, the Debtors intend to file a motion to approve a DIP financing arrangement and to attempt to sell substantially all of their assets expeditiously pursuant to Bankruptcy Code § 363.

**FACTUAL BACKGROUND**

PACA

14. PACA protects suppliers of "perishable agricultural commodities," including fruits and vegetables, by granting them a constructive trust for certain unpaid amounts outstanding. See, e.g., Consumers Produce Co. v. Volante Wholesale Produce, Inc., 16 F.3d 1374, 1379 (3d Cir. 1994); A&J Produce Corp. v. CIT Group/Factoring, Inc., 829 F.Supp. 651, 653 (S.D.N.Y. 1993).

15. This constructive trust is imposed on the products themselves, as well as proceeds related thereto. Idahoan Fresh v. Advantage Produce, Inc., 157 F.3d 197, 199 (3d Cir. 1998). As of result, PACA "effectively vitiates a lender's security interest in trust assets held by produce purchasers vis-á-vis unpaid produce suppliers." Consumers Produce Co. v. Volante

5

Wholesale Produce, Inc., 16 F.3d 1374, 1379 (3d Cir. 1994); see also Middle Mt. Land & Produce, Inc. v. Sound Commodities, Inc., 307 F.3d 1220, 1224 (9th Cir. 2002) (PACA "elevated the claims of unpaid perishable agricultural suppliers over all other creditors ... with regard to funds in the PACA trust"); Tom Lange Co. v. Kornblum & Co. (In re Kornblum & Co.), 81 F.3d 280, 284 (2d Cir. 1996).

16. PACA imposes procedural burdens on a party seeking to assert claims thereunder. For instance, among other things, to preserve a claim, the seller of appropriate goods must provide written notice to the buyer of its desire to do so within 30 days of the expiration of the time payment was due and must provide specific detail to identify the transaction subject to the PACA trust. See Merrill Farms Corp. v. H.R. Hindle & Co. (In re H.R. Hindle & Co.), 149 B.R. 775, 785 (Bankr. E.D. Pa. 1993); Debruy Produce Co. v. Richmond Produce Co. (In re Richmond Produce Co.), 112 B.R. 364, 368-69 (Bankr. N.D. Cal. 1990); see also 7 U.S.C. § 499e(c)(3).

The PACA Claims

17. Prior to the Petition Date, certain creditors sold agricultural goods, such as fruits and vegetables, to the Debtors that may be covered by PACA. Specifically, these goods might either (a) constitute "perishable agricultural commodities" under PACA or (b) be protected under similar state statutes.

18. The Debtors believe that certain of their produce vendors could file claims under PACA and state statutes (to the extent such claims are timely and otherwise appropriate, as determined by the Debtors in their discretion, collectively, the "PACA Claims") and that such PACA Claims could amount to approximately $370,000.

## RELIEF REQUESTED[3]

19. By this Motion, the Debtors respectfully request the entry of an order granting them the authority to pay the PACA Claims not otherwise authorized to be paid by another order of this Court.

20. On an emergency basis, the Debtors are only requesting that the Court approve payment of PACA Claims, to the extent that the Debtors determine that payment is appropriate in the next 21 days. The Debtors also request that the Court schedule a further hearing (the "Follow-Up Hearing") on this Motion to consider all other requested relief. The Debtors would file and serve a proposed form of order approving such remaining relief prior to the date of the Follow-Up Hearing.

21. Furthermore, the Debtors request that financial institutions be authorized to receive, process, honor, and pay all checks presented for payment and electronic payment requests related to the PACA Claims, whether such checks were presented or electronic requests were submitted prior to or after the Petition Date. The Debtors also request that financial institutions be authorized to rely on the Debtors' designation of any particular check or electronic payment request as appropriate pursuant to this Motion.

## BASIS FOR RELIEF

22. The Debtors submit that the relief requested herein is appropriate under the Bankruptcy Code and the circumstances of these cases. Specifically, pursuant to Bankruptcy Code § 105(a), "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. The purpose of Bankruptcy Code § 105(a) is to ensure a bankruptcy court's power to take whatever action "is appropriate or

---

[3] Nothing in this Motion should be construed as impairing the Debtors' right to contest the amount of any of the PACA Claims, and accordingly, the Debtors reserve all rights related thereto.

necessary in aid of the exercise of [its] jurisdiction." 2 Collier on Bankruptcy, ¶ 105.01 (15th rev. ed. 1997); see also Management Technology Corp. v. Pardo, 56 B.R. 337, 339 (Bankr. D.N.J. 1985) (court's equitable power derived from Bankruptcy Code § 105).

