# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CB HOLDING CORP., et al.,[1] | ) | Case No. 10-_____ (   ) |
| | ) | |
| | ) | Joint Administration Requested |
| Debtors. | ) | |
| | ) | |

## DEBTORS' MOTION FOR INTERIM AND
## FINAL ORDERS AUTHORIZING PAYMENT OF
## PRE-PETITION TAXES AND LIQUOR LICENSE FEES AND TAXES

      The above-captioned debtors and debtors-in-possession (collectively, the

"Debtors"), by and through their undersigned attorneys, hereby file this motion (the "Motion")

---

[1] The other Debtors, and the last four digits of each of their tax identification numbers, are: 1820 Central Park Avenue Restaurant Corp. (5151); Bugaboo Creek Acquisition, LLC (4629); Bugaboo Creek Holdings, Inc. (0966); Bugaboo Creek of Seekonk, Inc. (1669); CB Holding Corp. (8640); CB VII, Inc. (9120); CB VIII, Inc. (1468); Charlie Brown North (6721); Charlie Brown's Acquisition Corp. (8367); Charlie Brown's at Clifton, Inc. (7309); Charlie Brown's Mark Corp. (3569); Charlie Brown's Montclair, Inc. (4223); Charlie Brown's 1981, Inc. (7781); Charlie Brown's of Allentown, L.L.C. (8420); Charlie Brown's of Alpha, Inc. (9083); Charlie Brown's of Berwyn, LLC (3347); Charlie Brown's of Blackwood, L.L.C. (5698); Charlie Brown's of Bloomsburg, LLC (3326); Charlie Brown's of Brielle, Inc. (8115); Charlie Brown's of Carlstadt, Inc. (6936); Charlie Brown's of Chatham, Inc. (2452); Charlie Brown's of Commack LLC (4851); Charlie Brown's of Denville, Inc. (1422); Charlie Brown's of East Windsor, LLC (2747); Charlie Brown's of Edison, Inc. (8519); Charlie Brown's of Egg Harbor Twp, LLC (none); Charlie Brown's of Franklin, LLC (5232); Charlie Brown's of Garden City, LLC (7440); Charlie Brown's of Hackettstown, L.L.C. (7493); Charlie Brown's of Harrisburg, LLC (1085); Charlie Brown's of Hillsborough, Inc. (0344); Charlie Brown's of Holtsville, LLC (0138); Charlie Brown's of Jackson, LLC (3478); Charlie Brown's of Lacey, L.L.C. (6282); Charlie Brown's of Lakewood, Inc. (0156); Charlie Brown's of Langhorne, LLC (3392); Charlie Brown's of Lynbrook LLC (2772); Charlie Brown's of Maple Shade, Inc. (0404); Charlie Brown's of Matawan, Inc. (8337); Charlie Brown's of Middletown LLC (7565); Charlie Brown's of Oradell, Inc. (0348); Charlie Brown's of Pennsylvania, Inc. (6918); Charlie Brown's of Piscataway, LLC (8285); Charlie Brown's of Reading, LLC (1214); Charlie Brown's of Scranton, LLC (9817); Charlie Brown's of Selinsgrove, LLC (6492); Charlie Brown's of Springfield, LLC (9892); Charlie Brown's of Staten Island, LLC (1936); Charlie Brown's of Tinton Falls, Inc. (6981); Charlie Brown's of Toms River, LLC (5492); Charlie Brown's of Union Township, Inc. (8910); Charlie Brown's of Trexlertown, LLC (6582); Charlie Brown's of Wayne, Inc. (4757); Charlie Brown's of West Windsor, Inc. (0159); Charlie Brown's of Williamsport LLC (8218); Charlie Brown's of Woodbury, Inc. (0601); Charlie Brown's of York, LLC (0980); Charlie Brown's of Yorktown, LLC (7855); Charlie Brown's Restaurant Corp. (7782); Charlie Brown's Steakhouse Fishkill, Inc. (9139); Charlie Brown's Steakhouse Woodbridge, Inc. (1906); Charlie Brown's, Inc. (4776); Jonathan Seagull Property Corp. (7248); Jonathan Seagull, Inc. (9160); The Office at Bridgewater, Inc. (3132); The Office at Cranford, Inc. (3131); The Office at Keyport, Inc. (1507); The Office at Montclair, Inc. (3128); The Office at Morristown, Inc. (3127); The Office at Ridgewood, Inc. (2949); The Office at Summit, Inc. (3126); and What's Your Beef V, Inc. (4719).

for interim and final orders authorizing the payment of sales and use, estimated income, personal property, real estate, and other taxes collected or incurred pre-petition, or that may otherwise become due post-petition (including taxes and fees subsequently determined upon audit or otherwise), and pre-petition liquor license fees and related taxes incurred pre-petition that may become due post-petition. In support of the relief requested in this Motion, the Debtors respectfully represent as follows:

## JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue of these cases and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief requested herein are Bankruptcy Code §§ 105(a), 363(b), 507(a), and 541.

## INTRODUCTION

2. On November 17, 2010 (the "Petition Date"), the Debtors filed with this Court separate, voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The Debtors have sought an order directing that their Chapter 11 cases be jointly administered by this Court, and they have filed additional motions (some of which seek emergency relief) in the proposed lead case of CB Holding Corp.

3. The Debtors continue to manage their properties and operate their business as debtors-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108. No trustee, examiner, or official committee has been appointed in these cases.

The Debtors and Their Business

4. CB Holding Corp., a Delaware corporation, is the direct or indirect

2

corporate parent of all of the other Debtors. All of CB Holding Corp.'s outstanding common and preferred stock is privately held.

5. The Debtors own and operate the *Charlie Brown's Steakhouse* ("Charlie Brown's), *Bugaboo Creek Steak House* ("Bugaboo Creek"), and *The Office Beer Bar & Grill* ("The Office"). Charlie Brown's and Bugaboo Creek are steakhouses, offering their customers exceptional service, value, and fresh food, along with seasonal specialties, while The Office is more casual, offering over 60 bottled beers, seasonal draft beers, and classic pub appetizers and dining options.

6. There are currently 20 Charlie Brown's restaurants in New York, New Jersey, and Pennsylvania; 12 Bugaboo Creek restaurants in Massachusetts, Delaware, Maryland, New Hampshire, and Maine; and seven The Office restaurants in New Jersey. Shortly before the Petition Date, the Debtors closed 29 Charlie Brown's and 18 Bugaboo Creek restaurants.

7. The Debtors have approximately 185 full-timed salaried employees and more than 2,200 full-time and part-time hourly employees. None of the Debtors' employees are members of a union.

Capital Structure

*Secured Debt*

8. On June 21, 2007, in connection with the acquisition of Bugaboo Creek by Charlie Brown's, the Debtors entered into a financing agreement with Ableco Finance LLC ("Ableco"); Wells Fargo Capital Finance, Inc. (f/k/a Wells Fargo Foothill, Inc.) ("Wells"); and GMAC Commercial Finance LLC (n/k/a Ally Commercial Finance LLC) ("Ally" and collectively with Wells and Ableco, the "Senior Secured Lenders"), providing for a revolving line of credit, under which the Debtors may borrow up to an aggregate amount equal to the lesser

3

of $15 million and a defined borrowing base with a letter of credit sublimit, and two tranches of term loans, all of which are secured by liens on substantially all of the Debtors' assets. As of the Petition Date, the Debtors had approximately $70 million outstanding under this facility.[2]

9.    On September 28, 2008, the Debtors issued $10 million in senior subordinated second lien notes pursuant to a note purchase agreement to Trimaran Fund II, L.L.C.; Trimaran Parallel Fund II, L.P.; Trimaran Capital, L.L.C.; CIBC Employee Private Equity Fund (Trimaran) Partners; and CIBC Capital Corp. (collectively, the "Second Lien Lenders"). As of the Petition Date, approximately $14 million, including accrued and unpaid interest, was outstanding under these second lien notes.

*Mezzanine Debt*

10.    Also as part of the Bugaboo Creek acquisition, on June 21, 2007, the Debtors issued $20 million in unsecured, senior subordinated notes pursuant to four note purchase agreements to Kohlberg Capital Corporation; Archer Capital Master Fund, L.P.; Camofi Master LDC; Camhzn Master LDC; and Raven Credit Opp Master Fund Ltd. (collectively, the "Subordinated Lenders"). As of the Petition Date, the Debtors had approximately $30 million of mezzanine debt obligations, including accrued and unpaid interest, outstanding to the Subordinated Lenders.

Circumstances Leading to Filing

11.    A variety of external factors have led to a decline in the Debtors' revenue

---

[2]    Specifically, the Debtors had approximately $6 million outstanding under the revolver, $12 million outstanding under Term Loan A, and $52 million outstanding under Term Loan B.

RLF1 3630034v 1

over the last several years, at the same time that costs have increased. For instance, the restaurant industry has grown more competitive, the fast-food industry has improved their product offerings and increased its market share to the detriment of casual dining restaurants, such as the Debtors, and consumers have changed their ordering habits. In addition, the "Great Recession" has led to a decline in discretionary spending among the Debtors' former and current customers, and fewer families are frequenting restaurants while food and labor costs have increased, compounding the Debtors' distress.

12. Accordingly, for some time, the Debtors have been in discussions with their lenders and other parties regarding a financial restructuring, and they have entered into several amendments to their various credit and related facilities, but the Debtors' need for additional liquidity has not been resolved, and the economy has not improved. At this time, the only party willing to provide the Debtors with any funding is Ally, which has informed the Debtors that it is only willing to do so as a DIP loan in Chapter 11 cases where the Debtors market their assets in anticipation of a global asset sale.

13. Thus, in an effort to maximize their value, the Debtors have entered into a DIP arrangement with Ally, and along with other first-day motions designed to ensure a smooth transition into Chapter 11, the Debtors intend to file a motion to approve a DIP financing arrangement and to attempt to sell substantially all of their assets expeditiously pursuant to Bankruptcy Code § 363.

**FACTUAL BACKGROUND**

14. In connection with the normal operation of their business, the Debtors collect and/or accrue sales and use, income, personal property, real estate, and other taxes (including such taxes accrued prior to the Petition Date, as described in detail below, the "Pre-

5

Petition Taxes")[3] either from their customers and other parties on behalf of, and for payment over to, taxing authorities, or for direct payment. Additionally, the Debtors incur local taxes and fees related to their liquor licenses and liquor sales (collectively, the "Liquor License Fees and Taxes") that must be promptly paid by the Debtors to maintain their liquor licenses. For many of the taxes and other fees and charges described herein, it is likely that only a portion are pre-petition obligations of the Debtors.

15.     The Debtors are subject to periodic normal course of business audits to assess any unpaid taxes that they may owe, and accordingly, they need authority to pay any sales and use taxes that accrued pre-petition including any additional amounts determined to be owed at a later time. In the various states in which they operate, failure to pay the Pre-Petition Taxes could result in the Debtors' forfeiting necessary business licenses, losing the ability to conduct business, or being subject to tax liens, and similarly, failure to pay the Liquor License Fees and Taxes could result in the suspension or revocation of their liquor licenses.

Sales and Use Taxes

16.     The Debtors collect sales and use taxes in all states in which they conduct business, and they pay over such collected taxes when they come due to the appropriate taxing authorities in such states,[4] on the payment terms outlined below:

---

[3]     Some of the tax amounts described herein may have been pre-paid by the Debtors, and the Debtors submit that they would not need Court approval of such pre-payments or of any taxes that accrue after the Petition Date, but in an abundance of caution, they are seeking explicit authority to pay such amounts.

[4]     As discussed in more detail in the motion for an order authorizing the continued use of their existing bank accounts, cash management system, and checks and business forms filed contemporaneously herewith, the Debtors maintain a sales tax trust fund, and approximately $1,442,000 of sales taxes collected is currently held in such account.

6

| State | Payment Terms | Estimated Payment Due |
|---|---|---|
| New York | For period covering October 24, 2010 through November 17, 2010, payments are due on or about November 24, 2010 | $730,321 |
| Pennsylvania | For period covering September 27, 2010 through October 24, 2010, payments are due on or about November 20, 2010. For the period covering October 25, 2010 through November 17, 2010, payments are due on or about December 20, 2010 | $96,514 |
| New Jersey | For period covering September 27, 2010 through October 24, 2010, payments are due on or about November 30, 2010. For the period covering October 25, 2010 through November 17, 2010, payments are due on or about December 31, 2010 | $132,956 |
| Connecticut | For period covering September 27, 2010 through October 24, 2010, payments are due on or about November 17, 2010. For the period covering October 25, 2010 through November 17, 2010, payments are due on or about December 31, 2010 | $19,992 |
| Rhode Island | For period covering September 27, 2010 through October 24, 2010, payments are due on or about November 20, 2010. For the period covering October 25, 2010 through November 17, 2010, payments are due on or about December 20, 2010. | $22,097 |
| Georgia | For period covering September 27, 2010 through October 24, 2010, payments are due on or about November 20, 2010. For the period covering October 25, 2010 through November 17, 2010, payments are due on or about December 20, 2010 | $57,701 |
| Massachusetts | For period covering September 27, 2010 through October 24, 2010, payments are due on or about November 20, 2010. For the period covering October 25, 2010 through November 14, 2010, payments are due on or about December 20, 2010. | $215,655 |

7

| State | Payment Terms | Estimated Payment Due |
|---|---|---|
| Maryland | For period covering September 27, 2010 through October 24, 2010, payments are due on or about November 20, 2010 For the period covering October 25, 2010 through November 17, 2010, payments are due on or about December 20, 2010 | $43,767 |
| Maine | For period covering September 27, 2010 through October 24, 2010, payments are due on or about November 15, 2010 For the period covering October 25, 2010 through November 17, 2010, payments are due on or about December 15, 2010. | $60,142 |
| Delaware | For period covering September 27, 2010 through October 24, 2010, payments are due on or about November 20, 2010 For the period covering October 25, 2010 through November 17, 2010, payments are due on or about December 20, 2010 | $2,918 |
| New Hampshire | For period covering September 27, 2010 through October 24, 2010, payments are due on or about November 15, 2010 For the period covering October 25, 2010 through November 17, 2010, payments are due on or about December 15, 2010 | $84,254 |

Depending on the state, these taxes are either paid by check or by electronic fund transfer. In most states, the Debtors perform quarterly "true-ups", and occasionally, they owe additional amounts in connection therewith.

Estimated Income Taxes

17.    Additionally, certain of the Debtors pay federal estimated income taxes and similar quarterly taxes in New Jersey, New York, Pennsylvania, Connecticut, Georgia, Rhode Island, Massachusetts, Maryland, Maine and New Hampshire, and in the city of

RLF1 3630034v 1

Philadelphia, in the historical amounts outlined below:[5]

| State | Estimated Quarterly Payment |
|---|---|
| Federal | $0 |
| New Jersey | $15,000 |
| New York | $3,000 |
| Pennsylvania | $0 |
| Massachusetts | $0 |
| Connecticut | $0 |
| Georgia | $0 |
| Rhode Island | $0 |
| New Hampshire | $0 |
| Maryland | $0 |
| Maine | $0 |
| City of Philadelphia | $3,500 |

The Debtors generally pay these estimated taxes quarterly. Approximately $21,500 of the estimated quarterly payment (and extensions) were incurred prior to the Petition Date, but have not yet been paid. In addition, the Debtors occasionally owe additional amounts when they file their actual, year-end tax returns.

Personal Property Taxes

18. Moreover, certain of the Debtors pay personal property taxes to state and local taxing authorities in the historical amounts and on the terms outlined below:

| Payee | Payment Terms | Estimated Payment Due |
|---|---|---|
| City of Warwick, Rhode Island | Quarterly | $5,200 |
| Town of Seekonk, Massachusetts | Quarterly | $700 |
| City of Peabody, Massachusetts | Quarterly | $1,100 |
| Town of Watertown, Massachusetts | Quarterly | $600 |
| Manchester, Connecticut | Annually | $500 |
| Montgomery County, Maryland | Annually | $0 |

---

[5]     In certain states, the Debtors do not believe they owe any estimated taxes because they either (a) incurred losses during the applicable period or (b) possess net operating losses to offset any taxable income

9

| Payee | Payment Terms | Estimated Payment Due |
|---|---|---|
| City of South Portland, Maine | Quarterly | $1,300 |
| Town of Framington, Massachusetts | Quarterly | $0 |
| Town of Braintree, Massachusetts | Quarterly | $350 |
| City of Bangor, Maine | Bi-Annually | $0 |
| Town of Milford, Massachusetts | Quarterly | $300 |
| Gwinnett Country, Georgia | Bi-Annually | $0 |
| City of Methuen, Massachusetts | Quarterly | $0 |
| Dekalb County | Annually | $0 |
| Town of Shrewsbury, Massachusetts | Quarterly | $70 |
| Town of Dedham, Massachusetts | Quarterly | $1,600 |
| Fayette County, Georgia | Annually | $3,200 |
| Prince Georges County. Maryland | Annually | $0 |
| Cobb County, Georgia | Annually | $0 |
| Cowetta County, Georgia | Annually | $5,100 |
| Town of Burlington, Massachusetts | Quarterly | $370 |
| Town of Plymouth, Massachusetts | Quarterly | $440 |
| Town of Brockton, Massachusetts | Quarterly | $0 |

Approximately $20,830 of the personal property taxes were incurred prior to the Petition Date, but have not yet been paid.

Real Estate Taxes

19.     Furthermore, the Debtors pay real estate taxes to state and local taxing authorities in connection with certain of their leases on the terms outlined below:

| Payee | Payment Terms | Estimated Payment Due |
|---|---|---|
| Town of Westfield, New Jersey | Quarterly | $9,555 |
| Borough of Highland Park, New Jersey | Quarterly | $12,250 |
| Borough of Tenefly, New Jersey | Quarterly | $11,609 |
| County of Lehigh, Pennsylvania | Annually | $2,800 |
| South Whitehall TWP | Annually | $0 |
| Allentown, Pennsylvania | Annually | $0 |
| Town of Washington, New Jersey, | Quarterly | $6,514 |

10

| Payee | Payment Terms | Estimated Payment Due |
|---|---|---|
| Tax Collector | | |
| Town of Fairfield, New Jersey, Tax Office | Quarterly | $4,441 |
| Borough of Old Tappan, New Jersey | Quarterly | $4,209 |
| Township of Scotch Plains, New Jersey | Quarterly | $10,891 |
| Tinton Falls, New Jersey, Tax | Quarterly | $5,870 |
| Township of Wayne, New Jersey | Quarterly | $11,800 |
| Alpha Borough, New Jersey, Tax Collector | Quarterly | $5,057 |
| Borough of Brielle, New Jersey | Quarterly | $5,857 |
| Borough of Carlstadt, New Jersey | Quarterly | $15,131 |
| Lacey Township, New Jersey, Tax Collector | Quarterly | $11,016 |
| Gloucester Township, New Jersey, Tax Office | Quarterly | $8,630 |
| Westampton Township, New Jersey | Quarterly | $5,708 |
| Town of Hackettstown, New Jersey | Quarterly | $12,588 |
| Township of Lakewood, New Jersey | Quarterly | $12,048 |
| Hillsborough, New Jersey | Quarterly | $5,989 |
| Union, New Jersey, Office of the Tax Collector | Quarterly | $7,665 |
| Hamilton, New Jersey, Division of Revenue Collection | Quarterly | $2,607 |
| Bridgewater, New Jersey, Township Tax Collector | Quarterly | $5,224 |
| Cranford, New Jersey, Tax Collector | Quarterly | $5,650 |
| Village of Ridgewood, New Jersey, Tax Collector | Quarterly | $8,105 |
| Montclair, New Jersey, Tax Department | Quarterly | $17,774 |
| Town of Morristown, New Jersey, Tax Collector | Quarterly | $6,600 |
| Township of Milburn, New Jersey | Quarterly | $11,482 |
| City of Woodbury, New Jersey, Tax Office | Quarterly | $10,316 |
| Township of Chatham, New Jersey | Quarterly | $6,737 |
| Borough of Matawan, New Jersey | Quarterly | $9,990 |

RLF1 3630034v 1

| Payee | Payment Terms | Estimated Payment Due |
|---|---|---|
| Maple Shade, New Jersey, Tax Collectors Office | Quarterly | $5,628 |
| Township of Denville, New Jersey, Tax Collector | Quarterly | $6,982 |
| Green Brook, New Jersey, Tax Collector | Quarterly | $7,927 |
| Township of Franklin, Pennsylvania, Collector of Revenue | Quarterly | $16,306 |
| Bloomsburg, Pennsylvania | Annually | $20,886 |
| Susquehanna Township, Harrisburg, Pennsylvania, School District | Annually | $0 |
| Harrisburg, Pennsylvania | Annually | $0 |
| York, Pennsylvania | Annually | $0 |
| City of Philadelphia, Pennsylvania | Annually | $0 |
| City of South Portland, Maine | Quarterly | $11,300 |
| Town of Framingham, Massachusetts, Office of the Tax Collector | Quarterly | $20,600 |
| Town of Bedford, New Hampshire | Annually | $0 |

Liquor License Fees and Taxes

20.     The Debtors also incur Liquor License Fees and Taxes in various states, and they periodically remit such taxes and fees to the appropriate state and local authorities. To avoid having their liquor licenses lapse, the Debtors pay the Liquor License Fees and Taxes as they come due. Accordingly, the Debtors believe that there are no Liquor License Fees and Taxes that accrued prior to the Petition Date that have not yet been paid.

12

21.     Finally, the Debtors may have incurred other tax obligations, such as yearly minimum corporate taxes and other business licensing fees that are not yet reflected on their books and records.

**RELIEF REQUESTED**[6]

22.     By this Motion, the Debtors seek authority to pay the Pre-Petition Taxes and the Liquor License Fees and Taxes,[7] from any available funds, including from those provided pursuant to the terms of any post-petition financing and/or cash collateral order, by post-petition checks, ACH or wire transfers, or otherwise, as applicable, as and when such payments become due.[8]

23.     On an emergency basis, the Debtors are only requesting that the Court approve payment of the Pre-Petition Taxes and the Liquor License Fees and Taxes, to the extent they become due in the next 21 days. The Debtors also request that the Court schedule a further hearing (the "Follow-Up Hearing") on this Motion to consider all other requested relief. The Debtors would file and serve a proposed form of order approving such remaining relief prior to the date of the Follow-Up Hearing.

---

[6]     The Debtors have endeavored to identify all of their potential pre-petition tax and related obligations and to describe them all in sufficient detail in this Motion. Nonetheless, it is possible that certain obligations may have been inadvertently omitted. To the extent any such obligations come to the Debtors' attention, and after they determine the validity thereof, in their discretion, the Debtors request that they be able to pay any related pre-petition amounts due in the ordinary course.

[7]     The Debtors believe that there are no Liquor License Fees and Taxes that accrued prior to the Petition Date that have not yet been paid, but in an abundance of caution, are seeking authority to pay amounts that may be outstanding.

[8]     Nothing in this Motion should be construed as impairing the Debtors' right to contest the amount of any taxes or fees that may be due to any taxing or other authorities, and accordingly, the Debtors reserve all rights related thereto.

13

24.    Furthermore, the Debtors request that financial institutions be authorized to receive, process, honor, and pay all checks presented for payment and electronic payment requests related to the Pre-Petition Taxes and the Liquor License Fees and Taxes, whether such checks were presented or electronic requests were submitted prior to or after the Petition Date. The Debtors also request that financial institutions be authorized to rely on the Debtors' designation of any particular check or electronic payment request as appropriate pursuant to this Motion.

## BASIS FOR RELIEF REQUESTED

25.    There are several justifications for the relief requested in this Motion. For instance, Bankruptcy Code § 105(a) empowers a court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. The purpose of Bankruptcy Code § 105(a) is to ensure a bankruptcy court's power to take whatever action "is appropriate or necessary in aid of the exercise of [its] jurisdiction." 2 Collier on Bankruptcy, ¶ 105.01 (15th rev. ed. 1997); see also In re Joint E. & S. Dist. Asbestos Litig., 129 B.R. 710, 843 (E.D.N.Y. & S.D.N.Y. 1991).

26.    Under the "necessity of payment rule" or the "doctrine of necessity",[9] derived from Bankruptcy Code § 105(a), courts often allow the immediate payment of pre-petition claims even though the Bankruptcy Code may not explicitly authorize payment. See, e.g., In re Just for Feet, Inc., 242 B.R. 821, 824 (Bankr. D. Del. 1999); In re Columbia Gas System, Inc., 171 B.R. 189, 191-92 (Bankr. D. Del. 1994).

27.    Indeed, courts have recognized that the invocation of the "necessity of

---

[9]    This doctrine, first articulated by the United States Supreme Court in Miltenberger v. Logansport, C&S W. R. Co., 106 U.S. 286, 311-312 (1882), recognizes the existence of judicial power to authorize a debtor to pay pre-petition claims in certain situations.

14

payment rule" is particularly appropriate to allow a debtor to pay pre-petition obligations relating to sales, use, and similar taxes. In fact, similar relief has been granted in other Chapter 11 cases in this district. See, e.g., In re Smurfit-Stone Container Corp., Case No. 09-10235 (BLS) (Bankr. D. Del. Jan. 27, 2009); In re Tribune Co., Case No. 13141 (KJC) (Bankr. D. Del. Dec. 10, 2008); Verasun Energy Corp., Case No. 08-12606 (BLS) (Bankr. D. Del. Nov. 4, 2008); In re Hilex Poly Co. LLC, Case No. 08-10890 (KJC) (Bankr. D. Del. May 7, 2008); In re Linens Holding Co., Case No. 08-10832 (CSS) (Bankr. D. Del. May 2, 2008); In re Buffets Holding Inc., Case No. 08-10141 (MFW) (Bankr. D. Del. Jan. 23, 2008).

28.     The Debtors submit that it is necessary for them to pay the Pre-Petition Taxes and the Liquor License Fees and Taxes when they become due. If they fail to do so, the Debtors could potentially be restricted from doing business in certain states, with dire effects on their ability to transition smoothly into Chapter 11 and conduct an orderly sale process to maximize value for all parties. Indeed, if the Debtors were unable to pay the Liquor License Fees and Taxes, appropriate authorities could cancel, revoke, or suspend the Debtors' liquor licenses, which would prevent the Debtors from purchasing and selling liquor, at great harm to the Debtors' estates.

29.     In addition, failure to pay the Pre-Petition Taxes or Liquor License Fees and taxes when due may result in one or more of the taxing or other governmental authorities auditing the Debtors, commencing a similar investigation, or obtaining a lien on certain of the Debtors' assets or property. Audits and/or investigations would unnecessarily divert the Debtors' attention away from the sale process and their attempts to maximize value. Similarly, if a taxing authority were to obtain a lien on any of the Debtors' assets or properties, it would prevent the Debtors from using that property or asset and could result in a taxing authority

15

attempting to sell such property or asset, causing an unnecessary distraction during these critical times and diverting the Court's attention from these cases.

30.     Moreover, certain of the Pre-Petition Taxes may constitute "trust fund" taxes that were required to be collected from third parties and must be held in trust by the Debtors for payment to taxing authorities. See, e.g., In re Shank, 792 F.2d 829, 830 (9th Cir. 1986) (sales tax required by state law to be collected by sellers from their customer is a "trust fund" tax); DeChiaro v. New York State Commission, 760 F.2d 432, 433-34 (2d Cir. 1985) (same). To the extent these trust fund taxes are collected, they do not constitute property of the Debtors' estates under Bankruptcy Code § 541(d).[10] See Begier v. Internal Revenue Service, 96 U.S. 53, 57-60 (1990) (holding that any pre-petition payment of trust fund taxes is not an avoidable preference because such funds are not property of the debtor's estate); City of Farrell v. Sharon Steel Corp., 41 F.3d 92, 98-100 (3d Cir. 1994); In re Edison Bros., Inc., 243 B.R. 231, 239 (Bankr. D. Del. 2000); In re American Int'l Airways, Inc., 70 B.R. 102, 103 (Bankr. E.D. Pa. 1987) (excise and withholding taxes); In re Tap, Inc., 52 B.R. 271, 278 (Bankr. D. Mass 1985) (withholding taxes). The Debtors, therefore, do not have any interest in these trust fund taxes.

31.     In fact, taxing authorities may assert that certain officers and directors of the Debtors may be held personally liable for the failure to pay at least certain of the pre-petition sales and use taxes, to the extent that they are considered trust fund taxes. See, e.g., New York Tax Law § 1133; GA St. § 48-2-52. For such reason, the Debtors maintain a segregated account for such taxes. Such potential claims or lawsuits would prove extremely distracting for the

---

[10]     Bankruptcy Code § 541(d) provides:
        Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest becomes . . property of the estate . . . only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

Debtors, for the named individuals whose attention to the Debtors' bankruptcy cases is required, and for this Court, which might be asked to entertain various motions seeking injunctions with respect to potential state court actions. It is in the best interests of the Debtors' estates and the underlying policies of the Bankruptcy Code to eliminate the possibility of such distractions.

32. Moreover, under Bankruptcy Code § 363(b), the Debtors may use property of the estate outside of the ordinary course of business if it is within their sound business judgment, see In re Ionosphere Clubs, Inc., 98 B.R. 175, 175 (S.D.N.Y. 1989), and some courts have relied upon Section 363(b) to allow a debtor to pay a pre-petition claim as an outside-of-the-ordinary-course transaction. See, e.g., In re Conseco, Inc., Case No. 02-49672 (CAD) (Bankr. N.D. Ill. Jan. 14, 2003); In re UAL Corp., Case No. 02-48191 (ERW) (Bankr. N.D. Ill. Dec. 9, 2002).

33. Although Bankruptcy Code § 363 does not specify a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of property of the estate, courts have required that such use, sale, or lease be based upon the sound business judgment of the debtor. Ionosphere Clubs, 98 B.R. at 175. In these Chapter 11 cases, for the reasons set forth above, it is clear that sufficient business justification exists for the requested relief.

34. Finally, in any event, the relief requested in this Motion should not prejudice the Debtors' estates, creditors, or other parties-in-interest. The Pre-Petition Taxes are most likely entitled to priority status pursuant to Bankruptcy Code § 507(a)(8). As such, they would be paid in full under any plan of reorganization, see 11 U.S.C. § 1129(a)(9)(C), and, in any event, would be paid ahead of general unsecured claims. See 11 U.S.C. § 726.

35. Additionally, allowing the Debtors to pay for Liquor License Fees and

17

Taxes will actually benefit other parties, as it would ensure that the Debtors can continue to sell liquor in many of their restaurants. Bar service is one of the Debtors' largest sources of revenue, and it is crucial that the Debtors be able to continue to serve alcohol (and to earn profit therefrom).

36. Accordingly, the Debtors submit that it is in their best interests and the best interests of their estates, creditors, and other parties-in-interest for them to pay the Pre-Petition Taxes and the Liquor License Fees and Taxes.

## SATISFACTION OF BANKRUPTCY RULE 6003

37. Pursuant to Bankruptcy Rule 6003, the Court may grant a request of a debtor to pay all or part of a pre-petition claim in the first 21 days of a case only if that relief is necessary to avoid immediate and irreparable harm. For the reasons set forth above, payment of the Pre-Petition Taxes and the Liquor License Fees and Taxes during this 21-day period, to the extent they become due therein, is necessary to avoid the immediate and irreparable harm that could occur if the Debtors were unable to do so. Accordingly, the Debtors submit that they have satisfied the requirements of Bankruptcy Rule 6003 with respect to the relief requested in this Motion.

## REQUEST FOR WAIVER OF STAY

38. Any delay in payment of the Pre-Petition Taxes and the Liquor License Fees and Taxes would be detrimental to the Debtors, their creditors, and their estates. Accordingly, to successfully implement the foregoing, to the extent applicable, the Debtors seek a waiver of the 14-day stay of any order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## NOTICE

39.    Notice of this Motion has been given via overnight delivery service, e-mail, facsimile, telephone, and/or hand delivery, as appropriate, to the United States Trustee, the 20 largest unsecured non-insider creditors of the Debtors on a consolidated basis, the Senior Secured Lenders, the Second Lien Lenders, the Subordinated Lenders, the Debtors' equity sponsor, the United States Attorney's Office for the District of Delaware, the United States Attorney General, and the Internal Revenue Service. As this Motion is seeking first-day relief, notice hereof and of any order entered hereon will be served in accordance with Local Rule 9013-1(m). Due to the urgency of the circumstances, the Debtors submit that no other or further notice of this Motion is required.

## NO PRIOR APPLICATION

40.    No previous motion for the relief sought herein has been made to this or to any other Court.

RLF1 3630034v 1

## CONCLUSION

WHEREFORE, the Debtors request entry of orders, substantially in the form attached hereto as <u>Exhibit A</u> and the form to be subsequently filed, granting the relief requested herein and such other and further relief as is just and proper under the circumstances.

Dated: November 18, 2010
      Wilmington, Delaware

Respectfully submitted,

Mark D. Collins (No. 2981)
Christopher M. Samis (No. 4909)
Julie Finocchiaro (No. 5303)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

-and-

Joel H. Levitin
Richard A. Stieglitz Jr.
Maya Peleg
CAHILL GORDON & REINDEL LLP
Eighty Pine Street
New York, New York 10005
Telephone: (212) 701-3000
Facsimile: (212) 269-5420

*Proposed Attorneys for the Debtors and Debtors-in-Possession*

RLF1 3630034v 1

# EXHIBIT A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CB HOLDING CORP., et al.,[1] | Case No. 10-_____ ( ) |
| Debtors. | Jointly Administered |

## INTERIM ORDER AUTHORIZING PAYMENT OF
## PRE-PETITION TAXES AND LIQUOR LICENSE FEES AND TAXES

Upon consideration of the motion (the "Motion")[2] of the Debtors for an order,

pursuant to Bankruptcy Code §§ 105(a), 363(b), 507(a)(8), and 541, authorizing the Debtors to

pay the Pre-Petition Taxes and the Liquor License Fees and Taxes (as described in greater detail

---

[1] The other Debtors, and the last four digits of each of their tax identification numbers, are: 1820 Central Park Avenue Restaurant Corp. (5151); Bugaboo Creek Acquisition, LLC (4629); Bugaboo Creek Holdings, Inc. (0966); Bugaboo Creek of Seekonk, Inc. (1669); CB Holding Corp. (8640); CB VII, Inc (9120); CB VIII, Inc. (1468); Charlie Brown North (6721); Charlie Brown's Acquisition Corp. (8367); Charlie Brown's at Clifton, Inc (7309); Charlie Brown's Mark Corp. (3569); Charlie Brown's Montclair, Inc. (4223); Charlie Brown's 1981, Inc. (7781); Charlie Brown's of Allentown, L.L.C. (8420); Charlie Brown's of Alpha, Inc. (9083); Charlie Brown's of Berwyn, LLC (3347); Charlie Brown's of Blackwood, L.L.C. (5698); Charlie Brown's of Bloomsburg, LLC (3326); Charlie Brown's of Brielle, Inc. (8115); Charlie Brown's of Carlstadt, Inc. (6936); Charlie Brown's of Chatham, Inc (2452); Charlie Brown's of Commack LLC (4851); Charlie Brown's of Denville, Inc. (1422); Charlie Brown's of East Windsor, LLC (2747); Charlie Brown's of Edison, Inc. (8519); Charlie Brown's of Egg Harbor Twp, LLC (none); Charlie Brown's of Franklin, LLC (5232); Charlie Brown's of Garden City, LLC (7440); Charlie Brown's of Hackettstown, L.L.C. (7493); Charlie Brown's of Harrisburg, LLC (1085); Charlie Brown's of Hillsborough, Inc. (0344); Charlie Brown's of Holtsville, LLC (0138); Charlie Brown's of Jackson, LLC (3478); Charlie Brown's of Lacey, L.L.C. (6282); Charlie Brown's of Lakewood, Inc (0156); Charlie Brown's of Langhorne, LLC (3392); Charlie Brown's of Lynbrook LLC (2772); Charlie Brown's of Maple Shade, Inc. (0404); Charlie Brown's of Matawan, Inc. (8337); Charlie Brown's of Middletown LLC (7565); Charlie Brown's of Oradell, Inc. (0348); Charlie Brown's of Pennsylvania, Inc (6918); Charlie Brown's of Piscataway, LLC (8285); Charlie Brown's of Reading, LLC (1214); Charlie Brown's of Scranton, LLC (9817); Charlie Brown's of Selinsgrove, LLC (6492); Charlie Brown's of Springfield, LLC (9892); Charlie Brown's of Staten Island, LLC (1936); Charlie Brown's of Tinton Falls, Inc. (6981); Charlie Brown's of Toms River, LLC (5492); Charlie Brown's of Union Township, Inc. (8910); Charlie Brown's of Trexlertown, LLC (6582); Charlie Brown's of Wayne, Inc. (4757); Charlie Brown's of West Windsor, Inc (0159); Charlie Brown's of Williamsport LLC (8218); Charlie Brown's of Woodbury, Inc (0601); Charlie Brown's of York, LLC (0980); Charlie Brown's of Yorktown, LLC (7855); Charlie Brown's Restaurant Corp. (7782); Charlie Brown's Steakhouse Fishkill, Inc. (9139); Charlie Brown's Steakhouse Woodbridge, Inc. (1906); Charlie Brown's, Inc. (4776); Jonathan Seagull Property Corp. (7248); Jonathan Seagull, Inc. (9160); The Office at Bridgewater, Inc. (3132); The Office at Cranford, Inc. (3131); The Office at Keyport, Inc. (1507); The Office at Montclair, Inc. (3128); The Office at Morristown, Inc. (3127); The Office at Ridgewood, Inc. (2949); The Office at Summit, Inc. (3126); and What's Your Beef V, Inc. (4719).

in the Motion); and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and the Court having found that good and sufficient cause exists for granting the Motion; and the relief requested in the Motion being necessary to avoid immediate and irreparable harm, as contemplated by Bankruptcy Rule 6003; and upon consideration of the Declaration of Gary Lembo in Support of First-Day Motions; and upon the record of these Chapter 11 cases and any hearings held to consider the Motion; and it appearing that the relief requested in the Motion is appropriate in the context of these cases and in the best interests of the Debtors and their respective estates, their creditors, and all other parties-in-interest; and it appearing that notice of the Motion was adequate and proper under the circumstances of these cases, and it appearing that no other or further notice need be given; it is hereby

ORDERED that the Motion is granted as set forth herein; and it is further

ORDERED that the Debtors are authorized and empowered, in their discretion, to pay the Pre-Petition Taxes and the Liquor License Fees and Taxes to the extent any such amounts become due and owing (including taxes and fees subsequently determined upon audit or otherwise) prior to the Follow-Up Hearing, to all taxing or other authorities, including, without limitation, by post-petition checks, ACH or wire transfers, or otherwise, as applicable; and it is further

ORDERED that the Follow-Up Hearing shall be held on _____ __, 2010, at __:__ _M (Prevailing Eastern Time), in the courtroom of the Honorable _____ _. _____, United States Bankruptcy Court, District of Delaware, 824 North Market Street, Wilmington, Delaware 19801, with notice to be provided by the Debtors or their agent; and it is further

---

[2]      Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion

ORDERED that objections, if any, to relief requested in the Motion to be heard at the Follow-Up Hearing must (i) be in writing, state the name of the objector, identify its interest in these cases, and set forth the grounds for the objection and the legal basis therefor and (ii) be filed with this Court and served in a manner so as to be received by the following parties, together with proof of service, on or before _____ __, 2010, at 4:00 PM (Prevailing Eastern Time): (a) proposed counsel to the Debtors, Cahill Gordon & Reindel LLP, Eighty Pine Street, New York, New York 10005 (Attn: Joel H. Levitin, Esq., Richard A. Stieglitz Jr., Esq., and Maya Peleg, Esq.) and Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (Attn: Mark D. Collins, Esq. and Christopher M. Samis, Esq.) (b) the United States Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801, and (c) counsel to any official committees that may be appointed in these cases; and it is further

ORDERED that the Debtors are authorized and empowered, to make the payments authorized by this Order, in their discretion, from any available funds, including from those provided pursuant to the terms of any post-petition financing and/or cash collateral order; and it is further

ORDERED that all of the Debtors' banks are authorized and directed to honor all checks issued and fund transfers requested in respect of the Pre-Petition Taxes and the Liquor License Fees and Taxes or related obligations in the Motion, as approved by this Order, to the extent sufficient funds are on deposit, regardless of whether such checks or fund transfer requests were issued prior to or after the Petition Date; and it is further

ORDERED that notwithstanding anything to the contrary in this Order, the authorization granted herein to the Debtors in no way requires the Debtors to make any payment; and it is further

ORDERED that nothing herein shall impair any right of the Debtors to dispute or object to any taxes or fees asserted as owing to the relevant taxing or other authorities as to amount, liability, classification, or otherwise; and it is further

ORDERED that neither this Order, the Motion, nor the Debtors' actions shall be deemed to be an assumption or adoption of any agreement, contract, or lease pursuant to Bankruptcy Code § 365 or otherwise; and it is further

ORDERED that the Debtors are authorized and empowered to take any necessary actions to implement and effectuate the terms of this Order; and it is further

ORDERED that the terms and conditions of this Order shall be immediately effective and enforceable upon its entry, notwithstanding any applicability of Bankruptcy Rule 6004(h); and it is further

ORDERED that this Court shall retain jurisdiction over all matters arising from or related to the interpretation and implementation of this Order.

Dated: _____ __, 2010
      Wilmington, Delaware

 

_____
UNITED STATES BANKRUPTCY JUDGE