IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| CB HOLDING CORP., et al.,[1] ) | Case No. 10-_____ ( ) |
| ) | |
| ) | Joint Administration Requested |
| Debtors. ) | |
| ) | |

## DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING THEM TO HONOR CERTAIN PRE-PETITION CUSTOMER PROGRAMS

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through their undersigned attorneys, hereby file this motion (the "Motion") for interim and final orders, authorizing them to (a) continue to honor, replace and/or, terminate,

---

[1] The other Debtors, and the last four digits of each of their tax identification numbers, are: 1820 Central Park Avenue Restaurant Corp. (5151); Bugaboo Creek Acquisition, LLC (4629); Bugaboo Creek Holdings, Inc. (0966); Bugaboo Creek of Seekonk, Inc. (1669); CB Holding Corp. (8640); CB VII, Inc. (9120); CB VIII, Inc. (1468); Charlie Brown North (6721); Charlie Brown's Acquisition Corp. (8367); Charlie Brown's at Clifton, Inc. (7309); Charlie Brown's Mark Corp. (3569); Charlie Brown's Montclair, Inc. (4223); Charlie Brown's 1981, Inc. (7781); Charlie Brown's of Allentown, L.L.C. (8420); Charlie Brown's of Alpha, Inc. (9083); Charlie Brown's of Berwyn, LLC (3347); Charlie Brown's of Blackwood, L.L.C. (5698); Charlie Brown's of Bloomsburg, LLC (3326); Charlie Brown's of Brielle, Inc. (8115); Charlie Brown's of Carlstadt, Inc. (6936); Charlie Brown's of Chatham, Inc. (2452); Charlie Brown's of Commack LLC (4851); Charlie Brown's of Denville, Inc. (1422); Charlie Brown's of East Windsor, LLC (2747); Charlie Brown's of Edison, Inc. (8519); Charlie Brown's of Egg Harbor Twp, LLC (none); Charlie Brown's of Franklin, LLC (5232); Charlie Brown's of Garden City, LLC (7440); Charlie Brown's of Hackettstown, L.L.C. (7493); Charlie Brown's of Harrisburg, LLC (1085); Charlie Brown's of Hillsborough, Inc. (0344); Charlie Brown's of Holtsville, LLC (0138); Charlie Brown's of Jackson, LLC (3478); Charlie Brown's of Lacey, L.L.C. (6282); Charlie Brown's of Lakewood, Inc. (0156); Charlie Brown's of Langhorne, LLC (3392); Charlie Brown's of Lynbrook LLC (2772); Charlie Brown's of Maple Shade, Inc. (0404); Charlie Brown's of Matawan, Inc. (8337); Charlie Brown's of Middletown LLC (7565); Charlie Brown's of Oradell, Inc. (0348); Charlie Brown's of Pennsylvania, Inc. (6918); Charlie Brown's of Piscataway, LLC (8285); Charlie Brown's of Reading, LLC (1214); Charlie Brown's of Scranton, LLC (9817); Charlie Brown's of Selinsgrove, LLC (6492); Charlie Brown's of Springfield, LLC (9892); Charlie Brown's of Staten Island, LLC (1936); Charlie Brown's of Tinton Falls, Inc. (6981); Charlie Brown's of Toms River, LLC (5492); Charlie Brown's of Union Township, Inc. (8910); Charlie Brown's of Trexlertown, LLC (6582); Charlie Brown's of Wayne, Inc. (4757); Charlie Brown's of West Windsor, Inc. (0159); Charlie Brown's of Williamsport LLC (8218); Charlie Brown's of Woodbury, Inc. (0601); Charlie Brown's of York, LLC (0980); Charlie Brown's of Yorktown, LLC (7855); Charlie Brown's Restaurant Corp. (7782); Charlie Brown's Steakhouse Fishkill, Inc. (9139); Charlie Brown's Steakhouse Woodbridge, Inc. (1906); Charlie Brown's, Inc. (4776); Jonathan Seagull Property Corp. (7248); Jonathan Seagull, Inc. (9160); The Office at Bridgewater, Inc. (3132); The Office at Cranford, Inc. (3131); The Office at Keyport, Inc. (1507); The Office at Montclair, Inc. (3128); The Office at Morristown, Inc. (3127); The Office at Ridgewood, Inc. (2949); The Office at Summit, Inc. (3126); and What's Your Beef V, Inc. (4719).

the Pre-Petition Customer Programs, as defined and described in detail below, (b) return the Party Deposits, as defined below, and (c) honor credit and debit card transactions and pay any and all related fees, in each case, in their absolute discretion, in the ordinary course of business, and without further application to this Court. In support of the relief requested in this Motion, the Debtors respectfully represent as follows:

## JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This District is the proper venue for these cases and this Motion under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicate for relief requested in this Motion is Bankruptcy Code § 105(a).

## BACKGROUND

2. On November 17, 2010 (the "Petition Date"), the Debtors filed with this Court separate, voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The Debtors have sought an order directing that their Chapter 11 cases be jointly administered by this Court, and they have filed additional motions (some of which seek emergency relief) in the proposed lead case of CB Holding Corp.

3. The Debtors continue to manage their properties and operate their business as debtors-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108. No trustee, examiner, or official committee has been appointed in these cases.

The Debtors and Their Business

4. CB Holding Corp., a Delaware corporation, is the direct or indirect corporate parent of all of the other Debtors. All of CB Holding Corp.'s outstanding common and preferred stock is privately held.

5. The Debtors own and operate the *Charlie Brown's Steakhouse* ("Charlie

Brown's"), *Bugaboo Creek Steak House* ("Bugaboo Creek"), and *The Office Beer Bar & Grill* ("The Office"). Charlie Brown's and Bugaboo Creek are steakhouses, offering their customers exceptional service, value, and fresh food, along with seasonal specialties, while The Office is more casual, offering over 60 bottled beers, seasonal draft beers, and classic pub appetizers and dining options.

6. There are currently 20 Charlie Brown's restaurants in New York, New Jersey, and Pennsylvania; 12 Bugaboo Creek restaurants in Massachusetts, Delaware, Maryland, New Hampshire, and Maine; and seven The Office restaurants in New Jersey. Shortly before the Petition Date, the Debtors closed 29 Charlie Brown's and 18 Bugaboo Creek restaurants.

7. The Debtors have approximately 185 full-timed salaried employees and more than 2,200 full-time and part-time hourly employees. None of the Debtors' employees are members of a union.

Capital Structure

*Secured Debt*

8. On June 21, 2007, in connection with the acquisition of Bugaboo Creek by Charlie Brown's, the Debtors entered into a financing agreement with Ableco Finance LLC ("Ableco"); Wells Fargo Capital Finance, Inc. (f/k/a Wells Fargo Foothill, Inc.) ("Wells"); and GMAC Commercial Finance LLC (n/k/a Ally Commercial Finance LLC) ("Ally" and collectively with Wells and Ableco, the "Senior Secured Lenders"), providing for a revolving line of credit, under which the Debtors may borrow up to an aggregate amount equal to the lesser of $15 million and a defined borrowing base with a letter of credit sublimit, and two tranches of term loans, all of which are secured by liens on substantially all of the Debtors' assets. As of the

Petition Date, the Debtors had approximately $70 million outstanding under this facility.[2]

9. On September 28, 2008, the Debtors issued $10 million in senior subordinated second lien notes pursuant to a note purchase agreement to Trimaran Fund II, L.L.C.; Trimaran Parallel Fund II, L.P.; Trimaran Capital, L.L.C.; CIBC Employee Private Equity Fund (Trimaran) Partners; and CIBC Capital Corp. (collectively, the "Second Lien Lenders"). As of the Petition Date, approximately $14 million, including accrued and unpaid interest, was outstanding under these second lien notes.

*Mezzanine Debt*

10. Also as part of the Bugaboo Creek acquisition, on June 21, 2007, the Debtors issued $20 million in unsecured, senior subordinated notes pursuant to four note purchase agreements to Kohlberg Capital Corporation; Archer Capital Master Fund, L.P.; Camofi Master LDC; Camhzn Master LDC; and Raven Credit Opp Master Fund Ltd. (collectively, the "Subordinated Lenders"). As of the Petition Date, the Debtors had approximately $30 million of mezzanine debt obligations, including accrued and unpaid interest, outstanding to the Subordinated Lenders.

Circumstances Leading to Filing

11. A variety of external factors have led to a decline in the Debtors' revenue over the last several years, at the same time that costs have increased. For instance, the restaurant industry has grown more competitive, the fast-food industry has improved their product offerings and increased its market share to the detriment of casual dining restaurants, such as the Debtors, and consumers have changed their ordering habits. In addition, the "Great Recession" has led to a decline in discretionary spending among the Debtors' former and current

---

[2] Specifically, the Debtors had approximately $6 million outstanding under the revolver, $12 million outstanding under Term Loan A, and $52 million outstanding under Term Loan B.

customers, and fewer families are frequenting restaurants while food and labor costs have increased, compounding the Debtors' distress.

12. Accordingly, for some time, the Debtors have been in discussions with their lenders and other parties regarding a financial restructuring, and they have entered into several amendments to their various credit and related facilities, but the Debtors' need for additional liquidity has not been resolved, and the economy has not improved. At this time, the only party willing to provide the Debtors with any funding is Ally, which has informed the Debtors that it is only willing to do so as a DIP loan in Chapter 11 cases where the Debtors market their assets in anticipation of a global asset sale.

13. Thus, in an effort to maximize their value, the Debtors have entered into a DIP arrangement with Ally, and along with other first-day motions designed to ensure a smooth transition into Chapter 11, the Debtors intend to file a motion to approve a DIP financing arrangement and to attempt to sell substantially all of their assets expeditiously pursuant to Bankruptcy Code § 363.

## FACTUAL BACKGROUND

14. Continuing customer relationships have been a crucial component of the Debtors' restaurant business, especially in this difficult and extremely competitive time. To maintain such relationships and a sufficient level of satisfaction among their customers, and to grow their customer base, the Debtors issued and honored coupons and gift cards, and they established loyalty programs, whereby customers could earn coupons and other discounts, (collectively, the "Pre-Petition Customer Programs").

Coupons

15. The Debtors regularly issue and honor coupons that are distributed separately, along with newspaper (and other) advertisements, and via other methods (including

those distributed by e-mail and mail) to motivate customers to frequent their various restaurants. These coupons provide for discounted meals, specials on new or existing items, and other discounts, and it is essential that the Debtors be permitted to continue to honor coupons that were issued prior to the Petition Date.

16. The Debtors do not necessarily believe that they are restricted from honoring coupons because of their bankruptcy filing, but in an abundance of caution, they are requesting authority to continue to do so.

Gift and Other Cards

17. The Debtors sell gift cards, which are akin to gift certificates, that individuals can purchase for gifts or for their own use in restaurants. These gift cards, which do not have any set expiration date, are treated the same as cash, and there are many gift cards outstanding that were purchased prior to the Petition Date.

18. As of the Petition Date, the Debtors estimate that approximately $3.8 million in gift cards had been issued but not yet processed for payment.

19. Occasionally, it is necessary for Charlie Brown's to issue to customers "SFG Cards" (or "satisfaction guaranteed cards") in response to complaints or in efforts to increase sales at particular restaurants. Many of these cards, which do not expire and which are akin to coupons, were issued prior to the Petition Date but have not yet been processed.

20. On average, the Debtors issue approximately $5,000 in SFG cards in any given month. As of the Petition Date, the Debtors estimate that approximately $10,000 in SFG Cards had been issued but not yet redeemed.

Loyalty Programs

21. Charlie Brown's features three loyalty programs called "The HandShake Club", the "Pub Club", and the "Creek Club" (each a "Club", and collectively, the "Clubs")

which award members points for each dollar spent, exclusive of tax and tip. When 300 points are accumulated, the member is sent two $10 coupons, which expire if the member does not use such coupon at least once in a twelve month period. Members of the Clubs also regularly receive special coupons on their birthdays and the anniversaries of joining a Club and receive other updates, information, and specials via mail or e-mail.[3]

22. Many members of the Clubs have accumulated points prior to the Petition Date, and there are coupons issued prior to the Petition Date that will be presented thereafter. The Debtors believe that approximately $300,000[4] in coupons are outstanding, and for accounting purposes, they recognize an unredeemed points liability of approximately $705,000.

23. The Debtors anticipate that coupons issued to the Clubs' members prior to the Petition Date may be presented for use thereafter, and although they do not believe that they are necessarily restricted from honoring those coupons simply because of their bankruptcy filing, in an abundance of caution, the Debtors are requesting authority to continue to honor them.

Party Deposits

24. The Debtors require a small deposit of approximately $100-$200 for large parties and banquets (each a "Party Deposit", and collectively, the "Party Deposits"). The Debtors do not have a formal cancellation policy. However, to ensure customer satisfaction, the Debtors typically return a Party Deposit if an event is cancelled. The Debtors believe that as of the Petition Date, they hold approximately $16,000 of the Party Deposits.

25. The Debtors do not necessarily believe that they are restricted from returning the Party Deposits in the ordinary course of business, consistent with past practices, but

---

[3] Birthday and anniversary coupons are for $10 and expire three months after being issued. In calendar year 2009, approximately 800,000 birthday coupons and approximately 129,000 anniversary coupons were issued.

[4] For accounting purposes, and based on budgeted food costs, the Debtors recognize this as a liability of only approximately $135,000.

7

in an abundance of caution, they are requesting authority to do so.

Credit Card Processing

26. The Debtors are parties to certain agreements with credit card processing companies which enable them to accept credit card and debit card payments, subject to certain adjustments, returns and promotional fees and refunds. On average, a processing fee of approximately 2-5% applies to each credit card and debit card transactions. The Royal Bank of Scotland ("RBS") and JP Morgan Chase & Co. ("Chase") bill the Debtors for processing fees in arrears. RBS bills the Debtors at the end of each month, and Chase bills the Debtors at the end of each day.

27. The Debtors estimate that as of the Petition Date, approximately $94,000 remains outstanding with respect to RBS and Chase pre-petition credit card processing fees. All other processing fees are retained by the respective credit card or debit card processing company at the time of the transactions, and as such, the Debtors do not owe any pre-petition amounts in respect thereof.

**RELIEF REQUESTED**

28. The Debtors request permission to (a) continue to honor, replace and/or, terminate the Pre-Petition Customer Programs, (b) return the Party Deposits, and (c) honor credit and debit card transactions and pay any and all related fees from any available funds, including from those provided pursuant to the terms of any post-petition financing and/or cash collateral order,[5] in each case, in their absolute discretion, in the ordinary course of business, and without

---

[5] The Debtors respectfully request that such permission include, without limitation, credit card and debit card transactions and processing fees which may have accrued but remain unpaid as of the Petition Date, or which may be incurred on a going-forward basis.

8

further application to this Court.[6]

29. On an emergency basis, the Debtors are only requesting authority to honor obligations and make payments to the extent they deem appropriate in the next 21 days. The Debtors also request that the Court schedule a further hearing (the "Follow-Up Hearing") on this Motion to consider all other requested relief. The Debtors would file and serve a proposed form of order approving such remaining relief prior to the date of the Follow-Up Hearing.

30. Furthermore, the Debtors request that financial institutions be authorized to receive, process, honor, and pay all checks presented for payment and electronic payment requests related to the relief requested in this motion, whether such checks were presented or electronic requests were submitted prior to or after the Petition Date. The Debtors also request that financial institutions be authorized to rely on the Debtors' designation of any particular check or electronic payment request as appropriate pursuant to this Motion.

## **BASIS FOR RELIEF**

31. Bankruptcy Code § 105(a) empowers a court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. The purpose of Bankruptcy Code § 105(a) is to ensure a bankruptcy court's power to take whatever action "is appropriate or necessary in aid of the exercise of [its] jurisdiction." 2 Collier on Bankruptcy, ¶ 105.01 (15th rev. ed. 1997); see also In re Joint E. & S. Dist. Asbestos Litig., 129 B.R. 710, 843 (E.D.N.Y. & S.D.N.Y. 1991) ("[Section 105] has been construed to afford bankruptcy courts necessary flexibility to facilitate reorganizations."); Management Technology Corp. v. Pardo, 56 B.R. 337, 339 (Bankr. D.N.J. 1985) (court's equitable power derived from Bankruptcy Code § 105).

---

[6] This Motion is not a request to assume, pursuant to Bankruptcy Code § 365, any executory contracts or unexpired leases to which any of the Debtors is a party, and accordingly, the Debtors reserve all rights related thereto.

32. A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). "Under Section 105, a court can permit pre-plan payment of pre-petition obligations when essential to the continued operation of the debtor." In re NVR L.P., 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing Ionosphere Clubs, 98 B.R. at 177).

33. Under the "necessity of payment rule" or the "doctrine of necessity,"[7] courts often allow the immediate payment of pre-petition claims where the payments are essential to the debtor's continued operations, even though the Bankruptcy Code may not explicitly authorize payment. See, e.g., In re Just for Feet, Inc., 242 B.R. 821, 824 (Bankr. D. Del. 1999); In re Columbia Gas System, Inc., 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (noting that a debtor may pay a class of pre-petition creditors in advance of a confirmed plan if essential to the continued operation of the business).

34. The doctrine of necessity recognizes that paying pre-petition obligations outside of a plan of reorganization is often necessary to realize the paramount purpose of a Chapter 11 reorganization – i.e., preventing the liquidation of the debtor-in-possession and preserving its potential for rehabilitation. See, e.g., In re Lehigh & New England Ry. Co., 657 F.2d 570, 581 (3d Cir. 1981) (holding that the doctrine of necessity permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims shall have been paid").

35. As a restaurant business, the Debtors' most valuable assets are their

---

[7] This doctrine, first articulated by the United States Supreme Court in Miltenberger v. Logansport, C&S W. R. Co., 106 U.S. 286, 311-312 (1882), recognizes the existence of judicial power to authorize a debtor in a reorganization case to pay pre-petition claims where such payment is essential to the continued operation of the debtor.

RLF1 3630008v.1

business relationships with their customers. These relationships developed, in part, through the Pre-Petition Customer Programs, which are aimed at guaranteeing customer satisfaction and fostering customer loyalty, while at the same time being used to increase sales and to introduce new customers to the Debtors' restaurants. Similarly, by returning a Party Deposit upon cancellation of an event, and accepting various forms of payment (including many different types of debit and credit cards), the Debtors are able to sustain goodwill with their customers.

36. Courts in this district (and elsewhere) have recognized that retaining customer loyalty is critical to a debtor's continued operations in Chapter 11 and, accordingly, have granted relief similar to the relief requested herein. See eg., In re Nortel, Case No. 09-10138 (KJC) (Bankr. D. Del. Jan. 15, 2009); In re Tribune Co., Case No. 08-13141 (KJC) (Bankr. D. Del. Dec. 10, 2008); In re UNO Rest. Holdings Corp., Case No. 10-10209 (MG) (Bankr. S.D.N.Y. Jan. 20, 2010); In re General Motors Corp., Case No. 09-50026 (REG) (Bankr. S.D.N.Y. June 1, 2009); In re Lenox Sales, Inc., Case No. 08-14679 (ALG) (Bankr. S.D.N.Y. Nov. 23, 2008); In re Steve & Barry's Manhattan LLC, Case No. 08-12579 (ALG) (Bankr. S.D.N.Y. Jul. 29, 2008).

37. Upon the filing of these cases, any coupons, gift and other cards, and similar certificates could technically constitute general unsecured pre-petition claims. In order to maintain the continuity and reliability of the Debtors' business to its customers, and to avoid the necessity of creating an administrative mechanism to distinguish coupons, gift cards, and other certificates that accrued pre-petition from those that will accrue post-petition (to the extent such distinctions are even possible), the Debtors seek authority to continue to honor the Pre-Petition Customer Programs, as if they were not debtors in bankruptcy. Customer relations would be

severely damaged were the Debtors prohibited from doing so.[8]

38. Indeed, at a time of already diminished sales, many of the Debtors' customers are likely evaluating whether the filing of these cases should cause them to stop eating at the Debtors' restaurants or to frequent other restaurants. The Debtors wish to assuage any fears of their customers by minimizing the effects of these cases on them, and these efforts would be thwarted if they could not honor pre-petition coupons, gift cards, loyalty points, and credit and debit cards. The Debtors believe that, in such a situation, their customers could immediately choose to go elsewhere, or could have their coupons, gift cards, or credit and debit cards were rejected, and then later choose to dine at another restaurant, to the obvious detriment of the Debtors and their estates.

39. Accordingly, the Debtors submit that authorizing them to (a) continue to honor, replace and/or, terminate, the Pre-Petition Customer Programs, (b) return the Party Deposits, and (c) honor credit and debit card transactions and pay any and all related fees, in each case, in their absolute discretion, in the ordinary course of business, and without further application to this Court is in their best interest and in the best interests of their estates, creditors, and other parties-in-interest.

---

[8] The Debtors submit that they do not need court authority to maintain, honor, and apply the Pre-Petition Customer Programs post-petition in the ordinary course of their business, but in an abundance of caution, are seeking explicit authority to do so.

## SATISFACTION OF BANKRUPTCY RULE 6003

40. Pursuant to Bankruptcy Rule 6003, the Court may grant a request of a debtor to pay all or part of a pre-petition claim in the first 21 days of a case only if that relief is necessary to avoid immediate and irreparable harm. For the reasons set forth above, the ability to honor the Pre-Petition Customer Programs, return the Party Deposits, honor credit and debit card transactions, and pay any and all related fees, immediately is necessary to avoid the immediate and irreparable harm that could occur if the Debtors were unable to do so. Accordingly, the Debtors submit that they have satisfied the requirements of Bankruptcy Rule 6003 with respect to the relief requested in this Motion.

## REQUEST FOR WAIVER OF STAY

41. Any delay in payments relating to the Pre-Petition Customer Programs or the return of the Party Deposits would be detrimental to the Debtors, their creditors, and their estates. Accordingly, to successfully implement the foregoing, to the extent applicable, the Debtors seek a waiver of the 14-day stay of any order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## NOTICE

42. Notice of this Motion has been given via overnight delivery service, e-mail, facsimile, telephone, and/or hand delivery, as appropriate, to the United States Trustee, the 20 largest unsecured non-insider creditors of the Debtors on a consolidated basis, the Senior Secured Lenders, the Second Lien Lenders, the Subordinated Lenders, the Debtors' equity sponsor, the United States Attorney's Office for the District of Delaware, the United States Attorney General, and the Internal Revenue Service. As this Motion is seeking first-day relief, notice hereof and of any order entered hereon will be served in accordance with Local Bankruptcy Rule 9013-1(m). Due to the urgency of the circumstances, the Debtors submit that

no other or further notice of this Motion is required.

## NO PRIOR APPLICATION

43. No previous request for the relief sought in this Motion has been made to this or to any other court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request entry of orders, substantially in the form attached hereto as Exhibit A and the form to be subsequently filed, granting the relief requested in this Motion and such other and further relief as may be just and proper under the circumstances.

Dated: November 18, 2010
Wilmington, Delaware

Respectfully submitted,

/s/ Mark D. Collins

Mark D. Collins (No. 2981)
Christopher M. Samis (No. 4909)
Julie Finocchiaro (No. 5303)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

-and-

Joel H. Levitin
Richard A. Stieglitz Jr.
Maya Peleg
CAHILL GORDON & REINDEL LLP
Eighty Pine Street
New York, New York 10005
Telephone: (212) 701-3000
Facsimile: (212) 269-5420

*Proposed Attorneys for the Debtors and Debtors-in-Possession*

# Exhibit A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CB HOLDING CORP., et al.,[1] | ) | Case No. 10-_____ ( ) |
| | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |

### INTERIM ORDER AUTHORIZING DEBTORS TO HONOR
### CERTAIN PRE-PETITION CUSTOMER PROGRAMS

Upon consideration of the motion (the "Motion")[2] of the Debtors for an order, pursuant to Bankruptcy Code § 105(a), authorizing them to (a) continue to honor, replace and/or, terminate, the Pre-Petition Customer Programs, (b) return the Party Deposits, and (c) honor

---

[1] The other Debtors, and the last four digits of each of their tax identification numbers, are: 1820 Central Park Avenue Restaurant Corp. (5151); Bugaboo Creek Acquisition, LLC (4629); Bugaboo Creek Holdings, Inc. (0966); Bugaboo Creek of Seekonk, Inc. (1669); CB Holding Corp. (8640); CB VII, Inc. (9120); CB VIII, Inc. (1468); Charlie Brown North (6721); Charlie Brown's Acquisition Corp. (8367); Charlie Brown's at Clifton, Inc. (7309); Charlie Brown's Mark Corp. (3569); Charlie Brown's Montclair, Inc. (4223); Charlie Brown's 1981, Inc. (7781); Charlie Brown's of Allentown, L.L.C. (8420); Charlie Brown's of Alpha, Inc. (9083); Charlie Brown's of Berwyn, LLC (3347); Charlie Brown's of Blackwood, L.L.C. (5698); Charlie Brown's of Bloomsburg, LLC (3326); Charlie Brown's of Brielle, Inc. (8115); Charlie Brown's of Carlstadt, Inc (6936); Charlie Brown's of Chatham, Inc (2452); Charlie Brown's of Commack LLC (4851); Charlie Brown's of Denville, Inc. (1422); Charlie Brown's of East Windsor, LLC (2747); Charlie Brown's of Edison, Inc. (8519); Charlie Brown's of Egg Harbor Twp, LLC (none); Charlie Brown's of Franklin, LLC (5232); Charlie Brown's of Garden City, LLC (7440); Charlie Brown's of Hackettstown, L.L.C. (7493); Charlie Brown's of Harrisburg, LLC (1085); Charlie Brown's of Hillsborough, Inc. (0344); Charlie Brown's of Holtsville, LLC (0138); Charlie Brown's of Jackson, LLC (3478); Charlie Brown's of Lacey, L.L.C. (6282); Charlie Brown's of Lakewood, Inc (0156); Charlie Brown's of Langhorne, LLC (3392); Charlie Brown's of Lynbrook LLC (2772); Charlie Brown's of Maple Shade, Inc. (0404); Charlie Brown's of Matawan, Inc. (8337); Charlie Brown's of Middletown LLC (7565); Charlie Brown's of Oradell, Inc. (0348); Charlie Brown's of Pennsylvania, Inc. (6918); Charlie Brown's of Piscataway, LLC (8285); Charlie Brown's of Reading, LLC (1214); Charlie Brown's of Scranton, LLC (9817); Charlie Brown's of Selinsgrove, LLC (6492); Charlie Brown's of Springfield, LLC (9892); Charlie Brown's of Staten Island, LLC (1936); Charlie Brown's of Tinton Falls, Inc (6981); Charlie Brown's of Toms River, LLC (5492); Charlie Brown's of Union Township, Inc. (8910); Charlie Brown's of Trexlertown, LLC (6582); Charlie Brown's of Wayne, Inc. (4757); Charlie Brown's of West Windsor, Inc. (0159); Charlie Brown's of Williamsport LLC (8218); Charlie Brown's of Woodbury, Inc. (0601); Charlie Brown's of York, LLC (0980); Charlie Brown's of Yorktown, LLC (7855); Charlie Brown's Restaurant Corp. (7782); Charlie Brown's Steakhouse Fishkill, Inc. (9139); Charlie Brown's Steakhouse Woodbridge, Inc. (1906); Charlie Brown's, Inc. (4776); Jonathan Seagull Property Corp. (7248); Jonathan Seagull, Inc. (9160); The Office at Bridgewater, Inc. (3132); The Office at Cranford, Inc. (3131); The Office at Keyport, Inc. (1507); The Office at Montclair, Inc. (3128); The Office at Morristown, Inc. (3127); The Office at Ridgewood, Inc. (2949); The Office at Summit, Inc. (3126); and What's Your Beef V, Inc. (4719).

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

credit and debit card transactions and pay any and all related fees, in each case, in their absolute discretion, in the ordinary course of business, and without further application to this Court; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and the Court having found that good and sufficient cause exists for granting the Motion; and the relief requested in the Motion being necessary to avoid immediate and irreparable harm, as contemplated by Bankruptcy Rule 6003; and upon consideration of the Declaration of Gary Lembo in Support of First-Day Motions; and upon the record of these Chapter 11 cases and any hearings held to consider the Motion; and it appearing that the relief requested in the Motion is appropriate in the context of these cases and in the best interests of the Debtors and their respective estates, their creditors, and all other parties-in-interest; and it appearing that notice of the Motion was adequate and proper under the circumstances of these cases, and it appearing that no other or further notice need be given; it is hereby

ORDERED that the Motion is granted as set forth herein; and it is further

ORDERED that the Debtors are authorized and empowered to honor the Pre-Petition Customer Programs in their absolute discretion, to the extent they deem appropriate, prior to the Follow-Up Hearing; and it is further

ORDERED that the Debtors are authorized and empowered to return the Party Deposits, in an amount not to exceed $16,000, in their absolute discretion, to the extent they deem appropriate, prior to the Follow-Up Hearing; and it is further

ORDERED that the Debtors are authorized and empowered to continue to honor and accept credit and debit card transactions, and are authorized and empowered to pay any and all related fees, without limitation, credit card and debit card transaction and processing fees

which may have accrued but remain unpaid as of the Petition Date, or which may be incurred on a going-forward basis from the date hereof, in their discretion, to the extent they deem appropriate prior to the Follow-Up Hearing; and it is further

ORDERED that the Follow-Up Hearing shall be held on _____ \_\_, 2010, at \_\_:\_\_ \_M (Prevailing Eastern Time), in the courtroom of the Honorable _____ \_. _____, United States Bankruptcy Court, District of Delaware, 824 North Market Street, Wilmington, Delaware 19801 with notice to be provided by the Debtors or their agent; and it is further

ORDERED that objections, if any, to relief requested in the Motion to be heard at the Follow-Up Hearing must (i) be in writing, state the name of the objector, identify its interest in these cases, and set forth the grounds for the objection and the legal basis therefor and (ii) be filed with this Court and served in a manner so as to be received by the following parties, together with proof of service, on or before _____ \_\_, 2010, at 4:00 PM (Prevailing Eastern Time): (a) proposed counsel to the Debtors, Cahill Gordon & Reindel LLP, Eighty Pine Street, New York, New York 10005 (Attn: Richard A. Stieglitz Jr., Esq. and Maya Peleg, Esq.) and Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (Attn: Mark D. Collins, Esq. and Christopher M. Samis, Esq.) (b) the United States Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801 and (c) counsel to any official committees that may be appointed in these cases; and it is further

ORDERED that the Debtors are authorized and empowered, in their discretion, to make the payments authorized by this Order from any available funds, including from those provided pursuant to the terms of any post-petition financing and/or cash collateral order; and it is further

ORDERED that all of the Debtors' banks are authorized and directed to honor all

checks issued and fund transfers requested in respect of the Customer Programs or related obligations in the Motion, as approved by this Order, to the extent sufficient funds are on deposit, regardless of whether such checks or fund transfer requests were issued prior to or after the Petition Date; and it is further

ORDERED that notwithstanding anything to the contrary in this Order, the authorization granted herein to the Debtors in no way requires the Debtors to make any payment; and it is further

ORDERED that the relief granted herein shall not constitute or be deemed to be an assumption or an authorization to assume, pursuant to Bankruptcy Code § 365, any executory contracts or unexpired leases to which the Debtors are a party; and it is further

ORDERED that the Debtors are authorized and empowered to take any necessary actions to implement and effectuate the terms of this Order; and it is further

ORDERED that the terms and conditions of this Order shall be immediately effective and enforceable upon its entry, notwithstanding any applicability of Bankruptcy Rule 6004(h); and it is further

ORDERED that this Court shall retain jurisdiction over all matters arising from or related to the interpretation and implementation of this Order.

Dated: _____, 2010
      Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE