IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| CB HOLDING CORP., et al.,[1] ) | Case No. 10-_____ ( ) |
| ) | |
| ) | Joint Administration Requested |
| Debtors. ) | |
| ) | |

## DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING PAYMENT OF PRE-PETITION OBLIGATIONS TO CRITICAL LIQUOR VENDORS

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through their undersigned attorneys, hereby file this motion (the "Motion")

---

[1] The other Debtors, and the last four digits of each of their tax identification numbers, are: 1820 Central Park Avenue Restaurant Corp. (5151); Bugaboo Creek Acquisition, LLC (4629); Bugaboo Creek Holdings, Inc. (0966); Bugaboo Creek of Seekonk, Inc. (1669); CB Holding Corp. (8640); CB VII, Inc. (9120); CB VIII, Inc. (1468); Charlie Brown North (6721); Charlie Brown's Acquisition Corp. (8367); Charlie Brown's at Clifton, Inc. (7309); Charlie Brown's Mark Corp. (3569); Charlie Brown's Montclair, Inc. (4223); Charlie Brown's 1981, Inc. (7781); Charlie Brown's of Allentown, L.L.C. (8420); Charlie Brown's of Alpha, Inc. (9083); Charlie Brown's of Berwyn, LLC (3347); Charlie Brown's of Blackwood, L.L.C. (5698); Charlie Brown's of Bloomsburg, LLC (3326); Charlie Brown's of Brielle, Inc. (8115); Charlie Brown's of Carlstadt, Inc. (6936); Charlie Brown's of Chatham, Inc. (2452); Charlie Brown's of Commack LLC (4851); Charlie Brown's of Denville, Inc. (1422); Charlie Brown's of East Windsor, LLC (2747); Charlie Brown's of Edison, Inc. (8519); Charlie Brown's of Egg Harbor Twp, LLC (none); Charlie Brown's of Franklin, LLC (5232); Charlie Brown's of Garden City, LLC (7440); Charlie Brown's of Hackettstown, L.L.C. (7493); Charlie Brown's of Harrisburg, LLC (1085); Charlie Brown's of Hillsborough, Inc. (0344); Charlie Brown's of Holtsville, LLC (0138); Charlie Brown's of Jackson, LLC (3478); Charlie Brown's of Lacey, L.L.C. (6282); Charlie Brown's of Lakewood, Inc. (0156); Charlie Brown's of Langhorne, LLC (3392); Charlie Brown's of Lynbrook LLC (2772); Charlie Brown's of Maple Shade, Inc. (0404); Charlie Brown's of Matawan, Inc. (8337); Charlie Brown's of Middletown LLC (7565); Charlie Brown's of Oradell, Inc. (0348); Charlie Brown's of Pennsylvania, Inc. (6918); Charlie Brown's of Piscataway, LLC (8285); Charlie Brown's of Reading, LLC (1214); Charlie Brown's of Scranton, LLC (9817); Charlie Brown's of Selinsgrove, LLC (6492); Charlie Brown's of Springfield, LLC (9892); Charlie Brown's of Staten Island, LLC (1936); Charlie Brown's of Tinton Falls, Inc (6981); Charlie Brown's of Toms River, LLC (5492); Charlie Brown's of Union Township, Inc. (8910); Charlie Brown's of Trexlertown, LLC (6582); Charlie Brown's of Wayne, Inc. (4757); Charlie Brown's of West Windsor, Inc (0159); Charlie Brown's of Williamsport LLC (8218); Charlie Brown's of Woodbury, Inc. (0601); Charlie Brown's of York, LLC (0980); Charlie Brown's of Yorktown, LLC (7855); Charlie Brown's Restaurant Corp. (7782); Charlie Brown's Steakhouse Fishkill, Inc. (9139); Charlie Brown's Steakhouse Woodbridge, Inc. (1906); Charlie Brown's, Inc. (4776); Jonathan Seagull Property Corp. (7248); Jonathan Seagull, Inc. (9160); The Office at Bridgewater, Inc. (3132); The Office at Cranford, Inc. (3131); The Office at Keyport, Inc. (1507); The Office at Montclair, Inc. (3128); The Office at Morristown, Inc. (3127); The Office at Ridgewood, Inc. (2949); The Office at Summit, Inc. (3126); and What's Your Beef V, Inc. (4719).

for interim and final orders authorizing them to pay the pre-petition claims (the "Critical Liquor Vendor Claims") of certain critical liquor vendors (as described below, Critical Liquor Vendors"). In support of the relief requested in this Motion, the Debtors respectfully represent as follows:

## JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue of these cases and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief requested herein are Bankruptcy Code §§ 105(a) and 363(b).

## INTRODUCTION

2. On November 17, 2010 (the "Petition Date"), the Debtors filed with this Court separate, voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The Debtors have sought an order directing that their Chapter 11 cases be jointly administered by this Court, and they have filed additional motions (some of which seek emergency relief) in the proposed lead case of CB Holding Corp.

3. The Debtors continue to manage their properties and operate their business as debtors-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108. No trustee, examiner, or official committee has been appointed in these cases.

<u>The Debtors and Their Business</u>

4. CB Holding Corp., a Delaware corporation, is the direct or indirect corporate parent of all of the other Debtors. All of CB Holding Corp.'s outstanding common and preferred stock is privately held.

2

5. The Debtors own and operate the *Charlie Brown's Steakhouse* ("Charlie Brown's"), *Bugaboo Creek Steak House* ("Bugaboo Creek"), and *The Office Beer Bar & Grill* ("The Office"). Charlie Brown's and Bugaboo Creek are steakhouses, offering their customers exceptional service, value, and fresh food, along with seasonal specialties, while The Office is more casual, offering over 60 bottled beers, seasonal draft beers, and classic pub appetizers and dining options.

6. There are currently 20 Charlie Brown's restaurants in New York, New Jersey, and Pennsylvania; 12 Bugaboo Creek restaurants in Massachusetts, Delaware, Maryland, New Hampshire, and Maine; and seven The Office restaurants in New Jersey. Shortly before the Petition Date, the Debtors closed 29 Charlie Brown's and 18 Bugaboo Creek restaurants.

7. The Debtors have approximately 185 full-timed salaried employees and more than 2,200 full-time and part-time hourly employees. None of the Debtors' employees are members of a union.

Capital Structure

*Secured Debt*

8. On June 21, 2007, in connection with the acquisition of Bugaboo Creek by Charlie Brown's, the Debtors entered into a financing agreement with Ableco Finance LLC ("Ableco"); Wells Fargo Capital Finance, Inc. (f/k/a Wells Fargo Foothill, Inc.) ("Wells"); and GMAC Commercial Finance LLC (n/k/a Ally Commercial Finance LLC) ("Ally" and collectively with Wells and Ableco, the "Senior Secured Lenders"), providing for a revolving line of credit, under which the Debtors may borrow up to an aggregate amount equal to the lesser of $15 million and a defined borrowing base with a letter of credit sublimit, and two tranches of

3

RLF1 3630058v 1

term loans, all of which are secured by liens on substantially all of the Debtors' assets. As of the Petition Date, the Debtors had approximately $70 million outstanding under this facility.[2]

9. On September 28, 2008, the Debtors issued $10 million in senior subordinated second lien notes pursuant to a note purchase agreement to Trimaran Fund II, L.L.C.; Trimaran Parallel Fund II, L.P.; Trimaran Capital, L.L.C.; CIBC Employee Private Equity Fund (Trimaran) Partners; and CIBC Capital Corp. (collectively, the "Second Lien Lenders"). As of the Petition Date, approximately $14 million, including accrued and unpaid interest, was outstanding under these second lien notes.

*Mezzanine Debt*

10. Also as part of the Bugaboo Creek acquisition, on June 21, 2007, the Debtors issued $20 million in unsecured, senior subordinated notes pursuant to four note purchase agreements to Kohlberg Capital Corporation; Archer Capital Master Fund, L.P.; Camofi Master LDC; Camhzn Master LDC; and Raven Credit Opp Master Fund Ltd. (collectively, the "Subordinated Lenders"). As of the Petition Date, the Debtors had approximately $30 million of mezzanine debt obligations, including accrued and unpaid interest, outstanding to the Subordinated Lenders.

Circumstances Leading to Filing

11. A variety of external factors have led to a decline in the Debtors' revenue over the last several years, at the same time that costs have increased. For instance, the restaurant industry has grown more competitive, the fast-food industry has improved their

---

[2] Specifically, the Debtors had approximately $6 million outstanding under the revolver, $12 million outstanding under Term Loan A, and $52 million outstanding under Term Loan B.

4

RLF1 3630058v 1

product offerings and increased its market share to the detriment of casual dining restaurants, such as the Debtors, and consumers have changed their ordering habits. In addition, the "Great Recession" has led to a decline in discretionary spending among the Debtors' former and current customers, and fewer families are frequenting restaurants while food and labor costs have increased, compounding the Debtors' distress.

12. Accordingly, for some time, the Debtors have been in discussions with their lenders and other parties regarding a financial restructuring, and they have entered into several amendments to their various credit and related facilities, but the Debtors' need for additional liquidity has not been resolved, and the economy has not improved. At this time, the only party willing to provide the Debtors with any funding is Ally, which has informed the Debtors that it is only willing to do so as a DIP loan in Chapter 11 cases where the Debtors market their assets in anticipation of a global asset sale.

13. Thus, in an effort to maximize their value, the Debtors have entered into a DIP arrangement with Ally, and along with other first-day motions designed to ensure a smooth transition into Chapter 11, the Debtors intend to file a motion to approve a DIP financing arrangement and to attempt to sell substantially all of their assets expeditiously pursuant to Bankruptcy Code § 363.

## FACTUAL BACKGROUND

14. Like any restaurant, the Debtors offer diners a wide range of liquor options, not only with their meals, but also in bars located in their restaurants. The Debtors' bar business is not only crucial to its operations because of the favorable margin on alcoholic beverages, but also because the Debtors' bar business increases the sale of other items in their

restaurants. Indeed, the Debtors' suspect that if they lost the ability to provide alcoholic beverages with meals, many diners would choose to visit other restaurants.

15. Certain states (upon information and belief, Pennsylvania, Maryland, Maine, New Hampshire, and Delaware) require that liquor (whether it be beer, alcohol, or both) be paid for at the time of delivery, and the Debtors' practice has been to provide sufficient cash to store managers to pay for liquor in cash upon delivery or to pay for liquor by check. If the Debtors cannot continue this practice, including with respect to pre-petition amounts that the Debtors may have inadvertently neglected to pay (or, alternatively, that were paid by pre-petition check that may not have cleared), they would not be able to provide alcoholic beverage options to customers in the particular states.

16. The Debtors fear that many of their liquor suppliers, may refuse to provide services to the Debtors going forward absent payment of their pre-petition claims, with obvious collateral ramification to the Debtors' business and harm to the Debtors' estates. Accordingly, the Debtors propose to pay these Critical Liquor Vendor Claims in their discretion when they determine a suitable supplier charging comparable prices is not available in a timely fashion.

17. The following table summarizes claims of the Debtors' liquor suppliers that may be outstanding, all of which the Debtors believe to be Critical Liquor Vendor Claims:

| Location | 12-Month Average Bill | Pre-Petition Claim |
|---|---|---|
| Springfield, Pennsylvania | $2,550 | $700 |
| Gaithersburg, Maryland | $6,400 | $1,700 |
| Portland, Maine | $6,575 | $1,700 |
| Bangor, Maine | $4,775 | $1,350 |

| | | |
|---|---|---|
| Newington, New Hampshire | $5,550 | $1,500 |
| Nashua, New Hampshire | $6,100 | $1,600 |
| Newark, Delaware | $6,950 | $2,100 |

The Debtors submit that these outstanding amounts are modest in the context of these cases, especially considering the potential harm if the Debtors were not permitted to pay these Critical Liquor Vendor Claims.

## RELIEF REQUESTED

18. The Debtors seek authorization to pay, in their discretion, all or part of the Critical Liquor Vendor Claims, in an aggregate amount not to exceed $25,000, unless some other amount is agreed to by the United States Trustee, the DIP Lenders, and any official committee appointed in these cases. This Motion is not a request by the Debtors to pay any other "critical" vendors.

19. On an emergency basis, the Debtors are only requesting that the Court approve payment of the Critical Liquor Vendor Claim, to the extent they that have or will become due in the next 21 days. The Debtors also request that the Court schedule a further hearing (the "Follow-Up Hearing") on this Motion to consider all other requested relief. The Debtors would file and serve a proposed form of order approving such remaining relief prior to the date of the Follow-Up Hearing.

20. Furthermore, the Debtors request that financial institutions be authorized to receive, process, honor, and pay all checks presented for payment and electronic payment requests related to the Critical Liquor Vendor Claims, whether such checks were presented or electronic requests were submitted prior to or after the Petition Date. The Debtors also request

that financial institutions be authorized to rely on the Debtors' designation of any particular check or electronic payment request as appropriate pursuant to this Motion.

## BASIS FOR RELIEF

21. There are several justifications for the relief requested in this Motion. First, Bankruptcy Code § 105(a) empowers a court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. The purpose of Bankruptcy Code § 105(a) is to ensure a bankruptcy court's power to take whatever action "is appropriate or necessary in aid of the exercise of [its] jurisdiction." 2 Collier on Bankruptcy, ¶ 105.01 (15th rev. ed. 1997); see also In re Joint E. & S. Dist. Asbestos Litig., 129 B.R. 710, 843 (S.D.N.Y. 1991).

22. In addition, under the "necessity of payment rule" or the "doctrine of necessity,"[3] courts often allow the immediate payment of pre-petition claims where such payment is essential to a debtor's continued operations or to preserve the going-concern value of a debtor's business. See, e.g., In re Just for Feet, Inc., 242 B.R. 821, 824 (Bankr. D. Del. 1999) (bankruptcy court may exercise equity powers to authorize payment of pre-petition debt where such payment is necessary to preserve the going-concern value of a debtor's business); In re Columbia Gas Sys., Inc., 136 B.R. 930, 939 (Bankr D. Del. 1992) (recognizing that "[i]f payment of a pre-petition claim 'is essential to the continued operation of [the debtor], payment may be authorized'") (citation omitted).

---

[3] This doctrine, first articulated by the United States Supreme Court in Miltenberger v. Logansport, C&S W. R. Co., 106 U.S. 286, 311-312 (1882), recognizes the existence of judicial power to authorize a debtor to pay pre-petition claims in certain situations.

8

23. Furthermore, pursuant to Bankruptcy Code §§ 1107(a) and 1108, the Debtors are fiduciaries "holding the bankruptcy estate[s] and operating the business for the benefit of [their] creditors and (if the value justifies) equity owners." In re CoServ, L.L.C., 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the fiduciary duties of any debtor-in-possession is the obligation to "protect and preserve the estate, including an operating business's going-concern value." Id. Some courts have noted that there are instances in which a debtor can fulfill this fiduciary duty "only ... by the preplan satisfaction of a prepetition claim." Id.

24. Consistent with a debtor's fiduciary duties, courts have authorized payment of pre-petition obligations under Bankruptcy Code § 363(b), where a sound business purpose exists for doing so. See, e.g., In re Tropical Sportswear Int'l Corp., 320 B.R. 15 at 17-18 (Bankr. M.D. Fla. 2005) (authorizing payment to critical vendors for pre-petition amounts when a sound business justification existed because the vendors would not do business with the debtors absent the critical vendor status, and the disfavored creditors were not any worse off due to the critical vendor order); In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (holding that sound business justification existed to justify payment of pre-petition wages).

25. Finally, the Critical Liquor Vendors are generally "sole source" providers that cannot be replaced. The Debtors only seek to pay the claims of the Critical Liquor Vendors where non-payment would, in the Debtors' view, likely lead to the interruption of the delivery of liquor, seriously disrupting the Debtors' operations. To that end, the Critical Liquor Vendor Claims that the Debtors are seeking to pay are minimal and a failure to pay such claims would impair the going concern value of the Debtors' business.

26. Indeed, for reasons similar to those set forth herein, courts in this District have authorized the payment of pre-petition trade claims where the payment of such claims is

9

essential to a debtor's continued operations. See, e.g., In re Pliant Corp., Case No. 09-10443 (BLS) (Bankr. D. Del. Feb. 12, 2009); In re Fluid Routing Solutions Intermediate Holding Corp., Case No. 09-10384 (CSS) (Bankr. D. Del. Feb. 6, 2009); In re Smurfit-Stone Container Corp., Case No. 09-10235 (BLS) (Bankr. D. Del. Jan. 27, 2009); In re Flying J, Inc., Case No. 08-13384 (Bankr. D. Del. Jan 16, 2009); In re Tribune Co., Case No. 08-13141 (KJC) (Bankr. D. Del. Dec. 10, 2008); In re Buffets Holding, Inc., Case No. 08-10141 (MFW) (Bankr. D. Del. Dec. 8, 2008); In re Tweeter Home Entm't Group, Inc., Case No. 07-10787 (PJW) (Bankr. D. Del. June 12, 2007).

27. Accordingly, the Debtors submit that it is in their best interests and the best interests of their estates, creditors, and other parties-in-interest for them to pay the Critical Liquor Vendor Claims, in their discretion.

## SATISFACTION OF BANKRUPTCY RULE 6003

28. Pursuant to Bankruptcy Rule 6003, the Court may grant a request of a debtor to pay all or part of a pre-petition claim in the first 21 days of a case only if that relief is necessary to avoid immediate and irreparable harm. For the reasons set forth above, payment of the Critical Liquor Vendor Claims during this 21-day period, to the extent they become due therein, is necessary to avoid the immediate and irreparable harm that could occur if the Debtors

were unable to do so.[4] Accordingly, the Debtors submit that they have satisfied the requirements of Bankruptcy Rule 6003 with respect to the relief requested in this Motion.

## REQUEST FOR WAIVER OF STAY

29. Any delay in payment of the Critical Liquor Vendor Claims would be detrimental to the Debtors, their creditors, and their estates. Accordingly, to successfully implement the foregoing, to the extent applicable, the Debtors seek a waiver of the 14-day stay of any order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## NOTICE

30. Notice of this Motion has been given via overnight delivery service, e-mail, facsimile, telephone, and/or hand delivery, as appropriate, to the United States Trustee, the 20 largest unsecured non-insider creditors of the Debtors on a consolidated basis, the Senior Secured Lenders, the Second Lien Lenders, the Subordinated Lenders, the Debtors' equity sponsor, the United States Attorney's Office for the District of Delaware, the United States Attorney General, and the Internal Revenue Service. As this Motion is seeking first-day relief, notice hereof and of any order entered hereon will be served in accordance with Local Rule 9013-1(m). Due to the urgency of the circumstances, the Debtors submit that no other or further notice of this Motion is required.

---

[4] See In re New World Pasta Co., 2004 WL 5651052, at *5 (Bankr. M.D. Pa. July 9, 2004) ("[Where] the continued operation of the Debtors' businesses would not be possible . . . serious, immediate and irreparable harm to the Debtors and their estates would occur."); Northwest Airlines Corp. v. Assoc. of Flight Attendants-CWA (In re Northwest Airlines Corp.), 349 B.R. 338, (S.D.N.Y. 2006) (holding that the loss of ongoing business can constitute irreparable harm).

## NO PRIOR APPLICATION

31. No previous motion for the relief sought herein has been made to this or to any other Court.

## CONCLUSION

WHEREFORE, the Debtors request entry of an orders, substantially in the form attached hereto as Exhibit A and the form to be subsequently filed, granting the relief requested herein and such other and further relief as is just and proper under the circumstances.

Dated: November 18, 2010
      Wilmington, Delaware

Respectfully submitted,

*/s/ Mark D. Collins*

Mark D. Collins (No. 2981)
Christopher M. Samis (No. 4909)
Julie Finocchiaro (No. 5303)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

-and-

Joel H. Levitin
Richard A. Stieglitz Jr.
Maya Peleg
CAHILL GORDON & REINDEL LLP
Eighty Pine Street
New York, New York 10005
Telephone: (212) 701-3000
Facsimile: (212) 269-5420

*Proposed Attorneys for the Debtors and Debtors-in-Possession*

# EXHIBIT A

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| CB HOLDING CORP., et al.,[1] ) | Case No. 10-_____ ( ) |
| ) | |
| ) | Jointly Administered |
| Debtors. ) | |
| ) | |

---

[1] The other Debtors, and the last four digits of each of their tax identification numbers, are: 1820 Central Park Avenue Restaurant Corp. (5151); Bugaboo Creek Acquisition, LLC (4629); Bugaboo Creek Holdings, Inc. (0966); Bugaboo Creek of Seekonk, Inc. (1669); CB Holding Corp. (8640); CB VII, Inc. (9120); CB VIII, Inc. (1468); Charlie Brown North (6721); Charlie Brown's Acquisition Corp. (8367); Charlie Brown's at Clifton, Inc. (7309); Charlie Brown's Mark Corp. (3569); Charlie Brown's Montclair, Inc. (4223); Charlie Brown's 1981, Inc. (7781); Charlie Brown's of Allentown, L.L.C. (8420); Charlie Brown's of Alpha, Inc. (9083); Charlie Brown's of Berwyn, LLC (3347); Charlie Brown's of Blackwood, L.L.C. (5698); Charlie Brown's of Bloomsburg, LLC (3326); Charlie Brown's of Brielle, Inc. (8115); Charlie Brown's of Carlstadt, Inc. (6936); Charlie Brown's of Chatham, Inc. (2452); Charlie Brown's of Commack LLC (4851); Charlie Brown's of Denville, Inc. (1422); Charlie Brown's of East Windsor, LLC (2747); Charlie Brown's of Edison, Inc. (8519); Charlie Brown's of Franklin, LLC (5232); Charlie Brown's of Garden City, LLC (7440); Charlie Brown's of Hackettstown, L.L.C. (7493); Charlie Brown's of Harrisburg, LLC (1085); Charlie Brown's of Hillsborough, Inc. (0344); Charlie Brown's of Holtsville, LLC (0138); Charlie Brown's of Jackson, LLC (3478); Charlie Brown's of Lacey, L.L.C. (6282); Charlie Brown's of Lakewood, Inc. (0156); Charlie Brown's of Langhorne, LLC (3392); Charlie Brown's of Lynbrook LLC (2772); Charlie Brown's of Maple Shade, Inc. (0404); Charlie Brown's of Matawan, Inc. (8337); Charlie Brown's of Middletown LLC (7565); Charlie Brown's of Mt. Holly, Inc. (7781); Charlie Brown's of Oradell, Inc. (0348); Charlie Brown's of Pennsylvania, Inc. (6918); Charlie Brown's of Piscataway, LLC (8285); Charlie Brown's of Reading, LLC (1214); Charlie Brown's of Scranton, LLC (9817); Charlie Brown's of Springfield, LLC (9892); Charlie Brown's of Staten Island, LLC (1936); Charlie Brown's of Tinton Falls, Inc. (6981); Charlie Brown's of Toms River, LLC (5492); Charlie Brown's of Union Township, Inc. (8910); Charlie Brown's of Wayne, Inc. (4757); Charlie Brown's of West Windsor, Inc. (0159); Charlie Brown's of Williamsport LLC (8218); Charlie Brown's of Woodbury, Inc. (0601); Charlie Brown's of York, LLC (0980); Charlie Brown's of Yorktown, LLC (7855); Charlie Brown's Restaurant Corp. (7782); Charlie Brown's Steakhouse Fishkill, Inc. (9139); Charlie Brown's Steakhouse Woodbridge, Inc. (1906); Charlie Brown's, Inc. (4776); Jonathan Seagull Property Corp. (7248); Jonathan Seagull, Inc. (9160); The Office at Bridgewater, Inc (3132); The Office at Cranford, Inc. (3131); The Office at Keyport, Inc. (1507); The Office at Montclair, Inc. (3128); The Office at Morristown, Inc. (3127); The Office at Ridgewood, Inc. (2949); The Office at Summit, Inc. (3126); and What's Your Beef V, Inc. (4719).

# ORDER AUTHORIZING DEBTORS TO PAY PRE-PETITION
# OBLIGATIONS TO CERTAIN CRITICAL LIQUOR VENDORS

Upon consideration of the motion (the "Motion")[2] of the Debtors for an order, pursuant to Bankruptcy Code §§ 105(a) and 363(b), authorizing the Debtors to pay the Critical Liquor Vendor Claims (as described in greater detail in the Motion); and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and the Court having found that good and sufficient cause exists for granting the Motion and that payment of the Critical Liquor Vendor Claims is a sound and prudent exercise of the Debtors' business judgment; and the relief requested in the Motion being necessary to avoid immediate and irreparable harm, as contemplated by Bankruptcy Rule 6003; and upon consideration of the Declaration of Gary Lembo in Support of First-Day Motions; and upon the record of these Chapter 11 cases and any hearings held to consider the Motion; and it appearing that the relief requested in the Motion is appropriate in the context of these cases and in the best interests of the Debtors and their respective estates, their creditors, and all other parties-in-interest; and it appearing that notice of the Motion was adequate and proper under the circumstances of these cases, and it appearing that no other or further notice need be given; it is hereby

ORDERED that the Motion is granted as set forth herein; and it is further

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

ORDERED that the Debtors are authorized and empowered, in their discretion, to pay or honor pre-petition obligations to the Critical Liquor Vendors and to pay the Critical Liquor Vendor Claims, in an aggregate amount not to exceed $25,000; and it is further

ORDERED that the Debtors are authorized and empowered, in their discretion, to make the payments authorized by this Order from any available funds subject to the terms of any post-petition financing and/or cash collateral order; and it is further

ORDERED that all of the Debtors' banks are authorized and directed to honor all checks issued and fund transfers requested in respect of the Critical Liquor Vendor Claims requested in the Motion, as approved by this Order, to the extent sufficient funds are on deposit, regardless of whether such checks or fund transfer requests were issued prior to or after Petition Date; and it is further

ORDERED that the Debtors are authorized and empowered to take any necessary actions to implement and effectuate the terms of this Order; and it is further

ORDERED that the terms and conditions of this Order shall be immediately effective and enforceable upon its entry, notwithstanding any applicability of Bankruptcy Rule 6004(h); and it is further

ORDERED that this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2010
Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE