**Exhibit B**

**Blackline**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CB HOLDING CORP., et al.,[1] | ) | Case No. 10-13683 (MFW) |
| | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | **Re: Docket Nos. 13 & 48** |
| | ) | |

~~INTERIM~~**FINAL** ORDER (I) AUTHORIZING SECURED POST-PETITION FINANCING PURSUANT TO 11 U.S.C. § 364, (II) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, **AND** (III) GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361, 363 AND ~~364, AND (IV) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(c)~~**364**

---

[1] The other Debtors, and the last four digits of each of their tax identification numbers, are: 1820 Central Park Avenue Restaurant Corp. (5151); Bugaboo Creek Acquisition, LLC (4629); Bugaboo Creek Holdings, Inc. (0966); Bugaboo Creek of Seekonk, Inc. (1669); CB Holding Corp. (8640); CB VII, Inc. (9120); CB VIII, Inc. (1468); Charlie Brown North (6721); Charlie Brown's Acquisition Corp. (8367); Charlie Brown's at Clifton, Inc. (7309); Charlie Brown's Mark Corp. (3569); Charlie Brown's Montclair, Inc. (4223); Charlie Brown's 1981, Inc. (7781); Charlie Brown's of Allentown, L.L.C. (8420); Charlie Brown's of Alpha, Inc. (9083); Charlie Brown's of Berwyn, LLC (3347); Charlie Brown's of Blackwood, L.L.C. (5698); Charlie Brown's of Bloomsburg, LLC (3326); Charlie Brown's of Brielle, LLC (8115); Charlie Brown's of Carlstadt, Inc. (6936); Charlie Brown's of Chatham, Inc. (2452); Charlie Brown's of Commack LLC (4851); Charlie Brown's of Denville, Inc. (1422); Charlie Brown's of East Windsor, LLC (2747); Charlie Brown's of Edison, Inc. (8519); Charlie Brown's of Egg Harbor Twp, LLC (none); Charlie Brown's of Franklin, LLC (5232); Charlie Brown's of Garden City, LLC (7440); Charlie Brown's of Hackettstown, L.L.C. (7493); Charlie Brown's of Harrisburg, LLC (1085); Charlie Brown's of Hillsborough, Inc. (0344); Charlie Brown's of Holtsville, LLC (0138); Charlie Brown's of Jackson, LLC (3478); Charlie Brown's of Lacey, L.L.C. (6282); Charlie Brown's of Lakewood, Inc. (0156); Charlie Brown's of Langhorne, LLC (3392); Charlie Brown's of Lynbrook LLC (2772); Charlie Brown's of Maple Shade, Inc. (0404); Charlie Brown's of Matawan, Inc. (8337); Charlie Brown's of Middletown LLC (7565); Charlie Brown's of Oradell, Inc. (0348); Charlie Brown's of Pennsylvania, Inc. (6918); Charlie Brown's of Piscataway, LLC (8285); Charlie Brown's of Reading, LLC (1214); Charlie Brown's of Scranton, LLC (9817); Charlie Brown's of Selinsgrove, LLC (6492); Charlie Brown's of Springfield, LLC (9892); Charlie Brown's of Staten Island, LLC (1936); Charlie Brown's of Tinton Falls, Inc. (6981); Charlie Brown's of Toms River, LLC (5492); Charlie Brown's of Union Township, Inc. (8910); Charlie Brown's of Trexlertown, LLC (6582); Charlie Brown's of Wayne, Inc. (4757); Charlie Brown's of West Windsor, Inc. (0159); Charlie Brown's of Williamsport LLC (8218); Charlie Brown's of Woodbury, Inc. (0601); Charlie Brown's of York, LLC (0980); Charlie Brown's of Yorktown, LLC (7855); Charlie Brown's Restaurant Corp. (7782); Charlie Brown's Steakhouse Fishkill, Inc. (9139); Charlie Brown's Steakhouse Woodbridge, Inc. (1906); Charlie Brown's, Inc. (4776); Jonathan Seagull Property Corp. (7248); Jonathan Seagull, Inc. (9160); The Office at Bridgewater, Inc. (3132); The Office at Cranford, Inc. (3131); The Office at Keyport, Inc. (1507); The Office at Montclair, Inc. (3128); The Office at Morristown, Inc. (3127); The Office at Ridgewood, Inc. (2949); The Office at Summit, Inc. (3126); and What's Your Beef V, Inc. (4719). The Debtors' address is 1450 Route 22 West, Mountainside, NJ 07092.

Upon the emergency motion (the "Motion") dated November 18, 2010, of CB Holding Corp. and the other debtors and debtors-in-possession (collectively, the "Debtors"), in the above-captioned Chapter 11 cases ~~(collectively, the "Cases")~~ (a) seeking this Court's authorization pursuant to Sections 363(c), 364(c)(1), 364(c)(2), 364(c)(3) and 364(d)(1) of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code") and Rules 2002, 4001(c) and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), for the Debtors, inter alia, (i) to obtain secured post-petition financing (the "Post-Petition Financing") up to an aggregate principal amount not to exceed $2,500,000 from GMAC Commercial Finance LLC now known as Ally Commercial Finance LLC ("Ally") and Wells Fargo Capital Finance, Inc. ("Wells"), as the Lenders (Ally and Wells collectively the "Lenders"), (ii) to grant the Lenders, pursuant to Bankruptcy Code § 364(c) and (d), security interests in all of the Debtors' presently owned and after-acquired personal property and Pre-Petition Collateral (as defined below) and (iii) grant the Lenders, pursuant to Bankruptcy Code § 364(c)(1), priority in payment with respect to such obligations over any and all administrative expenses of the kinds specified in Bankruptcy Code §§ 503(b) and 507(b), other than in respect of the Carve-Out (as defined below); (b) seeking this Court's authorization, pursuant to Bankruptcy Code § 363(c), to use Cash Collateral (as defined below) and, pursuant to Bankruptcy Code §§ 361, 363(e) and 364(d), to provide adequate protection to the Pre-Petition Lenders[2] with respect to any diminution in the value of the Lenders' interest in the Pre-Petition

---

[2]     As used herein ~~""~~"Pre-Petition Lenders~~"~~" ~~=~~ shall mean collectively the Lenders and Ableco Finance LLC and its participants (~~"Ableco"~~)"Ableco"), in each case, in their capacity as lenders and/or agents or participants. Pursuant to agreement among Wells, Ally and Ableco, the Post-Petition Financing shall be advanced under the Lenders' Pre-Petition Agreements and this Order by Ally only, and Ally shall be entitled to the repayment of an amount equal to any outstanding post-petition advances and interest and fees related thereto on a first out basis prior to any payments to Wells, Ableco, or Agents under the Lenders' Pre-Petition Agreements and this Order. All proceeds of collateral received by the Lenders shall be held by
(cont'd)

2

Collateral (as defined below) resulting from the priming liens and security interests to be granted

herein pursuant to Bankruptcy Code § 364(d) to secure the Post-Petition Financing, the use of

Cash Collateral, the use, sale or lease of the Pre-Petition Collateral (other than Cash Collateral)

and the imposition of the automatic stay pursuant to Bankruptcy Code § 362(a); (c) ~~seeking a~~

~~preliminary hearing (the "Preliminary Hearing") on the Motion to consider entry of an interim~~

~~order pursuant to Bankruptcy Rule 4001; and (d)~~ requesting that a final hearing (the "<u>Final</u>

<u>Hearing</u>") be scheduled, and that notice procedures in respect of the Final Hearing be established

by this Court to consider entry of a final order authorizing on a final basis, <u>inter alia</u>, the Post-

Petition Financing and the use of Cash Collateral (this "<u>Final Order" or "Order</u>"); the

~~Preliminary~~<u>Final</u> Hearing having been held before this Court; due and sufficient notice of the

Motion and the ~~Preliminary~~<u>Final</u> Hearing under the circumstances having been given; and upon

the entire record made at the Preliminary Hearing, <u>which was held on November 19, 2010, and</u>

<u>the Final Hearing, and the Court having entered the Interim Order on November 19, 2010</u>

<u>[Docket No. 48]; and upon the Budget (as defined hereafter in Paragraph 11) filed with the Court</u>

<u>[Docket No. 83] on November 24, 2010,</u> and this Court having found good and sufficient cause

appearing therefor,

THE DEBTORS, ~~THE LENDERS~~ AND THE ~~PRE-PETITION~~ LENDERS STIPULATE

AND THE COURT FINDS AND CONCLUDES THAT:

A.      On November 17, 2010 (the "<u>Petition Date</u>"), the Debtors each filed their

voluntary petitions for relief with this Court under Chapter 11 of the Bankruptcy Code (these

"<u>Chapter 11 Cases</u>").  The Debtors are continuing in possession of their property, and operating

---

(cont'd)

Ally until the earlier of Termination Date ~~or March 17, 2011~~ (hereafter defined) <u>or March 17, 2011</u> and
thereafter distributed in accordance with the Lenders' Pre-Petition Agreements.

and managing their businesses as a debtors in possession pursuant to Bankruptcy Code §§ 1107 and 1108.

B.　　This Court has jurisdiction over these Chapter 11 Cases and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).

C.　　~~Without prejudice to the rights of any other party (but subject to the limitations thereon described below in Paragraph 26), the~~The Debtors acknowledge and stipulate that from time to time prior to the Petition Date, the Pre-Petition Lenders loaned money to or for the benefit of the Debtors, pursuant to the terms and conditions of that certain Financing Agreement dated as of June 21, 2007, as amended, modified or restated from time to time (collectively, the "Loan Agreement"), Pledge and Security Agreement dated as of June 21, 2007, as amended, modified or restated from time to time (collectively, the "Security Agreement") and as further documented, recorded and evidenced by various other agreements, instruments, financing statements and documents entered into in connection with the Loan Agreement and Security Agreement, all as may have been amended, modified or restated from time to time (collectively, including the Loan Agreement and Security Agreement, the "Pre-Petition Lenders' Pre-Petition Agreements").[3]

D.　　~~Without prejudice to the rights of any other party (but subject to the limitations thereon described below in Paragraph 26), the~~The Debtors acknowledge and stipulate that, in accordance with the terms of the Pre-Petition Lenders' Pre-Petition Agreements, the Debtors are truly and justly indebted to the Pre-Petition Lenders, without defense, counterclaim or offset of

---

[3]　　Capitalized terms not otherwise defined herein shall have the definitions set forth in the Lenders' Pre-Petition Agreements.

any kind, and that as of November 17, 2010, (i) the Debtors were liable to the Pre-Petition Lenders in respect of loans made and letters of credit issued (the balance of the standby letter of credit was $3,952,388) pursuant to the Pre-Petition Lenders' Pre-Petition Agreements in the aggregate principal amount of approximately $70,243,251 (exclusive of interest and fees accrued and unpaid thereon and other costs, expenses and indemnities, and inclusive of the outstanding letter of credit and swap exposure) (collectively, inclusive of interest, fees, expenses and all Obligations, the "Pre-Petition Loan Indebtedness"), and (ii) pursuant to the Pre-Petition Lenders' Pre-Petition Agreements, the Debtors were liable to the Pre-Petition Lenders for accrued and unpaid interest, commitment fees, attorneys' and advisors' fees, other out-of-pocket expenses, costs and indemnities (collectively, subsections (i), and (ii) of this paragraph are the "Pre-Petition Lenders' Pre-Petition Loan Indebtedness")[4].

E.    ~~Without prejudice to the rights of any other party (but subject to the limitations thereon described below in Paragraph 26), the~~The Debtors acknowledge and stipulate that under the Pre-Petition Lenders' Pre-Petition Agreements and as security for repayment of the Pre-Petition Lenders' Pre-Petition Indebtedness, the Debtors granted to the Pre-Petition Lenders security interests in, and liens upon, substantially all of their assets (including without limitation all Accounts, Chattel Paper, Commercial Tort Claims, Deposit Accounts, Documents, General Intangibles, Goods, Instruments, Investment Property, Letters of Credit Rights, Pledged Interests, Supporting Obligations and all other tangible and intangible personal property and proceeds therein, excepting therefrom certain assets), as more fully described in the Pre-Petition Lenders'

---

[4]    For the avoidance of doubt and for clarification, Ableco are also Pre-Petition Lenders under the Pre-Petition Lenders' Pre-Petition Agreements, however Ableco has declined to participate in the Post-Petition Financing provided hereunder except as Collateral Agent until such time that it is replaced as Collateral Agent; it is anticipated that Ally shall be the successor Collateral Agent.

Pre-Petition Agreements, which are incorporated herein by reference (collectively, including Cash Collateral (as defined below), the "<u>Pre-Petition Collateral</u>").

F. ~~Without prejudice to the rights of any other party (but subject to the limitations thereon described below in Paragraph 26), the~~<u>The</u> Debtors acknowledge and stipulate that the Pre-Petition Lenders' security interests in and liens on the Pre-Petition Collateral were properly perfected and are valid and enforceable first priority liens on and security interests in the Pre-Petition Collateral, subject to the Prior Permitted Liens (as defined below). The Debtors further acknowledge that their cash constitutes proceeds of the Pre-Petition Collateral and, therefore, is cash collateral of the Pre-Petition Lenders within the meaning of Bankruptcy Code § 363(a) ("<u>Cash Collateral</u>"). The Pre-Petition Lenders are entitled, pursuant to Bankruptcy Code §§ 361 and 363(e), to adequate protection of their interest in the Pre-Petition Collateral, including for the use of Cash Collateral, the use, sale or lease of the Pre-Petition Collateral other than Cash Collateral, and for the imposition of the automatic stay.

G. The Debtors ~~represent~~<u>have represented</u> that ~~the Debtors~~<u>they</u> do not have sufficient available sources of working capital and financing to operate their businesses in the ordinary course of business or operate their businesses and maintain their property in accordance with state and federal law and have commenced the orderly sale of their businesses and assets as going concerns to the extent possible. In order to complete their orderly sale process and maximize the value of their assets for the benefit of their creditors and estates, the Debtors' have an immediate need for the financing set forth in this Order. In the absence of the Post-Petition Financing and the use of Cash Collateral, the orderly sale of the Debtors' businesses and assets would not be possible, and would cause serious and irreparable harm to the Debtors and their estates.

H.  The Debtors ~~represent~~have represented that given ~~the  Debtors'~~their current financial condition, financing arrangements and capital structure, the Debtors cannot obtain unsecured credit allowable under Bankruptcy Code § 503(b)(1) as an administrative expense. The Debtors ~~represent~~have represented that financing on a post-petition basis is not otherwise available without the Debtors' (i) granting, pursuant to Bankruptcy Code § 364(c)(1), claims having priority over any and all administrative expenses of the kinds specified in Bankruptcy Code §§ 503(b) and 507(b), other than as described below in respect of the Carve-Out (as defined below), (ii) securing, pursuant to Bankruptcy Code § 364(c) and (d), such indebtedness and obligations with security interests in and liens on all of the Debtors' personal property, real property and the Pre-Petition Collateral as described below, and (iii) providing for adequate protection of the Pre-Petition Lenders' interests as described below.

I.  On December 1, 2010, the Official Committee of Unsecured Creditors (the "Committee") was appointed by the United States Trustee in these Chapter 11 Cases.

J.  ~~I.~~ Notice of the ~~Preliminary~~Final Hearing and the relief requested in the Motion has been given to (i) the Office of the United States Trustee (the "UST"), (ii) counsel to the Lenders, (iii) counsel to the Pre-Petition Lenders, (iv) proposed counsel to the Committee, and (v) the creditors holding the 20 largest unsecured claims against the Debtors on a consolidated basis. Under the circumstances, such notice of the ~~Preliminary~~Final Hearing and the relief requested in the Motion ~~constitutes~~and as granted in this Final Order is authorized and adequate ~~and sufficient notice under Bankruptcy Code §§ 102(1), 364(c) and 364(d) and~~under Bankruptcy Rules 2002 and 4001(c), and no other or further notice need be given.

K.  ~~J.~~ At the ~~Preliminary~~Final Hearing, the Court considered representations made by counsel, offers of proof, and/or testimony regarding:

7

(i)     the negotiations pertaining to this Order;

(ii)    the necessity for this Order;_and

(iii)   the events leading up to the filing of these Chapter 11 Cases by the Debtors;,

~~(iv)    The Debtors' need for credit to the extent necessary to avoid immediate and irreparable harm to their estates, pending a final hearing in accordance with Bankruptcy Rule 4001(c); and~~

~~(v)     those expenses necessary to avoid immediate and irreparable harm to their estates.~~

L.   ~~K.~~ Based on the record presented to the Court by the Debtors at the Preliminary Hearing and the Final Hearing, the Post-Petition Financing has been negotiated in good faith and at arm's length between the Debtors, the Lenders and the Pre-Petition Lenders, and any credit extended, and any Post-Petition Financing, and post-petition loans, made available to the Debtors pursuant to the Lenders' Pre-Petition Agreements shall be deemed to have been extended, issued or made, as the case may be, in good faith by the Lenders as required by, and within the meaning of, Bankruptcy Code § 364(e).

M.   ~~L.~~ Based on the record presented to the Court by the Debtors at the Preliminary Hearing and the Final Hearing, the terms of the Post-Petition Financing appear to be fair and reasonable, are ordinary and appropriate for secured financing to debtors in possession, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

N.   ~~M. The Debtors have requested immediate entry of this Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2).~~ The permission granted herein to enter into the

Post-Petition Financing and obtain funds thereunder, and to use Cash Collateral, ~~on an~~ ~~emergency interim basis is necessary to avoid immediate and irreparable harm to the Debtors~~ in these Chapter 11 Cases. This Court concludes that entry of this Order is in the best interest of the Debtors' estates and creditors as their implementation will, among other things, provide the Debtors with the necessary funds to conduct and complete the orderly sale of the Debtors' businesses as going concerns to the extent possible and maximize the value of the Debtors' assets for the benefit of their creditors and estates.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED, EFFECTIVE IMMEDIATELY, AND AGREED AMONG THE PARTIES HERETO THAT:

1. The Motion is granted ~~on an interim basis~~, subject to the terms and conditions set forth in this Final Order.

2. The Debtors are hereby authorized ~~on an interim basis~~ to obtain the Post-Petition Financing, use Cash Collateral, and additionally to borrow money and seek other financial accommodations from the Lenders and the Pre-Petition Lenders, as the case may be, after the Petition Date pursuant to the terms and conditions of this Final Order and the Pre-Petition Lenders' Pre-Petition Agreements, as modified hereby. ~~To avoid immediate and irreparable~~ ~~harm to the Debtors' estates prior to the Court's entry of a Final Order authorizing the Debtors to~~ ~~continue to obtain the Post-Petition Financing set forth herein, the Lenders shall be~~ The Lenders are hereby authorized to advance funds constituting Post-Petition Financing, as limited by the Budget set forth in Paragraph 11 of this Final Order and subject to the terms and conditions of the Pre-Petition Lenders' Pre-Petition Agreements. The Debtors are authorized to use the proceeds of any loans ("Loans") made under the Post-Petition Financing, to use Cash Collateral and other Collateral (as defined below) as provided and limited in the Budget (as defined

9

hereafter in Paragraph 11) for operations of the Debtors' businesses and the administration of these Chapter 11 Cases (all such Loans, and use of Cash Collateral and other Collateral (as defined below) to the extent of any diminution in the value thereof after the Petition Date collectively shall constitute, the "Post-Petition Indebtedness"), provided, that (i) the proposed Loans or use of Cash Collateral is consistent with the terms of the Pre-Petition Lenders' Pre-Petition Agreements and this Final Order and will only be used to pay when due the expenses set forth in the Budget, and (ii) any requested Post-Petition Financing is necessary after the application of available Cash Collateral.

3.      During the term of this Final Order, the terms of the Pre-Petition Lenders' Pre-Petition Agreements shall continue in full force and effect with respect to the Loans and other advances under the Post-Petition Financing (approximately $1.8 million through December 26, 2010 pursuant to the attached Budget) except as otherwise modified herein, including, as follows:

The Pre-Petition Lenders' Pre-Petition Agreements shall be amended to reflect the terms and conditions relating thereto in this Order including without limitation, effective on the date that this Order is entered by the Court, as follows:

> (a)      **Out of Formula Loans**.  Provided there exist no Events of Default under the DIP Order, the Debtors shall be allowed to borrow on a revolving basis in accordance with the Budget (hereinafter defined in Paragraph 11) in an amount not to exceed $2,500,000 (the "Over Advance").

> (b)      **Interest Rate**.  Interest Rates shall be Prime plus 4.0% for all loans under this Order and the Pre-Petition Lenders' Pre-Petition Agreements.

10

4.      In accordance with Bankruptcy Code § 364(c)(1), subject to the Carve Out provided in Paragraph 6 hereof, the Post-Petition Indebtedness shall constitute claims (the "Superpriority Claims") with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, without limitation, Bankruptcy Code §§ 105, 326, 328, 330, 331, 503(b), 507(a), 507(b) and 726, and shall at all times be senior to the rights of the Debtors, and any successor trustee or any creditor in these Chapter 11 Cases or any subsequent proceedings under the Bankruptcy Code. Subject only to the Carve-Out, no cost or expense of administration under Bankruptcy Code §§ 105, 364(c)(1), 503(b), 507(b) or otherwise, including those resulting from the conversion of any of these Chapter 11 Cases pursuant to Bankruptcy Code § 1112, shall be senior to, or pari passu with, the Superpriority Claims of the Lenders arising out of the Post-Petition Indebtedness. Notwithstanding anything to the contrary contained in this Final Order, the Superpriority Claims shall not be payable from the proceeds of the Avoidance Actions (as defined hereafter in Paragraph 5) or the Estate Resolution Consideration (as hereafter defined in Paragraph 33).

5.      As security for the Post-Petition Indebtedness, the Lenders shall have and are hereby granted (effective upon the date of this Order and without the necessity of the recordation of mortgages, security agreements, pledge agreements, financing statements or otherwise) valid and perfected senior security interests in, and liens on (collectively, the "Liens"), all assets of the Debtors of any nature whatsoever and wherever located, tangible or intangible, whether now or hereafter acquired, including without limitation, and any and all proceeds of the foregoing, a 100% pledge of any of the Debtors' capital stock in which any of the Debtors have an interest and the stock of all of the Debtors' subsidiaries, causes of action (including without limitation any commercial tort claims), any avoidance actions under Bankruptcy Code §§ 544, 545, 547,

~~548, 549, 550 or 553 and the proceeds thereof~~investment property, leases (provided however,

such lien on ~~avoidance actions~~non-residential real property leases shall only ~~attach upon entry of~~

~~the Final Order and shall be limited to the amount of the Post-Petition Indebtedness except for~~

~~Section 549), investment property, leases~~extend and be limited to the proceeds of such leasehold

interests, unless the lease does not prohibit the granting of a lien thereon, or the Lenders are not

otherwise allowed to obtain a lien thereon) and all substitutions thereto, accessions, rents and

proceeds of the foregoing, wherever located, including insurance and other proceeds, however

specifically excluding avoidance actions under Bankruptcy Code §§ 544, 545, 547, 548, 550 or

553 and the proceeds thereof (collectively, the "Avoidance Actions") and the Estate Resolution

Consideration (as hereafter defined in Paragraph 33) (collectively, with all proceeds and products

of any or all of the foregoing and including the Pre-Petition Collateral, the "Collateral"):

      a.      Pursuant to Bankruptcy Code § 364(c)(2), a first priority, perfected Lien upon all of the Debtors' right, title and interest in, to and under all Collateral that is not otherwise encumbered by a validly perfected security interest or lien senior to the Liens of the Pre-Petition Lenders on the Petition Date (the "Prior Permitted Liens");

      b.      Pursuant to Bankruptcy Code § 364(d)(1), a first priority, senior perfected Lien upon all of the Debtors' right, title and interest in, to and under the Pre-Petition Collateral, provided that such first priority senior Lien shall be subject and junior to the Prior Permitted Liens; and

      c.      Pursuant to Bankruptcy Code § 364(c)(3), a second priority, junior perfected Lien upon all of the Debtors' right, title and interest in, to and under all other Collateral that is subject to Prior Permitted Liens to the extent such perfection in respect of a Pre-Petition Date claim is expressly permitted under the Bankruptcy Code.

12

Except to the extent expressly set forth in clauses (a), (b) and (c) of this paragraph and ~~Paragraph~~Paragraphs 6 and 33 hereof, the Liens granted pursuant to this Final Order and the Pre-Petition Lenders' Pre-Petition Agreements to the Lenders to secure the Post-Petition Indebtedness shall not be subordinated to or made pari passu with any other lien or security interest. The provisions of any intercreditor agreements or subordination agreements that subordinate liens and security interests to the liens and security interests of the Lenders or other indentures that subordinate any claims to the claims of the Lenders shall remain in full force and effect and shall continue with respect to the liens and security interests granted to the Lenders in the Collateral.

6. Any provision of this Final Order or the Pre-Petition Lenders' Pre-Petition Agreements to the contrary notwithstanding, the Liens and Superpriority Claims granted to the Lenders pursuant to the Pre-Petition Lenders' Pre-Petition Agreements and this Order shall be subject and subordinate to a carve-out (the "Carve-Out") for (a) quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the Clerk of the Bankruptcy Court, (b) all budgeted operating expenses of the Debtors accrued prior to the termination of the Post-Petition Financing, and (c) following ~~the occurrence~~a Default Notice (as hereafter defined in Paragraph 15) and during the pendency of a Default or an Event of Default pursuant to which the Lenders discontinue the Post-Petition Financing (as each such term is defined in the Pre-Petition Lenders' Pre-Petition Agreements or in this Order, an amount which is not otherwise payable from funds which are not the Collateral of the Lenders or proceeds therefrom), an amount equal to the sum of (i) the aggregate allowed unpaid fees and expenses payable under Sections 330, 331 and/or 363 of the Bankruptcy Code to each professional person retained by the Debtors pursuant to an order of this Court (the "DIP Professionals"), including the Debtors'

approved attorneys (the "Debtors' Counsel") (other than fees and expenses, if any, of such professional persons incurred, directly or indirectly, in respect of, arising from or relating to the investigation, initiation or prosecution of any cause of action against the Pre-Petition Lenders, the Lenders or with respect to the Post-Petition Indebtedness and the Pre-Petition Lenders' Pre-Petition Loan Indebtedness or the Pre-Petition Lenders' Pre-Petition Agreements) in an amount not to exceed the amount budgeted on an accrual basis (whenever ultimately allowed by the Court or paid ~~and with the amount allocated to the professionals of the Official Committee of Unsecured Creditors to be subject to Final Order~~) for each such professional, less any amount approved by the Court and paid (the "Budget Cap") in the Budget described in Paragraph 11 hereof as of the date of such discontinuation of the Post-Petition Financing pursuant to a Default or Event of Default less amounts paid to the DIP Professional by order of this Court (the "DIP Professionals' Carve-Out"); if the case is not converted to a case under chapter 7 of the Bankruptcy Code or dismissed on or before the end of the initial Budget period, and the Lenders have not declared an Event of Default and discontinued the Post-Petition Financing, the Budget Cap shall be a roll forward in the amount budgeted for the Debtors' Counsel for the final week in the initial Budget on a weekly basis until such Default or Event of Default and discontinuation of the Post-Petition Financing, the case is dismissed, converted to chapter 7 or the parties agree on a new budget; (ii) if this case is converted to a case under chapter 7 of the Bankruptcy Code or on the occurrence of an Event of Default and the discontinuation of the Post-Petition Financing , the Carve-Out for the Debtors' Counsel shall also include the amount of $75,000 to pay fees and expenses (other than fees and expenses, if any, of such professional persons incurred, directly or indirectly, in respect of, arising from or relating to the investigation, initiation or prosecution of any cause of action against the Lenders or with respect to the Post-Petition Indebtedness or Pre-

14

Petition Lenders' Pre-Petition Loan Indebtedness or the Pre-Petition Lenders' Pre-Petition Agreements) incurred by or on behalf of the Debtors after conversion or an Event of Default, (ii and the discontinuation of the Post-Petition Financing; and (iii) fees and expenses (other than fees and expenses, if any, of such professional persons incurred, directly or indirectly, in respect of, arising from or relating to the initiation or prosecution of any cause of action against the Lenders or with respect to the Post-Petition Indebtedness or Pre-Petition Lenders' Pre-Petition Loan Indebtedness or the Lenders' Pre-Petition Agreements) of professionals for an official committee of unsecured creditors retained pursuant to court order (the "Committee Professionals")[5] not to exceed an amount to be negotiated with the Committee Professionals$150,000 less amounts allowed and paid to such professionals in these Chapter 11 Cases (the "Committee Carve-Out," and collectively with the DIP Professionals' Carve-Out, the "Professionals' Carve-Outs"). The Professionals' Carve-Outs may be increased if and only to the extent that the Lenders agree in writing in their respective sole discretion. The DIP Professionals and the Committee Professionals shall submit to the Debtors, with a copy to Lenders, copies of their bills for fees and expenses on a monthly basis. In order to effectuate the funding of the Carve-Out amounts set forth in the definition thereof, upon the sale of all or substantially all of the Debtors' assets, the Lenders shall set aside and retain for the benefit of each of the applicable professionals amounts of proceeds from the Collateral (which proceeds shall remain subject to Lenders' pre-petition and post-petition Liens) equal to the aggregate unused portion of the applicable Carve-Out amounts allocable to such professionals (the "Professional Fee Reserve"), and Lenders shall distribute funds (provisionally subject to final approval and allowance by the Court) from the Professional Fee Reserve from time to time to the

---

[5] The Committee has agreed that it will not retain advisors to the Committee.

applicable professionals for unpaid fees and disbursements of such professionals allowed by the Court and constituting part of the Carve-Outs (in the case of each such professional, in an aggregate amount not to exceed the unused portion of such professional's specified Carve-Out amount), and any funds remaining in the Professional Fee Reserve after the disposition of all final fee applications of the DIP Professionals and Committee Professionals shall be applied to the outstanding Lenders and Pre-Petition Lenders' indebtedness in accordance with the provisions of this Final Order. ~~Provided; provided~~, however, (x) following the earlier of the expiration of the Term or the Termination Date (as such terms are defined hereinafter), any Cash Collateral shall not be subject to the Carve-Out, but any professional fee incurred after the Petition Date and prior to the Termination Date shall remain subject to the Carve-Out and (y) the Carve-Out shall not include professional fees and disbursements incurred in connection with prosecuting or asserting any claims or causes of action against the Pre-Petition Lenders and/or challenging or raising any defense to the Pre-Petition Lenders' Pre-Petition Loan Indebtedness or the liens of the Pre-Petition Lenders~~; provided, however, that a Creditors' Committee shall be allowed to investigate the Pre-Petition Lenders' Pre-Petition Loan Indebtedness~~. Notwithstanding anything herein to the contrary, no Loans, Collateral, Cash Collateral, or any portion of the Carve-Out may be used to prosecute, object to or formally contest in any manner, or raise any defenses to, the amount, validity, perfection, priority, extent or enforceability of the Pre-Petition Lenders Pre-Petition Loan Indebtedness or Post-Petition Indebtedness or the liens securing the Pre-Petition Lenders' Pre-Petition Loan Indebtedness or Post-Petition Indebtedness, or to prosecute or assert any claims or causes of action against the Pre-Petition Lenders.

7.      Immediately upon entry of this Final Order, the Debtors are hereby authorized to use Cash Collateral, provided that the Pre-Petition Lenders are granted adequate protection for

any diminution in the value of the Collateral resulting from (i) the liens and security interests granted by the Post-Petition Financing and this Final Order or otherwise pursuant to Bankruptcy Code § 364(d), (ii) the Debtors' use of Cash Collateral pursuant to Bankruptcy Code § 363(c), (iii) the use, sale or lease of the Collateral (other than Cash Collateral) pursuant to Bankruptcy Code § 363(c) and (iv) the imposition of the automatic stay pursuant to Bankruptcy Code § 362(a):

    (i)    the Pre-Petition Lenders shall be and hereby are granted (effective upon the date of this Final Order and without the necessity of the execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements or otherwise), valid and perfected, replacement security interests in, and liens on (collectively, the "Replacement Liens"), all of the Debtors' right, title and interest in, to and under the Collateral, subject only to (xw) the Carve-Out, (yx) the Liens granted pursuant to this Final Order and the Pre-Petition Lenders' Pre-Petition Agreements to the Lenders to secure the Post-Petition Indebtedness and, (zy) any Prior Permitted Liens (after giving effect to this Final Order) prior in interest and senior to the Liens granted to the Lenders pursuant to this Final Order and the Pre-Petition Lenders' Pre-Petition Agreements, and (z) the Estate Resolution Consideration (as hereafter defined in Paragraph 33); and

    (ii)    the Pre-Petition Lenders shall be and hereby are granted, pursuant to Bankruptcy Code § 364(c)(1), Superpriority Claims, junior only to (x) the Superpriority Claims granted pursuant to this Final Order to the Lenders in respect of the Post-Petition Financing and (y) the Carve-Out; and, provided, however, that the Superpriority Claims of the Pre-Petition Lenders shall not be payable from the proceeds of the Avoidance Actions or the Estate Resolution Consideration (as hereafter defined in Paragraph 33).

8.    Under the circumstances, the adequate protection provided herein is reasonable and sufficient to protect the interests of the Pre-Petition Lenders; provided, however, that nothing herein contained shall affect or impair the Lenders' right to seek additional adequate protection of its interests. Notwithstanding any other provision hereof, the grant of adequate protection to the Pre-Petition Lenders pursuant hereto is without prejudice to the holders of any Prior Permitted Liens to seek modification of the grant of adequate protection provided hereby so as to

17

provide different or additional adequate protection, and without prejudice to the right of the Debtors or any other party in interest to contest any such modification, provided, however, that notwithstanding anything to the contrary contained in this Final Order, the Avoidance Actions and the Estate Resolution Consideration (as hereafter defined in Paragraph 33) shall not be available as adequate protection, or paid to the Pre-Petition Lenders under any circumstances.

9.     Except as set forth in Paragraphs 5 and 6 hereof, the Liens and Replacement Liens shall be prior and senior to all liens and encumbrances (other than Prior Permitted Liens) of all other secured creditors in and to such Collateral granted, or arising, after the Petition Date (including, without limitation, liens and security interests, if any, granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors). The Liens and Replacement Liens granted pursuant to this Final Order shall constitute valid and duly perfected security interests and liens, and the Pre-Petition Lenders shall not be required to file or serve financing statements, notices of lien or similar instruments in respect of the Pre-Petition Lenders' Pre-Petition Loan Indebtedness which otherwise may be required under federal or state law in any jurisdiction, or take any action, including taking possession, to validate and perfect such security interests and liens; and the failure by the Debtors to execute any documentation relating to the Liens or Replacement Liens shall in no way affect the validity, perfection or priority of such Liens or Replacement Liens. If, however, the Pre-Petition Lenders at their sole discretion shall determine to file any such financing statements, notices of lien or similar instruments, or to otherwise confirm perfection of such Liens or Replacement Liens, the Debtors are directed to cooperate with and assist in such process, the stay imposed by Bankruptcy Code § 362(a) is hereby lifted to allow the filing and recording of a certified copy of this Order or any such financing statements, notices of lien or similar instruments, and all such

18

documents shall be deemed to have been filed or recorded at the time of and on the date of this Final Order.

10. ~~Except as provided in a Final Order and without prejudice to the rights of any other party (but subject to the limitations thereon described below in~~Subject to Paragraph ~~26),~~33, proceeds or payments received by the Lenders and/or the Pre-Petition Lenders with respect to the Collateral upon which the Lenders had security interests or liens shall be applied as follows:

a. first, to the payment of all reasonable costs, fees and expenses, including attorneys' fees of the Lenders;

b. second, to the payment of Pre-Petition Lenders' Pre-Petition Loan Indebtedness consisting of accrued and accruing interest;

c. third, to the payment of Pre-Petition Lenders' Pre-Petition Loan Indebtedness consisting of principal;

d. fourth, to the payment of Post-Petition Indebtedness including all accrued and accruing interest, costs and expenses, including reasonable attorneys' fees; and

e. fifth, to the payment of the Post-Petition Indebtedness consisting of principal;

~~provided, however, that the Court reserves the right to re-allocate such payments in the event that it is determined by the Court that Pre-Petition Lenders did not maintain valid, perfected and enforceable liens on any of the Pre-Petition Collateral.~~ If, in the course of these Chapter 11 Cases, and contrary to the above provisions, the Court grants liens or security interests to others pursuant to Bankruptcy Code § 364(d) or any other provision of the Bankruptcy Code, which liens or security interests are senior or equal to the liens or security interests of the Lenders in the Collateral described above (collectively, "Subsequent Liens"),

then any proceeds of loans or extensions of credit secured by such Subsequent Liens shall be applied first to payment of the Pre-Petition Lenders' Pre-Petition Loan Indebtedness, including all attorneys' fees, costs and expenses, and the Pre-Petition Lenders shall retain all liens and security interests held by it on the Collateral until all of the Pre-Petition Lenders' Pre-Petition Loan Indebtedness is paid in full, and then to the Post-Petition Indebtedness.

11.    Attached hereto as Exhibit A is a ~~five (5) week Budget~~budget (the "Budget") for the period from November 17, 2010 through and including January ~~19,~~23, 2011, which has been consented to by the Lenders. The Budget reflects, on a line-item basis, anticipated cash receipts and expenditures on a weekly basis and includes all necessary and required expenses that the Debtors expect to incur during each month of the Budget. The Debtors shall be authorized to use the proceeds of the Post-Petition Indebtedness and the Collateral only for payment of such items as is set forth in the Budget and subject to the terms and conditions set forth in the Pre-Petition Lenders' Pre-Petition Agreements and this Final Order. The Budget shall be revised by the end of each month during the period of this Final Order, and which shall remain subject to the consent of the Lenders each month, provided, however, that the revised Budget may not reduce the amount of fees payable to the Committee Professionals. Not later than the second (2nd) business day of each week commencing with the second week of the period covered by the Budget, the Debtors shall provide to the Lenders ~~with~~and the Committee a variance report reflecting, on a line-item basis, the actual cash disbursements and revenues for the preceding week and the percentage variance (the "Variance Percent") of such actual disbursements and revenues from those reflected in the Budget for that period. Revenues less than ninety percent (90%) of the budgeted amount for (a) the first two-week period of the Budget, (b) the first three-week period of the Budget, and (c) any consecutive four-week period of the Budget ("Allowed

20

Revenue Variance") shall constitute an Event of Default in accordance with the provisions of this Final Order. Any disbursement by the Debtors other than for budgeted amounts as set forth in the Budget shall constitute an Event of Default in accordance with the provisions of this Final Order unless the Lenders consent to those changes in writing; provided, however, that the Debtors may make payments in excess of the total budgeted disbursements so long as (i) the Variance Percent of the aggregate of all actual disbursements for each week shall not exceed ten percent (10.0%) of the budgeted disbursements for that week; and (ii) the Variance Percent of the aggregate of all actual disbursements for (a) the first two-week period of the Budget, (b) the first three-week period of the Budget, and (c) any consecutive four-week period shall not exceed ten percent (10.0%) of the aggregate of all budgeted disbursements for such four-week period (subsections (i) and (ii) above are collectively, the "Allowed Disbursement Variance"). For the avoidance of doubt, any amount included in the Budget that is not incurred or paid during a particular week shall be permitted to be carried over into subsequent weeks. The Debtors, the Pre-Petition Lenders and the Committee each shall cooperate with the other in good faith in creating a wind-down budget that provides for the orderly wind-down of the Debtors' estates after the sale of substantially all of the Debtors' assets.

12. The Debtors shall continue their Pre-Petition cash management system with the Pre-Petition Lenders, which shall include a lockbox/blocked account to which the Lenders will have full dominion and control over Cash Collateral and the cash proceeds of the Collateral pursuant to a lockbox/blocked account agreement and a cash management order requested to be entered at the first day hearing, each in form and substance reasonably acceptable to the Lenders.

13. Immediately upon the entry of this Final Order, the Debtors shall account to the Lenders for all cash, checks, notes, drafts, instruments, acceptances or other property

21

representing cash or other proceeds of the Pre-Petition Collateral in the Debtors' possession, custody or control. All cash, checks, notes, drafts, instruments, acceptances and other property in the nature of items of payment representing proceeds of property and interests in property of the Debtors (collectively, "Cash Proceeds") currently in the possession of the Debtors or in any accounts in financial institutions, including any lock box or depository accounts, shall be deemed proceeds of the Collateral unless such proceeds are specifically identified as not being proceeds of Collateral. All Cash Proceeds shall be remitted to the Lenders in accordance with the terms of this Final Order and subject to Paragraph 10 hereof.

14.     The agreement by the Lenders to make any Post-Petition Financing available to the Debtors and the agreement of the Pre-Petition Lenders to allow the use of Cash Collateral and the Collateral shall continue until and shall include January ~~19, 2011~~23, 2011 (or such later date as may be agreed between the Debtors and the Lenders) or such earlier date as all Pre-Petition Lenders' Pre-Petition Loan Indebtedness and Post-Petition Indebtedness is paid in full (the "Term"), unless terminated prior to this date upon the occurrence of the Termination Date or otherwise pursuant to the terms of the Pre-Petition Lenders' Pre-Petition Agreements or this Final Order.

15.     If a Default or an Event of Default (as defined in the Pre-Petition Lenders' Pre-Petition Agreements or in this Final Order) occurs, the Lenders shall have the right to immediately suspend funding under Post-Petition Financing and upon the Lenders' providing five (5) business days written notice to the Debtors, the ~~office of the United States Trustee, and any statutory committees appointed in these Chapter 11 Cases~~UST, and the Committee ("Default Notice"), the Lenders may terminate the Post-Petition Financing facility (the date of any such termination, the "Termination Date") and declare the Loans to be immediately due and payable,

and the automatic stay pursuant to Bankruptcy Code § 362(a) shall be deemed lifted and modified, without further order of this Court, to permit the Lenders to exercise any and all of their rights and remedies under the Pre-Petition Lenders' Pre-Petition Agreements and this Final Order; provided, however, that the obligations and rights of the Lenders and the Debtors with respect to all transactions which have occurred prior to the Termination Date shall remain unimpaired and unaffected by any such termination and shall survive such termination (including the Carve-Out); and provided further that upon such termination the Lenders shall be deemed to have retained all of their rights and remedies, including, without limitation, as provided in the Pre-Petition Lenders' Pre-Petition Agreements and under the Bankruptcy Code. The Debtors' right to use Cash Collateral shall terminate automatically on the Termination Date; provided however that subsequent to the issuance of the Default Notice the Debtors or the Creditors' Committee may seek entry of an Order after notice and hearing allowing use of Cash Collateral and prohibiting the Pre-Petition Lenders from taking the actions contemplated in this paragraph. Notwithstanding the provisions of this Paragraph to the contrary, with regard to access to or use of any leasehold premises, such access or use shall be limited to such access or use as is permitted in accordance with applicable state law, as is set forth in the affected lease, as may be agreed to by the affected landlord or as is ordered by this Court after notice and a hearing.

16.     An Event of Default under this Final Order shall include: (i) the entry of an order dismissing any of these Chapter 11 Cases or converting any of these Chapter 11 Cases to Chapter 7 cases, (ii) the entry of an order appointing a Chapter 11 trustee in any of these Chapter 11 Cases, (iii) the entry of an order granting any other claim superpriority status or a lien (other than a Prior Permitted Lien) equal or superior to the liens granted to the Lenders (except pursuant to an order under Bankruptcy Code § 506(c)), (iv) the entry of an order staying, reversing, vacating

23

or otherwise modifying the Post-Petition Financing under this Final Order (except as modified in a final order acceptable to Lenders) without the Lenders' prior written consent, (v) the entry of an order in any of these Chapter 11 Cases appointing an examiner having enlarged powers beyond those set forth under Bankruptcy Code § 1106(a)(3) and (4), (vi) an Event of Default or Default under the Pre-Petition Lenders' Pre-Petition Agreements other than an existing default or one related to any financial covenants or to the filing of these ~~cases~~Chapter 11 Cases or the consequences thereof, (vii) any material representation or material warranty by the Debtors to the Lenders that is incorrect or misleading in any material respect when made, (viii) there shall occur a material adverse disruption or change in the orderly sale of the Debtors' business and assets as a going concern or a change of control shall occur other than pursuant to a plan of reorganization or sale, (ix) the entry of any order granting any relief from the automatic stay so as to allow a third party to proceed against any material asset or assets of the Debtors, other than relating to assets subject to Prior Permitted Liens which if granted will not materially or adversely affect current operations, (x) the ~~entry of the Final Order shall not have occurred within thirty (30) days after the Petition Date, (xi) the~~ commencement ~~by the Debtors~~ of ~~other~~any actions adverse to the Lenders and the Pre-Petition Lenders or their rights and remedies under this ~~Order, the~~ Final Order ~~approving the Motion~~, or any other Bankruptcy Court order, (~~xii~~xi) the failure to pay in full the Post-Petition Indebtedness by the last day of the Term, (xii) the Allowed Revenue Variance or the Allowed Disbursement Variance as set forth in Paragraph 11 herein, is exceeded or (~~xiv~~xiii) the failure to meet any of the 363 Sale Benchmarks (as defined below). The term "Default" herein means the occurrence of any event which except for the passage of time or the giving of notice or both would constitute an Event of Default (as defined in the Pre-Petition Lenders' Pre-Petition Agreements or in this Final Order).

24

17. Upon the occurrence of a Default or an Event of Default, the Lenders may exercise their rights and remedies and take all or any of the following actions without further modification of the automatic stay pursuant to Bankruptcy Code § 362 which is hereby deemed modified and vacated to the extent necessary to permit such exercise of rights and remedies and the taking of such actions and without further order of or application to this Court: (a) suspend all Post-Petition Financing and loans to the Debtors, and enjoin and prohibit the Debtors from using Cash Collateral to the extent that such Default or Event of Default would permit such relief under the Pre-Petition Lenders' Pre-Petition Agreements, as amended hereby; (b) suspend amounts in any accounts maintained with the Lenders, or otherwise enforce rights against all or part of any Collateral in the possession of the Lenders to the extent that such Default or Event of Default would permit such relief under the Pre-Petition Lenders' Pre-Petition Agreements, as amended hereby; and/or (c) subject to the provisions of Paragraph 15 above, take any other action or exercise any other right or remedy of the Pre-Petition Lenders under the Pre-Petition Lenders' Pre-Petition Agreements, this Final Order or by operation of law. Upon the Debtors' receipt of a Default Notice, they shall immediately cease making any disbursements except those already accrued in accordance with the Budget, subject to further order of the Court after notice and a hearing. To the extent of any inconsistencies between the provisions of this Paragraph 17 and Paragraph 15, the provisions of Paragraph 15 shall control.

18. Without further order of this Court, and in consideration of other accommodations provided by the Lenders and the Pre-Petition Lenders, the Debtors shall reimburse the Lenders and the Pre-Petition Lenders for all reasonable out-of-pocket filing and recording fees, if any, reasonable attorneys' and paralegals' fees, the Lenders' Consultants' (as defined below) fees, and costs and expenses and internal audit fees and expenses incurred by the Lenders: (i) in the

25

preparation and implementation of this Final Order and the various Loans and other Post-Petition Financing, (ii) in the representation of the Lenders and the Pre-Petition Lenders in the proceedings, and (iii) as otherwise provided in the Pre-Petition Lenders' Pre-Petition Agreements; Pre-Petition Lenders shall provide copies of Invoices for such fees and expenses to the ~~Office of the United States Trustee~~UST and the Committee, except for those related to the prosecution of the D&O Claim (as hereafter defined in Paragraph 33(d)). The UST and the Committee shall have ten (10) days to review and object to such Invoices; if no such objection is filed within the ten (10) day review period, the Debtors shall reimburse the Lenders and the Pre-Petition Lenders in the amount set forth in the Invoice. Subject to the Lenders' discretion, the reimbursement contemplated hereby may be made by deducting such amounts from collections of the Lenders or by adding such amounts to the Post-Petition Indebtedness. Further, Ally shall be paid a Post-Petition Financing fee of $100,000, which shall be earned immediately upon entry of this Final Order but shall not be payable until the earlier of (a) the sales described in Paragraph 20 hereof and (b) the Termination Date, and shall constitute Post-Petition Indebtedness of the Debtors.

19.     The Debtors are hereby required to deliver to the Lenders and the Committee such other financial and other information concerning the business and affairs of the Debtors as the Lenders and the Committee shall reasonably request from time to time, including, without limitation, the financial reports and information provided to the Pre-Petition Lenders under the Pre-Petition Lenders' Pre-Petition Agreements, provided however that the Debtors reserve their right to claim that any such documents are protected under attorney-client privilege to the extent permitted under applicable law. The Debtors shall cooperate with and permit the Lenders to perform physical inventories of all assets in the Debtors' facilities at any reasonable times

26

requested by the Lenders. The Debtors shall further provide the Lenders with detailed information as to the extent and composition of the Collateral and any collections thereon. For the avoidance of any doubt, any report provided to the Lenders and/or the Pre-Petition Lenders shall be provided to the Committee at the same time and in the same manner as provided to the Lenders and/or the Pre-Petition Lenders, as the case may be.

20.     The Lenders' and the Pre-Petition Lenders' obligations hereunder and under the Pre-Petition Lenders' Pre-Petition Agreements shall be subject to the following benchmarks for certain events in these Chapter 11 Cases (each and collectively, the "363 Sale Benchmarks"):

(i)     the Debtors shall have an executed Asset Purchase Agreement in form and substance reasonably acceptable to Lenders for the sale of the seven (7) The Office stores by November 30, Beer Bar & Grill restaurants by December 15, 2010 which sale shall be approved by order of the Court, in form and substance reasonably acceptable to Lenders on or before January 10, 2011;

(ii)    a Bid Procedures Order (in form and substance satisfactory to the Pre-Petition Lenders) for the remaining operating store assets shall be entered by the Court on or before December 22, 2010;

(iii)   an auction under the Bid Procedures Order shall have been held by the Debtors on or before January 24, 2011;

(iv)    the Debtors shall select a Prevailing Bidder (acceptable to Lenders) on or before January 28, 2011;

(v)     a Sale Hearing shall have been held and a Sale Order approving the sale under Section 363 of the Bankruptcy Code (in form and substance acceptable to Lenders) shall have been entered on or before February 3, 2011;

(vi)    the Debtors shall retain on or before December 2, 10, 2010 an investment banker reasonably acceptable to Lenders to coordinate the above referenced sale and such advisor shall remain engaged; and

(vii)   the Debtors shall retain Hilco Real Estate LLC or such other party that is reasonably acceptable to Lenders on or before December 2, 10, 2010 to coordinate the sale of liquor licenses which are not otherwise sold in the process described above and such advisor shall remain engaged.

27

21.     Having been found to be extending credit and making Loans to the Debtors in good faith, the Lenders shall be entitled to the full protection of Bankruptcy Code § 364(e) with respect to the Post-Petition Financing and the Liens created or authorized by this Final Order in the event that this Final Order or any authorization contained herein is stayed, vacated, reversed or modified on appeal. Any stay, modification, reversal or vacation of this Final Order shall not affect the validity of any obligation of the Debtors to the Lenders incurred pursuant to this Final Order. Notwithstanding any such stay, modification, reversal or vacation, all Loans made pursuant to this Final Order, all use of Cash Collateral and all other Post-Petition Financing incurred by the Debtors pursuant hereto or the Pre-Petition Lenders' Pre-Petition Agreements prior to the effective date of any such stay, modification, reversal or vacation, shall be governed in all respects by the provisions hereof and the Lenders and the Pre-Petition Lenders shall be entitled to all the rights, privileges and benefits of this Final Order, including without limitation, the Liens, Replacement Liens and Superpriority Claims granted herein.

22.     The transactions contemplated by the Post-Petition Financing are not intended to provide the Lenders or the Pre-Petition Lenders with sufficient control over the Debtors so as to subject the Lenders to any liability (including, without limitation, environmental liability as an "owner," "operator," or "responsible person" as those terms are used in the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended by the Superfund Amendments and Reauthorizations Act of 1986) in connection with the management of the Debtors' business or any of the Debtors' properties. By providing the Post-Petition Financing or taking any actions pursuant to this Final Order, the Lenders shall not: (1) be deemed to be in control of the operations or sale of the Debtors; or (2) be deemed to be acting as

a "responsible person" or "owner or operator" with respect to the operation, management or sale of the Debtors.

23. The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order, including without limitation (a) confirming any plan of reorganization in any of these Chapter 11 Cases (and the Post-Petition Financing shall not be discharged by the entry of any such order or pursuant to Bankruptcy Code § 1141(d)(4); (b) converting any of these Chapter 11 Cases to Chapter 7 cases; or (c) dismissing any of these Chapter 11 Cases, and the terms and provisions of this Final Order as well as the Superpriority Claims, Liens and Replacement Liens granted pursuant to this Final Order and the Pre-Petition Lenders' Pre-Petition Agreements shall continue in full force and effect notwithstanding the entry of such order, and such Superpriority Claims, Liens and Replacement Liens shall maintain their priority as provided by this Final Order until all Pre-Petition Lenders' Pre-Petition Loan Indebtedness and all Post-Petition Indebtedness is indefeasibly paid in full and discharged.

24. The Lenders may, at their sole discretion, retain additional third party consultants selected by the Lenders to review matters pertaining to the business and properties of the Debtors, each at the Debtors' sole reasonable expense (collectively, the "Lenders' Consultants") which expense shall not affect the payment of any other budgeted items in the Budget. The Debtors will permit the Lenders' Consultants to examine the respective corporate, financial and operating records, and, at the Debtors' sole reasonable expense, make copies thereof, inspect the assets, properties, operations and affairs of the Debtors, visit any or all of the offices of the Debtors to discuss such matters with their officers, independent auditors, accountants or consultants (and the Debtors hereby authorize such independent auditors, accountants and consultant to discuss such matters with the Lenders' Consultants), and the Debtors will cooperate

29

with the Lenders' Consultants in all respects.  Copies of Invoices for the Lenders' Consultants

shall be provided to the ~~Office of the United States Trustee.~~Committee and the UST, except for

those related to the prosecution of the D&O Claim (as hereafter defined in Paragraph 33(d)).

The Committee and the UST shall have ten (10) days to review and object to such Invoices; if no

such objection is filed within the ten (10) day review period, the Debtors shall reimburse the

Lenders and the Pre-Petition Lenders in the amount set forth in the Invoice.

     25.     ~~Except as provided in a Final Order, in~~In consideration for the Post-Petition

Financing, the Debtors on behalf of themselves and their successors and assigns (collectively, the

"Releasors"), ~~but without prejudice to the rights of an official committee appointed in these~~

~~Chapter 11 Cases to assert claims on behalf of the Debtors' estates (subject to Paragraph 26~~

~~below),~~ shall forever release, discharge and acquit the Lenders and the Pre-Petition Lenders and

their officers, directors, employees, agents, attorneys and predecessors in interest (collectively,

the "Releasees") of and from any and all claims, demands, damages, liabilities, responsibilities,

disputes, remedies, actions, causes of action, indebtedness and obligations, of every type,

including, without limitation, any so-called "Lenders liability" claims or defenses, which arose

on or prior to the date this Order is entered with respect to the Debtors, the Pre-Petition Lenders'

Pre-Petition Loan Indebtedness, the Collateral, the Pre-Petition Lenders' Pre-Petition

Agreements, the Post-Petition Indebtedness or the Post-Petition Financing.

     26.     ~~Except as provided in a Final Order, the~~The findings contained in recital

paragraphs of this Final Order and the releases granted in paragraph 25 of this Final Order shall

be binding upon all parties in interest, including without limitation, the Debtors and ~~any statutory~~

~~committees appointed in these Chapter 11 Cases, unless (a) a party in interest (including any~~

~~statutory committee appointed in these Chapter 11 Cases) has properly filed an adversary~~

proceeding or commenced a contested matter (subject to the limitations set forth in Paragraph 6) challenging the amount, validity, enforceability, perfection or priority of the Pre-Petition Lenders' Pre-Petition Loan Indebtedness or the Pre-Petition Lenders' liens on the Pre-Petition Collateral in respect thereof, no later than a date that is forty-five (45) days after formation of the official committee of unsecured creditors; or (b) otherwise asserted any claims or causes of action against the Pre-Petition Lenders relating to the Pre-Petition Lenders' Pre-Petition Loan Indebtedness on behalf of the Debtors' estates, no later than the date that is ninety (90) days after the formation of an official committee of unsecured creditors, and the Court subsequently enters a judgment in favor of the plaintiff in any such timely and properly filed adversary proceeding or contested matter. If no such adversary proceeding or contested matter is properly commenced as of such respective date, the Pre-Petition Lenders' Pre-Petition Loan Indebtedness shall constitute an allowed fully secured claim, not subject to subordination and otherwise unavoidable respectively. Subject only to the rights of set forth in this paragraph, for the Committee. For all purposes in these Chapter 11 Cases and any subsequent Chapter 7 cases, the Pre-Petition Lenders' liens on the Pre-Petition Collateral shall be deemed legal, valid, binding, perfected, not subject to defense, counterclaim, offset of any kind, subordination and otherwise unavoidable, and the Pre-Petition Lenders, the Pre-Petition Lenders' Pre-Petition Loan Indebtedness and the Pre-Petition Lenders' liens on the Pre-Petition Collateral shall not be subject to any other or further challenge by any party in interest seeking to exercise the rights of the Debtors' estates, including without, limitation, any successor thereto. If any such adversary proceeding or contested matter is properly commenced as of such date, the findings contained in the recital paragraphs of this Order shall nonetheless remain binding on all parties in interest except to the extent that such findings were expressly challenged in such adversary proceeding or contested

31

matter, and all claims other than those claims raised in such challenge shall be subject to the release contained in paragraph 25 of this Order. If such adversary proceeding or contested matter is dismissed or adjudicated in favor of Pre-Petition Lenders, the findings and releases contained herein shall be effective.

27.     The provisions of this Final Order shall be binding upon and inure to the benefit of the Lenders, the Pre-Petition Lenders and their successors and assigns, and the Debtors, and their successors and assigns, including any trustee or other fiduciary hereafter appointed in these Chapter 11 Cases as a legal representative of the Debtors or the Debtors' estates.

28.     Except as provided in a Final Order, Pre-Petition Lenders shall have the right to "credit bid" the amount of the Pre-Petition Lenders' Pre-Petition Loan Indebtedness as of the date of such bid during any sale of all or substantially all of the Debtors' assets to the extent it includes the sale of Collateral, including without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any restructuring plan subject to confirmation under section 1129(b)(2)(A)(iii) of the Bankruptcy Code.

29.     Subject to and conditioned upon entry of a Final Order, inIn no event shall the Pre-Petition Lenders be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any Collateral.

30.     Pre-Petition Lenders shall not be required to file a Proof of Claim in the Debtors'these Chapter 11 Cases.

31.     The Debtors are authorized to perform all acts, and execute and comply with the terms of such other documents, instruments and agreements in addition to the Pre-Petition Lenders' Pre-Petition Agreements, as the Lenders may reasonably require, as evidence of and for the protection of the Post-Petition Financing, or which otherwise may be deemed reasonably

32

necessary by the Lenders and/or the Pre-Petition Lenders to effectuate the terms and conditions of this Order and the Pre-Petition Lenders' Pre-Petition Agreements.

32.    To the extent there exists any conflict between the Pre-Petition Lenders' Pre-Petition Agreements and the terms of this ~~Final~~ Order, this~~Final~~ Order shall govern.

33.    ~~The Final Hearing will be held on December 8, 2010 at 10:30 a.m.  The Debtors shall, on or before November 22, 2010, mail copies of a notice of the entry of this Order and the date of the Final Hearing, together with a copy of this Order to the parties having been given notice of the Preliminary Hearing, to any party which has filed prior to such date a request for notices with this Court and to any counsel for any statutory committee of unsecured creditors appointed pursuant to Bankruptcy Code § 1102.  The notice of entry of this Order shall state that any party in interest objecting to the Post-Petition Financing shall file written objections with the Clerk of the United States Bankruptcy Court for the District of Delaware, by no later than 4:00 p.m. on December 3, 2010.  Objections shall be served so that the same are received on or before such date and time by: (a) counsel for the Debtors (as set forth in the signature pages below); (b) counsel for the Lenders (as set forth in the signature pages below), and (c) the Office of the United States Trustee, Attn: Juliet M. Sarkassian, Esq., 844 King Street, Suite 2207, Wilmington, DE 19801.~~Resolution with the Committee

The following agreement between the Lenders, the Pre-Petition Lenders and the Committee is hereby approved as a part of the terms, conditions and consideration set forth herein:

a. $125,000 plus five percent (5.0%) of the net proceeds (after costs of sale) from the sale of the seven (7) The Office Beer Bar & Grill restaurants (collectively, the "Office Restaurants") in excess of $2,500,000 shall be paid to the Debtors' estates (as opposed to the Lenders hereunder); provided however that the first $125,000 of such proceeds distributed to the holders of general unsecured claims shall not be shared with the Pre-Petition Lenders as holders of general unsecured claims (the "Office Resolution Consideration").

b. $125,000 (the "First $125,000") plus four percent (4.0%) of the net proceeds (after costs of sale) from the sale or liquidation of the Debtors' estates (other than (i) the Office Restaurants, (ii) the D&O Claim (defined below), and (iii) Avoidance Actions) in excess of $4,000,000 (the amount over $4,000,000 the "Sharing Percentage Recovery"), shall be paid to the Debtors' estates (as opposed to the Lenders hereunder); provided however that the First $125,000 and the first $125,000 of the Sharing Percentage Recovery distributed to the holders of general unsecured claims shall not be shared with the Pre-Petition Lenders as holders of general unsecured claims (the "Other Assets Resolution Consideration").

c. In the event there is a single sale of substantially all of the assets of the Debtors' estates or a sale of the Debtors' assets that occurs other than as contemplated in

34

(a) and (b) above, the purchase price shall be allocated between the Office Restaurants and the other assets and payment shall be made as set forth in (a) and (b) above.

      d.      Fifty percent (50%) of the net proceeds (after litigation fees, costs and expenses actually incurred) (the "D&O Shared Proceeds") of the claims against officers and directors, including, but not limited to those claims set forth in the Complaint filed in Ableco Finance LLC vs. CB Holding Corp., _et al._ pending in the Supreme Court of the State of New York, New York County as Case No. 650437/2010 (the "D&O Claim") shall be paid to the Debtors' estates (as opposed to the Lenders hereunder); provided however that the first $1,000,000 of the D&O Shared Proceeds distributed to the holders of general unsecured claims shall not be shared with the Pre-Petition Lenders as holders of general unsecured claims (the "D&O Resolution Consideration," and together with the Office Resolution Consideration and the Other Assets Resolution Consideration, the "Estate Resolution Consideration"). The Lenders shall diligently prosecute the D&O Claim and consult with, and provide regularly timely reports to, the Committee regarding all material aspects of the litigation; provided, however, that the Lenders shall have the right to discontinue their prosecution of the D&O Claim upon providing twenty (20) days written notice to the Committee, at which time the Committee shall have the opportunity to prosecute the D&O Claim. The Pre-Petition Lenders shall not agree to, and shall have no authority to bind the Debtors' estates to, any settlement of the D&O Claim without first obtaining the prior written consent of the Committee, which consent shall not be unreasonably withheld, provided, however, the Committee may review and investigate the propriety of any proposed settlement of the D&O Claim by the Pre-Petition Lenders.

35

e. The Committee consents to the terms, conditions and provisions of this

Final Order.

Dated: ~~November~~December __, 2010
Wilmington, Delaware

_____

THE HONORABLE ~~KEVIN J~~MARY F.
~~CAREY~~WALRATH
~~CHIEF~~UNITED STATES BANKRUPTCY JUDGE

Dated: ~~November~~December ___, 2010

STIPULATED AND AGREED:

**CAHILL GORDON & REINDEL LLP**


By:_____

    Joel H. Levitin, Esq.
    Richard A. Stieglitz, ~~Esq.~~
    ~~Joel H. Levitin~~Jr., Esq.
    Eighty Pine Street
    New York, New York  10005-1702
    Telephone: (212) 701-3770
    Facsimile: (212) 378-2449

    Mark D. Collins, Esq.
    Christopher M. Samis, Esq.
    Richards, Layton & Finger, P.A.
    One Rodney Square
    920 North King Street
    Wilmington, Delaware  19801
    Telephone: (302) 651-7700
    Facsimile: (302) 651-7701

    Proposed Counsel to Debtors


**PACHULSKI STANG ZIEHL & JONES LLP**


By:_____

    Jeffrey N. Pomerantz, Esq.
    Jason S. Pomerantz, Esq.
    10100 Santa Monica Boulevard, 11th Floor
    Los Angeles, CA 90067-4100
    Telephone: (310) 277-6910
    Facsimile: (310) 201-0760

    Bradford J. Sandler, Esq.
    919 North Market Street, 17th Floor
    Wilmington, DE 19899-8705 (courier 19801)
    Telephone:  (302) 652-4100
    Facsimile: (302) 652-4400

    Proposed Counsel to the Committee

37

**VEDDER PRICE P.C.**


By:_____

      Douglas J. Lipke, Esq. (IL Bar No. 0312457)
      Jonathan E. Aberman, Esq. (IL Bar No. 6255541)
      222 N. LaSalle Street, Suite 2600
      Chicago, Illinois 60601
      Telephone: (312) 609-7500
      Facsimile: (312) 609-5005

      ~~Pepper Hamilton LLP~~
      David B. Stratton, Esq.
      ~~Hercules~~Pepper Hamilton LLP
      ~~LLP~~Hercules Plaza
      1313 Market Street
      Suite 5100
      P.O. Box 1709
      Wilmington, Delaware 19899-1709
      Telephone: (302) 777-6566
      Facsimile: (302) 421-8390

      Counsel to Ally Commercial Finance LLC


**BINGHAM McCUTCHEN LLP**


By:_____

      Julia Frost-Davies, Esq.
      One Federal Street
      Boston, Massachusetts 02110
      Telephone: (617) 951-8000
      Facsimile: (617) 951-8736

      Katherine G. Weinstein, Esq.
      399 Park Avenue
      New York, New York 10022-4689
      Telephone: (212) 705-7000
      Facsimile: (212) 752-5378

      Counsel to Wells Fargo Capital Finance, Inc.