**EXHIBIT 1 TO SALE PROCEDURES ORDER**

**SALE PROCEDURES IN CONNECTION WITH THE SALE OF THE
DEBTORS' ASSETS COMPRISING THE OFFICE BEER BAR & GRILL
AND ASSUMPTION AND ASSIGNMENT OF CERTAIN RELATED
EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

By motion dated December 23, 2010 (Docket No. 213) (the "Motion"),[1] the debtors and debtors-in-possession in the Chapter 11 cases captioned *In re: CB HOLDING CORP., et al,* Case No. 10-13683 (MFW) (Jointly Administered) (collectively, the "Debtors") pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), sought, among other things, approval of the process and procedures through which they will seek bids for the purchase of assets (collectively, the "Assets") comprising The Office Beer Bar & Grill business and assumption and assignment of certain related executory contracts and unexpired leases (the "Assumed Agreements").

On January 6, 2011, the Bankruptcy Court entered an order (the "Sale Procedures Order"), which, among other things, (i) approved the Motion and authorized the Debtors to market the Assets and solicit bids for same using the Sale Procedures set forth below (collectively, the "Sale Procedures") and (ii) authorized the Debtors to enter into a purchase agreement (the "Stalking Horse Purchase Agreement") with Villa Enterprises Ltd., LLC, as the stalking horse bidder (the "Stalking Horse Bidder") for the Assets, subject to the terms and conditions thereof.

A.  **Due Diligence**

The Debtors, through their investment banking advisor, Raymond James & Associates, Inc. ("RJ"), will afford any party that executes an appropriate confidentiality agreement and demonstrates that is interested in making a bid to purchase the Assets such due diligence access or additional information as may be reasonably requested by such party that RJ determines to be reasonable and appropriate.  Notwithstanding anything contained herein to the contrary, RJ will decide what, if any, diligence information to make available to a particular potential bidder, and neither RJ nor its representatives will be obligated to furnish any information of any kind whatsoever to any party.  Notwithstanding anything to the contrary set forth above, except for good reason, any confidentiality agreement will not be materially more restrictive than the confidentiality agreement signed by the Stalking Horse Bidder, and any interested party that signs such a confidentiality agreement will be provided no less information of the same type and detail as provided to the Stalking Horse Bidder.  To the extent RJ and/or the Debtors decide not to provide due diligence to any requesting party, RJ or the Debtors, as appropriate, will promptly notify the Lenders, the Committee, and the United States Trustee of the identity of such party and the diligence information or materials that was not provided.

**Interested parties requesting information about the qualification process or due diligence should contact David Abell or Mike Pokrassa of RJ, at 212 885-1820 and 212 885-1815, respectively.**

---

[1]    All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

## B.    Bid Requirements

1.    **Delivery of Bids.**  No later than **4:00 p.m. (Eastern Time) on January 14, 2011** (such date or the date of the last extension as provided below, the "Bid Deadline"), each potential bidder interested in participating in the bidding process must deliver copies of its bid and the supporting materials described below to the following parties (collectively, the "Notice Parties"):

**PROPOSED COUNSEL FOR THE DEBTORS:**

RICHARDS, LAYTON & FINGER, P.A.
Attn:  Mark D. Collins and Christopher M. Samis
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
fax:  302 651-7701

CAHILL GORDON & REINDEL LLP
Attn:  Joel H. Levitin, Richard A. Stieglitz Jr., and Maya Peleg
Eighty Pine Street
New York, New York 10005
fax:  212 269-5420

**PROPOSED COUNSEL FOR THE COMMITTEE:**

PACHULSKI STANG ZIEHL & JONES LLP

Attn:  Jeffrey N. Pomerantz
10100 Santa Monica Boulevard, 11th Floor
Los Angeles, California  90067
fax:  310 201-0760

Attn:  Bradford J. Sandler
919 North Market Street, 17th Floor
Wilmington, Delaware 19899-8705 (courier 19801)
fax:  302.652.4400

**COUNSEL FOR ALLY COMMERCIAL FINANCE LLC:**

VEDDER PRICE P.C.
Attn:  Douglas J. Lipke
222 N. LaSalle Street, Suite 2600
Chicago, Illinois  60601
fax:  312 609-5005

**COUNSEL FOR WELLS FARGO**

**THE DEBTORS:**

Attn:  Gary Lembo and Ed Schwartz
1450 Route 22 East
Mountainside, New Jersey  07092
fax:  908 380-6860

**INVESTMENT BANKER FOR THE DEBTORS:**

RAYMOND JAMES
Attn:  David Abell and Mike Pokrassa
277 Park Avenue, 4th Floor
New York, New York  10172
fax:  212 885-1808

**THE UNITED STATES TRUSTEE:**

Attn:  Juliet Sarkessian
J. Caleb Boggs Federal Building
844 King Street, Suite 2313 Lock Box 35
Wilmington, Delaware  19801
fax:  302 573-6497

**COUNSEL FOR ABLECO FINANCE LLC**

SCHULTE ROTH & ZABEL LLP

-2-

**CAPITAL FINANCE, INC.**

BINGHAM McCUTCHEN
Attn: Katherine G. Weinstein
399 Park Avenue
New York, New York 10022-4689
fax: 212 752-5378

Attn: Eliot L. Relles
919 Third Avenue
New York, New York 10022

fax: 212 593-5955

      2.    **Form and Content of Bid.**  A bid is a signed letter from a Qualified Bidder (hereinafter defined) stating that:

      (1)    The Qualified Bidder offers to purchase the Assets at a certain designated price; and

      (2)    The Qualified Bidder's offer is not subject to any due diligence or financing contingency and is irrevocable until two (2) business days after the Initial Effective Transfer Date, whether or not to such Qualified Bidder. As described in detail in the Agreement and the Motion, the Initial Effective Transfer Date is, in pertinent part, the date that the first Restaurant satisfies all conditions to the obligations of the parties to the Agreement to consummate the sale and transfer of such Restaurant or has been granted a waiver of such conditions, including, but not limited to, all necessary approvals of the Bankruptcy Court, and counsel to Purchaser having confirmed that all necessary approvals have been given to the assignment of the Liquor License related to that Restaurant.

      3.    **Required Supporting Materials.**  A Qualified Bidder shall accompany its bid with:

      (1)    A clean and blacklined version of the Stalking Horse Purchase Agreement attached to the Motion as Exhibit A and available upon request, marked solely to indicate:

      (i)    the proposed purchaser's name;

      (ii)    a verified statement that it has not and will not collude with any other party; and

      (iii)    an increase in the purchase price set forth in the Stalking Horse Purchase Agreement of not less than $215,000 (i.e., a minimum initial overbid of no less than $3,615,000, including an agreement to pay at least $2.465 million on the Initial Effective Transfer Date); and

      (2)    Written evidence of a commitment for financing or other evidence of ability to consummate the transaction including the assumption and assignment of the Assumed Agreements (such as a current audited financial statement or copies of a bidder's bank account statement for each of the three months preceding the auction for the Assets (the "Auction")) and such other evidence of ability to consummate the

-3-

transaction as the Debtors may reasonably request.

(3)    **Required Good Faith Deposit.**  By the Bid Deadline, a bidder must provide a good faith deposit (the "Good Faith Deposit") equal to ten percent (10%) of such bidder's purchase price.  The Good Faith Deposit must be made by wire transfer to an escrow agent selected by the Debtors.  The Debtors will provide wiring instructions to any party making a request therefor in advance of the Bid Deadline.

4.    **Qualified Bid.**  A Bid received from a bidder that meets the requirements above is considered a "Qualified Bid" and a party that has delivered such materials shall be a "Qualified Bidder."

**THE DEBTORS RESERVE THE RIGHT, IN THEIR REASONABLE DISCRETION AFTER CONSULTATION WITH AND APPROVAL BY ALLY COMMERCIAL FINANCE LLC, WELLS FARGO CAPITAL FINANCE, INC., AND ABLECO FINANCE LLC (COLLECTIVELY, THE "LENDERS") AND THE COMMITTEE, TO WAIVE ANY NON-MATERIAL NONCOMPLIANCE WITH ANY ONE OR MORE OF THESE REQUIREMENTS AND DEEM ANY BID TO BE A QUALIFIED BID.**

C.    **Conduct and Termination of Bidding Process**

The Debtors, in their reasonable discretion after consultation with the Lenders and the Committee, will:  (i) determine whether any potential bidder satisfies the requirements specified above to become a Qualified Bidder; (ii) coordinate the efforts of Qualified Bidders in conducting their respective due diligence investigations regarding the Assets; (iii) determine whether to remove the Assets from the sale process under these Sale Procedures; (iv) evaluate bids from bidders and determine whether any such bid is a Qualified Bid; (v) negotiate any bid made to purchase the Assets and negotiate any related transaction issues; and (vi) make such other determinations as are provided in these Sale Procedures.  In the event that the Lenders submit a credit bid pursuant to Section 363(k) of the Bankruptcy Code, the Debtors will no longer consult with the Lenders on any issue related to the Sale, nor shall such Lenders' approval be required as to any issue related to the Sale.

D.    **Auction Participation – Qualified Participants and Baseline Bid**

Unless otherwise ordered by the Bankruptcy Court for cause shown, only a Qualified Bidder that has submitted a Qualified Bid is eligible to participate at the Auction.  The Debtors, in their reasonable discretion after consultation with the Lenders and the Committee, will select, the highest or otherwise best bid (the "Baseline Bid") to serve as the starting point for the Auction.  At least 24 hours prior to the Auction, the Debtors shall distribute copies of the Baseline Bid to each Qualified Bidder.  The Baseline Bid, at this time, is the bid in the amount of $3,400,000 of the Stalking Horse Bidder, and any initial overbid amount must exceed the bid of the Stalking Horse Bidder by at least $215,000, such that the minimum initial overbid must be at least $3,615,000 (including a payment of at least $2.465 million upon the Initial Effective Transfer Date).

E.    **The Auction**

1.    **Time and Place.**  If Qualified Bids are received by the Bid Deadline, the

-4-

Auction will be conducted starting at **10:00 a.m. (Eastern Time) on January 18, 2011** at the offices of Cahill Gordon & Reindel LLP, 80 Pine Street, New York, New York 10005.

AT THE DEBTORS' DISCRETION, QUALIFIED BIDDERS MAY APPEAR AT THE AUCTION TELEPHONICALLY.   THE DIAL-IN INFORMATION SHALL BE DISTRIBUTED TO QUALIFIED BIDDERS PRIOR TO THE AUCTION.

Each Qualified Bidder participating at the Auction will be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale.

Bidding at the Auction may be transcribed by a court reporter.

The Lenders reserve their rights to credit bid under Section 363(k) of the Bankruptcy Code, and the Lenders are deemed to be a Qualified Bidder.

2.      **Competitive Bidding.**  At the Auction, participants will be permitted to increase their bids and will be permitted to bid based only upon the terms of the Baseline Bid (except to the extent otherwise authorized by the Debtors after consultation with the Lenders and the Committee).  The bidding will start at the purchase price and terms proposed in the Baseline Bid and continue in increments of at least $50,000 in cash or such other increment announced by the Debtors during the Auction.  The Debtors will, from time to time, in an open forum, advise Qualified Bidders participating in the Auction of their determination as to the terms of the then highest or otherwise best bid.  For purposes of comparing any bids by VEM at the Auction that are higher than the bid set forth in the Stalking Horse Purchase Agreement (a "Higher VEM Bid") against any other bids that are made by a Qualified Bidder (other than VEM) pursuant to these Sale Procedures, each Higher VEM Bid shall include the amount of the Expense Reimbursement Fee, and in the event that a Higher VEM Bid is the Successful Bid at the Auction, the purchase price amount finally payable by VEM in respect of the Successful Bid will be reduced by such amount of the Expense Reimbursement Fee.

3.      **Evaluation of Qualified Bids.**  For the purpose of determining the Baseline Bid and whether a Qualified Bid submitted at the Auction is higher or otherwise better, the Qualified Bid will be valued based upon factors such as:  (a) the purported amount of the Qualified Bid; (b) the fair value to be provided to the Debtors under the Qualified Bid; (c) the ability to consummate any proposed sale transaction in a timely manner; and (d) any other factors that the Debtors may deem relevant after consultation with the Lenders and the Committee.  Upon the submission of any bid at the Auction, the Debtors shall announce to all participants whether the bid submitted is higher or otherwise better than the previously submitted bid and the basis for that determination.

4.      **Designation of Successful Bidder.**  Immediately prior to the conclusion of any Auction, the Debtors, after consultation with their financial and legal advisors, the Lenders, and the Committee (and each of their respective advisors), will:  (a) review each bid made at the Auction on the basis of financial and contractual terms and such factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the proposed Sale; (b) in their reasonable discretion after consultation with the Lenders and the Committee, identify the highest or best bid for the Assets at the Auction (the "Successful Bid");

and (c) notify all Qualified Bidders participating in the Auction, prior to its adjournment, of the name or names of the Qualified Bidder(s) making the Successful Bid for the Assets (the "Successful Bidder") and the amount and other material terms of the Successful Bid.   In connection with the Initial Effective Transfer Date of the transaction contemplated by the Successful Bid, the Successful Bidder will be entitled to a credit for the amount of its Good Faith Deposit.  Absent irregularities occurring in the course of the Auction, no further bids will be accepted after the close of the Auction.

5. **Presentation of Successful Bids to the Bankruptcy Court.**  At the Sale Hearing, the Debtors will present the Successful Bid to the Bankruptcy Court or, in the event there is no Auction, the Bid of VEM as reflected in the Stalking Horse Purchase Agreement, for approval.

**F.**     **Acceptance of Qualified Bids**

The Debtors presently intend to sell the Assets to the Qualified Bidder(s) that submit(s) the highest and/or best bid(s).  The Debtors' presentation to the Bankruptcy Court for approval of any Successful Bid does not constitute the Debtors' acceptance of such bid.  The Debtors will be deemed to have accepted a bid only when it has been approved by the Bankruptcy Court at the Sale Hearing.

**G.**     **Return of Good Faith Deposit**

The Good Faith Deposit of a Qualified Bidder shall be returned within three (3) business days of the Initial Effective Transfer Date of a sale transaction for the Assets.  If the Successful Bidder does not close the initial asset transfer under the approved Sale by the Initial Effective Transfer Date, the Debtors will have the right to present any other bid, whether made prior to or at the Auction, to the Bankruptcy Court for approval.  If the Successful Bidder fails to close the initial asset transfer by the Initial Effective Transfer Date, and such failure is the result of a breach by the Successful Bidder, such Successful Bidder's Good Faith Deposit shall be forfeited to the Debtors and, except to the extent provided in such bidders' marked agreement, the Debtors specifically reserve the right to seek all available damages from such person.

**H.**     **Modifications**

The Debtors, in their reasonable discretion after consultation with and approval by the Lenders and the Committee, may:  (1) determine, in their business judgment, which bid or bids, if any, constitute the highest or otherwise best offer for the Assets; and (2) reject, at any time before entry of an order of the Bankruptcy Court approving any bid as the Successful Bid, any bid that, in the Debtors' reasonable discretion, is (a) inadequate or insufficient; (b) not in conformity with the requirements of the Bankruptcy Code or the Sale Procedures; or (c) contrary to the best interests of the Debtors, their estates, and creditors.  The Debtors may extend or alter any deadline contained herein that will better promote the maximization of value of their estates.

The Debtors, in their reasonable discretion after consultation with the Lenders and the Committee, may adopt rules for the bidding process before or during the Auction that, in their reasonable discretion, will best promote the goals of the bidding process and are not inconsistent with any of the provisions of the Sale Procedures described herein.

The Debtors, in their reasonable discretion after consultation with the Lenders and the Committee, may adjourn without further notice the Auction (and/or the Sale Hearing) if, in their reasonable discretion, an adjournment will better promote the goals of the Auction.

## I.    The Sale Hearing

The Sale Hearing is scheduled to be conducted on **January 20, 2011 at 9:30 a.m. (Eastern Time)** at the United States Bankruptcy Court, 824 Market Street, 5th Fl., Courtroom #4, Wilmington, Delaware.  If any Successful Bidder is selected by the Debtors, then the Debtors, in their reasonable discretion after consultation with the Lenders and the Committee, will seek the entry of an order from the Bankruptcy Court at the Sale Hearing approving and authorizing the proposed sale to the Successful Bidder on the terms and conditions of the Successful Bid.

## J.    Miscellaneous

The Auction and Bid Procedures are solely for the benefit of the Debtors and the Stalking Horse Bidder, and nothing contained in the Sale Procedures Order or the Bid Procedures shall create any rights in any other person or bidder (including, without limitation, rights as third-party beneficiaries or otherwise) other than the rights expressly granted to a Successful Bidder under the Sale Procedures Order.