IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| CB HOLDING CORP., et al.,[1] ) | Case No. 10-13683 (MFW) |
| ) | |
| ) | Jointly Administered |
| Debtors. ) | |
| ) | [Docket Nos. 213 & 232] |
| ) | |

## DECLARATION OF GARY LEMBO
## IN SUPPORT OF DEBTORS' MOTION FOR ORDERS:
## (I)(1) APPROVING FORM OF "STALKING HORSE" ASSET
## PURCHASE AGREEMENT WITH VILLA ENTERPRISES LTD., LLC, FOR SALE
## OF SUBSTANTIALLY ALL ASSETS COMPRISING THE OFFICE BEER BAR & GRILL
## AND ASSUMPTION AND ASSIGNMENT OF CERTAIN RELATED EXECUTORY

---

[1] The other Debtors, and the last four digits of each of their tax identification numbers, are: 1820 Central Park Avenue Restaurant Corp (5151); Bugaboo Creek Acquisition, LLC (4629); Bugaboo Creek Holdings, Inc. (0966); Bugaboo Creek of Seekonk, Inc. (1669); CB Holding Corp (8640); CB VII, Inc. (9120); CB VIII, Inc. (1468); Charlie Brown North (6721); Charlie Brown's Acquisition Corp. (8367); Charlie Brown's at Clifton, Inc. (7309); Charlie Brown's Mark Corp. (3569); Charlie Brown's Montclair, Inc. (4223); Charlie Brown's 1981, Inc. (7781); Charlie Brown's of Allentown, LLC (8420); Charlie Brown's of Alpha, Inc. (9083); Charlie Brown's of Berwyn, LLC (3347); Charlie Brown's of Blackwood, LLC (5698); Charlie Brown's of Bloomsburg, LLC (3326); Charlie Brown's of Brielle, Inc. (8115); Charlie Brown's of Carlstadt, Inc. (6936); Charlie Brown's of Chatham, Inc. (2452); Charlie Brown's of Commack LLC (4851); Charlie Brown's of Denville, Inc (1422); Charlie Brown's of East Windsor, LLC (2747); Charlie Brown's of Edison, Inc. (8519); Charlie Brown's of Egg Harbor Twp, LLC (none); Charlie Brown's of Franklin, LLC (5232); Charlie Brown's of Garden City, LLC (7440); Charlie Brown's of Hackettstown, LLC (7493); Charlie Brown's of Harrisburg, LLC (1085); Charlie Brown's of Hillsborough, Inc. (0344); Charlie Brown's of Holtsville, LLC (0138); Charlie Brown's of Jackson, LLC (3478); Charlie Brown's of Lacey, LLC (6282); Charlie Brown's of Lakewood, Inc. (0156); Charlie Brown's of Langhorne, LLC (3392); Charlie Brown's of Lynbrook LLC (2772); Charlie Brown's of Maple Shade, Inc. (0404); Charlie Brown's of Matawan, Inc. (8337); Charlie Brown's of Middletown LLC (7565); Charlie Brown's of Oradell, Inc. (0348); Charlie Brown's of Pennsylvania, Inc. (6918); Charlie Brown's of Piscataway, LLC (8285); Charlie Brown's of Reading, LLC (1214); Charlie Brown's of Scranton, LLC (9817); Charlie Brown's of Selinsgrove, LLC (6492); Charlie Brown's of Springfield, LLC (9892); Charlie Brown's of Staten Island, LLC (1936); Charlie Brown's of Tinton Falls, Inc. (6981); Charlie Brown's of Toms River, LLC (5492); Charlie Brown's of Union Township, Inc. (8910); Charlie Brown's of Trexlertown, LLC (6582); Charlie Brown's of Wayne, Inc. (4757); Charlie Brown's of West Windsor, Inc (0159); Charlie Brown's of Williamsport LLC (8218); Charlie Brown's of Woodbury, Inc. (0601); Charlie Brown's of York, LLC (0980); Charlie Brown's of Yorktown, LLC (7855); Charlie Brown's Restaurant Corp. (7782); Charlie Brown's Steakhouse Fishkill, Inc. (9139); Charlie Brown's Steakhouse Woodbridge, Inc. (1906); Charlie Brown's, Inc. (4776); Jonathan Seagull Property Corp. (7248); Jonathan Seagull, Inc. (9160); The Office at Bridgewater, Inc. (3132); The Office at Cranford, Inc. (3131); The Office at Keyport, Inc. (1507); The Office at Montclair, Inc. (3128); The Office at Morristown, Inc. (3127); The Office at Ridgewood, Inc. (2949); The Office at Summit, Inc (3126); and What's Your Beef V, Inc (4719). The Debtors' address is 1450 Route 22 West, Mountainside, NJ 07092.

CONTRACTS AND UNEXPIRED LEASES; (2) APPROVING SALE PROCEDURES AND FORM, MANNER, AND SUFFICIENCY OF NOTICE; AND (3) SCHEDULING AN AUCTION SALE AND A HEARING TO CONSIDER APPROVING HIGHEST AND BEST OFFER; (II) AUTHORIZING THE SALE OF SUCH ASSETS, FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (III) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH SUCH SALE; (IV) AUTHORIZING THE DEBTORS TO CONSUMMATE ALL TRANSACTIONS RELATED TO THE ABOVE; AND (V) GRANTING OTHER RELIEF

Gary Lembo declares, under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1. I am a Managing Director of CRG Partners Group, LLC ("CRG"), with my principal office at 477 Madison Avenue, Suite 1220, New York, New York.

2. On November 18, 2010 (the "Petition Date"), the Debtors filed with this Court separate, voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. On January 11, 2011 this Court entered an order, pursuant to Bankruptcy Code § 363 authorizing, entry into an engagement letter by and between CRG and the Debtors, and appointing me as chief restructuring officer ("CRO") for the Debtors.

3. I submit this declaration in support of the Debtors' motion (the "Motion")[2] [Docket No. 213] for, among other things, an order pursuant to Bankruptcy Code §§ 105(a), 363, and 365, Bankruptcy Rules 2002, 6004, 6006, and 9014, and Local Rule 6004-1, (1) authorizing and approving the Agreement with the Proposed Buyer or such other purchaser providing a higher or otherwise better offer for the Assets, as approved by this Court at the Sale Hearing; (2) authorizing the Sale free and clear of all liens, claims, encumbrances, and other interests; (3)

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion

2

authorizing the assumption and assignment of the Assumed Agreements in connection with the Sale; and (4) authorizing the Debtors to consummate all transactions related to the above.

4. Since the Petition Date, I have expended significant efforts in understanding the Debtors' business and operations, and I am familiar with the day-to-day operations, business, and financial affairs of the Debtors, as well as issues relating to their restructuring efforts, including the proposed Sale of the Assets. Moreover, CRG and the Debtors' investment banking advisor, Raymond James & Associates, Inc. ("RJ"), have each been deeply involved in structuring the Sale and the amount and terms of the consideration to be provided by the Proposed Buyer.

5. The Debtors commenced these cases following a lengthy period in which they attempted, but ultimately proved unable, to achieve an internal restructuring of their finances and operations. The relief requested in the Motion -- namely, the approval of the Sale of one of their operating divisions, The Office Beer Bar & Grill (the "Office") -- represents the Debtors' first proposed going-concern sale. As the order approving the Debtors' DIP financing establishes a deadline for the Debtors to obtain this Court's approval of the Sale, such Sale is crucial not only to preserve and maximize the value of the particular Assets and Business relating to The Office, but also of the Debtors' other assets, by avoiding a "fire sale" liquidation thereof as a result of a potential default under their debtor-in-possession financing.

6. I believe that given the Debtors' liquidity and other concerns (as described further below), which precipitated the filing of these cases, any delay in consummating a sale of the Assets in a timely manner will lead to a marked decline in the value thereof. Instead, I believe that, because the Debtors have already marketed the Assets in question (both pre-and post-petition, and indeed have conducted both an informal "mini-auction" [and an Auction that has already

3

resulted in a substantial increase in the purchase price], the Sale is in the best interests of the Debtors and their estates.

7. I believe that the structure of the Sale and the amount and terms of the consideration -- as evidenced by the fact that the Debtors have, to date, engaged in extensive negotiations with several potential bidders, which has already resulted in a higher Purchase Price [on more than on instance] -- have already been put to a market test by virtue of any higher and better offers the Debtors received at, and prior to, the Auction, and thus ensures the fairness of the Sale.

8. On January 18, 2011, the Debtors conducted the Auction, at which time VEM submitted the highest and best offer for the Assets (in such capacity, the "Successful Bidder") in the amount of $4.675 million. Accordingly, the Debtors have elected to pursue a Sale with the Successful Bidder, subject to the approval of this Court at the Sale Hearing.

9. Additionally, I believe that any delays beyond the periods proposed in the Agreement would likely serve to impair the value of the Assets. Indeed, as mentioned above, in light of the Debtors' ongoing liquidity and operational concerns, any delay in proceeding with the Sale in an efficient manner, as proposed by the Debtors, and required by the successful Bidder, would serve only to diminish the value of the Assets and threaten the Debtors' ability to continue fully operating the Business as a going concern, to the detriment of the Debtors' estates and creditors. Indeed, if the Debtors are unable to complete the Sale to the Successful Bidder on the timeline proposed in the Agreement, they may have no other choice but ultimately to cease operations at the Business and liquidate the Assets (and, for the reasons described above regarding the requirements in the Final DIP Order that they get Court approval to sell the Business by a date

4

certain, potentially their other assets and businesses as well). This would result in a diminished return to the Debtors' entire creditor body.

10. To the best of my information, knowledge, and belief, the Purchase Price is fair and reasonable and exceeds what the Debtors would likely obtain in any liquidation sale of the Assets. In addition, the Successful Bidder has agreed to assume the Assumed Liabilities, and I do not believe that the Assumed Liabilities would be similarly assumed or otherwise satisfied to the same extent in any liquidation.

11. Additionally, the Successful Bidder and the Debtors each were represented by separate experienced professionals, including competent legal counsel. Thus, I believe that the Sale process was fair and that the Agreement was negotiated, proposed, and entered into by the Debtors and the Successful Bidder without collusion, in good faith, and at arm's length.

12. Finally, I believe that the Debtors' decisions to assume and to assign those of their executory contracts and unexpired leases as selected by the Successful Bidder in connection with a Sale of the Assets is a sound exercise of Debtors' business judgment, and such assumption and assignment serve as an important component of the Assets and the Business being acquired by such bidder.

13. For the reasons set forth above, I believe that a sale to the Successful Bidder will enable the Debtors to obtain the greatest value for the Assets and to maximize the value of their overall estates; is in the best interests of the Debtors, their creditors, and all other parties-in-interest; and represents a sound and prudent exercise of the Debtors' business judgment.

#1131686 v4 (12H5604_DOC)

Dated: January 19, 2011

_____
Gary Lembo   CRO