IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CB HOLDING CORP., et al.,[1] | ) Case No. 10-13683 (MFW) |
| | ) Jointly Administered |
| | ) |
| Debtors. | ) Obj. Deadline: February 3, 2011 at 4:00 p.m. (EST) |
| | ) Hearing Date: February 10, 2011 at 11:30 a.m. (EST) |

## DEBTORS' MOTION FOR ORDER EXTENDING EXCLUSIVE PERIODS DURING WHICH DEBTORS MAY FILE AND SOLICIT ACCEPTANCES OF CHAPTER 11 PLAN(S)

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through their undersigned attorneys, hereby file this motion (the "Motion") for entry of an order, pursuant to Bankruptcy Code § 1121(d), extending the periods within

---

[1] The other Debtors, and the last four digits of each of their tax identification numbers, are: 1820 Central Park Avenue Restaurant Corp. (5151); Bugaboo Creek Acquisition, LLC (4629); Bugaboo Creek Holdings, Inc. (0966); Bugaboo Creek of Seekonk, Inc. (1669); CB Holding Corp. (8640); CB VII, Inc. (9120); CB VIII, Inc. (1468); Charlie Brown North (6721); Charlie Brown's Acquisition Corp. (8367); Charlie Brown's at Clifton, Inc. (7309); Charlie Brown's Mark Corp. (3569); Charlie Brown's Montclair, Inc. (4223); Charlie Brown's 1981, Inc. (7781); Charlie Brown's of Allentown, L.L.C. (8420); Charlie Brown's of Alpha, Inc. (9083); Charlie Brown's of Berwyn, LLC (3347); Charlie Brown's of Blackwood, L.L.C. (5698); Charlie Brown's of Bloomsburg, LLC (3326); Charlie Brown's of Brielle, Inc. (8115); Charlie Brown's of Carlstadt, Inc. (6936); Charlie Brown's of Chatham, Inc. (2452); Charlie Brown's of Commack LLC (4851); Charlie Brown's of Denville, Inc. (1422); Charlie Brown's of East Windsor, LLC (2747); Charlie Brown's of Edison, Inc. (8519); Charlie Brown's of Egg Harbor Twp, LLC (none); Charlie Brown's of Franklin, LLC (5232); Charlie Brown's of Garden City, LLC (7440); Charlie Brown's of Hackettstown, L.L.C. (7493); Charlie Brown's of Harrisburg, LLC (1085); Charlie Brown's of Hillsborough, Inc. (0344); Charlie Brown's of Holtsville, LLC (0138); Charlie Brown's of Jackson, LLC (3478); Charlie Brown's of Lacey, L.L.C. (6282); Charlie Brown's of Lakewood, Inc. (0156); Charlie Brown's of Langhorne, LLC (3392); Charlie Brown's of Lynbrook LLC (2772); Charlie Brown's of Maple Shade, Inc. (0404); Charlie Brown's of Matawan, Inc. (8337); Charlie Brown's of Middletown LLC (7565); Charlie Brown's of Oradell, Inc. (0348); Charlie Brown's of Pennsylvania, Inc. (6918); Charlie Brown's of Piscataway, LLC (8285); Charlie Brown's of Reading, LLC (1214); Charlie Brown's of Scranton, LLC (9817); Charlie Brown's of Selinsgrove, LLC (6492); Charlie Brown's of Springfield, LLC (9892); Charlie Brown's of Staten Island, LLC (1936); Charlie Brown's of Tinton Falls, Inc. (6981); Charlie Brown's of Toms River, LLC (5492); Charlie Brown's of Union Township, Inc. (8910); Charlie Brown's of Trexlertown, LLC (6582); Charlie Brown's of Wayne, Inc. (4757); Charlie Brown's of West Windsor, Inc. (0159); Charlie Brown's of Williamsport LLC (8218); Charlie Brown's of Woodbury, Inc. (0601); Charlie Brown's of York, LLC (0980); Charlie Brown's of Yorktown, LLC (7855); Charlie Brown's Restaurant Corp. (7782); Charlie Brown's Steakhouse Fishkill, Inc. (9139); Charlie Brown's Steakhouse Woodbridge, Inc. (1906); Charlie Brown's, Inc. (4776); Jonathan Seagull Property Corp. (7248); Jonathan Seagull, Inc. (9160); The Office at Bridgewater, Inc. (3132); The Office at Cranford, Inc. (3131); The Office at Keyport, Inc. (1507); The Office at Montclair, Inc. (3128); The Office at Morristown, Inc. (3127); The Office at Ridgewood, Inc. (2949); The Office at Summit, Inc. (3126); and What's Your Beef V, Inc. (4719). The Debtors' address is 1450 Route 22 West, Mountainside, NJ 07092.

which only the Debtors may file and solicit acceptances of a Chapter 11 plan. In support of the relief requested in this Motion, the Debtors respectfully represent as follows:

## JURISDICTION

1.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue of these cases and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief requested herein are 28 U.S.C. § 1452 and Bankruptcy Code § 1121(d).

## INTRODUCTION

2.  On November 17, 2010 (the "Petition Date"), the Debtors filed with this Court separate, voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. On November 19, 2010, this Court entered an order directing the joint administration of the Debtors' separate Chapter 11 cases.

3.  The Debtors continue to manage their properties and operate their businesses as debtors-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108. No trustee or examiner has been appointed in these cases. On December 1, 2010, the United States Trustee appointed an official committee of unsecured creditors (the "Committee") for these cases.

4.  The Debtors own and operate the brands known as *Charlie Brown's Steakhouse* ("Charlie Brown's"), *Bugaboo Creek Steak House* ("Bugaboo Creek"), and *The Office Beer Bar & Grill* ("The Office"). There are currently a total of 20 Charlie Brown's restaurants throughout New York, New Jersey, and Pennsylvania; 12 Bugaboo Creek restaurants in Massachusetts, Delaware, Maryland, New Hampshire, and Maine; and seven The Office restaurants in New Jersey.

5.  A variety of external factors have led to a decline in the Debtors' revenue over the last several years, at the same time that costs have increased, and the economy has

struggled, greatly impacting the Debtors' customer base. Accordingly, for some time, the Debtors have been in discussions with their lenders and other parties regarding a financial restructuring.

6. Prior to the Petition Date, the only party willing to provide the Debtors with necessary funding to continue operations and to work toward a restructuring was Ally Commercial Finance LLC (f/k/a GMAC Commercial Finance LLC) ("Ally"), one of the Debtors' pre-petition senior secured lenders, which was only willing to do so as a DIP loan in Chapter 11. In an effort to maximize their value, the Debtors commenced these cases and entered into a DIP arrangement with Ally (which incorporates a global settlement with the Committee), and during these cases, the Debtors intend to attempt to market and sell substantially all of their assets expeditiously pursuant to Bankruptcy Code § 363.

## RELIEF REQUESTED

7. By this Motion, the Debtors request entry of an order extending the exclusive periods within which to file and solicit acceptances of a Chapter 11 plan (the "Exclusive Periods") by 90 days, from March 17, 2011 and May 16, 2011, respectively, through and including June 15, 2011 and August 12, 2011. If granted, the extension of the Exclusive Periods will be without prejudice to the Debtors' right to seek further extensions of the Exclusive Periods.

## BASIS FOR RELIEF REQUESTED

8. In addition to the substantial efforts required to operate their businesses since the Petition Date, the Debtors have worked diligently to stabilize operations and to reassure customers, employees, vendors, and suppliers. Specifically, in the approximately two months since the Petition Date, the Debtors and their professionals have devoted considerable time and resources to, among other things, (a) negotiating with their lenders and the Committee with

respect to both their debtor-in-possession financing, and the proposed sale of certain of the Debtors' assets, including The Office and a settlement between the Committee and those lenders providing the framework for a plan for these cases, (b) commencing the process of analyzing the Debtors' leases and executory contracts, (c) finalizing and filing the Debtors' statements of financial affairs and schedules of assets, liabilities, executory contracts, and unexpired leases (the "Schedules"), and (d) addressing numerous creditor, vendor, and customer inquiries.

9. As a result of these substantial efforts, the Debtors are on track to expeditiously complete the sale of certain of their assets, which will not only provide great benefit to the Debtors and their respective estates, creditors (especially in regard to the global settlement reached with the Committee), and other parties-in-interest, but is also expected to have the consensual support of the lenders and the Committee. Although the foregoing has required the Debtors and their professionals to dedicate their energies in large part to the sale processes, the Debtors remain focused on preparing and filing a plan. The Debtors, therefore, request an extension of the Exclusive Periods to protect their ability to file a plan (or plans) without the deterioration and disruption of their businesses and inherent confusion and inefficiencies that would likely be caused by the filing of competing plans by non-debtor parties in the event that a plan or plans is not confirmed within the relevant timeframe.

A.  **Bankruptcy Code § 1121(d) Permits the Court to Extend the Exclusive Periods for Cause**

10. The principal goal of Chapter 11 is the successful rehabilitation of a debtor's business. NLRB v. Bildisco & Bildisco, 465 U.S. 513, 527 (1984); United States v. Whiting Pools, Inc., 462 U.S. 198, 203 (1983). A considered and consensual plan of reorganization is an integral component of this rehabilitation, and one which poses the added benefits of avoiding lengthy and costly litigation, reducing the bankruptcy court's administrative burden, and increasing the overall distribution to creditors and equity security. See Chaim

Fortgang and Thomas Mayer, *Valuation in Bankruptcy*, 32 UCLA L. Rev. 1061, 1106-1107 (1985).

11. Under Bankruptcy Code § 1121(d), the Court may extend a debtor's exclusive periods for "cause". Specifically, Section 1121(d) provides:

> (1) Subject to paragraph (2), on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.

12. The decision of whether to grant a request to extend these exclusive periods lies within the sound discretion of the bankruptcy court. See First Am. Bank of New York v. Sw. Gloves & Safety Equip., Inc., 64 B.R. 963, 965 (D. Del. 1986); Continental Casualty Co. v. Burns & Roe Enters. (In re Burns & Roe Enters.), 2005 U.S. Dist. LEXIS 26247 at *10-11 (D.N.J. Nov. 2, 2005); In re AmKo Plastics, Inc., 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996); H.R. Rep. No. 95-595, at 231, 232 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6191 ("[t]he court is given the power, though, to increase or reduce the 120-day period depending on the circumstances of the case"). The Bankruptcy Code does not define "cause" or establish criteria to be considered in ruling on a motion to extend exclusivity. However, Congress contemplated that bankruptcy courts would apply the exclusivity provisions flexibly, so as to promote the orderly, consensual, and successful reorganization of a debtor's affairs. See H.R. Rep. No. 95-595, at 232 (1977).

13. Whether "cause" exists in any situation is determined on a case-by-case basis, and the choice of pertinent factors depends largely upon the factual nature of the case before the court. The following factors have been considered by courts in determining whether cause exists to grant an extension of the exclusivity periods:

    (i)    the size and complexity of the debtor's case;

- (ii) the necessity of sufficient time to negotiate and prepare adequate information;
- (iii) the existence of good faith progress toward reorganization;
- (iv) whether the debtor is paying its bills as they come due;
- (v) whether the debtor has demonstrated reasonable prospects for filing a viable plan;
- (vi) whether the debtor has made progress negotiating with creditors;
- (vii) the length of time a case has been pending;
- (viii) whether the debtor is seeking to extend exclusivity to pressure creditors "to accede to [the debtors'] reorganization demands;"
- (ix) the existence of an unresolved.

See In re Cent. Jersey Airport Servs., 282 B.R. 176, 184 (Bankr. D.N.J. 2002); In re Adelphia Communications Corp., 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006); In re R.G. Pharm, Inc., 374 B.R. 484 (D. Conn. 2007).

14. Not all of the factors are relevant to every case, and courts have used a subset of the above factors to determine whether cause exists. See Bunch v. Hoffinger Indus., Inc. (In re Hoffinger Indus., Inc.), 292 B.R. 639, 643-44 (B.A.P. 8th Cir. 2003) ("As always, we emphasize that these are only factors, not all of which are relevant in every case ... [i]t is within the discretion of the bankruptcy court to decide which factors are relevant and give the appropriate weight to each"). When determining whether cause exists, courts usually assess the totality of the circumstances. See In reMcLean Indus., Inc., 87 B.R. 803, 834 (Bankr. S.D.N.Y. 1987). As set forth below, the Debtors submit that an extension of the Exclusive Periods is warranted under the facts and circumstances of these cases.

**B. Cause Exists to Extend the Exclusive Periods**

**1. These Chapter 11 Cases Are Large and Complex**

15. The size and complexity of these Chapter 11 cases justify an extension of

the Exclusive Periods. See In re Express One Int'l, Inc., 194 B.R. at 100 ("The traditional ground for cause is the large size of the debtor and the concomitant difficulty in formulating a plan of reorganization"); In re Texaco, Inc., 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987) ("[t]he large size of a debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods").

16.  Indeed, the Debtors own and operate approximately 39 restaurants in eight different states. Moreover, the Debtors employ over 2,300 employees.

17.  Since the Petition Date, the Debtors have been addressing operational issues, prosecuting various motions, and responding to inquiries from customers, creditors, and suppliers, while also compiling their Schedules and negotiating the terms of the sale of certain of their assets and a global settlement of issues related to these cases. With numerous interests to protect and satisfy, spread across thousands of creditors with potential claims against their estates, the Debtors' cases are large and complex enough to warrant an extension of the Exclusive Periods.

### 2. The Debtors Have Made Good Faith Progress Towards Global Sales of Assets and Subsequent Liquidating Plan During These Cases

18.  The Debtors and their professionals have accomplished a great deal in a relatively brief span of time. As set forth above, the Debtors have made significant progress in negotiating their DIP arrangement and working with their pre-petition and post-petition secured lenders and the Committee, effectively negotiating a resolution of these cases. In addition, the Debtors have filed their Schedules, have made substantial progress in reviewing their executory contracts and unexpired leases, and have kept up compliance with the various administrative matters required by the parties-in-interest in these Chapter 11 cases.

19.  Consequently, the Debtors anticipate that the culmination of this progress

will be sales of most of their assets, which sales the Debtors expect to conduct with the full support of their secured lenders and the Committee. To that end, the Debtors have obtained approval of sale procedures for The Office, and they expect to obtain approval of such sale shortly. Additionally, the Debtors expect to seek similar procedures for sales of Bugaboo Creek and Charlie Brown's in short order.

### 3. These Cases Have Been Pending for Only a Few Short Months

20. The Debtors' cases have been pending for less than three months, and, as discussed above, the Debtors have accomplished a great deal in that short time period. However, the Debtors still require additional time to consummate sales of all of their assets and negotiate the terms of a subsequent plan.

### 4. The Debtors Are Paying Their Bills as They Become Due

21. The fact that a debtor has or could obtain sufficient liquidity to pay its post-petition debts as they come due supports the Debtors' request to extend the Exclusive Periods because it suggests that such an extension will not jeopardize the rights of post-petition creditors who are otherwise protected as administrative claim holders. The Debtors have been paying their undisputed post-petition debts as they come due and have operated their businesses within a court-approved budget and in accordance with the provisions of the orders approving the DIP arrangement (as may be modified) and intend to continue to do so, subject to the continuing support of their lenders.

22. In summary, an extension of the Exclusive Periods will afford the Debtors and all other parties-in-interest an opportunity to finalize asset sales and to negotiate, draft, and confirm a plan. This requested extension of the Exclusive Periods poses little or no harm to creditors. Conversely, to allow the Exclusive Periods to expire before these processes are finished and a plan is consummated would defeat the purpose of Bankruptcy Code § 1121 and
RLF1 3744697v.3

divest the Debtors of a meaningful and reasonable opportunity to confirm a plan in these cases.

23. Accordingly, for the reasons set forth above, the Debtors submit that the requested extension of the Exclusive Periods is justified and would be in the Debtors' best interests and the best interests of their estates, creditors, and other parties-in-interest.

## NOTICE

24. Notice of this Motion has been given, in accordance with the Bankruptcy Rules and the Local Rules, via first-class United States mail, e-mail, facsimile, telephone, and/or hand delivery, as appropriate, to the United States Trustee, counsel to the Committee, counsel to the Debtors' pre- and post-petition secured lenders, counsel to the holders of the Debtors' subordinated notes, the Debtors' equity sponsor, and all parties that have requested service of notice in these cases pursuant to Bankruptcy Rule 2002. Due to the nature of the relief requested, the Debtors submit that no other or further notice need be given.

## NO PRIOR REQUEST

25. No prior request for the relief sought in this Motion has been made to this or to any other court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as <u>Exhibit A</u>, (i) extending the periods within which only the Debtors have the exclusive right to file and solicit acceptances to a Chapter 11 plan or plans of reorganization, and (ii) granting such other and further relief as is just and proper under the circumstances.

Dated: January 20, 2011
Wilmington, Delaware

Respectfully submitted,

Mark D. Collins (No. 2981)
Christopher M. Samis (No. 4909)
Tyler D. Semmelman (No. 5386)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

-and-

Joel H. Levitin
Richard A. Stieglitz Jr.
Maya Peleg
CAHILL GORDON & REINDEL LLP
Eighty Pine Street
New York, New York 10005
Telephone: (212) 701-3000
Facsimile: (212) 269-5420

*Attorneys for the Debtors and Debtors-in-Possession*