**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| CB HOLDING CORP., et al., | ) | Case No. 10-13683 (MFW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**MEMORANDUM OPINION**[1]

The matter before the Court requires a determination whether a provision in a lease which required the Debtors to first offer to sell a liquor license associated with the premises to the landlord is an executory contract separate from the lease for which the landlord can require specific performance. For the reasons stated below, the Court concludes that the provision is not severable from the lease, is executory, was rejected by the Debtors, and is not subject to specific performance.

I.   FACTUAL BACKGROUND

CB Holding Corporation and its affiliates (collectively the "Debtors") filed voluntary petitions under chapter 11 on November 17, 2010. The Debtors operated three chains of restaurants in the mid-Atlantic region. Shortly before the filing, the Debtors ceased operations at several of their restaurants, including the one located in Hackettstown, New Jersey (the "Premises"). After

_____

[1]  This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure, which is made applicable to contested matters by Rule 9014 of the Federal Rules of Bankruptcy Procedure.

the bankruptcy filing, the Debtors filed a motion to reject (nunc pro tunc to the petition date) many of their leases including the Hackettstown lease (the "Lease").  That motion was granted.

The Debtors thereafter sought buyers for the liquor licenses associated with the rejected leases.  The landlord at the Hackettstown premises, MBK Investments, LLC (the "Landlord"), agreed to buy the liquor license associated with the Premises (the "Liquor License") for $151,000.  A motion for approval was filed, but on the eve of the hearing, the Debtors received a higher offer from another party, MAM, LLC ("MAM").  At the initial sale hearing, the Landlord asserted that it had a right of first refusal to buy the Liquor License for $100,000 and that an auction should not be considered.  The Court ordered that the Liquor License be sold at auction, but reserved the Landlord's right to argue that it had a right of first refusal.  After the auction, the Landlord was the successful bidder (at $407,500), and the Court approved the sale.

Subsequently, the Landlord pressed its argument that it is entitled to the Liquor License for only $100,000.  The parties have briefed the issue, and it is ripe for decision.


II.  <u>JURISDICTION</u>

This Court has jurisdiction pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) & (M).

III. <u>DISCUSSION</u>

    A.   <u>Provision of the Lease</u>

The Landlord's rights are governed by section 32.01 of the Lease which provides in relevant part:

> Upon expiration of the term of this Lease or earlier termination thereof, Tenant will not dispose of this Liquor License in such a fashion that it will cease to cover the Premises leased hereunder, except upon first offering in writing to sell it to the Landlord at a price of $100,000. Landlord shall have thirty (30) days from the date of receipt of such written offer to accept such offer. Notwithstanding the foregoing, in the event of a default by Tenant beyond any applicable notice and grace period and the termination of this Lease by Landlord, Tenant agrees to sell the Liquor License to Landlord at a price of $1.00.

(Landlord's Memorandum of Law, Ex. A § 32.01.)

The Landlord argues that this provision is severable from the Lease, is not executory, and cannot be rejected. The Landlord alternatively argues that even if the provision was rejected, the Landlord is entitled to specific performance of that provision.

The Debtors argue that the provision by its very terms is not applicable because the lease has neither expired nor terminated. If the provision is applicable, however, the Debtors argue that it is integral to the Lease, was executory, was rejected as part of the Lease, and does not require specific performance from the Debtors.

3

B.    <u>Applicability of Provision</u>

The Debtors initially argue that the provision is not even applicable because they have to offer the Liquor License to the Landlord only "[u]pon expiration of the term of th[e] Lease or earlier termination thereof" or in "the event of a default by Tenant . . . and the termination of this Lease by Landlord."  As of the petition date, the Lease still had almost ten years left and had not been terminated.  The Debtors particularly note that rejection of the Lease, while constituting a breach of the Lease, does not terminate the Lease.[2]  "It is well-settled that the rejection of a lease pursuant to § 365 results in a prepetition breach; it does not constitute a termination of the lease."  <u>In re DBSI, Inc.</u>, 409 B.R. 720, 731 (Bankr. D. Del. 2009) (citing <u>In re Austin Dev. Co.</u>, 19 F.3d 1077, 1082-83 (5th Cir. 1994); <u>In re Modern Textile, Inc.</u>, 900 F.2d 1184, 1191 (8th Cir. 1990); <u>Leasing Serv. Corp. v. First Tennessee Bank Nat'l Ass'n</u>, 826 F.2d 434, 437 (6th Cir. 1987)).  <u>See generally</u> 3 Collier on Bankruptcy § 365.10[1], at 365-77 (Alan N. Resnick & Henry J. Sommer eds., 16th rev. ed. 2010).

---

[2]  The Rejection Order did state "that the Closed Restaurant Leases . . . are rejected (and deemed terminated for all purposes), with such rejection and termination being deemed effective as of the Petition Date."  (D.I. # at ¶ 2.)  Both the Debtors and the Landlord agree nonetheless that there was no basis under section 365 to deem the Lease terminated and that, in fact, the Debtors' Motion did not seek that relief.

The Landlord agrees that rejection of the Lease does not terminate the Lease (or the parties' rights thereunder) but argues that the provision should be interpreted broadly to cover this situation.  The Landlord contends the provision was meant to protect the Landlord's rights and assure that the valuable Liquor License remained with the Premises.  It contends that it only recently bought the Premises (and did not demand a security deposit) because of the assurance that the Liquor License would remain.  Consequently the Landlord argues that this case is similar to the Ground Round case where the First Circuit held that rejection was sufficient to trigger a requirement that the liquor license be returned to the landlord even though the language of the provision said it was only triggered at the expiration of the lease.  See, e.g., In re The Ground Round, Inc., 482 F.3d 15, 16 (1st Cir. 2007).

In Ground Round, the First Circuit held that while the debtor had legal title to the liquor license, it only had the right to use it during the lease term with an obligation to return the license to the landlord at the end of the lease.  Id. at 18.  While acknowledging that rejection of the lease did not terminate the lease, the First Circuit held that rejection did terminate the debtor's right to use the liquor license and permitted the landlord to obtain specific performance requiring the return of the license.  Id.

5

The Court is not persuaded by the analysis in the <u>Ground</u> <u>Round</u> case, which strained (or outright ignored) the actual language of the lease to come to a preferred result: that the debtor had to return the liquor license to the landlord.  The Court here is constrained to apply the literal language of the Lease, which provides that the Debtors are obligated to offer the license for sale to the Landlord only at the expiration or termination of the Lease.  Neither has occurred yet.

In addition, the Lease requires only that the Debtors offer the license to the Landlord if a sale of the Liquor License would result in it not remaining with the Premises.  In this case the Debtors first proposed to sell the Liquor License to the Landlord for $151,000 in which case it would have remained with the Premises.  In addition, it is not altogether clear whether a sale of the Liquor License to MAM would have removed it from the Premises.  Because the Lease had been rejected by the Debtors, it is possible that MAM would have negotiated a lease of the Premises for use of the Liquor License.  Therefore, it is unclear that the second requirement of the Lease provision was triggered even by the contemplated sale to MAM.

The Court concludes, therefore, that under the express terms of section 32.01 of the Lease, the Debtors were not obligated to offer the Liquor License to the Landlord because the Lease was neither terminated nor expired as a result of its rejection.

6

C.   <u>Severability</u>

The Landlord contends, nonetheless, that the provision at issue is severable from the Lease and, therefore, still effective notwithstanding the rejection of the Lease.  In support, the Landlord argues that under applicable New Jersey law, a contract is severable if there are separate and distinct items to be performed and the consideration is (or can be) apportioned among them.  <u>Dixon v. Smyth Sales Corp.</u>, 166 A. 103, 104 (N.J. 1933) ("If there be a single assent to a whole transaction involving several things or several kinds of property, a contract is entire; but, if there be a separate assent to each of the several things involved, it is divisible."); <u>Studzinski v. Travelers Ins. Co.</u>, 434 A.2d 1160, 1162 (N.J. Super. Ct. Law Div. 1981) ("A contract is entire when the promise of one party is conditioned on the entire performance of the other, and is divisible when the part to be performed by one party consists of several distinct and separate items respecting which the consideration is apportioned to each item or is left to be implied by law.").  The Landlord asserts that the provisions regarding the rental of the Premises are completely distinct from and not conditioned upon performance of the Liquor License sale provision at issue, which provided distinct obligations of each party.

The Debtors dispute this, arguing that the provision was an integral part of the Lease, cannot be severed, and was rejected

7

along with the Lease.  The Debtors note that the Lease has an
integration clause which provides that the Lease "contains the
entire agreement between the parties with respect to the
Premises."  (Landlord's Memorandum of Law, Ex. A at § 33.04.)
The Debtors assert that there is no indication there were
separate agreements with respect to renting the Premises and
selling the Liquor License to the Landlord.

Further, the Debtors note that the Landlord itself concedes
that there are not two separate agreements because the Landlord
contends that it bought the Premises (and did not insist on a
security deposit) in reliance on the Lease provision giving it
the right to buy the Liquor License.

The Court agrees with the Debtors.  The Lease was one
integrated agreement and the provision requiring the Debtors to
offer the Liquor License to the Landlord on expiration or
termination of the Lease was just one part of the whole.  Because
the Lease is one integrated agreement, it cannot be assumed in
part and rejected in part.  See, e.g., In re Philadelphia
Newspapers, LLC, 424 B.R. 178, 183 (Bankr. E.D. Pa. 2010)
(holding that the debtor "must either assume the whole contract,
cum onere, or reject the entire contract, shedding obligations as
well as benefits"); In re Buffets Holdings, Inc., 387 B.R. 115,
128 (Bankr. D. Del. 2008) (concluding that master leases, which
were part of sale/leaseback transaction, constituted on

indivisible contract precluding debtor from rejecting one part while assuming others).  Therefore, the Court concludes that the rejection of the Lease resulted in the rejection (or breach) of the provision at issue here.

     D.   <u>Executoriness</u>

    The Landlord also contends that the provision is not an executory contract and cannot be rejected pursuant to section 365.  <u>See, e.g.</u>, <u>In re Robert L. Helms Constr. & Dev. Co., Inc.</u>, 139 F.3d 702, 706 (9th Cir. 1998) (concluding that not all options are executory contracts, only those where performance is actually due by each side, such as where the optionee has announced its decision to purchase but has not concluded the purchase by the bankruptcy filing date); <u>In re Bergt</u>, 241 B.R. 17, 36 (Bankr. D. Alaska 1999) (concluding that a right of first refusal was not executory and therefore could not be rejected or repudiated).

    The Debtors contend that even if the provision at issue were severable from the Lease, it can still be (and was in fact) rejected because there were material obligations to be performed by each party: the Debtors were required to offer to sell the Liquor License to the Landlord for $100,000 and the Landlord was required to respond to the offer within thirty days.  (Landlord's Memorandum of Law, Ex. A § 32.01.)

The Court has already found the Bergt decision unpersuasive and contrary to the majority of courts which have held that a right of first refusal is an executory contract subject to rejection under section 365.  In re Kellstrom Indus., Inc., 286 B.R. 833, 834-35 (Bankr. D. Del. 2002) (citing In re Coordinated Financial Planning Corp., 65 B.R. 711, 713 (B.A.P. 9th Cir. 1986); In re Fleishman, 138 B.R. 641, 646-47 (Bankr. D. Mass. 1992); In re A.J. Lane & Co., Inc., 107 B.R. 435, 437 (Bankr. D. Mass. 1989); In re Hardie, 100 B.R. 284, 287 (Bankr. E.D.N.C. 1989); In re G-N Partners, 48 B.R. 462, 466 (Bankr. D. Minn. 1985); In re Waldron, 36 B.R. 633, 636-37 (Bankr. S.D. Fla. 1984), rev'd on other grounds, 785 F.2d 936 (11th Cir. 1986)). See also In re AbitibiBowater, Inc., 418 B.R. 815, 830-31 (Bankr. D. Del. 2009) (noting that "[n]umerous other courts have determined that contingent option agreements are executory when material obligations will arise on each side if the option is exercised.").

A review of the Lease provision in this case confirms its executory nature.  The Debtors are obligated to give written notice to the Landlord of any intent to sell the Liquor License separate from the Lease and to offer to sell the Liquor License to the Landlord for $100,000.  The Landlord, for its part, is required to accept the offer within thirty days of the notice.

10

Therefore, we conclude, like the majority of the courts before us, that the Lease provision at issue is executory and could be rejected by the Debtors under section 365.

E.    Specific Performance

Even if the Lease, including section 32.01, was rejected, the Landlord contends that it is still entitled to specific performance of that section.  The Landlord notes that the effect of rejection is not the elimination of all the parties' rights or the voiding of the contract.  See, e.g., Cinicola v. Scharffenberger, 248 F.3d 110, 119 n. 8 (3d Cir. 2001) (holding that "rejection of an executory contract constitutes a [pre-petition] breach . . . and creates a pre-petition claim for breach of contract. . . . [R]ejection does not affect the parties' substantive rights under the contract.").

The Landlord relies heavily on the Ground Round decision to support its conclusion that it is entitled to specific performance of its right to buy the Liquor License for $100,000. In that case the First Circuit concluded that notwithstanding the rejection of a lease in which the landlord had an option to repurchase a liquor license for $1, the landlord retained its rights under the lease and state law to require specific performance of the option.  Ground Round, 482 F.3d at 18-19.  The Court concluded that "[w]here a claimant holds something akin to a property right in something held by the debtor, that right

11

survives bankruptcy and remains enforceable to recover the property from the estate, except where that right is cut off by provisions of the Bankruptcy Code." <u>Id.</u> at 19.

The Debtors argue that the Landlord is not entitled to specific performance of section 32.01 after rejection of the Lease. <u>See, e.g.</u>, 3 Collier on Bankruptcy § 365.10[1], at 365-78 ("rejection deprives the nondebtor party of a specific performance remedy that it might otherwise have under applicable nonbankruptcy law for breach of the contract or lease").

As noted above, the Court finds the analysis of the First Circuit in <u>Ground Round</u> unpersuasive. The First Circuit acknowledged that there are cases contrary to its ruling, including an earlier First Circuit decision. <u>Ground Round</u>, 482 F.3d at 18 n.1 (citing <u>Midway Motor Lodge of Elk Grove v. Innkeepers' Telemanagement & Equip. Corp.</u>, 54 F.3d 406, 407 (7th Cir. 1995) (holding that "[r]ejection avoids specific performance" and results only in a claim for damages); <u>In re Richmond Metal Finishers, Inc.</u>, 756 F.2d 1043, 1048 (4th Cir. 1985) (concluding that upon rejection, other party to contract "could not seek to retain its contract rights in the technology by specific performance even if that remedy would ordinarily be available upon breach of this type of contract"); <u>Gulf Petro., S.A. v. Collazo</u>, 316 F.2d 257, 260 (1st Cir. 1963) (finding rejection of land sale contract precluded specific performance

12

but finding that escrow agreement was separate and non-executory
thereby entitling buyer to return of deposit held in escrow)).


IV.  <u>CONCLUSION</u>

     For the reasons set forth above, the Court determines that
the Landlord's right of first refusal is not applicable in this
case, is not severable from the Lease, is executory, and was
rejected when the Debtors rejected the underlying Lease.
Further, the Court concludes that the Landlord has no right to
specific performance (but only a pre-petition claim for rejection
damages).  Consequently, the Court concludes that the Landlord
was obligated to pay the full price it bid at the auction for the
Liquor License.

     An appropriate Order is attached.


                                   BY THE COURT:


Dated: April 27, 2011

                                   Mary F. Walrath
                                   United States Bankruptcy Judge


13