23. A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). "Under Section 105, a court can permit pre-plan payment of pre-petition obligations when essential to the continued operation of the debtor." In re NVR L.P., 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing Ionosphere Clubs, 98 B.R. at 177).

24. For obvious reasons, preservation of the Debtors' relationships with their produce suppliers is critical because of the nature of the Debtors' business (the Debtors are particularly known for the salad bars in their restaurants) and competition among similar restaurants. Any disruption, however minor, in the shipment of fruits and vegetables could cripple, and would at least hinder, the Debtors' transition to Chapter 11 and attempt to conduct an orderly sale process to maximize value for all parties.

25. Payment of the PACA Claims would not constitute the Debtors' using estate resources to pay pre-petition claims. Specifically, courts have held that PACA trust assets are not property of a debtor's estate. See Morris Okun, Inc. v. Harry Zimmerman, Inc., 814 F. Supp. 346, 348 (S.D.N.Y. 1993); In re Long John Silver's Restaurants, Inc., 230 B.R. 29, 32 (Bankr. D. Del. 1999). Accordingly, distribution of assets to beneficiaries of a PACA trust would fall beyond (a) the Bankruptcy Code's priority scheme and (b) the plan process, meaning that claims under PACA can be paid outside of a plan of reorganization and without prejudicing other creditors. Id.

26. If the relief requested herein is not granted, the Debtors could have to address multiple actions related to PACA Claims, which could result in the Debtors' having to expend unnecessary funds at this crucial time and could cause this Court to have to deal with related motions. The Debtors cannot afford this sort of distraction, and the inherent harm that would result, at this time.

27. In certain circumstances, failure to pay claims under PACA could result in liability for directors and officers of a company. See Sunkist Growers, Inc. v. Fisher, 104 F.3d 280, 283 (9th Cir. 1997). Thus, to the extent any PACA Claims remain unpaid by the Debtors, the Debtors' directors and officers, many of whom are crucial to the Debtors' operations and efforts to maximize value, could become subject to actions during these cases. Any such lawsuits and the threat of liability would only serve to further distract the Debtors and hinder their efforts in Chapter 11, to the detriment of all parties-in-interest.

28. Similar relief with respect to the treatment of PACA Claims has been approved in other chapter 11 cases. See, e.g., In re VI Acquisition Corp., et al., Case No. 08-10623 (KG) (Bankr. D. Del. Apr. 4, 2008), In re Buffets Holdings, Inc., et al., Case No. 08-10141 (MFW) (Bankr. D. Del. Feb. 13, 2008), In re Fleming Cos., Inc., Case No. 03-10945 (MFW) (Bankr. D. Del. May 6, 2003), In re Uno Restaurant Holdings Corporation, et al., Case No. 10-10209 (MG) (Bankr. S.D.N.Y. Jan. 20, 2010), In re UAL Corp., et al., Case No. 02-48191 (ERW) (Bankr. N.D. Ill. Dec. 11, 2002), In re Furr's Supermarkets, Inc., Case No. 01-10779 (Bankr. D.N.M. Feb. 9, 2001).

29. Accordingly, the Debtors submit that it is in their best interest and the best interests of their estates, creditors, and other parties-in-interest for them to pay the PACA Claims.

RLF1 3630029v 1

## SATISFACTION OF BANKRUPTCY RULE 6003

30. Pursuant to Bankruptcy Rule 6003, the Court may grant a request of a debtor to pay all or part of a pre-petition claim in the first 21 days of a case only if that relief is necessary to avoid immediate and irreparable harm. For the reasons set forth above, payment of all valid PACA Claims during this 21-day period is necessary to avoid the immediate and irreparable harm that could occur if the Debtors were unable to do so. Accordingly, the Debtors submit that they have satisfied the requirements of Bankruptcy Rule 6003 with respect to the relief requested in this Motion.

## REQUEST FOR WAIVER OF STAY

31. Any delay in payments relating to valid PACA Claims would be detrimental to the Debtors, their creditors, and their estates. Accordingly, to successfully implement the foregoing, to the extent applicable, the Debtors seek a waiver of the 14-day stay of any order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## NOTICE

32. Notice of this Motion has been given via overnight delivery service, e-mail, facsimile, telephone, and/or hand delivery, as appropriate, to the United States Trustee, the 20 largest unsecured non-insider creditors of the Debtors on a consolidated basis, the Senior Secured Lenders, the Second Lien Lenders, the Subordinated Lenders, the Debtors' equity sponsor, the United States Attorney's Office for the District of Delaware, the United States Attorney General, and the Internal Revenue Service. As this Motion is seeking first-day relief, notice hereof and of any order entered hereon will be served in accordance with Local Bankruptcy Rule 9013-1(m). Due to the urgency of the circumstances, the Debtors submit that no other or further notice of this Motion is required.

## NO PRIOR APPLICATION

33. No previous motion for the relief sought herein has been made to this or to any other Court.

## CONCLUSION

WHEREFORE, the Debtors request entry of orders, substantially in the form attached hereto as <u>Exhibit A</u> and the form to be subsequently filed, granting the relief requested herein and such other and further relief as is just and proper under the circumstances.

Dated: November 18, 2010
       Wilmington, Delaware

Respectfully submitted,

/s/ Mark D. Collins

Mark D. Collins (No. 2981)
Christopher M. Samis (No. 4909)
Julie Finocchiaro (No. 5303)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

-and-

Joel H. Levitin
Richard A. Stieglitz Jr.
Maya Peleg
CAHILL GORDON & REINDEL LLP
Eighty Pine Street
New York, New York 10005
Telephone: (212) 701-3000
Facsimile: (212) 269-5420

*Proposed Attorneys for the Debtors and Debtors-in-Possession*

# EXHIBIT A

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| CB HOLDING CORP., et al.,[1] ) | Case No. 10-_____ ( ) |
| ) | |
| ) | Jointly Administered |
| Debtors. ) | |
| ) | |

## INTERIM ORDER AUTHORIZING PAYMENT OF CLAIMS UNDER PERISHABLE AGRICULTURAL COMMODITIES ACT

Upon consideration of the motion (the "Motion")[2] of the Debtors for an order, pursuant to Bankruptcy Code § 105(a), authorizing them to pay the PACA Claims (as defined and described in greater detail in the Motion); and the Court having jurisdiction to consider the

---

[1] The other Debtors, and the last four digits of each of their tax identification numbers, are: 1820 Central Park Avenue Restaurant Corp. (5151); Bugaboo Creek Acquisition, LLC (4629); Bugaboo Creek Holdings, Inc. (0966); Bugaboo Creek of Seekonk, Inc. (1669); CB Holding Corp (8640); CB VII, Inc. (9120); CB VIII, Inc. (1468); Charlie Brown North (6721); Charlie Brown's Acquisition Corp. (8367); Charlie Brown's at Clifton, Inc. (7309); Charlie Brown's Mark Corp. (3569); Charlie Brown's Montclair, Inc. (4223); Charlie Brown's 1981, Inc. (7781); Charlie Brown's of Allentown, L.L.C. (8420); Charlie Brown's of Alpha, Inc. (9083); Charlie Brown's of Berwyn, LLC (3347); Charlie Brown's of Blackwood, L.L.C. (5698); Charlie Brown's of Bloomsburg, LLC (3326); Charlie Brown's of Brielle, Inc. (8115); Charlie Brown's of Carlstadt, Inc. (6936); Charlie Brown's of Chatham, Inc. (2452); Charlie Brown's of Commack LLC (4851); Charlie Brown's of Denville, Inc. (1422); Charlie Brown's of East Windsor, LLC (2747); Charlie Brown's of Edison, Inc. (8519); Charlie Brown's of Egg Harbor Twp, LLC (none); Charlie Brown's of Franklin, LLC (5232); Charlie Brown's of Garden City, LLC (7440); Charlie Brown's of Hackettstown, L.L.C. (7493); Charlie Brown's of Harrisburg, LLC (1085); Charlie Brown's of Hillsborough, Inc. (0344); Charlie Brown's of Holtsville, LLC (0138); Charlie Brown's of Jackson, LLC (3478); Charlie Brown's of Lacey, L.L.C. (6282); Charlie Brown's of Lakewood, Inc. (0156); Charlie Brown's of Langhorne, LLC (3392); Charlie Brown's of Lynbrook LLC (2772); Charlie Brown's of Maple Shade, Inc. (0404); Charlie Brown's of Matawan, Inc. (8337); Charlie Brown's of Middletown LLC (7565); Charlie Brown's of Oradell, Inc. (0348); Charlie Brown's of Pennsylvania, Inc. (6918); Charlie Brown's of Piscataway, LLC (8285); Charlie Brown's of Reading, LLC (1214); Charlie Brown's of Scranton, LLC (9817); Charlie Brown's of Selinsgrove, LLC (6492); Charlie Brown's of Springfield, LLC (9892); Charlie Brown's of Staten Island, LLC (1936); Charlie Brown's of Tinton Falls, Inc. (6981); Charlie Brown's of Toms River, LLC (5492); Charlie Brown's of Union Township, Inc. (8910); Charlie Brown's of Trexlertown, LLC (6582); Charlie Brown's of Wayne, Inc. (4757); Charlie Brown's of West Windsor, Inc. (0159); Charlie Brown's of Williamsport LLC (8218); Charlie Brown's of Woodbury, Inc. (0601); Charlie Brown's of York, LLC (0980); Charlie Brown's of Yorktown, LLC (7855); Charlie Brown's Restaurant Corp. (7782); Charlie Brown's Steakhouse Fishkill, Inc. (9139); Charlie Brown's Steakhouse Woodbridge, Inc. (1906); Charlie Brown's, Inc. (4776); Jonathan Seagull Property Corp (7248); Jonathan Seagull, Inc. (9160); The Office at Bridgewater, Inc. (3132); The Office at Cranford, Inc. (3131); The Office at Keyport, Inc. (1507); The Office at Montclair, Inc. (3128); The Office at Morristown, Inc. (3127); The Office at Ridgewood, Inc. (2949); The Office at Summit, Inc. (3126); and What's Your Beef V, Inc. (4719).

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and the Court having found that good and sufficient cause exists for granting the Motion; and the relief requested in the Motion being necessary to avoid immediate and irreparable harm, as contemplated by Bankruptcy Rule 6003; and upon consideration of the Declaration of Gary Lembo in Support of First-Day Motions; and upon the record of these Chapter 11 cases and any hearings held to consider the Motion; and it appearing that the relief requested in the Motion is appropriate in the context of these cases and in the best interests of the Debtors and their respective estates, their creditors, and all other parties-in-interest; and it appearing that notice of the Motion was adequate and proper under the circumstances of these cases, and it appearing that no other or further notice need be given; it is hereby

    ORDERED that the Motion is granted as set forth herein; and it is further

    ORDERED that the Debtors are authorized and empowered, in their discretion, to pay all PACA Claims up to $370,000, that they determine are valid and which are not otherwise paid pursuant to any other order of this Court, as they deem appropriate prior to the Follow-Up Hearing; and it is further

    ORDERED that all of the Debtors' banks are authorized and directed to honor all checks issued and fund transfers requested in respect of the PACA claims, as approved by this Order, to the extent sufficient funds are on deposit, regardless of whether such checks or fund transfer requests were issued prior to or after the Petition Date of these cases; and it is further

    ORDERED that the Debtors are authorized and empowered, in their discretion, to make the payments authorized by this Order from any available funds, including from those provided pursuant to the terms of any post-petition financing and/or cash collateral order; and it is further

2

ORDERED that the Follow-Up Hearing shall be held on _____ \_\_, 2010, at \_\_:\_\_ \_M (Prevailing Eastern Time), in the courtroom of the Honorable _____ \_. _____, United States Bankruptcy Court, District of Delaware, 824 North Market Street, Wilmington, Delaware 19801 with notice to be provided by the Debtors or their agent; and it is further

ORDERED that objections, if any, to relief requested in the Motion to be heard at the Follow-Up Hearing must (i) be in writing, state the name of the objector, identify its interest in these cases, and set forth the grounds for the objection and the legal basis therefor and (ii) be filed with this Court and served in a manner so as to be received by the following parties, together with proof of service, on or before _____ \_\_, 2010, at 4:00 PM (Prevailing Eastern Time): (a) proposed counsel to the Debtors, Cahill Gordon & Reindel LLP, Eighty Pine Street, New York, New York 10005 (Attn: Richard A. Stieglitz Jr., Esq. and Maya Peleg, Esq.) and Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (Attn: Mark D. Collins, Esq. and Christopher M. Samis, Esq.) (b) the United States Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801 and (c) counsel to any official committees that may be appointed in these cases; and it is further

ORDERED that any creditor that accepts payment of a PACA Claim from the Debtors will be deemed to have waived any and all claims (relating in any way to the circumstances giving rise to the PACA Claim), of whatever type or priority, against the Debtors, the Debtors' property and estates, and any funds and other property held in trust by the Debtors under PACA or any similar state law or regulation; and it is further

ORDERED that nothing in this Order or the Motion shall be construed as impairing or altering the Debtors' right to contest the validity or amount of any of the PACA Claims; and it is further

3

ORDERED that the Debtors are authorized and empowered to take any necessary actions to implement and effectuate the terms of this Order; and it is further

ORDERED that the terms and conditions of this Order shall be immediately effective and enforceable upon its entry, notwithstanding any applicability of Bankruptcy Rule 6004(h); and it is further

ORDERED that this Court shall retain jurisdiction over all matters arising from or related to the interpretation and implementation of this Order.

Dated: _____, 2010
Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE