## EXHIBIT A

**Modified Amended Plan**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CB HOLDING CORP., et al.,[1] | ) | Case No. 10-13683 (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## DEBTORS' MODIFIED FIRST AMENDED JOINT PLAN OF LIQUIDATION
## PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

---

[1]   The other Debtors, and the last four digits of each of their tax identification numbers, are:  1820 Central Park Avenue Restaurant Corp. (5151); Bugaboo Creek Acquisition, LLC (4629); Bugaboo Creek Holdings, Inc. (0966); Bugaboo Creek of Seekonk, Inc. (1669); CB Holding Corp. (8640);  CB VII, Inc. (9120); CB VIII, Inc. (1468); Charlie Brown North (6721); Charlie Brown's Acquisition Corp. (8367); Charlie Brown's at Clifton, Inc. (7309); Charlie Brown's Mark Corp. (3569); Charlie Brown's Montclair, Inc. (4223); Charlie Brown's 1981, Inc. (7781); Charlie Brown's of Allentown, L.L.C. (8420); Charlie Brown's of Alpha, Inc. (9083); Charlie Brown's of Berwyn, LLC (3347); Charlie Brown's of Blackwood, L.L.C. (5698); Charlie Brown's of Bloomsburg, LLC (3326); Charlie Brown's of Brielle, Inc. (8115); Charlie Brown's of Carlstadt, Inc. (6936); Charlie Brown's of Chatham, Inc. (2452); Charlie Brown's of Commack LLC (4851); Charlie Brown's of Denville, Inc. (1422); Charlie Brown's of East Windsor, LLC (2747); Charlie Brown's of Edison, Inc. (8519); Charlie Brown's of Egg Harbor Twp., LLC (none); Charlie Brown's of Franklin, LLC (5232); Charlie Brown's of Garden City, LLC (7440); Charlie Brown's of Hackettstown, L.L.C. (7493); Charlie Brown's of Harrisburg, LLC (1085); Charlie Brown's of Hillsborough, Inc. (0344); Charlie Brown's of Holtsville, LLC (0138); Charlie Brown's of Jackson, LLC (3478); Charlie Brown's of Lacey, L.L.C. (6282); Charlie Brown's of Lakewood, Inc. (0156); Charlie Brown's of Langhorne, LLC (3392); Charlie Brown's of Lynbrook LLC (2772); Charlie Brown's of Maple Shade, Inc. (0404); Charlie Brown's of Matawan, Inc. (8337); Charlie Brown's of Middletown LLC (7565); Charlie Brown's of Oradell, Inc. (0348); Charlie Brown's of Pennsylvania, Inc. (6918); Charlie Brown's of Piscataway, LLC (8285); Charlie Brown's of Reading, LLC (1214); Charlie Brown's of Scranton, LLC (9817); Charlie Brown's of Selinsgrove, LLC (6492); Charlie Brown's of Springfield, LLC (9892); Charlie Brown's of Staten Island, LLC (1936); Charlie Brown's of Tinton Falls, Inc. (6981); Charlie Brown's of Toms River, LLC (5492); Charlie Brown's of Union Township, Inc. (8910); Charlie Brown's of Trexlertown, LLC (6582); Charlie Brown's of Wayne, Inc. (4757); Charlie Brown's of West Windsor, Inc. (0159); Charlie Brown's of Williamsport LLC (8218); Charlie Brown's of Woodbury, Inc. (0601); Charlie Brown's of York, LLC (0980); Charlie Brown's of Yorktown, LLC (7855); Charlie Brown's Restaurant Corp. (7782); Charlie Brown's Steakhouse Fishkill, Inc. (9139); Charlie Brown's Steakhouse Woodbridge, Inc. (1906); Charlie Brown's, Inc. (4776); Jonathan Seagull Property Corp. (7248);  Jonathan Seagull, Inc. (9160); The Office at Bridgewater, Inc. (3132); The Office at Cranford, Inc. (3131);   The Office at Keyport, Inc. (1507); The Office at Montclair, Inc. (3128); The Office at Morristown, Inc. (3127); The Office at Ridgewood, Inc. (2949); The Office at Summit, Inc. (3126); and What's Your Beef V, Inc. (4719).  The Debtors' address is 1450 Route 22 West, Mountainside, NJ 07092.

CAHILL GORDON & REINDEL LLP    RICHARDS, LAYTON & FINGER, P.A.
Joel H. Levitin    Mark D. Collins (No. 2981)
Stephen J. Gordon    Christopher M. Samis (No. 4909)
Richard A. Stieglitz Jr.    Tyler D. Semmelman (No. 5386)
Maya Peleg    One Rodney Square
Eighty Pine Street    920 North King Street
New York, New York  10005    Wilmington, Delaware 19801
Telephone:  (212) 701-3000    Telephone:  (302) 651-7700
Facsimile:  (212) 269-5420    Facsimile:  (302) 651-7701

*Attorneys for the Debtors and Debtors-in-Possession*

January 4, 2012

# TABLE OF CONTENTS

Page

ARTICLE I.
DEFINITIONS, RULES OF INTERPRETATION,
COMPUTATION OF TIME, AND GOVERNING LAW

A.      Rules of Interpretation, Computation of Time, and Governing Law.................................. 1
B.      Defined Terms ........................................................................................................................ 2

ARTICLE II.
ADMINISTRATIVE CLAIMS; DIP FACILITY CLAIMS; PRIORITY TAX CLAIMS

A.      Administrative Claims ................................................................................................ 18
B.      DIP Facility Claims..................................................................................................... 19
C.      Priority Tax Claims..................................................................................................... 20

ARTICLE III.
CLASSIFICATION AND TREATMENT
OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

A.      Summary..................................................................................................................... 20
B.      Treatment of Claims and Equity Interests ....................................................... 21

ARTICLE IV.
IMPLEMENTATION OF THE PLAN AND THE LIQUIDATING TRUST

A.      Substantive Consolidation; Resignation of Directors and Managers; Issuance of
         One New Share in CB Holding......................................................................... 24
B.      Funding of the Plan Fund to the Liquidating Trustee ..................................... 27
C.      The Transfer of the Liquidating Trust Assets to the Liquidating Trust........... 27
D.      The Liquidating Trust ........................................................................................ 28
E.      Final Administration of the Liquidating Trust................................................. 36
F.      Dissolution of the Debtors; Closing of the CB Holding Chapter 11 Case......... 36
G.      Preservation of Rights Regarding Avoidance Actions and of All other Causes of
         Action................................................................................................................. 37
H.      Cancellation of Notes, Instruments, Debentures, and Equity Interests............ 39
I.       Dissolution of the Creditors Committee ......................................................... 40
J.       Accounting.......................................................................................................... 40
K.      Settlement with Respect to Fees, Costs, and the Plan by and Among the
         Administrative Agent, the Creditors Committee, the Second Lien Noteholders,
         and the Debtors ................................................................................................. 40

ARTICLE V.
TREATMENT OF DISPUTED CLAIMS

A.      Objections to Claims; Prosecution of Disputed Claims.................................... 41

B.    Estimation of Claims ........................................................................................ 41
C.    Interest and Distributions on Disputed Claims or any Other Claims that Become
       Allowed Claims After the Effective Date .......................................................... 42

## ARTICLE VI.
## DISTRIBUTIONS

A.    Means of Cash Payment .................................................................................... 42
B.    Delivery of Distributions .................................................................................. 42
C.    Undeliverable Distributions .............................................................................. 42
D.    Withholding and Reporting Requirements ......................................................... 43
E.    Time Bar to Cash Payments ............................................................................... 44
F.    Interest and Late Charges .................................................................................. 44
G.    Fractional Dollars; De Minimis Distributions ................................................... 44
H.    Set-Offs ............................................................................................................ 44
I.     Deadlines for Determining Record Holders of Various Classes of Claims ......... 45
J.     Allocation of Distributions ............................................................................... 45

## ARTICLE VII.
## EXECUTORY CONTRACTS AND SIMILAR MATTERS

A.    Rejection of Executory Contracts ...................................................................... 45
B.    Rejection Damages Claim .................................................................................. 46
C.    Classification of Claims Related to Executory Contracts ................................... 46
D.    Insurance Policies ............................................................................................. 47
E.    Compensation and Benefits Programs ............................................................... 48
F.    Return of Deposits by Utility Companies .......................................................... 48

## ARTICLE VIII.
## ACCEPTANCE OR REJECTION OF THE PLAN

A.    Acceptance by Impaired Classes ....................................................................... 49
B.    Elimination of Classes ...................................................................................... 49
C.    Nonconsensual Confirmation ............................................................................ 49

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND THE EFFECTIVE DATE

A.    Conditions Precedent to the Confirmation Date of the Plan ............................... 49
B.    Conditions Precedent to the Effective Date of the Plan ...................................... 50
C.    Waiver of Conditions Precedent ........................................................................ 50

## ARTICLE X.
## EFFECT OF PLAN CONFIRMATION

A.    Settlement of Claims ......................................................................................... 50
B.    General Plan Injunction ..................................................................................... 51

C.    Terms of Existing Injunctions or Stays...........................................................................52
D.    Exculpation ......................................................................................................................52
E.    Releases by the Debtors and the Estates .........................................................................53
F.    Releases by the Releasing Parties ...................................................................................54
G.    Injunction Related to Releases.........................................................................................55
H.    Limits to Release and Exculpation Provisions.................................................................55
I.    Indemnification of Debtors' Officers and Directors.........................................................56

ARTICLE XI.
MISCELLANEOUS

A.    Settlement of Claims and Controversies ..........................................................................56
B.    Payment of Statutory Fees ...............................................................................................56
C.    Exemption from Securities Laws .....................................................................................57
D.    Bankruptcy Code § 1146 Exemption ...............................................................................57
E.    Books and Records ...........................................................................................................57
F.    Privileges as to Certain Causes of Action .......................................................................58
G.    New Employee Agreements .............................................................................................58
H.    Unclaimed Property ..........................................................................................................59
I.    Business Day......................................................................................................................59
J.    Severability .......................................................................................................................59
K.    Conflicts............................................................................................................................59
L.    Evidence ............................................................................................................................60
M.    Further Assurances............................................................................................................60
N.    Notices ..............................................................................................................................60
O.    Filing of Additional Documents ......................................................................................61
P.    Successors and Assigns.....................................................................................................61
Q.    Exclusivity Period ............................................................................................................61
R.    Section Headings ..............................................................................................................61
S.    Further Information............................................................................................................61

ARTICLE XII.
RETENTION OF JURISDICTION

ARTICLE XIII.
MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.    Modification of Plan .........................................................................................................64
B.    Revocation, Withdrawal, or Non-Consummation ...........................................................64

CB Holding Corp. ("*CB Holding*") and the other above-captioned debtors and debtors-in-possession (collectively, and together with CB Holding, the "*Debtors*") hereby propose the following Modified First Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code.

Reference is made to the Disclosure Statement accompanying the Plan, including the exhibits thereto, for a description of, among other things, the Debtors' Sales of their three primary operating divisions pursuant to Bankruptcy Code §§ 363 and 365, other key events that have occurred in their Chapter 11 Cases, and a summary and analysis of the Plan.  **All Holders of Claims and Equity Interests are encouraged to review the Disclosure Statement and read the Plan carefully before those Holders eligible to vote on the Plan do so vote**.

## ARTICLE I.
## DEFINITIONS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME, AND GOVERNING LAW

**A.      Rules of Interpretation, Computation of Time, and Governing Law**

1.      For purposes of the Plan:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neutral gender shall include the masculine, feminine, and neutral gender; (b) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or exhibit Filed, or to be Filed, shall mean such document or exhibit, as it may have been or may be amended, modified, or supplemented; (d) unless otherwise specified, all references in the Plan to Sections, Articles, and Exhibits are references to Sections, Articles, and Exhibits of or to the Plan; (e) the words "herein" and "hereto" refer to the Plan in its entirety, rather than to a particular portion of the Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (g) unless otherwise provided for in the Plan, the rules of construction set forth in Bankruptcy Code § 102 shall apply; and (h) any term used in capitalized form in the Plan that is not defined in the Plan, but that is used in the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules shall have the meaning assigned to such term in the Bankruptcy Code, the Bankruptcy Rules, and/or the Local Rules, as the case may be.

2.      Except as otherwise specifically set forth in the Plan, in computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) and/or Local Rule 9006-1 shall apply.

3.      Except to the extent that the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules are applicable, and subject to the provisions of any contract, instrument, release, indenture, or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof.

B.      **Defined Terms**

Unless the context otherwise requires, the following terms shall have the meanings ascribed to them below when used in capitalized form in the Plan:

1.      *Administrative Agent* means Ally Commercial Finance LLC, in its capacities as (i) one of the Pre-Petition Lenders and a participant in the financing provided under the Financing Agreement and (ii) administrative agent and collateral agent to the DIP Lender under the DIP Facility, and all successors and assigns thereof.

2.      *Administrative Claims* means the collective reference to all Claims for costs and expenses of administration of the Chapter 11 Cases with priority under Bankruptcy Code § 507(a)(2), costs and expenses allowed under Bankruptcy Code § 503(b) (including, without limitation, under Bankruptcy Code § 503(b)(9)), the actual and necessary costs and expenses of preserving the respective Estates of the Debtors and operating the respective businesses of the Debtors (prior to the closing of a particular Sale or portion thereof), any indebtedness or obligations incurred or assumed by any of the Debtors pursuant to Bankruptcy Code § 364 or otherwise (other than any DIP Facility Claims), and Professional Fee Claims of the Debtors' and the Creditors Committee's respective Professionals (including, without limitation, the expenses incurred by each member of the Creditors Committee in its capacity as such), in each case to the extent allowed by an order of the Bankruptcy Court under Bankruptcy Code § 330(a) or 331 or otherwise, and any fees or charges assessed against the respective Estates under 28 U.S.C. § 1930; *provided, however, that the Holder of an Administrative Claim (except for an Administrative Claim based upon (i) Professional Fee Claims, the allowance and timing for filing of applications for Professional Fees being governed by Section II.A(b) of the Plan), (ii) DIP Facility Claims, and (iii) fees or charges asserted against the respective Estates under 28 U.S.C. § 1930 must file a request for payment on or before the Administrative Claims Bar Date for such Administrative Claim to be eligible to be considered an Allowed Administrative Claim; provided further, however, that nothing in this Plan or the Confirmation Order shall require the Internal Revenue Service or any state or local taxing authorities to file a post-petition claim or request for payment for any tax obligations that arose after the Petition Date prior to the Administrative Claims Bar Date.*

3.      *Administrative Claims Bar Date* means the deadline for timely filing any Administrative Claims incurred through and including the Confirmation Date, other than DIP Facility Claims, Professional Fee Claims, claims of governmental units for the payment of an expense described in Bankruptcy Code § 503(b)(1)(B) or (C) and the Internal Revenue Service or any state or local taxing authorities for tax obligations that arose after the Petition Date, or fees or charges asserted against the respective Estates under 28 U.S.C. § 1930, *which deadline shall be 4:00 P.M. (prevailing Eastern time) on the date that is 30 days after the Confirmation Date*.

4.      *Affiliate Debtors* means all of the Debtors other than CB Holding.

5.      *Allowance Date* means, with reference to a particular Claim, the date on which such Claim becomes an Allowed Claim; *provided, however*, that, if a Claim becomes an

Allowed Claim pursuant to an order of the Bankruptcy Court, the Allowance Date shall be the date on which such order becomes a Final Order, and if a Claim becomes an Allowed Claim pursuant to the Plan, the Allowance Date shall be the Effective Date.

6.    *Allowed* means, except as otherwise set forth in the Plan, with reference to a Claim:  (a) any Claim against a Debtor that has been listed by such Debtor in the Schedules filed by such Debtor as liquidated in an amount greater than zero dollars ($0.00) and not disputed or contingent and (i) for which no Proof of Claim has been filed in a greater amount and/or (ii) as to which no objection has been interposed by the Claim Objection Deadline; (b) any Claim as to which a Proof of Claim has been timely filed and (i) no objection to the allowance thereof has been interposed by the Claim Objection Deadline, and (ii) such Claim has not (as applicable) been withdrawn, paid in full, or otherwise deemed satisfied in full (pursuant to an order of the Bankruptcy Court or otherwise); (c) any Claim as to which an objection has been filed, and a Final Order has been entered in favor of the respective Claim Holder with respect to all or any portion of such Claim, or any such objection has been settled, waived through payment, or withdrawn; (d) any Claim that has otherwise been allowed by a Final Order; (e) any Claim as to which, upon the lifting of the automatic stay pursuant to Bankruptcy Code § 362, the liability of a Debtor, allowance, and the amount thereof are determined by a Final Order of a court of competent jurisdiction other than the Bankruptcy Court; (f) with respect to any Administrative Claim for goods or services provided to the Debtors during the Chapter 11 Cases in the ordinary course of the Debtors' businesses by non-Professionals, such Administrative Claim has not been withdrawn, paid, otherwise satisfied in full (pursuant to an order of the Bankruptcy Court or otherwise in the ordinary course of the Debtors' businesses), or otherwise deemed satisfied in full in the ordinary course of the Debtors' businesses; or (g) any Claim that is expressly deemed an Allowed Claim under the Plan or in the discretion of the Liquidating Trustee (subject to any Oversight Committee guidance or approval required under the Liquidating Trust Agreement).  Except for the DIP Facility Claims, and unless otherwise ordered by the Bankruptcy Court prior to Confirmation, or as specifically set forth to the contrary in the Plan with respect to any particular Claim, an "Allowed" Claim shall not, for any purpose under the Plan, include (i) any interest on such Claim to the extent accruing or maturing on or after the Petition Date, (ii) punitive or exemplary damages, (iii) any fine, penalty, or forfeiture, or (iv) any Claim relating to any unused vacation pay or time asserted by a former employee of any of the Debtors that is not an Allowed Vacation Claim.

7.    *Allowed Vacation Claim* means any Allowed Claim of a present or former employee of any of the Debtors for or relating to unused vacation pay or time either (i) for which a Proof of Claim was properly Filed on or prior to the Bar Date or (ii) such Claim was listed on the Schedules not as contingent, unliquidated, or disputed.  Any Allowed Vacation Claim shall constitute an Allowed Other Priority Claim for all purposes under the Plan.

8.    *Asset Purchase Agreements* means the respective asset purchase or similar sale agreements (including those for the transfer of liquor licenses or sale of closed restaurant locations) entered into by the Debtors in connection with the Sales, as approved by the Bankruptcy Court pursuant to the Sale Orders.

9.     *Assets* means all of the remaining right, title, and interest of any of the Debtors in and to any and all assets and property, whether tangible, intangible, real, or personal, that constitute property of the Debtors' respective Estates within the purview of Bankruptcy Code § 541, including, without limitation, any and all claims, Causes of Action, and/or rights of the respective Debtors under federal and/or state law; provided, however, that the property sold or to be sold pursuant to the Asset Purchase Agreements and the Sale Orders (to the extent the underlying Sales or applicable portions thereof have closed) shall not constitute Assets.

10.     *Avoidance Actions* means any and all rights to recover or avoid transfers or liens under Chapter 5 of the Bankruptcy Code or otherwise, including, but not limited to, Bankruptcy Code § 506(d), 522, 541, 542, 543, 544, 545, 547, 548, 549, 550, or 553, or otherwise under the Bankruptcy Code or under similar or related state or federal statutes and common law, including, without limitation, all preference, fraudulent conveyance, fraudulent transfer, and/or other similar avoidance claims, rights, and causes of action, whether or not litigation has been commenced as of the Effective Date to prosecute such Avoidance Actions; subject, however, to any releases thereof provided in the Plan, the Confirmation Order, the DIP Facility Order, or any other Final Order of the Bankruptcy Court.

11.     *Ballot* means the form of ballot to be distributed to each Holder of a Claim in Class 1, 2, or 4 (as applicable), on which such Holder is to indicate either an acceptance or a rejection of the Plan.

12.     *Bankruptcy Code* means Title 11 of the United States Code, 11 U.S.C. § 101, *et seq.*, as amended from time to time.

13.     *Bankruptcy Court* means the United States Bankruptcy Court for the District of Delaware.

14.     *Bankruptcy Rules* are, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended from time to time, and the Federal Rules of Civil Procedure, as amended from time to time, as made applicable to the Chapter 11 Cases.

15.     *Bar Date* means October 10, 2011, the deadline established by the Bankruptcy Court for timely filing Proofs of Claim (including any purported claims under Bankruptcy Code § 503(b)(9)).

16.     *Books and Records* shall have the meaning ascribed thereto in Section XI.E of the Plan.

17.     *Bugaboo Creek* means the Debtors' former operating division known as Bugaboo Creek Steak House.

18.     *Business Day* means any day other than a Saturday, Sunday, "legal holiday" (as such term is defined in Bankruptcy Rule 9006(a)), or any other day on which commercial banks in Wilmington, Delaware, are authorized or required by law to close.

19.     *Cash* means legal tender of the United States of America or equivalents thereof.

20.     *Causes of Action* means the Avoidance Actions and all other claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, third-party claims, counterclaims, and crossclaims of any Debtor and/or any Estate against any Entity, based in law or equity, including, but not limited to, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted; provided, however, that Causes of Action shall not include any rights, claims, or causes of action of the Debtors that constitute assets acquired by the applicable Purchasers pursuant to the Asset Purchase Agreements; and subject, however, to any releases provided in the Plan, the Confirmation Order, the DIP Facility Order, or any other Final Order of the Bankruptcy Court.

21.     *CB Holding Chapter 11 Case* means the Chapter 11 Case of CB Holding.

22.     *Chapter 11 Case(s)* means the case(s) commenced under Chapter 11 of the Bankruptcy Code by the Debtor(s) on the Petition Date currently pending before the Bankruptcy Court.

23.     *Charlie Brown's* means the Debtors' former operating division known as Charlie Brown's Steakhouse.

24.     *Chief Restructuring Officer* means Mr. Gary Lembo, a managing director of CRG, in his capacity as the Debtors' Chief Restructuring Officer, and/or any successor in such capacity.

25.     *Claim* means a "claim" (as defined in Bankruptcy Code § 101(5)) against one or more of the Debtors, including, but not limited to, any right to payment from one or more of the Debtors or otherwise relating to or arising from any of the Debtors' Assets, liabilities, businesses, or activities, arising, or with respect to which the obligation giving rise to such right has been incurred, before the Effective Date, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or any right to an equitable remedy for breach of performance arising, or with respect to which the obligation giving rise to such right has been incurred, before the Effective Date, if such breach gives rise to a right to payment from one or more of the Debtors, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.

26.     *Claim Objection Deadline* means the date that is the later of (i) 60 days after the Effective Date or (ii) 60 days after a Claim is filed, as such deadline may be extended from time to time by the Bankruptcy Court.

27.     *Class* means a category of Holders of Claims or Equity Interests as set forth in Article III of the Plan.

28.     *Compensation and Benefits Programs* means any savings plans, profit-sharing plans, pension or retirement plans (including, but not limited to, any plans qualified under Internal Revenue Code § 401(a)), healthcare plans, disability plans, benefit plans, life, accidental death, and dismemberment insurance, and any similar plans maintained by any of the Debtors for the benefit of any of their employees at any time, but specifically excluding any Insurance Policies and the Vested Insurance Agreements or any collateral or security related thereto.

29.     *Confirmation* means the entry of the Confirmation Order by the Bankruptcy Court, subject to all of the conditions specified in Article IX of the Plan having been satisfied or waived pursuant to Section IX.C of the Plan.

30.     *Confirmation Date* means the date upon which the Confirmation Order is entered on the docket of the Bankruptcy Court.

31.     *Confirmation Hearing* means the hearing held by the Bankruptcy Court, pursuant to Bankruptcy Code § 1128, to consider Confirmation of the Plan, as the same may be adjourned or continued from time to time.

32.     *Confirmation Order* means the order of the Bankruptcy Court confirming the Plan.

33.     *Consummation* means the occurrence of the Effective Date.

34.     *Creditors Committee* means the committee of unsecured creditors appointed in the Chapter 11 Cases by the United States Trustee, pursuant to Bankruptcy Code § 1102, on or about December 1, 2010 (ECF No. 95), as constituted from time to time.

35.     *CRG* means CRG Partners Group, LLC, in its capacity as the Debtors' restructuring advisors and as having provided the Chief Restructuring Officer.

36.     *Debtor Releasees* collectively means:  the Debtors and their respective predecessors, successors, and assigns and each of their current and former officers and directors, employees, stockholders, members, subsidiaries, affiliates, principals, agents, advisors, financial advisors, attorneys, accountants, investment bankers, consultants, underwriters, appraisers, representatives, and other Professionals, in each case in their respective capacities as such, and any Person claimed to be liable derivatively through any such Person, other than Messrs. Michael Mulligan, Russell D'Anton, and Michael D'Anton and their respective family members or relatives or any entity in which they may have an ownership, partnership, shareholder, membership, pecuniary, or other interest and except as otherwise set forth in the Plan.

37.     *Debtors' Releases* shall have the meaning ascribed thereto in Section X.E of the Plan.

38.     *DIP Facility* means the debtor-in-possession financing arrangement and financial accommodations between the Debtors and the DIP Facility Lender, as approved by the Bankruptcy Court pursuant to the terms and conditions set forth in the DIP Facility Order, as the

same has been (and may further be) modified, amended, or supplemented from time to time, together with (a) all of the documents, instruments, and agreements related thereto or entered into in connection therewith and (b) the DIP Facility Order and any subsequent orders of the Bankruptcy Court related thereto.

39.     *DIP Facility Claims* means all Claims of the DIP Facility Lender against the Debtors represented by, related to, arising under, or in connection with the DIP Facility for any outstanding obligations thereunder incurred through and including the Effective Date, after taking into account the sum of all payments made by any of the Debtors to the DIP Facility Lender prior to the Effective Date on account of such Claims (pursuant to the Sale Orders, the DIP Facility Order, any other order of the Bankruptcy Court, or otherwise).

40.     *DIP Facility Lender* means Ally Commercial Finance LLC, in its capacity as the lender under the DIP Facility, and all successors and assigns thereof.

41.     *DIP Facility Order* collectively means (i) the *Final Order (I) Authorizing Secured Post-Petition Financing Pursuant to 11 U.S.C. § 364, (II) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363, and (III) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 363, and 364,* entered by the Bankruptcy Court on December 13, 2010 (ECF No. 177), and (ii) the *Order Amending Final Order (I) Authorizing Secured Post-Petition Financing Pursuant to 11 U.S.C. § 364, (II) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363, and (III) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 363, and 364* (ECF No. 177)*,* entered by the Bankruptcy Court on March 9, 2011 (ECF No. 597), as the same may have been amended, modified, or supplemented by subsequent filings of budgets related thereto or otherwise.

42.     *D&O Claims* means the claims against certain of the Debtors' former officers and directors that are not otherwise released pursuant to the Plan (including in Article X of the Plan), including, but not limited to those claims asserted in the complaint filed in <u>Ableco Finance LLC vs. CB Holding Corp., *et al.*</u>, in the Supreme Court of the State of New York, New York County, as Case No. 650437/2010.

43.     *D&O Shared Proceeds* means fifty percent (50%) of the net proceeds (after litigation fees, costs, and expenses actually incurred) of the D&O Claims, including any insurance proceeds or restitution received in connection therewith or otherwise related thereto.

44.     *D&O Resolution Consideration* means the first $1 million of the D&O Shared Proceeds that is distributed to the Holders of Allowed General Unsecured Claims from the Liquidating Trust.

45.     *Disclosure Statement* means the disclosure statement and all supplements and exhibits thereto that relate to the Plan and are approved by the Bankruptcy Court pursuant to Bankruptcy Code § 1125, as the same has been and may be further amended or modified by the Debtors from time to time, pursuant to the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or any applicable orders of the Bankruptcy Court.

46.     *Disputed Claim or Equity Interest* means a Claim or Equity Interest, or any portion thereof: (i) listed on the Schedules as unliquidated, disputed, and/or contingent for which no Proof of Claim in a liquidated and non-contingent amount has been filed or (ii) that is the subject of an objection or request for estimation Filed by any of the Debtors or the Liquidating Trustee or any other party-in-interest in accordance with applicable law and which objection has not been withdrawn, resolved, or overruled by a Final Order of the Bankruptcy Court.

47.     *Disputed Claims Reserve* shall have the meaning ascribed thereto in Section IV.D.1(h) of the Plan.

48.     *Dissolution* shall have the meaning ascribed thereto in Section IV.F.(a) of the Plan

49.     *Distribution Record Date* means the record date for purposes of making distributions under the Plan on account of Allowed Claims, which date shall be the Bar Date.

50.     *Effective Date* means the Business Day on which the Plan becomes effective, as provided for in Article IX of the Plan.

51.     *Entity* means a Person, a corporation, a general partnership, a limited partnership, a limited liability company, a limited liability partnership, an association, a joint-stock company, a joint venture, an Estate, a trust, an unincorporated organization, a governmental unit or any subdivision thereof, the United States Trustee, or any other entity.

52.     *Equity Interest* means any interest in any Debtor, including, without limitation, (i) a share or membership interest in a corporation or limited liability corporation, whether or not denominated "stock", "interest", or similar security, and whether or not issued, unissued, authorized, or outstanding, (ii) an interest of a limited partner in a limited partnership, (iii) an interest of a general partner in a general partnership, or (iv) a warrant, option, contract, or right to purchase, sell, or subscribe to a share, security, or interest of a kind specified or similar to those referenced in subsections (i), (ii), or (iii) of this definition, as well as (a) any rights to any dividends or distributions as a result of such ownership, and (b) any and all Claims (1) for damages arising from the rescission of the purchase or sale of any such interest or (2) for reimbursement or contribution allowed under Bankruptcy Code § 502 on account of such Claim, which Claims are subordinated pursuant to Bankruptcy Code § 510.

53.     *Estate(s)* means individually, the estate of each Debtor in the Chapter 11 Cases, and, collectively, the Estates of all of the Debtors in the Chapter 11 Cases, created pursuant to Bankruptcy Code § 541 upon commencement of the Chapter 11 Cases.

54.     *Estate Resolution Consideration* collectively means (1) the Office Resolution Consideration, (2) the Other Assets Resolution Consideration, and (3) the D&O Resolution Consideration.

55.     *Estate Shared Proceeds* collectively means (1) the Office Shared Proceeds, (2) the Sharing Percentage Recovery, and (3) the D&O Shared Proceeds.

56.    *Executory Contract* means any executory contract or unexpired lease, subject to Bankruptcy Code § 365, between any of the Debtors and any other Person or Persons, specifically excluding contracts and agreements entered into pursuant to the Plan and/or on or after the Petition Date.  For the avoidance of doubt, the Vested Insurance Agreements and the Insurance Policies shall not be deemed to constitute Executory Contracts for purposes of the Plan or the Confirmation Order.

57.    *File or Filed* means file or filed on the docket of the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

58.    *Financing Agreement* means that certain Agreement, dated as of July 21, 2007 (as amended or modified on February 29, 2008, September 26, 2008, and November 19, 2010), providing for a revolving line of credit and two tranches of term loans, by and among CB Holding Corp., Charlie Brown's Acquisition Corp., Charlie Brown's Inc., Bugaboo Creek Acquisition, LLC, Bugaboo Creek Holdings, Inc., and each subsidiary listed as a borrower on the signature pages thereto, as borrowers; the Pre-Petition Lenders from time to time party thereto, as lenders; Ableco Finance LLC, as the initial collateral agent; Wells Fargo Foothill, Inc., as the initial administrative agent; and GMAC Commercial Finance LLC, as the initial documentation agent, together with all documents, instruments, and agreements (including all intercreditor agreements) related thereto or entered into in connection therewith.

59.    *Final Decree(s)* means the order(s) and/or decree(s) closing the Chapter 11 Cases pursuant to Bankruptcy Rule 3022 or otherwise, which shall be the Confirmation Order for those of the Chapter 11 Cases to be closed on the Effective Date pursuant to Section IV.A(d) of the Plan.

60.    *Final Order* means an order or judgment entered by the Bankruptcy Court or other applicable court that has not been reversed or stayed and as to which the time to appeal, petition for *certiorari*, or move for reargument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for *certiorari*, reargue, or rehear shall have been waived in writing in form and substance satisfactory to the Debtors or, in the event that an appeal, writ of *certiorari*, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court or other applicable court shall have been affirmed by the highest court to which such order or judgment was appealed, or *certiorari* has been denied, or from which reargument or rehearing was sought, and the time to take any further appeal, petition for *certiorari*, or move for reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Bankruptcy Code § 502(j), Rules 59 or 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules and/or the Local Rules may be, but has not then been, filed with respect to such order or judgment shall not cause such order or judgment not to be a Final Order.

61.    *Forfeited Distributions* means any undeliverable or unclaimed distributions on account of Administrative Claims, Priority Tax Claims, Other Priority Claims, and General Unsecured Claims that are deemed forfeited pursuant to Section VI.C.2 of the Plan.

62.    *General Unsecured Claim* means any Claim against any of the Debtors other than a DIP Facility Claim, an Administrative Claim (including any Professional Fees Claims), a Secured Claim (including Senior Creditor Claims and Other Secured Claims), a Priority Tax Claim, an Other Priority Claim, any other Claim entitled to priority under the Bankruptcy Code or any order of the Bankruptcy Court, an Intercompany Claim, or any Claims that constitute an Equity Interest.  Without limiting the generality of the foregoing, General Unsecured Claims shall include Pre-Petition Lenders Deficiency Claims (subject to the terms and conditions of the Plan, including Section III.B.4(b) of the Plan), any Other Secured Claim Deficiency Claim, Rejection Claims and any and all other Claims relating to or arising from any Executory Contract being rejected pursuant to the Plan, and Subordinated Notes Claims.  General Unsecured Claims shall not include Second Lien Note Deficiency Claims, which are deemed waived under the Plan in accordance with the Unsecured Creditor Settlement.

63.    *Holder* means the owner of any Claim or Equity Interest, as such ownership is reflected on the Debtors' books and records, the Schedules, or any Proof of Claim.

64.    *Impaired* means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of Bankruptcy Code § 1124.

65.    *Indemnity Amount* shall have the meaning ascribed thereto in Section VIII.I of the Plan.

66.    *Initial Distribution Date* means the date to be established by the Debtors and/or the Liquidating Trustee for distributions under the Plan first to be made or such other date as the Bankruptcy Court may order, which shall be no later than 90 days after the Effective Date for Allowed Administrative Claims and Allowed Other Priority Claims, or such later date as the Bankruptcy Court may order.

67.    *Insurance Policies* means any and all insurance policies issued to, or entered into by, one or more of the Debtors providing coverage to one or more of the Debtors and/or the Debtors' current or former directors, officers, stockholders, agents, employees, representatives, predecessors, and others for conduct in connection in any way with the Debtors, their assets, liabilities, and/or operations.

68.    *Intercompany Claim* means (a) any account reflecting intercompany book entries by one Debtor with respect to any other Debtor, or (b) any Claim that is not reflected in such book entries and is held by a Debtor against any other Debtor, in each case accruing before or after the Petition Date, including, but not limited to, any claim for reimbursement, payment as guarantor or surety, or any claim for contribution or expenses that were allocable between multiple Debtors.

69.    *IRS* means the Internal Revenue Service.

70.    *Lien* means any lien, security interest, or other charge or encumbrance against, or interest in, property of any kind or any other type of preferential arrangement, easement, right of

way, or other encumbrance on title to property to secure payment of a debt or performance of an obligation.

71.    *Liquidating Trust* means the grantor trust to be created on the Effective Date in accordance with the provisions of Section IV.D of the Plan and the Liquidating Trust Agreement.

72.    *Liquidating Trust Agreement* means the trust agreement that documents the powers, duties, and responsibilities of the Liquidating Trustee, which agreement shall be Filed by the Plan Supplement Filing Date.

73.    *Liquidating Trust Assets* means the Transferred Property on and after the Effective Date and any proceeds thereof held by the Liquidating Trust from time to time.

74.    *Liquidating Trustee* shall have the meaning ascribed thereto in Section IV.D.1(a) of the Plan.

75.    *Liquidating Trust Professionals* shall have the meaning ascribed thereto in Section IV.D.1(f) of the Plan.

76.    *Local Rules* means the Local Bankruptcy Rules for the District of Delaware, effective February 1, 2010, as amended from time to time, and applicable in these Chapter 11 Cases.

77.    *Mountainside Landlord* means ASC Mountainside Realty, LLC, as the landlord under the Mountainside Office Lease, and its successors and assigns thereunder.

78.    *Mountainside Letter Agreement* means that certain letter agreement, dated as of July 20, 2011, by and between Charlie Brown's Acquisition Corp., as tenant, and the Mountainside Landlord, as landlord, pertaining to, among other things, the termination of the Mountainside Office Lease.

79.    *Mountainside Office Lease* means that certain lease by and between Debtor Charlie Brown's Acquisition Corp., as tenant, and the Mountainside Landlord, as landlord, for certain office premises located at 1450 Route 22 West in Mountainside, New Jersey.

80.    *New CB Holding Share* shall have the meaning ascribed thereto in Section IV.A.(c) of the Plan.

81.    *Non-Released Parties* means any Entity that is not a Released Party.

82.    *Notes* collectively means the Second Lien Notes and the Subordinated Notes.

83.    *The Office* means the Debtors' former operating division known as The Office Beer Bar & Grill.

84. *Office Resolution Consideration* means the first $125,000 of the proceeds from the Office Shared Proceeds that is distributed to the Holders of Allowed General Unsecured Claims from the Liquidating Trust.

85. *Office Shared Proceeds* means (a) the first $125,000, plus (b) 5% of the net proceeds (after costs of sale) from the Sale of The Office in excess of $2.5 million.

86. *Other Assets Resolution Consideration* means (a) the first $125,000, plus (b) the first $125,000 of the Sharing Percentage Recovery that is distributed to the Holders of Allowed General Unsecured Claims from the Liquidating Trust.

87. *Other Priority Claim* means any Claim accorded priority in right of payment under Bankruptcy Code § 507(a), other than a Priority Tax Claim or an Administrative Claim.

88. *Other Secured Claim* means a Secured Claim other than the Pre-Petition Lender Secured Claims, the Second Lien Notes Secured Claims, and the DIP Facility Claims.

89. *Other Secured Claim Deficiency Claim* means that portion of the Claim held by the Holder of an Other Secured Claim that exceeds the value of such Holder's interest in the Debtors' interest in such Holder's collateral.

90. *Oversight Committee* shall have the meaning ascribed thereto in Section IV.D.1(g) of the Plan.

91. *Person* means a "person" as defined in Bankruptcy Code § 101(41).

92. *Petition Date* means November 17, 2010.

93. *Plan* means the *Debtors' Modified First Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code,* including, without limitation, any exhibits, supplements, appendices, and schedules hereto, either in its present form or as it may be amended, modified, altered, or supplemented from time to time in accordance with the terms and provisions of the Plan or of the Confirmation Order.

94. *Plan Fund* means an aggregate amount equal to $1,777,000 plus any budgeted amounts not paid prior to the Effective Date or such other amount that may be agreed to by the Debtors, the Administrative Agent, and the Creditors Committee at any time up until the Confirmation Date. In the event the Debtors, the Administrative Agent, and the Creditors Committee agree prior to the Confirmation Date that the Plan Fund shall be less than such amount, the Debtors shall File a notice indicating such lower amount.

95. *Plan Supplement* means the supplement to the Plan that contains the form of the Liquidating Trust Agreement and certain related documents, which will be filed on or before the Plan Supplement Filing Date.

96.  *Plan Supplement Filing Date* means the date by which the Plan Supplement and any exhibits or Plan schedules not Filed with the Plan shall be Filed as required by order of the Bankruptcy Court.

97.  *Pre-Petition Lenders* means the lenders under the Financing Agreement.

98.  *Pre-Petition Lenders Claims* means all Claims of the Pre-Petition Lenders against any of the Debtors represented by, related to, arising under, or in connection with the Financing Agreement (including all guaranties issued in connection therewith), for any and all outstanding obligations thereunder incurred through and including the Effective Date, after taking into account the sum of all payments or other distributions made by any of the Debtors to the Pre-Petition Lenders prior to the Effective Date on account of such Claims (pursuant to the Sale Orders, the DIP Facility Order, any other Final Order of the Bankruptcy Court, or otherwise).

99.  *Pre-Petition Lenders Deficiency Claims* means that portion of the Pre-Petition Lenders Claims that are not the Pre-Petition Lenders Secured Claims.

100.  *Pre-Petition Lenders Secured Claims* means that portion of the Pre-Petition Lenders Claims that are Secured Claims.

101.  *Preserved Collateral* means all remaining unliquidated property of the Debtors that they provided as collateral pursuant to the Financing Agreement and/or the related secured credit facility or the DIP Facility; provided, however, the Preserved Collateral shall not include any property that is the subject of any of the Sales or any other sale or transfer approved pursuant to an order of the Bankruptcy Court or with respect to which a motion seeking Bankruptcy Court approval of such sale or transfer is pending as of the Effective Date.

102.  *Priority Tax Claim* means a Claim of a governmental unit of the kind specified in Bankruptcy Code §§ 502(i) and 507(a)(8).

103.  *Privilege* means all attorney-client privileges, work-product protections, common interest, joint defense, and other immunities or protections from disclosure held by the Debtors or other parties, as applicable.

104.  *Professional* means any professional or other Entity that (a) has been retained in the Chapter 11 Cases by a Final Order of the Bankruptcy Court, pursuant to Bankruptcy Code §§ 327, 328, 363, or 1103 or otherwise, including, but not limited to, Cahill Gordon & Reindel LLP; Richards, Layton & Finger, P.A.; Pachulski Stang Ziehl & Jones LLP; Raymond James & Associates, Inc.; Hilco Real Estate, LLC; J.H. Cohn LLP; and CRG Partners Group, LLC, or (b) seeks compensation or reimbursement of expenses in connection with the Chapter 11 Cases, pursuant to Bankruptcy Code § 503(b)(4).

105.  *Professional Fee Claim* means (a) a claim under Bankruptcy Code §§ 327, 328, 330, 331, 363, 503(b), 1103, or 1106 for compensation for services rendered or expenses incurred prior to the Effective Date on the Estates' behalf by a Professional; or (b) a claim under Bankruptcy Code § 503(b)(4) for compensation for professional services rendered.

106. *Professional Fee Bar Date* shall have the meaning ascribed thereto in Section II.A.(b) of the Plan.

107. *Professional Fee Escrows* shall have the meaning ascribed thereto in Section II.A.(b) of the Plan.

108. *Proof of Claim* means any written statement timely and properly completed and filed in the Chapter 11 Cases, in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and/or any applicable order of the Bankruptcy Court by a Creditor in which such Creditor sets forth the amount purportedly owed and sufficient detail to identify the basis for a Claim.

109. *Pro Rata* means proportionately, so that with respect to an Allowed Claim, the ratio of (a)(i) the amount of property distributed on account of a particular Allowed Claim to (ii) the amount of that particular Allowed Claim is the same as the ratio of (b)(i) the amount of property distributed on account of all Allowed Claims of the Class in which the particular Allowed Claim is included to (ii) the amount of all Allowed Claims in that Class.

110. *Purchaser(s)* means the purchaser(s) under the respective Asset Purchase Agreement(s).

111. *Rejected Contract Claim Bar Date* means the date that is *30 days after the date of filing and service of a notice of the occurrence of the Effective Date*, which notice shall state the deadline by which Rejection Claims must be filed.

112. *Rejection Claim* means any Claim for amounts due as a result of the rejection of any Executory Contract pursuant to Bankruptcy Code § 365 that is rejected by the Debtors under Article VII of the Plan, *which Claim must be filed by the Rejected Contract Claim Bar Date*.

113. *Released Parties* means all Entities, including all Debtor Releasees and all Third-Party Releasees, granted a release by the Debtors in Section X.E of the Plan or by the Releasing Parties in Section X.F of the Plan.

114. *Releasing Parties* collectively means all Released Parties (including the DIP Facility Lender, the Administrative Agent, the Pre-Petition Lenders, the Creditors Committee, the Second Lien Noteholders, and all other Debtor Releasees and Third-Party Releasees) and each and every other Person that has held, holds, or may hold a Claim or Equity Interest that votes to accept the Plan.

115. *Sale Closing Date* means the date that all components of a particular Sale or a portion thereof fully closes in accordance with the terms of the applicable Sale Order and Asset Purchase Agreement.

116. *Sales* collectively means all of the Debtors' sales of assets under the terms of the applicable Sale Orders, including liquor license sales, closed restaurant location sales, and the

sales of substantially all of the respective assets of The Office, Bugaboo Creek, and Charlie Brown's or any portion thereof.

117.    *Sale Orders* collectively means all of the orders of the Bankruptcy Court granting the Debtors' respective motions seeking approval of Asset Sales pursuant to Bankruptcy Code § 363, including liquor license sales, closed restaurant location sales, and the sales of substantially all of the respective assets of (i) The Office, dated January 20, 2011 (ECF No. 468); (ii) Bugaboo Creek, dated March 11, 2011 (ECF No. 614); and (iii) Charlie Brown's, dated April 11, 2011 (ECF No. 710).

118.    *Schedules* means the respective schedules of assets and liabilities and the statements of financial affairs Filed by the Debtors in accordance with Bankruptcy Code § 521 and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended.

119.    *Second Lien Notes Claims* means all Claims of the Second Lien Noteholders against any of the Debtors represented by, related to, arising under, or in connection with the Second Lien Notes (including all guaranties issued in connection therewith), for any and all outstanding obligations thereunder incurred through and including the Effective Date, after taking into account the sum of all payments or other distributions made by any of the Debtors to the Second Lien Noteholders prior to the Effective Date on account of such Claims.

120.    *Second Lien Notes Deficiency Claims* means that portion of the Second Lien Notes Claims that are not the Second Lien Notes Secured Claims.

121.    *Second Lien Note Issuers* means CB Holding Corp., Charlie Brown's Acquisition Corp., Charlie Brown's Inc., Bugaboo Creek Acquisition, LLC, Bugaboo Creek Holdings, Inc., and each other issuer party to the Second Lien Note Purchase Agreement, in their capacity as the issuers thereunder.

122.    *Second Lien Note Purchase Agreement* means that certain Second Lien Note Purchase Agreement, dated as of September 26, 2008, by and between Trimaran Fund II, L.L.C., Trimaran Parallel Fund II, L.P., Trimaran Capital, L.L.C., CIBC Employee Private Equity Fund (Trimaran) Partners, and CIBC Capital Corp., as the initial note purchasers, and the Second Lien Note Issuers, as issuers, to acquire up to $12.5 million in principal face amount of Senior Subordinated Second Lien Notes, together with all documents, instruments, and agreements related thereto or entered into in connection therewith.

123.    *Second Lien Noteholders* collectively means the Holders of the Second Lien Notes, in whatever capacity.

124.    *Second Lien Notes* means the Senior Subordinated Second Lien Notes due December 21, 2012, issued by the Second Lien Note Issuers under the Second Lien Note Purchase Agreement.

125.    *Second Lien Notes Secured Claims* means that portion (if any) of the Second Lien Notes Claims that are Secured Claims.

126.    *Secured Claim* means all Claims that are secured by a properly-perfected, valid, enforceable, and not otherwise avoidable Lien on property in which an Estate has an interest or that is subject to setoff under Bankruptcy Code § 553, to the extent of the value of the Claim Holder's interest in the applicable Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to Bankruptcy Code § 506(a) and, if applicable, Bankruptcy Code § 1129(b); provided, however, that if the Holder of a Secured Claim is entitled to and does timely elect application of Bankruptcy Code § 1111(b)(2), then such Holder's entire Claim shall be a Secured Claim to the extent such Claim is Allowed.

127.    *Senior Creditor Claims* collectively means all remaining and outstanding  (a) Pre-Petition Lender Secured Claims and (b) Second Lien Note Secured Claims.

128.    *Sharing Percentage Recovery* means the amount equal to 4% of the net proceeds from the sale or liquidation of the Estates (other than (i) the Sale of The Office, (ii) the D&O Claims, and (iii) Avoidance Actions) in excess of $4 million.

129.    *Subordinated Notes Claims* collectively means all Claims represented by, related to, arising under, or in connection with the Subordinated Notes and any and all guarantees issued with respect thereto.

130.    *Subordinated Notes* means the Senior Subordinated Notes due June 21, 2013, issued by the Subordinated Notes Issuers under the Subordinated Notes Purchase Agreement.

131.    *Subordinated Notes Issuers* means CB Holding Corp., Charlie Brown's Acquisition Corp., Charlie Brown's Inc., Bugaboo Creek Acquisition, LLC, Bugaboo Creek Holdings, Inc., and each other issuer party under the Subordinated Notes Purchase Agreement, in their capacity as the issuers thereunder.

132.    *Subordinated Notes Purchase Agreement* means that certain Note Purchase Agreement, dated as of June 21, 2007 (as amended on February 29, 2008, and on September 26, 2008), by and between Kohlberg Capital Corporation, as purchaser, and the Subordinated Notes Issuers, as issuers, for the purchase of $10 million in principal face amount of Senior Subordinated Notes, together with all documents, instruments, and agreements related thereto or entered into in connection therewith.

133.    *Sysco 503(b)(9) Claims* means any and all Claims of Sysco Corporation and its affiliates against the Estates under Bankruptcy Code § 503(b)(9) (subject to all applicable offsets for Avoidance Actions or other available offsets, affirmative defenses, and any other defenses and objections with respect thereto).

134.    *Tax Code* means the Internal Revenue Code of 1986, as amended from time to time.

135.  *Third-Party Releasees* collectively means:  (a) the Pre-Petition Lenders and the DIP Facility Lender, solely in their respective capacities as such; (b) the Administrative Agent, solely in its capacity as such; (c) the Creditors Committee and the members thereof, solely in their respective capacities as such; (d) the Second Lien Noteholders; (e) with respect to each of the foregoing Persons, and except as otherwise set forth in the Plan, such Person's predecessors, successors, and assigns, and current and former directors, officers, employees, stockholders, members, subsidiaries, affiliates, principals, agents, advisors, financial advisors, attorneys, accountants, investment bankers, consultants, underwriters, appraisers, representatives, and other professionals, in each case in their respective capacities as such; and (f) any Person claimed to be liable derivatively through any Person referred to in clauses (a), (b), (c), (d), or (e) of this definition.

136.  *Transferred Causes of Action* means all Causes of Action, including, but not limited to, D&O Claims, that (i) have not been released in the Plan or pursuant to the Confirmation Order, the DIP Facility Order, or any other order of the Bankruptcy Court and (ii) do not otherwise constitute assets acquired by, or transferred to, any of the Purchasers or any other non-Debtor party prior to the Effective Date and the products and proceeds thereof.

137.  *Transferred Property* means, except as otherwise set forth in the Plan or in the Confirmation Order, (i) any and all Avoidance Actions and other Transferred Causes of Action and any products or proceeds thereof; (ii) the Office Shared Proceeds; (iii) the D&O Shared Proceeds (to the extent available); (iv) the Sharing Percentage Recovery; (v) the Plan Fund; and (vi) all other remaining unliquidated property and Assets of the Debtors or the Estates (including any Preserved Collateral), other than (a) any collateral securing an Other Secured Claim that is to be distributed to the Holder of such Claim in the manner provided in Section III.B.2 of the Plan, (b) any assets that were the subject of any of the Sales or any other sale or transfer approved pursuant to a Final Order of the Bankruptcy Court or was otherwise subject to a motion to sell or transfer pending as of the Effective Date, or (c) any other Assets that were otherwise previously duly transferred, sold, distributed, waived, abandoned, or disposed of as of the Effective Date.

138.  *Unimpaired* means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is not Impaired.

139.  *United States Trustee* means the United States Department of Justice, Office of the United States Trustee for Region 3.

140.  *Unsecured Creditor Settlement* shall have the meaning ascribed thereto in Section IV.K of the Plan.

141.  *Utility Companies* means those Persons who, in connection with the operation of the Debtors' businesses and the Debtors' management of their properties, supplied or provided electricity, water, sewer, telephone, communications, trash collection, and/or other services of this general character to any of the Debtors prior to the Effective Date.

142.    *Vested Insurance Agreements* means those agreements related to Insurance Policies to be set forth in a schedule or exhibit to be included in the Plan Supplement or otherwise filed with the Bankruptcy Court.

143.    *Voting Deadline* means the deadline established by the Bankruptcy Court as the last date to timely submit a Ballot for voting to accept or to reject the Plan.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS; DIP FACILITY CLAIMS; PRIORITY TAX CLAIMS

### A.    Administrative Claims

(a)    <u>Non-Professional Fee Administrative Claims</u>.  Other than the Holder of any Claim (including any Claim that could have otherwise potentially constituted an Allowed Administrative Claim against the Debtors but for the terms of any Sale Order, Asset Purchase Agreement, or management or other agreement entered into by the Debtors in connection with a Sale or otherwise) that the applicable Purchaser has agreed to satisfy, and is therefore obligated to pay, under the relevant Sale Order, Asset Purchase Agreement, or management or other agreement, each Holder of any then outstanding Allowed Administrative Expense Claim shall receive from the Plan Fund, or, in the case of any Allowed Sysco 503(b)(9) Claims, from the Estate Shared Proceeds (in each instance as set forth in Section IV.D.2(h)(2)(A) of the Plan), in full satisfaction, settlement, and release of, and in exchange for, such Allowed Claim (except to the extent that such Holder has agreed to a less favorable treatment of such Allowed Claim), Cash equal to the amount of such Allowed Claim on the later of (i) the Initial Distribution Date and (ii) the date that is 10 days after the Allowance Date of such Claim; <u>provided</u>, <u>however</u>, and without limiting the applicable Holder's obligation to file a properly-completed Proof of Claim prior to the Administrative Claims Bar Date with respect to any purported unpaid and outstanding Administrative Claim, Allowed Administrative Claims representing obligations incurred in the ordinary course of the Debtors' businesses shall be paid or performed in accordance with the terms and conditions of the particular transactions and any agreements related thereto (including any sale or management agreement entered into in connection with a Sale or otherwise).  Notwithstanding anything to the contrary in the Plan, the applicable Purchaser shall pay or otherwise satisfy any Claim, including any Claim that could have otherwise potentially constituted an Allowed Administrative Claim against the Debtors but for the terms of the applicable Sale Order, Asset Purchase Agreement, or management or other agreement that it has agreed to pay under such order and/or agreement in the time and manner set forth therein or that otherwise became the obligation of a particular Purchaser upon the closing of the underlying Sale (or portion thereof).

(b)    <u>Professional Fee Claims</u>.  All Persons seeking an award by the Bankruptcy Court of Professional Fees shall be required to file their respective final applications for allowance of Professional Fees for services rendered and reimbursement of expenses incurred by the date that is 30 days after the Effective Date (the "*Professional Fee Bar Date*") and, in full satisfaction, settlement, and release of, and in exchange for, such Allowed Claim, shall be paid in full from separate escrow accounts funded by a portion of the Plan Fund (in an amount to be determined by the Debtors, the Creditors Committee, and the Administrative Agent) (the "*Professional Fee*

*Escrows*"), in such amounts as are allowed by the Bankruptcy Court (A) within 10 days of the date upon which the order relating to any such Professional Fee Claim is entered or (B) upon such other terms as may be mutually agreed upon between the Holder of such Claim for Professional Fees and the Debtors.   Unless otherwise expressly set forth in the Plan, a Professional Fee Claim will be Allowed only if:  (i) on or before the Professional Fee Bar Date the entity holding such Professional Fee Claim files with the Court a final fee application and serves the application on counsel to the Debtors, counsel to the Creditors Committee, counsel to the Administrative Agent, the Liquidating Trustee, and the United States Trustee; and (ii) the Bankruptcy Court enters an order allowing the Claim.  *Entities holding Professional Fee Claims that do not timely file and serve a fee application by the Professional Fee Bar Date in the foregoing manner will be forever barred from asserting any such Professional Fee Claim against the Debtors, the Estates, the Liquidating Trust, the Liquidating Trust Assets (including the Preserved Collateral), or the respective property thereof.*

Until all Professional Fee Claims have been Allowed, Disallowed, expunged, settled, resolved, or otherwise adjudicated pursuant to a Final Order of the Bankruptcy Court, the funds contained in the Professional Fee Escrows shall not be utilized for any purpose by the Liquidating Trustee or otherwise other than the payment of Allowed Professional Fee Claims. To the extent any funds remain in the Professional Fee Escrows after all Professional Fee Claims have been Allowed, Disallowed, expunged, settled, resolved, or otherwise adjudicated pursuant to a Final Order of the Bankruptcy Court and subsequently paid to the applicable Professional, the Liquidating Trustee may utilize such funds in a manner consistent with the Plan, the Confirmation Order, and the Liquidating Trust Agreement.

In accordance with the Unsecured Creditor Settlement, notwithstanding anything to the contrary set forth in Paragraph 6 of the DIP Facility Order, the Professional Fee Claims of the Professionals retained by the Creditors Committee shall not exceed $250,000 (less amounts previously Allowed and paid to such Professionals in these Chapter 11 Cases).  To the extent the final Allowed Professional Fee Claims of the Professionals retained by the Creditors Committee are less than $250,000, the difference between the ultimately-Allowed amount and $250,000 shall be deemed to constitute Liquidating Trust Assets to be distributed to the beneficiaries of the Liquidating Trust in the manner set forth in the Plan and in the Liquidating Trust Agreement.  To the extent the final Allowed Professional Fee Claims of Professionals retained by the Creditors Committee exceeds $250,000, any such excess over $250,000 shall be paid from the Estate Resolution Consideration.

## B.    DIP Facility Claims

In full and final satisfaction, settlement, and release of, and in exchange for, any Allowed DIP Facility Claims, in accordance with Bankruptcy Code § 1129(a)(9), on the Effective Date, all funds in the possession of the Debtors other than any amounts that have been specifically earmarked and set aside for other purposes in these Chapter 11 Cases (including with respect to the Plan Fund, the Office Shared Proceeds, the Sharing Percentage Recovery, and the D&O Shared Proceeds), that constitute the proceeds of the collateral of the DIP Facility Lender shall be distributed to the Administrative Agent.  The Administrative Agent shall, after funding the

Plan Fund in accordance with Section IV.B of the Plan, distribute, upon reasonable prior notice to the Creditors Committee (to the extent practicable), in accordance with the terms of the DIP Facility Order, the Financing Agreement, the Plan, and the Confirmation Order, to the Holders of the Allowed DIP Facility Claims from (i) all such remaining funds and (ii) all sums previously paid by the Debtors to, or otherwise received by, the Administrative Agent pursuant to any of the DIP Facility Order, one or more of the Sale Orders, or any other applicable order of the Bankruptcy Court, the amount required to satisfy in full all then outstanding Allowed DIP Facility Claims.

In exchange for the foregoing treatment of Allowed DIP Facility Claims, on the Effective Date, any and all outstanding notes issued in connection with the DIP Facility shall be cancelled and shall be deemed terminated and of no force and effect, and except as otherwise set forth in the Plan or as may otherwise be agreed to by the Debtors and the DIP Facility Lender, the DIP Facility Lender shall receive cancellation without draw of any and all outstanding letters of credit issued under the DIP Facility.

## C.    Priority Tax Claims

Other than the Holder of any Claim that the applicable Purchaser has agreed to satisfy, and is therefore obligated to pay, under the relevant Sale Order and/or management or sale agreement, on, or as soon as reasonably practicable after, the latest of the Initial Distribution Date or the date such Priority Tax Claim becomes an Allowed Claim, each Holder of an Allowed Priority Tax Claim as of the Distribution Record Date shall receive, in full satisfaction, settlement, and release of, and in exchange for, such Allowed Priority Tax Claim, (i) Cash from the Estate Shared Proceeds equal to the unpaid portion of such Allowed Priority Tax Claim or (ii) such other treatment as to which the Debtors and such Holder have agreed upon. Notwithstanding anything to the contrary in the Plan, the applicable Purchaser shall pay or otherwise satisfy any Priority Tax Claim, including any Claim that could have otherwise potentially constituted an Allowed Priority Tax Claim against the Debtors but for the terms of the applicable Sale Order, Asset Purchase Agreement, or management or other agreement that it has agreed to pay under such order and/or agreement in the time and manner set forth therein or that otherwise became the obligation of a particular Purchaser upon the closing of the underlying Sale (or portion thereof).

## ARTICLE III.
## CLASSIFICATION AND TREATMENT
## OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

## A.    Summary

1.    The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including voting, Confirmation, and distribution pursuant to the Plan and in accordance with Bankruptcy Code §§ 1122 and 1123(a)(1). A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder or deficiency portion of such Claim or Equity

Interest qualifies within the description of such different Class.  A Claim or Equity Interest is in a particular Class only to the extent that such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise satisfied prior to the Effective Date.   In accordance with Bankruptcy Code § 1123(a)(1), Administrative Expense Claims, DIP Facility Claims, and Priority Tax Claims have not been classified, and the treatment for such unclassified claims is set forth in Article II.

> 2.      The classification of Claims against and Equity Interests in the Debtors pursuant to the Plan is as follows:

| Class | Claim | Status | Voting Right |
|---|---|---|---|
| 1 | Senior Creditor Claims | Impaired | Entitled to vote |
| 2 | Other Secured Claims | Impaired | Entitled to vote |
| 3 | Other Priority Claims | Unimpaired | Not entitled to vote -- deemed to accept |
| 4 | General Unsecured Claims | Impaired | Entitled to vote |
| 5 | Intercompany Claims | Impaired | Not entitled to vote -- deemed to reject |
| 6 | Equity Interests | Impaired | Not entitled to vote -- deemed to reject |

**B.      Treatment of Claims and Equity Interests**

> 1.      <u>Class 1 – Senior Creditor Claims</u>

> > (a)      Classification:  Class 1 consists of all Senior Creditor Claims.

> > (b)      Treatment:  On or after the Effective Date, the Administrative Agent shall distribute, in accordance with the DIP Facility Order, the Financing Agreement, the Plan, and the Confirmation Order, all remaining sums (after the payment in full by the Administrative Agent of (i) all Allowed DIP Facility Claims, in the manner set forth in Section II.B of the Plan, and (ii) all amounts required to fully fund the Plan Fund, in the manner set forth in Section IV.B of the Plan) to the Holders of Allowed Pre-Petition Lenders Secured Claims as of the Distribution Record Date, until all Allowed Pre-Petition Lenders Secured Claims have been satisfied in full. To the extent the Allowed Pre-Petition Lenders Secured Claims are not thereby, or have not otherwise previously been, satisfied in full, the Holders of such Claims as of the Distribution Record Date shall receive, in full satisfaction, settlement, and release of and in exchange for such Allowed Claims, a distribution of, in the aggregate, (1) 96% of the net proceeds (after costs of sale, as determined pursuant to Section IV.D.2(h) of the Plan) from the sale or liquidation of the remaining Preserved Collateral, and (2) all net proceeds realized from the D&O Claims other than the D&O Shared Proceeds, in each instance as and when such net proceeds (as determined pursuant to Section IV.D.2(h) of the Plan) are generated or otherwise become available in the manner provided in the Plan and the Liquidating Trust Agreement, until all such Allowed Claims have been satisfied in full.   Such distributions of proceeds referenced in (1) and (2) in this Section III.B.1(b) of the Plan shall be made by the Liquidating Trustee to the Administrative Agent, for subsequent distribution thereby to the Holders of Allowed Pre-Petition Lenders Secured Claims in the manner set forth in the Financing Agreement.  For the avoidance of doubt,

all of the Pre-Petition Lenders' pre-petition or post-petition collateral, or the proceeds thereof, which are returned or refunded, including without limitation, Workers Compensation Insurance Policy deposits or any other deposits, or any retainers, once returned or refunded to the Debtors (if prior to the Effective Date) or to the Liquidating Trustee (if on or after the Effective Date), as applicable, shall be paid 100% to the Administrative Agent, for subsequent distribution thereby to the Holders of Allowed Pre-Petition Lenders Secured Claims, until all such Allowed Claims are satisfied in full, in the manner set forth in the Financing Agreement.

(c)     In accordance with the Unsecured Creditor Settlement, the Second Lien Noteholders shall be deemed to have waived any right to a recovery under the Plan or otherwise from the Debtors, the Estates, or the Liquidating Trust on account of the Second Lien Note Claims.

(d)     The Pre-Petition Lenders shall retain any perfected security interests in, and liens upon, the Preserved Collateral from and after the Effective Date in the same order of priority and with the same rights as existed before the Effective Date, without the need for the Pre-Petition Lenders to file UCC financing statements.  Such perfected security interests in, and Liens upon, the Preserved Collateral shall continue to secure the obligations to the Pre-Petition Lenders under the Plan until such time as the Allowed Pre-Petition Lenders Claims have been satisfied in full, or all of the Preserved Collateral has been sold by the Liquidating Trustee in accordance with this Section III.B.1(d), whichever occurs first.  The Pre-Petition Lenders shall release any Liens in connection with any such sales or other dispositions of the Preserved Collateral, provided that (i) the Administrative Agent consents to such sale or other disposition, which consent shall not be unreasonably withheld, (ii) the proper percentage of net proceeds are paid to the Administrative Agent for distribution to the Pre-Petition Lenders in accordance with the Plan, and (iii) the proposed sale is consummated in accordance with, and subject to, the Liquidating Trust Agreement.

(e)     In exchange for the foregoing treatment of Allowed Senior Creditor Claims, on the Effective Date, all outstanding notes issued in connection with the Financing Agreement and the Second Lien Notes shall be cancelled and shall be deemed terminated and of no force and effect, and except as otherwise set forth in the Plan or as may otherwise be agreed to by the Debtors and the Pre-Petition Lenders, the Pre-Petition Lenders shall receive cancellation without draw of any and all outstanding letters of credit issued under the Financing Agreement.

(f)     Voting:  Class 1 is Impaired.  Holders of Allowed Senior Creditor Claims in Class 1 are entitled to vote to accept or to reject the Plan.

2.    Class 2 – Other Secured Claims

(a)     Classification:  Class 2 consists of all Other Secured Claims.

(b)     Treatment:  Except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable or different treatment, on, or as soon as reasonably practicable after, the later of the Initial Distribution Date or the date such Claim becomes an

Allowed Other Secured Claim, each Holder of such Allowed Other Secured Claim as of the Distribution Record Date shall receive the property securing such Allowed Other Secured Claim.

(c)      Voting:  Class 2 is Impaired.  Holders of Allowed Other Secured Claims in Class 2 are entitled to vote to accept or to reject the Plan.

3.      Class 3 – Other Priority Claims

(a)      Classification: Class 3 consists of all Other Priority Claims.

(b)      Treatment:  Except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable or other treatment, on, or as soon as reasonably practicable after, the later of the Initial Distribution Date or the date such Other Priority Claim becomes an Allowed Other Priority Claim, each Holder of an Allowed Other Priority Claim (including any Allowed Vacation Claim) as of the Distribution Record Date shall receive in full satisfaction, settlement, and release of, and in exchange for, such Allowed Other Priority Claim, Cash from (i) the Plan Fund or (ii) any other escrows that may be established for the payment of any particular remaining unpaid Allowed Other Priority Claims, equal to the unpaid portion of such Allowed Other Priority Claim.

(c)      Voting:  Class 3 is Unimpaired.  Holders of Allowed Other Priority Claims in Class 3 shall be deemed to have accepted the Plan and thus, are, not entitled to vote to accept or to reject the Plan.

4.      Class 4 – General Unsecured Claims

(a)      Classification: Class 4 consists of all General Unsecured Claims.

(b)      Treatment:  Holders of Allowed General Unsecured Claims, as of the Distribution Record Date, shall receive their Pro Rata share of the Transferred Property (or the proceeds thereof) from the Liquidating Trustee, in the time and manner provided in Article IV in the Plan and in the Liquidating Trust Agreement; provided, however, that the Holders of Allowed General Unsecured Claims shall not be entitled to any Pro Rata distribution of the Plan Fund (notwithstanding the fact that the Transferred Property includes the Plan Fund), and instead, the Plan Fund shall be utilized and/or distributed in the manner set forth in the Plan, the Confirmation Order, and/or the Liquidating Trust Agreement.  Notwithstanding the foregoing, the Estate Resolution Consideration shall not be shared on a Pro Rata basis with the Pre-Petition Lenders as Holders of General Unsecured Claims on account of the Pre-Petition Lenders Deficiency Claims or otherwise, but instead shall be distributed to all other Holders of Allowed General Unsecured Claims in the manner and subject to the limitations set forth in the Plan and in the Liquidating Trust Agreement.

(c)      Voting:  Class 4 is Impaired.  Holders of Allowed General Unsecured Claims in Class 4 are entitled to vote to accept or to reject the Plan.

5.      Class 5 – Intercompany Claims

(a)    Classification:  Class 5 consists of all Intercompany Claims.

(b)    Treatment:  On the Effective Date, all Intercompany Claims will be reviewed and adjusted or cancelled as the Debtors or the Liquidating Trustee, as applicable, determines is appropriate (by, among other things, releasing, canceling, or waiving such claims). Holders of Intercompany Claims shall not be entitled to participate in any of the distributions on account of Claims under any other Sections of the Plan and shall only be entitled to the treatment provided in this Section of the Plan.

(c)    Voting:  Class 5 is Impaired.  Because Holders of Intercompany Claims will receive no distribution under the Plan, Class 5 shall be deemed to have voted to reject the Plan.

6.    Class 6 – Equity Interests

(a)    Classification:  Class 6 consists of all Equity Interests.

(b)    Treatment:  On the Effective Date, all Equity Interests (including any and all options or rights to exercise warrants or options or to otherwise acquire any Equity Interests) shall be cancelled, deemed terminated, and of no further force and effect, and the Holders of Equity Interests shall not receive or retain any distribution or property on account of such Equity Interests.

(c)    Voting:  Class 6 is Impaired.  Because Holders of Equity Interests will receive no distribution under the Plan, Class 6 shall be deemed to have voted to reject the Plan.

## ARTICLE IV.
## IMPLEMENTATION OF THE PLAN AND THE LIQUIDATING TRUST

A.    **Substantive Consolidation; Resignation of Directors and Managers; Issuance of One New Share in CB Holding**

(a)    Substantive Consolidation of the Estates

The Plan contemplates, and is predicated upon, the entry of an order substantively consolidating the Estates and the Chapter 11 Cases for the purposes of all actions associated with Confirmation and Consummation of the Plan, including voting and distribution.  On and subject to the occurrence of the Effective Date, (1) all remaining assets and liabilities of the Debtors shall be treated as if they were aggregated together, (2) all guaranties of any Debtor of the payment, performance, or collection of obligations of any other Debtor shall be eliminated and cancelled, (3) any obligation of any Debtor and all guaranties thereof executed by one or more of the other Debtors shall be treated as a single obligation, and such guaranties shall be deemed a single Claim against the consolidated Debtors, (4) all joint obligations of two or more Debtors and all multiple Claims (including any and all multiple Proofs of Claim that were filed by the same party against more than one Debtor asserting the same underlying Claim) against such entities on account of such allegedly joint obligations shall be treated and (to the extent such

Claim is allowable) Allowed only as a single Claim against the consolidated Debtors, and (5) each Claim filed or scheduled in the Chapter 11 Case of any Debtor shall be deemed filed or scheduled against the consolidated Debtors and treated as a single obligation of the consolidated Debtors on and after the Effective Date.  The foregoing substantive consolidation (x) shall not affect the rights of any Holder of any remaining Allowed DIP Facility Claim, Allowed Senior Creditor Claim, or Allowed Other Secured Claim with respect to any collateral securing its Claim (or the priorities of the applicable Holders' respective Liens on such collateral as of the Effective Date), or the terms and implementation of any settlement or any Final Order and the rights and obligations of the parties thereto entered into in connection with the Confirmation of the Plan or otherwise in the Chapter 11 Cases and (y) shall not, and shall not be deemed to, prejudice the Avoidance Actions or any other Causes of Action (subject to the release, waiver, exculpation, and related provisions of the Plan, the Confirmation Order, the DIP Facility Order, and any other order of the Bankruptcy Court), which shall survive entry of the Confirmation Order for the benefit of the Debtors and the Estates, as if there had been no substantive consolidation.

The Plan shall serve as, and shall be deemed to be, a motion for entry of an order substantively consolidating the Chapter 11 Cases, although nothing in the Plan or in the Disclosure Statement shall, or shall be deemed to, prejudice or otherwise affect the Debtors' right to file a separate motion seeking substantive consolidation if they elect to do so in their sole discretion.  If no objection to the substantive consolidation provided for in the Plan is timely filed by the deadline established by the Bankruptcy Court for filing objections to the proposed Confirmation of the Plan, an order approving such substantive consolidation (which may be the Confirmation Order or any other order) may be entered by the Bankruptcy Court.  If any such objections are timely filed and served, a hearing with respect to the proposed substantive consolidation of the Chapter 11 Cases and the objections thereto may be scheduled by the Bankruptcy Court, which hearing may, but is not required to, coincide with the Confirmation Hearing.

Notwithstanding the substantive consolidation called for in the Plan, each and every one of the Debtors shall remain obligated to pay any due and owing quarterly fees to the Office of the Unites States Trustee until the earliest of that particular Debtor's Chapter 11 Case being closed in the manner provided in the Plan, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code.

(b)    Resignation of Directors and Managers; Closing of the Affiliate Debtors' Chapter 11 Cases

On the later of the Effective Date and the applicable Sale Closing Date for the Sale or portion thereof, as applicable, of the Assets of a particular Debtor, (1) all the officers, directors, or managers, as the case may be, of each such Debtor shall be deemed to have resigned, except for Edmund Schwartz, Chief Financial Officer, for those Debtors that continue to own any liquor licenses; (2) the Liquidating Trustee shall be appointed the sole director, officer, and/or manager of CB Holding and of the applicable Affiliate Debtors for which all Sales have Closed, until certificates of cancellation, dissolution, or merger for such Debtors shall have been filed in

accordance with Section IV.F(a) of the Plan; and (3) the Chapter 11 Case of the applicable Affiliate Debtor shall be closed without the need for any additional order of the Bankruptcy Court other than the Confirmation Order, following which any and all proceedings that could have been brought or otherwise commenced in the Chapter 11 Case of any such Affiliate Debtor shall be brought or otherwise commenced in the CB Holding Chapter 11 Case, in each instance without any other or further action by the stockholders, members, or directors (or other governing body) of any of the Debtors, and any and all remaining Assets of such Affiliate Debtor shall be transferred to CB Holding (other than liquor licenses that cannot be transferred or assigned under applicable law) for further distribution or liquidation in accordance with the terms of the Plan.  The Confirmation Order shall constitute a Final Decree with respect to all of the Debtors whose Chapter 11 Cases are closed pursuant to this Section IV.A.(b), and the Estates of all such Chapter 11 Cases shall be deemed fully administered as of the Effective Date. The Liquidating Trustee and/or his designee (including any employee of, or any other Person that may be engaged by, CRG) and Edmund Schwartz, as applicable, are authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, any remaining Sales, and any corporate action required by the Debtors, without any requirement of further action by the stockholders, members, or directors (or other governing body) of the Debtors, as applicable.

(c)     Issuance of the New CB Holding Share

On the Effective Date, one new share of stock in CB Holding (the "*New CB Holding Share*") shall be issued to the Liquidating Trustee, as custodian for the benefit of the Estates.  The Liquidating Trustee shall not sell, transfer, or otherwise dispose of the New CB Holding Share, except as may otherwise be set forth in the Liquidating Trust Agreement.  The New CB Holding Share shall automatically be cancelled on the date CB Holding is dissolved in accordance with Section IV.F of the Plan, without the need for any further action by, or order of, the Bankruptcy Court.

(d)     General Authorization for the Debtors and the Liquidating Trustee to Effectuate the Plan, the Remaining Sales, and Related Transactions

Upon the entry of the Confirmation Order by the Bankruptcy Court, all matters provided under the Plan or with respect to any remaining Sales involving the corporate structure of, or corporate action by, the Debtors shall be deemed authorized and approved without any requirement of further action by the Debtors, the Debtors' shareholders, or the Debtors' boards of directors or managers (as applicable).  During the period prior to the Effective Date, the Debtors shall remain debtors-in-possession and shall remain subject to the jurisdiction of the Bankruptcy Court.  The Debtors, the Creditors Committee, the Administrative Agent, and all other parties-in-interest are authorized and directed to take such actions during the period prior to the Effective Date as may be necessary and consistent with the Plan to prepare to effectuate and/or implement the Plan upon the Effective Date.  To the extent the manner of performance is not specified in the Plan or in any Sale Orders, the Debtors and/or the Liquidating Trustee (subject to any Oversight Committee guidance or approval required under the Liquidating Trust

Agreement), as applicable and appropriate, shall have the discretion to carry out and perform all obligations and duties imposed on them, and actions contemplated or authorized, by the Plan, the Confirmation Order, any Plan Document, the Sale Orders, or by law, in any manner they so choose.

In addition, the Debtors (including Edmund Schwartz, Chief Financial Officer, where applicable), as applicable and appropriate, are authorized to take such action during the period on and after the Confirmation Date as may be necessary and consistent with the Plan to effectuate and/or implement the Plan, the Confirmation Order, and the Sale Orders. The Debtors, the Chief Restructuring Officer, and any other individuals serving the Debtors in such capacity on and after the Confirmation Date, as the case may be, and any professionals retained thereby, shall not be liable for actions taken or omitted in such capacity as, or on behalf of, the Debtors or the Estates following the Confirmation Date, except those acts arising out of its or their own willful misconduct, bad faith, actual fraud, self-dealing, breach of fiduciary duty, or *ultra vires* acts, and each shall be entitled to indemnification and reimbursement for fees and expenses in defending any and all of its actions or inactions in its or their capacity as, or on behalf of, the Debtors or the Estates, except for any actions or inactions involving willful misconduct, bad faith, actual fraud, self-dealing, breach of fiduciary duty, or *ultra vires* acts. Any indemnification claim of the Entities entitled to indemnification hereunder shall be satisfied, first, from any applicable insurance proceeds; second, from the Plan Fund; and, finally, to the extent permitted hereunder, from any Transferred Property (to the extent provided in Section IV.D.2(h)(4) of the Plan).

## B.    Funding of the Plan Fund to the Liquidating Trustee

In accordance with Section II.B. and Section III.B.1(b) of the Plan, on the Effective Date, the Plan Fund shall be funded, and transferred to the Liquidating Trustee, from a combination of funds transferred to the Administrative Agent, funds currently held by the Debtors, including the Estate Shared Proceeds, or funds previously paid by the Debtors to, or otherwise received by, the Administrative Agent pursuant to any of the DIP Facility Order, one or more of the Sale Orders, or any other applicable order of the Bankruptcy Court, in an aggregate amount equal to $1,777,000 plus any budgeted amounts not paid prior to the Effective Date or such other amount that may be agreed to by the Debtors, the Administrative Agent, and the Creditors Committee at any time up until the Confirmation Date. Any such funding by the Administrative Agent of a portion of the Plan Fund shall be the final contribution by the Administrative Agent and the DIP Facility Lender to the Debtors' Estates. The Plan Fund shall be used by the Liquidating Trustee in the manner provided for in the Plan and in the Liquidating Trust Agreement.

## C.    The Transfer of the Liquidating Trust Assets to the Liquidating Trust.

The Liquidating Trust, upon its creation in accordance with Section IV.D of the Plan, shall be funded initially with the Liquidating Trust Assets. Except as otherwise set forth in the Plan (including Section IV.D.2(e) of the Plan), on the Effective Date, subject to any exceptions contained in the Plan and subject to the security interests and Liens preserved in favor of the Pre-Petition Lenders pursuant to Section III.B.(1)(d) of the Plan, the Debtors shall transfer and shall be deemed to have irrevocably transferred the Liquidating Trust Assets (including any remaining

Preserved Collateral) to the Liquidating Trust, for and on behalf of the beneficiaries of the Liquidating Trust in Class 4 (subject to the limitations set forth in Section III.B.4(b) of the Plan) and to the Holders of Allowed Senior Creditor Claims with respect to the Preserved Collateral, with no reversionary interest in the Debtors.  Without limiting the generality of the foregoing, the Debtors shall remit to the Liquidating Trust any sums that constitute the Office Shared Proceeds, the D&O Shared Proceeds, and the Sharing Percentage Recovery that they may receive on and after the Effective Date from the Sales or otherwise.

### D.    The Liquidating Trust

1.    Creation of the Liquidating Trust

(a)    The Liquidating Trust shall be administered by a trustee (the "*Liquidating Trustee*").  The designation and appointment of the Liquidating Trustee shall be effective on the Effective Date, without the need for any further order of the Bankruptcy Court other than the Confirmation Order.

(b)    On the Effective Date or immediately prior thereto, (i) the Liquidating Trust shall be created and established by the execution and delivery of the Liquidating Trust Agreement and any other necessary or appropriate action, subject to the provisions of the Plan, and (ii) all Transferred Property shall be transferred to the Liquidating Trust free of all Liens, Claims, and interests (except those security interests and Liens preserved in favor of the Pre-Petition Lenders pursuant to Section III.B.(1)(d) of the Plan) for the benefit of Holders of Allowed General Unsecured Claims (subject to the limitations set forth in Section III.B.4(b) of the Plan with respect to the Estate Resolution Consideration, and except as otherwise set forth in Section IV.D.2(e) of the Plan with respect to the Avoidance Actions and other Transferred Causes of Action).  The Liquidating Trust shall hold, manage, administer, receive, maintain, reduce to Cash, or otherwise liquidate, sell, monetize, transfer, or abandon the Transferred Property (including any remaining Preserved Collateral) in accordance with, and subject to, the Plan, without the need for any additional Bankruptcy Court order or approval other than the Confirmation Order, and receive, hold, manage, and distribute such liquidated property and the proceeds and products thereof (including all of the Cash that is obtained by the Liquidating Trustee after the Effective Date relating to any of the Transferred Property through the exercise of its power and authority under the Plan or the Liquidating Trust Agreement or otherwise) in accordance with and subject to the terms and provisions of the Plan (including Section III.B.4(b) of the Plan) and the Liquidating Trust Agreement; provided, however, that the Liquidating Trustee shall utilize and distribute the Plan Fund in the manner set forth in the Plan, the Confirmation Order, and/or the Liquidating Trust Agreement and shall not distribute the Plan Fund to the Holders of Allowed General Unsecured Claims.  As provided in Section IV.E and Section IV.F of the Plan, upon the entry of a Final Decree by Bankruptcy Court with respect to the Chapter 11 Case of CB Holding, the Liquidating Trust shall be dissolved without further action by the Liquidating Trustee or action or order of the Bankruptcy Court.

(c)    As of the Effective Date, the Liquidating Trust shall also have the power and authority to, and be responsible for, among other things (i) winding down the Estates, including, as applicable and appropriate in its discretion, operating (or liquidating and winding up) any

remaining businesses and using and disposing of any remaining property and Assets, in accordance with, and subject to, the Plan and the Liquidating Trust Agreement, that do not constitute Transferred Property, without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules, other than those restrictions expressly imposed by the Plan, the Liquidating Trust Agreement, the Sale Orders, and the Confirmation Order, (ii) subject to Section IV.D.2(e) of the Plan and any limitations and/or requirements as set forth in the Plan or in the Liquidating Trust Agreement, filing, prosecuting, resolving, and settling in the names of the Debtors, the Estates, and/or the name of the Liquidating Trustee, the Avoidance Actions and all other Transferred Causes of Action (including the D&O Claims), (iii) making distributions to the Holders of remaining Allowed Administrative Claims (including Professional Fees Claims), DIP Facility Claims (if any), Priority Tax Claims, Senior Creditor Claims, Other Secured Claims, and Other Priority Claims in the manner set forth in the Plan, (iv) settling, resolving, and/or objecting to, in the names of the Debtors, the Estates, and/or the name of the Liquidating Trustee, any Disputed Claims, including any Disputed Administrative Claims (including Professional Fees Claims), Priority Tax Claims, Senior Creditor Claims, Other Secured Claims, Other Priority Claims, General Unsecured Claims, and Intercompany Claims in the manner set forth in Article V of the Plan, (v) making distributions to the Holders of Allowed General Unsecured Claims and, to the extent set forth in the Plan (including Section III.B.1(b) of the Plan, to the Holders of Allowed Senior Secured Claims, with respect to the net proceeds from the sale or liquidation of the Preserved Collateral, and (vi) taking all actions necessary or appropriate to enforce the Debtors' and the Estates' rights under the Sale Orders and any other order authorizing a sale or transfer of Assets and any related document and to fulfill, comply with, or otherwise satisfy the Debtors' covenants, agreements, and obligations under any such Sale or other transaction and any related document.  The Liquidating Trustee and the Debtors shall also have the power and authority to effectuate the termination of, or otherwise sign any documents in connection with or otherwise relating to, any Compensation and Benefits Program.

(d)  The Liquidating Trustee shall be authorized to take such action during the period on and after the Effective Date as may be necessary and consistent with the Plan to effectuate and/or implement the Plan, the Confirmation Order, and the Sale Orders.  Without limiting the generality of the foregoing, the Liquidating Trustee shall, in furtherance of, and consistent with, the purpose of the Plan, but subject to any Oversight Committee guidance or approval required under the Liquidating Trust Agreement, have the power and authority to (A) take such actions as the Liquidating Trustee may determine to be necessary, desirable, or appropriate to carry out the purpose of, or to perform such other functions as are provided in or contemplated by, the Plan and the Liquidating Trust Agreement, (B) purchase or continue insurance protecting the Debtors, the Liquidating Trustee, their respective representatives, agents, employees, or independent contractors, and the property of the Debtors and the Liquidating Trust, and (C) in accordance with Section IV.F of the Plan, administer the closure of the Chapter 11 Cases of CB Holding and of any other Debtor whose Chapter 11 Case has not yet otherwise closed in accordance with Section IV.A(d) of the Plan.  In addition, on and after the Effective Date, the Liquidating Trustee shall (in conjunction with CB Holding and any Debtor whose Chapter 11 Case has not yet otherwise closed in accordance with Section IV.A(d) of the Plan) act to close any remaining Sales or portions thereof and thereafter close the Chapter 11 Cases of the applicable Affiliate

Debtors, as and when a particular Sale or other transfer of all of such Debtor's Assets has closed pursuant to the terms of the applicable Asset Purchase Agreement or otherwise. In all circumstances, the Liquidating Trustee shall act in the best interests of the Estates and the beneficiaries of the Liquidating Trust, and in furtherance of the purposes of the Plan and may do so without the need for any notice other than to the Administrative Agent and/or the Oversight Committee to the extent required in the Plan or in the Liquidating Trust Agreement, or for any additional order of the Bankruptcy Court or otherwise other than the Confirmation Order.

(e)     Except as otherwise set forth in Article IV of the Plan (including as set forth in Section IV.D.2(h) of the Plan), all costs and expenses associated with the winding down of the Estates, the administration of the Liquidating Trust, and all other actions referenced in Sections IV.D, IV.E, and IV.F of the Plan shall be the responsibility of, and paid for by, the Liquidating Trustee in accordance with the Plan from the Plan Fund or from any other cash of the Liquidating Trust on hand that does not otherwise constitute Transferred Property or is not to be distributed to any Holder of an Allowed Claim pursuant to the Plan (including any Allowed Pre-Petition Lenders Claims), the DIP Facility Order, the Sale Orders, or any other order of the Bankruptcy Court. The Liquidating Trustee is authorized to utilize the Plan Fund to perform such functions as are provided in, or contemplated by, the Plan, the Confirmation Order, and/or the Liquidating Trust Agreement; without limiting the generality of the foregoing, the Liquidating Trustee shall be authorized to utilize the Plan Fund (including the Professional Fee Escrows, with respect to Allowed Professional Fee Claims) to, among other things, (i) satisfy all remaining Allowed Administrative Expense Claims (including, without limitation, all Claims for Professional Fees relating to services rendered or reimbursement of expenses incurred through and including the Confirmation Date, but not including any Allowed Sysco 503(b)(9) Claims), prior to any distributions therefrom being made to Holders of General Unsecured Claims, and all post-Confirmation Date and post-Effective Date fees and expenses of the Debtors and the Debtors' and the Creditors Committee's respective Professionals (as applicable) of the type set forth in Section IV.D.1(f) of the Plan; and any and all Allowed Other Priority Claims that were not paid in full on the Initial Distribution Date; (ii) set aside an amount that would be required to distribute to the Holders of Disputed Administrative Expense Claims (other than any Disputed Sysco 503(b)(9) Claims) and Disputed Other Priority Claims if all such Claims are subsequently Allowed, as set forth more fully in Article V of the Plan; (iii) satisfy all of the Debtors' and the Liquidating Trustee's anticipated costs and expenses in connection with their respective obligations under the Plan and the Liquidating Trust Agreement (including an amount required to satisfy obligations to the Liquidating Trust Professionals); and (iv) pay insurance, taxes, and other expenses arising in the ordinary course of business in connection with any of the foregoing. Subject to any exceptions expressly set forth in the Plan or the Confirmation Order, the Liquidating Trust may pay all such fees, costs, and expenses without Bankruptcy Court approval. As set forth in Section II.A(a) and Section II.C of the Plan, any Allowed Sysco 503(b)(9) Claims and all Allowed Priority Tax Claims shall be paid from the Estate Shared Proceeds, and to the extent practicable, reserve funds shall be set aside from the Estate Shared Proceeds with respect to all Disputed Sysco 503(b)(9) Claims and Disputed Priority Tax Claims until such Claims are resolved in the manner set forth in Article V of the Plan.

(f)     The Liquidating Trustee shall be responsible for all decisions and duties with respect to the Liquidating Trust and the Liquidating Trust Assets, subject to any Oversight Committee guidance or approval required under the Liquidating Trust Agreement.  Subject to any Oversight Committee guidance or approval required under the Liquidating Trust Agreement, the Liquidating Trustee may retain such law firms, accounting firms, experts, advisors, consultants, investigators, appraisers, auctioneers, translators, or other professionals as it may deem necessary (collectively, the "*Liquidating Trust Professionals*"), in its discretion, and (except as otherwise set forth in this Section IV.D.1(f)) to be paid from the Plan Fund, to aid in the performance of its responsibilities pursuant to the terms of the Plan and the Liquidating Trust Agreement, including, without limitation, the liquidation and distribution of the Liquidating Trust Assets.  The Liquidating Trustee's general insolvency counsel shall be Pachulski Stang Ziehl & Jones LLP.  The Liquidating Trustee shall maintain an accounting of such costs and expenses.  It shall not be a requirement that the Liquidating Trustee or any such parties retained by the Liquidating Trust be a "disinterested person" (as such term is defined in Bankruptcy Code § 101(14)), and such retained parties may include Professionals or other Persons that had previously been active in the Chapter 11 Cases on behalf of any Debtor, Creditor, or Equity Interest Holder, the Creditors Committee, or other constituency in the Chapter 11 Cases.  Without limiting the generality of the foregoing, such retained parties may include the Chief Restructuring Officer and any employee of CRG.  The Liquidating Trustee may, without application by any of the Liquidating Trust Professionals to, or approval by, the Bankruptcy Court, pay the Liquidating Trust Professionals' fees that are incurred after the Effective Date.

(g)     The Liquidating Trust Agreement shall provide for the establishment of a Liquidating Trust oversight committee (the "*Oversight Committee*"*)*, which shall consist of three members.  In accordance with the Unsecured Creditor Settlement, two of the initial members of the Oversight Committee shall be designated on or before the Effective Date by the Creditors Committee, and the third initial member shall be designated by the Administrative Agent, and a notice setting forth the names of the members of the Oversight Committee shall be filed with the Bankruptcy Court as part of the Plan Supplement or otherwise prior to the Confirmation Hearing. The designation of the Oversight Committee shall be effective on the Effective Date, without the need for a further order of the Bankruptcy Court other than the Confirmation Order.  The Oversight Committee shall have the powers and authority set forth in the Liquidating Trust Agreement.

(h)     Except as otherwise set forth in Article II or III of the Plan (including in Section III.B.4(b) of the Plan with respect to the prohibition on making distributions of the Estate Resolution Consideration to the Pre-Petition Lenders) and this Section IV.D, the Liquidating Trustee will distribute to the Holders of Allowed General Unsecured Claims as of the Distribution Record Date on account of their interests in the Liquidating Trust, on a regular basis, all unrestricted Cash on hand (including any Cash received from the applicable Debtors on or after the Effective Date and treating any permissible investment as Cash for purposes of this provision), except such amounts (i) as have been reserved on account of Disputed Claims or are otherwise part of the claims reserve established by the Liquidating Trustee (the "*Disputed Claim Reserve*"), (ii) as are reasonably necessary to maintain the value of the remaining Liquidating Trust Assets during liquidation, (iii) as are necessary to pay reasonable incurred or anticipated

expenses (including, but not limited to, any taxes imposed on or payable by the Debtors or the Liquidating Trust or otherwise in respect of the Liquidating Trust Assets), or (iv) as are necessary to satisfy other liabilities incurred or anticipated by the Liquidating Trust in accordance with the Plan or the Liquidating Trust Agreement; provided, however, that the Liquidating Trustee shall not be required to make a distribution pursuant to this Section IV.D.1(h) if the Liquidating Trustee reasonably determines that the costs and expenses of making such distribution would be excessive compared to the aggregate, net amount of unrestricted Cash available for such distribution (taking into account the above listed exclusions) as would make the distribution impracticable.  The Liquidating Trustee shall also distribute to the Administrative Agent the allocated percentage of the net proceeds from the sale or liquidation of the Preserved Collateral in the manner provided for in Section III.B.1(b) of the Plan.

(i)      For U.S. federal and applicable state and local income tax purposes, it is intended that the Liquidating Trust be classified as a liquidating trust under Treasury Regulation Section 301.7701-4 and that the trust assets be treated as owned by its beneficiaries.  Accordingly, for U.S. federal income tax purposes, it is intended that the beneficiaries of the Liquidating Trust be treated as if they had received a distribution of an undivided interest in the Transferred Property in which they have an interest and then contributed such interests to the Liquidating Trust.  The Liquidating Trust Agreement shall (i) state that the primary purpose of the Liquidating Trust is to liquidate the Liquidating Trust Assets with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, its liquidating and wind-down purposes as provided in the Plan and (ii) contain a fixed or determinable termination date that is not more than five (5) years from the date of creation of the Liquidating Trust, which termination date may be extended for one or more finite terms subject to the approval of the Bankruptcy Court upon a finding that the extension is necessary or appropriate.  Each such extension must be approved by the Bankruptcy Court within six (6) months before the beginning of the extended term.  In conformity with IRS Revenue Procedure 94-45, all parties (including, without limitation, the Debtors, the Liquidating Trustee, the Holders of Senior Creditor Claims, and the Holders of General Unsecured Claims) shall be required, for U.S. federal income tax purposes, to treat the Liquidating Trust as a grantor trust of which the Holders of Claims are the owners and grantors.

(j)      The Liquidating Trustee shall file or cause to be filed all U.S. federal and applicable state and local tax returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4 and, after the Effective Date, all U.S. federal and applicable state and local income tax returns for the Debtors.  The Liquidating Trustee also shall annually send to each known beneficiary of the Liquidating Trust a separate statement regarding such beneficiary's share (as determined from time to time by the Liquidating Trustee in its discretion) of the items of income, gain, loss, deduction, and credit of the Liquidating Trust as relevant for U.S. federal and applicable state and local income tax purposes and shall instruct all such parties that they will be required to use such information in preparing their U.S. federal and applicable state and local income tax returns.  The Liquidating Trustee shall also file (or cause to be filed) any other statement, return, or disclosure relating to the Liquidating Trust that is required by any governmental unit.

(k)     The beneficial interests of the Liquidating Trust shall be nontransferable, and any transfer in violation of this Section IV.D.1(k) of the Plan may be disregarded by the Liquidating Trustee, except with respect to a transfer by will or under laws of descent and distribution; provided, however, such transfer shall not be effective unless and until the Liquidating Trustee receives written notice of such transfer under the applicable law of descent and distribution.

(l)     The Liquidating Trustee shall make a good-faith valuation of the Liquidating Trust Assets, and unless otherwise required by law, all parties (including the Holders of Senior Creditor Claims and General Unsecured Claims) shall be required to use such valuation for all U.S. federal and applicable state and local income tax purposes.  The valuation shall be made available as necessary for tax reporting purposes (on an asset or aggregate basis with respect to Liquidating Trust Assets, as relevant).

2.      The Liquidating Trustee

(a)     In accordance with the Unsecured Creditor Settlement, CRG shall be appointed as the initial Liquidating Trustee.  On the Effective Date, the Liquidating Trustee shall execute the Liquidating Trust Agreement and any other documents necessary to be appointed the Liquidating Trustee.  The Liquidating Trustee, once appointed, shall act as trustee on behalf of the Liquidating Trust to carry out its obligations and exercise its rights in accordance with, and subject to, the Plan, the Confirmation Order, and the Liquidating Trust Agreement.  The Liquidating Trustee may be removed and replaced as provided for in the Liquidating Trust Agreement.

(b)     The Liquidating Trustee and the Liquidating Trust Professionals shall be compensated as set forth in the Plan and the Liquidating Trust Agreement and shall not be required to file fee applications to receive compensation. *Any objection to the designation of the Liquidating Trustee must be raised at or prior to the Confirmation Hearing or be forever barred. Without the permission of the Bankruptcy Court, no judicial, administrative, arbitration, or other action or proceeding shall be commenced against the Liquidating Trustee in its official capacity, with respect to its status, duties, powers, acts, or omissions as Liquidating Trustee in any forum other than the Bankruptcy Court.*  The Liquidating Trustee shall be vested with the rights, powers, and benefits set forth in the Plan, the Confirmation Order, and the Liquidating Trust Agreement, which shall include, without limitation, all rights, powers, and benefits afforded to a "trustee" under Bankruptcy Code §§ 704 and 1106.

(c)     On, or as soon as practicable after, the Effective Date, the Plan Fund shall be deposited in a non-interest-bearing account of the Liquidating Trust for use in the manner set forth in the Plan.  The investment powers of the Liquidating Trustee, other than those reasonably necessary to maintain the value of the Liquidating Trust Assets and to further the liquidating and wind-down purposes of the Liquidating Trust, are limited to investing in demand and time deposits.

(d)     Upon any determination by the Liquidating Trustee that it is holding any amount or asset not constituting the Transferred Property or the products or proceeds of Transferred Property, the Liquidating Trustee shall promptly transfer such property either to the Debtors or to

the Administrative Agent (as applicable), or pay such amount to the Administrative Agent for the benefit of the Holders of remaining Allowed Pre-Petition Lenders Claims.

(e)    Subject to the provisions of the Liquidating Trust Agreement and the powers of the Oversight Committee set forth therein, the Liquidating Trustee shall be authorized and empowered to pursue and prosecute, to settle, or to decline to pursue, all Avoidance Actions and other Transferred Causes of Action, whether or not such causes of action have been commenced prior to the Effective Date, and shall be substituted as the real party-in-interest in any such action, commenced by or against the Debtors, the Estates, or the Creditors Committee prior to the Effective Date.  In connection therewith, the Liquidating Trustee may act in accordance with its business judgment, without any other or further notice or Bankruptcy Court approval, subject to the provisions of the Liquidating Trust Agreement and the powers of the Oversight Committee set forth therein and in the Plan (including any requirements pertaining to the need for prior Oversight Committee approval before instituting or settling any particular Avoidance Action or other Transferred Cause of Action).  Without limiting the generality of the foregoing, the Liquidating Trustee shall be authorized to seek to recover or otherwise obtain any sums owed to the Debtors or the Estates or any Assets or property of the Debtors or their Estates in the possession or control of any other party.  Notwithstanding the transfer of the Avoidance Actions or any other Transferred Causes of Action to the Liquidating Trust on the Effective Date (to the extent and in the manner provided in the Plan), in the event that the Debtors or the Liquidating Trustee (as applicable) determines that it is necessary or appropriate to utilize any such Avoidance Action or other Transferred Cause of Action as either (i) a defense (including any affirmative defense) or in any other way in connection with any objection to any claim asserted against a Debtor under Bankruptcy Code § 503(b)(9) or (ii) as part of an objection or defense (including any affirmative defense) to the Allowance of a Claim under Bankruptcy Code § 502(d) or otherwise, then, as applicable, (1) such Avoidance Action or other Transferred Cause of Action shall not be transferred to the Liquidating Trust on the Effective Date, or (2) to the extent such Avoidance Action or other Transferred Cause of Action has been transferred to the Liquidating Trust on the Effective Date under the Plan and the Confirmation Order, then the Liquidating Trustee shall take all steps as may be necessary or appropriate to transfer or assign such Avoidance Action or other Transferred Cause of Action back to the Estates for such purpose.  The Debtors shall inform the Creditors Committee and the Administrative Agent of any such Avoidance Action or other Transferred Cause of Action that they know prior to the Effective Date will be necessary or appropriate to any such defense or objection and, thus, will not be transferred to the Liquidating Trust.

(f)    Upon the Effective Date and the execution of the Liquidating Trust Agreement, the Liquidating Trustee, in its capacity as the trustee of the Liquidating Trust and not personally, shall be vested with all right, title, and interest in all Liquidating Trust Assets and all rights to enforce any orders of the Bankruptcy Court entered in these Chapter 11 Cases.  From and after the Effective Date, the Liquidating Trustee may dispose of, sell, transfer, liquidate, or abandon the assets of the Liquidating Trust (including the Preserved Collateral) free and clear of (i) all Liens, Claims, interests, or encumbrances, subject to the Plan and the security interests and Liens preserved in favor of the Pre-Petition Lenders pursuant to Section III.B.(1)(d) of the Plan, or (ii) any restrictions of the Bankruptcy Code, Bankruptcy Rules, or Local Rules and without the need

for any or other Bankruptcy Court order or approval or any other order, but it must otherwise act in accordance with the provisions of the Plan, the Confirmation Order, and the Liquidating Trust Agreement (including with respect to any requirements therein regarding the need for prior consultation with, or the approval of, the Oversight Committee).

(g)    The Liquidating Trustee and the Liquidating Trust Professionals shall not be liable for actions taken or omitted in its or their capacity as, or on behalf of, the Liquidating Trustee, except those acts arising out of its or their own willful misconduct, bad faith, actual fraud, self-dealing, breach of fiduciary duty, or *ultra vires* acts, and each shall be entitled to indemnification and reimbursement for fees and expenses in defending any and all of its actions or inactions in its capacity as, or on behalf of, the Liquidating Trustee, except for any actions or inactions involving willful misconduct, bad faith, actual fraud, self-dealing, breach of fiduciary duty, or *ultra vires* acts.  Any indemnification claim of the Liquidating Trustee (and the other parties entitled to indemnification hereunder) shall be satisfied, first, from any applicable insurance proceeds; second, from the Plan Fund; and finally, from the remaining Transferred Property.

(h)    In accordance with the Unsecured Creditor Settlement, for purposes of determining the amount of the "net proceeds (after costs of sales)" and "the net proceeds (after litigation fees, costs, and expenses actually incurred)", as both phrases are used in Paragraph 33 of the DIP Facility Order, from all prior Sales and any future sales or other dispositions of the various items that constitute the Transferred Property to be distributed to either the Holders of Allowed Pre-Petition Lenders Deficiency Claims or to Holders of Allowed General Unsecured Claims, certain costs and expenses already incurred or to be incurred in connection therewith shall be allocated and paid as follows:

(1)    50% of the aggregate amount of (A) if, prior to the Effective Date, the Debtors' and the Committee's respective Professionals' fees and expenses, and (B) if on and after the Effective Date, the Liquidating Trustee's professionals' fees and expenses, and all other fees and expenses associated with pursuing the D&O Claims, Avoidance Actions, and other Transferred Causes of Action, to the extent not provided for in the Plan Fund, shall be deducted from the amount of gross proceeds thereof before calculating the net amounts to be distributed on account thereof to the Holders of Allowed General Unsecured Claims pursuant to Section III.B.4(b) of the Plan as part of the Estate Shared Proceeds;

(2)    (A) the payments required to satisfy (i) all Allowed Claims against the Estates under Bankruptcy Code § 503(b)(9), other than the Sysco 503(b)(9) Claims, as set forth on Exhibit C to the Disclosure Statement, and (ii) all Allowed Other Priority Claims, as set forth on Exhibit D to the Disclosure Statement, shall be paid entirely (i.e., 100%) from the Plan Fund, and (B) the payments required to satisfy (i) any Allowed Sysco 503(b)(9) Claims against the Estates (after application of any applicable offsets for Avoidance Actions or other available offsets or defenses, in accordance with Section IV.D.2(e) of the Plan or

otherwise) and (ii) all Allowed Priority Tax Claims shall be paid entirely (<u>i.e.</u>, 100%) from the Estate Shared Proceeds; and

(3)     all other costs of the Liquidating Trust (including the fees of the Liquidating Trustee, the Oversight Committee, and all professionals retained or entities employed thereby and any indemnification claims under Section IV.A(d) of the Plan) shall be allocated to, and paid from, the Estate Shared Proceeds.

For the avoidance of doubt, other than as explicitly set forth in the Plan with respect to the Unsecured Creditor Settlement, to the extent there are any conflicts between the Plan and anything contained in Paragraph 33 of the DIP Facility Order, Paragraph 33 of the DIP Facility Order shall govern.

(i)     In the event that the Liquidating Trustee cannot take any action, including, without limitation, the prosecution of any Transferred Cause of Action or the objection to any Claim, by reason of an actual or potential conflict of interest, the Oversight Committee shall be authorized to take any such action(s) in its place and stead, including without limitation, the retention of professionals (which may include professionals retained by the Liquidating Trustee) for such purpose of taking such actions.

E.     **Final Administration of the Liquidating Trust**

Upon the entry of a Final Decree by the Bankruptcy Court closing the CB Holding Chapter 11 Case contemplated in Section IV.F of the Plan, the Liquidating Trust shall be deemed terminated without further notice, and the Liquidating Trustee shall thereupon be forever discharged of, and released from, all power, duties, and responsibilities under the Liquidating Trust Agreement and the Plan. Every effort shall be made to effectuate such entry no later than the time reasonably necessary to accomplish the Liquidating Trust's purposes as set forth in the Liquidating Trust Agreement and the Plan, and in no event shall the Liquidating Trust continue for more than five (5) years after the date of the creation of the Liquidating Trust, without further order of the Bankruptcy Court.

F.     **Dissolution of the Debtors; Closing of the CB Holding Chapter 11 Case**

(a)     Within 30 days after the later of their completion of any acts required of them by the Plan (including in Section IV.A of the Plan) and the Sale Closing Date of any remaining Sale (or portion thereof) of its Assets, or as soon thereafter as is practicable, each of the Debtors shall be deemed automatically dissolved for all purposes, without the necessity for any other or further actions to be taken by or on behalf of each Debtor, including without any requirement of further action by the stockholders, members, or directors (or other governing body) of the Debtors (the "*Dissolution*") or any compliance with any notice or waiting periods; <u>provided</u>, <u>however</u>, that each Debtor shall file with the office of the applicable Secretary of State or other appropriate office for the state of its organization a certificate of cancellation or dissolution or, alternatively, it may be merged with and into another Debtor and file an appropriate certificate of merger.

(b)     When all Disputed Claims filed against the Debtors have become Allowed Claims or have been disallowed by order of the Bankruptcy Court or otherwise resolved or withdrawn in the manner provided for in the Plan, and all of the proceeds of the Liquidating Trust Assets have been distributed in accordance with the Plan (including, without limitation, pursuant to Sections III.B.4(b) and IV.F(c)), all aspects of any remaining Sales have closed, and all Transferred Causes of Action have been prosecuted, settled, resolved, withdrawn, or abandoned, the CB Holding Chapter 11 Case and any other of the Chapter 11 Cases that were not previously closed pursuant to Section IV.A(d) of the Plan shall be closed, and the Liquidating Trustee shall file with the Bankruptcy Court a notice thereof with respect to such Chapter 11 Case(s); provided, however, that nothing in the Plan or the Liquidating Trust Agreement shall prevent the Debtors and the Liquidating Trustee from seeking authority from the Bankruptcy Court at any time prior thereto to close the CB Holding Chapter 11 Case or any other of the Chapter 11 Cases that were not previously closed pursuant to Section IV.A(d) of the Plan.

(c)     Notwithstanding anything to the contrary in Section IV.F(b) of the Plan, if at any time after (i) the Dissolution and (ii) such time as all Disputed Claims filed against the Debtors have become Allowed Claims or have been disallowed by an order or otherwise resolved or withdrawn in the manner provided for in the Plan, the Liquidating Trustee, after consultation with the Administrative Agent and the Oversight Committee and upon the receipt of any approvals required under the Liquidating Trust Agreement, determines that the expense of administering the Liquidating Trust so as to make a further or final distribution to the Holders of Allowed General Unsecured Claims or Allowed Senior Creditor Claims (with respect to the Preserved Collateral) is likely to exceed the value of the assets remaining in the Liquidating Trust or the Preserved Collateral (as applicable), the Liquidating Trustee shall apply to the Bankruptcy Court for authority to (i) reserve any amounts necessary to close the CB Holding Chapter 11 Case and any other of these Chapter 11 Cases that were not previously closed (if any), (ii) donate any balance to a charitable organization exempt from U.S. federal income tax under Section 501(c)(3) of the Tax Code that is unrelated to any of the Debtors, the Creditors Committee or its members, CRG, the Pre-Petition Lenders, the Holders of the Equity Interests as of the Effective Date, and the Liquidating Trustee, and (iii) close the CB Holding Chapter 11 Case and any of the Chapter 11 Cases that were not previously closed, in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  Notice of such application shall be required to be given only electronically, to the extent practicable, to those parties that have filed requests for notices in these Chapter 11 Cases and whose electronic addresses then remain current and operating.

### G.     Preservation of Rights Regarding Avoidance Actions and of All other Causes of Action

The Debtors are currently investigating whether to pursue potential Avoidance Actions and other Causes of Action against any parties or Entities.  Under the Plan, the Liquidating Trustee retains all rights of and on behalf of the Debtors and the Liquidating Trust to commence and pursue (subject to any consultation obligations and the receipt of any approvals by the Oversight Committee required under the Liquidating Trust Agreement) any and all Avoidance Actions and under all other Transferred Causes of Action (under any theory of law, including,

without limitation, the Bankruptcy Code, and in any court or other tribunal, including, without limitation, in an adversary proceeding filed in these Chapter 11 Cases in the Bankruptcy Court) discovered in such investigation to the extent the Liquidating Trustee deems appropriate. Potential Avoidance Actions and other Causes of Action may, but need not, be pursued by the Debtors, prior to the Effective Date, and the Liquidating Trustee may, but need not, pursue the Avoidance Actions and other Transferred Causes of Action after the Effective Date.

Except as may otherwise be provided in Article X of the Plan and the Confirmation Order, the potential Avoidance Actions and other Causes of Action that may be pursued by the Debtors, prior to the Effective Date, and by the Liquidating Trust and the Liquidating Trustee, after the Effective Date,  include, without limitation, any Causes of Action, whether legal, equitable, or statutory in nature, arising out of, or in connection with, the Debtors' businesses or operations, including, without limitation, the following:  possible claims against vendors, landlords, sublessees, assignees, customers, or suppliers for warranty, indemnity, back charge/set-off issues, overpayment, or duplicate payment issues, and collections/accounts receivable matters; deposits, rebates, refunds, sales incentives, or other amounts owed by any creditor, lessor, utility, supplier, vendor, landlord, sublessee, assignee, or other Entity; claims against landlords, sublessees, and assignees arising from the various leases, subleases, and assignment agreements relating thereto, including, without limitation, claims for overcharges relating to taxes, common area maintenance, and other similar charges; financial reporting; environmental and product liability matters; actions against insurance carriers relating to coverage, indemnity, or other matters; counterclaims and defenses relating to any Claims or other obligations; contract or tort claims that may exist or subsequently arise; and any and all Avoidance Actions pursuant to any applicable section of the Bankruptcy Code arising from any transaction involving or concerning the Debtors; provided, however, *that neither the Debtors nor the Liquidating Trustee nor any other party may pursue any Causes of Action that have been waived, relinquished, released, compromised, abandoned, transferred, or settled pursuant to the Plan, the DIP Facility Order, the Sale Orders, or any other Final Order of the Bankruptcy Court.*

Unless a claim against a Creditor or other Entity or Avoidance Action or other Cause of Action is expressly waived, relinquished, released, compromised, abandoned, transferred, or settled in the Plan, the Sale Orders, the DIP Facility Order, or any other order of the Bankruptcy Court, the Debtors expressly reserve such claim or Avoidance Action or other Cause of Action for later enforcement by the Debtors, prior to the Effective Date, or by the Liquidating Trust, thereafter (including, without limitation, claims and Avoidance Actions and other Causes of Action that may be set forth in the Plan Supplement or not specifically identified or that the Debtors may presently be unaware of or that may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances that may change or be different from those which the Debtors now believe to exist), and therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such claims, Avoidance Actions, or other Causes of Action upon or after the Confirmation or Consummation of the Plan based on the Disclosure Statement, the Plan Supplement, the Plan, the Confirmation Order, or any other document Filed in the Chapter 11

Cases, except where such claims or Avoidance Actions or other Causes of Action have been expressly waived, relinquished, released, compromised, abandoned, transferred, or settled in the Plan, the Confirmation Order, the DIP Facility Order, or any other order of the Bankruptcy Court.  In addition, the Liquidating Trust and the Liquidating Trustee expressly reserve the right to pursue or adopt any claim, crossclaim, or counterclaims alleged in any lawsuit in which the Debtors are a defendant or an interested party, against any person or entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits, subject to the provisions of the Plan, the DIP Facility Order, the Sale Orders, or any Final Order.

**The Debtors and the Liquidating Trustee do not intend, and it should not be assumed that because any existing or potential Avoidance Actions or other Causes of Action may not have yet been pursued by the Debtors or are not set forth specifically in the Plan or expressly preserved in the Disclosure Statement, the Plan Supplement, the Confirmation Order, any other document Filed in the Chapter 11 Cases, or otherwise, that any such Avoidance Actions or other Causes of Action have been or are deemed to be waived or released.**

**H.      Cancellation of Notes, Instruments, Debentures, and Equity Interests**

1.      On the Effective Date, all Notes and all other notes, instruments, debentures, certificates, stock certificates, Liens, mortgages, deeds of trust, pledges, security interests, and other documents evidencing Claims and all Equity Interests in any of the Debtors (including, without limitation, the DIP Agreement, the Financing Agreement, the Subordinated Notes Purchase Agreement, and the Second Lien Note Purchase Agreement) shall be cancelled and deemed terminated, released, and of no force and effect and surrendered (regardless of whether such notes, instruments, debentures, certificates, or other documents are in fact surrendered for cancellation to the appropriate indenture trustee, agent, or other such Person) and shall instead represent only the right to participate in the distributions contemplated by the Plan, if any.  **On the Effective Date, any indentures or other agreements relating to any of the Notes or any other notes to which any Debtor is a party shall be deemed cancelled as permitted by Bankruptcy Code § 1123(a)(5).**

2.      Except as may otherwise be set forth in the Plan, all distributions under the Plan on account of any Allowed DIP Facility Claims or Allowed Pre-Petition Lenders Claims shall be made by the Debtors or the Liquidating Trustee (on account of the Pre-Petition Lenders Deficiency Claims or with respect to the distribution of net proceeds from the sale or other disposition, liquidation, or monetization of Preserved Collateral, in the manner set forth in Section III.B.1(b) of the Plan) to the Administrative Agent, for further distribution to the Holders of the Allowed DIP Facility Claims or Allowed Pre-Petition Lenders Claims (as applicable) as of the Distribution Record Date.  All distributions, if any, under the Plan on account of the Allowed Subordinated Notes Claims shall be made by the Liquidating Trustee to the administrative agent for the Subordinated Notes, for further distribution to the Holders of the Allowed Subordinated Notes Claims as of the Distribution Record Date in accordance with the Subordinated Notes Purchase Agreement and in accordance with, and subject to, any subordination provisions set forth therein or in any separate, applicable subordination agreement.  *Upon the delivery of the*

*foregoing distributions, if any, to the applicable agents or similar parties, the Debtors and the Liquidating Trustee shall be released of all liability and responsibility with respect to their obligations relating to such distributions.*

## I.  Dissolution of the Creditors Committee

On the first (1st) Business Date following the Effective Date, and provided the Liquidating Trust has become effective as provided under the Plan, the Creditors Committee shall be dissolved, and the Creditors Committee and its members shall be released and discharged from the rights and duties arising from or related to the Chapter 11 Cases, and the retention or employment of the Creditors Committee's Professionals shall terminate, except with respect to final applications for Professional Fee Claims.  After the Effective Date, the Professionals retained by the Creditors Committee and the members thereof shall only be entitled to compensation or reimbursement of expenses or fees for any services rendered or expenses incurred in their capacity as such after the Effective Date that exclusively relate to the prosecution of any final applications by such Professionals or Creditors Committee members for allowance of Professional Fees and reimbursement of expenses (as applicable) pending on the Effective Date or timely filed after the Effective Date as provided for in the Plan.

## J.  Accounting

Except as otherwise set forth in the Plan, the Liquidating Trust Agreement, or the Confirmation Order, the Liquidating Trustee will establish a separate bank account for the Plan Fund and for any and all other reserves or funds maintained by the Debtors or the Liquidating Trustee, as the case may be, in connection with the distribution of funds on account of Allowed Claims or their other respective functions under the Plan, the Confirmation Order, or the Liquidating Trust Agreement (as the case may be).

## K.  Settlement with Respect to Fees, Costs, and the Plan by and Among the Administrative Agent, the Creditors Committee, the Second Lien Noteholders, and the Debtors

As set forth further in the Plan (including, without limitation, in Sections II.A(b), III.B.1(c), IV.D.1(a), IV.D.1(g), IV.D.2(h), X.D, X.E, and X.F of the Plan), the Plan incorporates and implements a further compromise and settlement reached by and among (i) the Administrative Agent, (ii) the Creditors Committee, (iii) the Second Lien Noteholders, and (iv) the Debtors (the "*Unsecured Creditor Settlement*").  As a result of the Unsecured Creditor Settlement, the Creditors Committee, the Administrative Agent, and the Second Lien Noteholders have agreed to support and recommend the confirmation of the Plan, and shall not object to (or support any party in objecting to) the Plan or to any provisions thereof.

# ARTICLE V.
## TREATMENT OF DISPUTED CLAIMS

### A.    Objections to Claims; Prosecution of Disputed Claims

1.    Except as otherwise set forth in the Plan, the Confirmation Order, the DIP Facility Order, the Sale Orders, or any other order of the Bankruptcy Court, (1) prior to the Effective Date, the Debtors may object to any Claims, and (2) on and after the Effective Date, the Liquidating Trustee may object (and shall take over, and continue prosecuting and settling or otherwise resolving, any outstanding objections of the Debtors) to the allowance of any Claims (subject to any consultation obligations and the receipt of any approvals by the Oversight Committee required under the Liquidating Trust Agreement).   All objections by either the Debtors or the Liquidating Trustee, as the case may be, shall be litigated to Final Order; provided, however, that, as set forth above in Article IV of the Plan and in the Liquidating Trust Agreement, prior to the Effective Date, the Debtors, and on and after the Effective Date, the Liquidating Trustee, shall have the authority and sole discretion to file, settle, compromise, or withdraw any objections to Claims, in each instance without the need to obtain the approval of the Bankruptcy Court (but subject to any consultation obligations and the receipt of any approvals by the Oversight Committee required under the Liquidating Trust Agreement).

2.    Any objections to Claims must be filed by the Claim Objection Deadline.  Claim objections and, as applicable, any settlement thereof shall be dealt with as the Debtors or the Liquidating Trustee, as the case may be, in its discretion, deems appropriate (in the case of the Liquidating Trustee, subject to any consultation obligations and the receipt of any approvals by the Oversight Committee required under the Liquidating Trust Agreement).  Further, (a) the Debtors, prior to the Effective date, and (b) the Liquidating Trustee, on and after the Effective Date, shall have the sole and complete discretion to decide not to review and/or to object to proofs of General Unsecured Claims or any other Claims, in each instance to the extent they believe that such review and/or objection would be uneconomical or not otherwise warranted under the circumstances (but in the case of the Liquidating Trustee, subject to any consultation obligations and the receipt of any approvals by the Oversight Committee required under the Liquidating Trust Agreement).

3.    Unless otherwise provided by the Plan or the Liquidating Trust Agreement, no Bankruptcy Court approval shall be required in order for the Debtors or the Liquidating Trustee (as applicable) to settle and/or compromise any Claim, objection to Claim, cause of action, or right to payment of or against the Debtors, the Estates, or the Liquidating Trust.

### B.    Estimation of Claims

Prior to the Effective Date, the Debtors, or on or after the Effective Date, the Liquidating Trustee may at any time request that the Bankruptcy Court estimate any contingent or unliquidated Claims, pursuant to Bankruptcy Code § 502(c) or otherwise, regardless of whether the Debtors or the Liquidating Trustee previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any

Claim, including, without limitation, during the pendency of any appeal relating to any such objection. Subject to the provisions of Bankruptcy Code § 502(j), in the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, and the amount so estimated shall constitute the maximum allowable amount of such Claim, the Debtors or the Liquidating Trustee (as applicable) may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by as set forth in the Plan or by any other mechanism approved by the Bankruptcy Court.

**C.     Interest and Distributions on Disputed Claims or any Other Claims that Become Allowed Claims After the Effective Date**

No interest shall accrue or be due or paid by the Debtors or the Liquidating Trustee on any Disputed Claim that later becomes an Allowed Claim or on any other Claims that are not Allowed Claims as of the Effective Date, but which later become Allowed Claims, or with respect to any distribution to the Holders thereof. All distributions with respect to any such Claims as and when they become Allowed shall be deemed to have been made on the Effective Date. No distribution shall be made with respect to all or any portion of any Claim, a portion of which or all of which is a Disputed Claim, pending the entire resolution thereof.

## ARTICLE VI.
## DISTRIBUTIONS

**A.     Means of Cash Payment**

Cash payments made pursuant to the Plan shall be in U.S. dollars and, at the option and in the sole discretion of the Debtors or the Liquidating Trustee (as applicable), be made by (a) checks drawn on or (b) wire transfers from a domestic bank selected by the Debtors or the Liquidating Trustee (as applicable). Cash payments to foreign creditors may be made, at the option of the Debtors or the Liquidating Trustee (as applicable), in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

**B.     Delivery of Distributions**

Subject to the provisions of Bankruptcy Rule 2002(g), and except as otherwise provided in the Plan, distributions and deliveries to Holders of Allowed Claims shall be made at the address of each such Holder as set forth on the Schedules, unless superseded by the address set forth on a timely-filed and properly-completed proof of claim or some other writing Filed with the Bankruptcy Court and served upon the Liquidating Trustee.

**C.     Undeliverable Distributions**

1.     *Holding of Undeliverable Distributions*

If any distribution pursuant to the Plan to any Holder is returned to the Liquidating Trustee or the Debtors (as applicable) as undeliverable, no further distributions shall be made to such Holder unless and until the Liquidating Trustee is notified by such Holder, in writing, of such Holder's then-current address. Upon such an occurrence, to the extent it is possible to make a subsequent distribution at that time, the appropriate distribution shall be made as soon as reasonably practicable after such distribution has become deliverable. All Entities ultimately receiving previously-undeliverable Cash shall not be entitled to any interest or other accruals of any kind with respect thereto. Nothing contained in the Plan, the Confirmation Order, or the Liquidating Trust Agreement shall require the Debtors or the Liquidating Trustee to attempt to locate any Holder of an Allowed Claim.

2.     <em>Failure to Claim Undeliverable Distributions</em>

*Any Holder of an Allowed Claim entitled to an undeliverable or unclaimed distribution that does not provide notice of such Holder's correct address to the Liquidating Trustee within the later of six (6) months after (i) the Effective Date or (ii) the date of the initial attempted distribution made by the Debtors or the Liquidating Trustee (as applicable) to such Holder shall be deemed to have forfeited its claim for such undeliverable or unclaimed distribution or any other distribution, and shall be forever barred and enjoined from asserting any such claim for an undeliverable or unclaimed distribution or any other distribution against any of the Debtors, the Estates, the Liquidating Trustee, or the Liquidating Trust.* In such cases, the Forfeited Distributions shall be distributed in accordance with the terms of the Plan and/or the Liquidating Trust Agreement (as applicable).

## D.     Withholding and Reporting Requirements

In connection with the Plan and all distributions thereunder, the Debtors and the Liquidating Trustee (as applicable) shall comply with all applicable tax withholding and reporting requirements imposed by any U.S. federal, state, or local or non-U.S. taxing authority, all distributions hereunder shall be subject to any such withholding and reporting requirements, and any amounts withheld shall be deemed for all purposes of the Plan to have been distributed to the Person in respect of whom such withholding was made. The Debtors and the Liquidating Trustee (as applicable) shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements. Notwithstanding any other provision of the Plan, (a) each Holder of an Allowed Claim that is to receive a distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such distribution, and (b) the Debtors and the Liquidating Trustee reserve the option, in their discretion, not to make a distribution to or on behalf of such Holder pursuant to the Plan unless and until such Holder has made arrangements satisfactory to the Debtors or the Liquidating Trustee (as applicable) for the payment and satisfaction of such tax obligations or has, to the Debtors' or Liquidating Trustee's satisfaction, established an exemption therefrom. Any distributions to be made pursuant to the Plan shall, pending the implementation of such withholding and reporting requirements, be treated as undeliverable pursuant to Section VI.C.2 of the Plan. The Liquidating Trustee shall request (in writing) from

each beneficiary of the Liquidating Trust (1) a properly-completed IRS Form W-9 or substitute Form W-9 or (2) an applicable Form W-8. *Any beneficiary of the Liquidating Trust that does not provide a completed Form W-9 or an applicable Form W-8 within the date that is 45 days of the date of such written request sent by the Liquidating Trustee shall have its Claim disallowed for all purposes in these Chapter 11 Cases*, and such response deadline and the effect of non-compliance therewith shall be included in the written request.

### E.    Time Bar to Cash Payments

Checks issued by the Liquidating Trustee or the Debtors (as applicable) on account of Allowed Claims shall be null and void if not negotiated within the date that is 90 days from and after the date of issuance thereof.  Requests for reissuance of any check shall be made directly to the Liquidating Trustee or the Debtors (as applicable) by the Holder of the Allowed Claim.  Any claim relating to such voided check shall be made on or before the later of:  (i) six months after the Effective Date; or (ii) 180 days after the date of issuance of such check.  After such date, all claims relating to such voided checks shall be discharged and forever barred, and the Liquidating Trustee or the Debtors (as applicable) shall treat all such moneys as Forfeited Distributions.

### F.    Interest and Late Charges

Unless otherwise required by applicable law or as otherwise set forth in the Plan, post-petition interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim, provided, however, that the DIP Facility Lender is entitled to interest at the rates set forth in the DIP Facility on the terms set forth in the DIP Facility Order up until April 21, 2011.  Except as expressly stated in the Plan or allowed by a Final Order of the Bankruptcy Court, no late charge is to be allowed on any Claim subsequent to the Petition Date.

### G.    Fractional Dollars; *De Minimis* Distributions

Notwithstanding anything contained in the Plan to the contrary, payments of fractions of dollars shall not be made.  Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made shall reflect a rounding of such fraction to the nearest dollar (up or down), with half dollars being rounded down.  The Liquidating Trustee and the Debtors (as applicable) shall not make any payment of less than $50 on account of any Allowed Claim, unless a specific request therefor is made in writing to the Liquidating Trustee on or before 90 days after the Effective Date.

### H.    Set-Offs

Consistent with applicable law, the Debtors and the Liquidating Trustee may, but shall not be required to, set-off against any Allowed Claim and the distributions to be made pursuant to the Plan on account on account of such Claim (before any distribution is made on account thereof), any claims, rights, and causes of action of any nature that the Debtors, the Estates, or the Liquidating Trust may hold against the Holder of such Allowed Claim (unless such claims, rights, and causes of action have been released by the Debtors pursuant to the releases contained

in Article X in the Plan, the Confirmation Order, the DIP Facility Order, or any other Final Order); provided, however, that neither the failure to effect such a set-off nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors, the Estates, the Liquidating Trustee, or the Liquidating Trust of any such claims, rights, and Causes of Action that the Debtors, the Estates, or the Liquidating Trust may possess against such Holder; and provided, further, however, that the Holder of the applicable Allowed Claim against which the Debtors or the Liquidating Trustee seeks to exercise set-off may file an objection or other motion in the Bankruptcy Court challenging such set-off.

I.      **Deadlines for Determining Record Holders of Various Classes of Claims**

At the close of business on the Distribution Record Date, the respective transfer records for the DIP Facility, the Financing Agreement, the Second Lien Notes, the Subordinated Notes, and the Equity Interests shall be closed, and there shall be no further changes in the record holders of the respective Administrative Expense Claims, DIP Facility Claims, Priority Tax Claims, Senior Creditor Claims, Other Secured Claims, General Unsecured Claims, Other Priority Claims, or the Equity Interests after such date. *None of the Debtors, the Liquidating Trustee, any disbursing agent or transfer agent retained thereby or Liquidating Trust Professional, nor the Administrative Agent or the indenture trustees for the Second Lien Notes or the Subordinated Notes shall (as applicable) have any obligation to recognize any transfer of the applicable Claims or Equity Interests, any notes or other securities issued in connection with either the DIP Facility, the Financing Agreement, the Second Lien Notes, the Subordinated Notes, or any of the Equity Interests occurring after the Distribution Record Date, and such parties shall be entitled, instead, to recognize and deal for all purposes hereunder, the Confirmation Order, and the Liquidating Trust Agreement with only those record holders of such Claims, Equity Interests, notes, or other securities (as applicable) as of the close of business on the Distribution Record Date.*

J.      **Allocation of Distributions**

All distributions paid to Holders of Allowed Claims in satisfaction thereof pursuant to the Plan shall be allocated, first, to the principal amounts of such Claims (as determined for U.S. federal income tax purposes) and, second, to the portion of such Claims comprising interest (as determined for U.S. federal income tax purposes), if any (but solely to the extent that interest is a portion of such Allowed Claim), including, without limitation, any portion of the Claim representing accrued original issue discount or accrued but unpaid interest; any excess thereafter shall be allocated to the remaining portion of such Claims.

## ARTICLE VII.
## EXECUTORY CONTRACTS AND SIMILAR MATTERS

A.      **Rejection of Executory Contracts**

Any Executory Contracts that (i) have not expired or been terminated by their own terms on or prior to the Effective Date, (ii) have not been assumed, assumed and assigned, rejected, or deemed rejected and terminated pursuant to a Sale Order, any other order of the Bankruptcy

Court, or letter agreement (including the Mountainside Letter Agreement) by and between the applicable Debtor and non-Debtor party thereto prior to the Confirmation Date, or (iii) are not the subject of a motion by the Debtors to either assume and assign or to reject such Executory Contract that is pending on the Confirmation Date, shall be deemed rejected by the Debtors as of the Confirmation Date, subject to the occurrence of the Effective Date, and the entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the rejections of such Executory Contracts pursuant to Bankruptcy Code §§ 365(a) and 1123 or otherwise.

Without limiting the generality of the foregoing, in accordance with the Mountainside Letter Agreement, the Mountainside Office Lease shall hereby be deemed rejected and terminated *nunc pro tunc* to August 31, 2011, and the entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such rejection by the Debtors and termination of the Mountainside Office Lease (effective as of August 31, 2011) pursuant to Bankruptcy Code §§ 365(a) and 1123.

## B.      Rejection Damages Claim

Each entity that is a party to an Executory Contract that is rejected as of the Confirmation Date pursuant to the Plan and the Confirmation Order shall be entitled to file, not later than the Rejected Contract Claim Bar Date, a Proof of Claim for damages alleged to have been suffered due to such rejection or in any other way relating to or arising from such Executory Contract; provided, however that the opportunity afforded an Entity whose Executory Contract is rejected as of the Confirmation Date pursuant to the Plan and the Confirmation Order to file a Proof of Claim shall in no way apply to Entities that were required to assert a claim on account of an Executory Contract that was previously or otherwise rejected by the Debtors by a prior or other bar date that was established by a separate order of the Bankruptcy Court, which such other bar date shall remain unaffected by the Plan and the Confirmation Order. *Any Entity that has a Claim for (i) damages as a result of the rejection of an Executory Contract pursuant to this Article of the Plan or (ii) that in any way relates to, or arises from an Executory Contract being rejected hereby, that in either instance does not file a Proof of Claim in accordance with the terms and provisions of the Plan with the Bankruptcy Court (and serve such Proof of Claim upon the Liquidating Trustee) shall be forever barred from asserting that Claim against, and such Claim shall be unenforceable against, the Debtors or the Liquidating Trust, and the Debtors and Liquidating Trust shall have no obligation to pay the same.*

Notwithstanding anything to the contrary in the Plan or the Confirmation Order, in accordance with the Mountainside Letter Agreement, the Mountainside Landlord shall have no claims or right to assert any such claims against any of the Debtors or the Estates related to any time after August 31, 2011, with respect to the Mountainside Lease.

## C.      Classification of Claims Related to Executory Contracts

All Rejection Claims and any other Claim against any of the Debtors that in any way relates to, or arises from, any Executory Contract being rejected pursuant to this Article VII of the Plan shall, to the extent it is an Allowed Claim, be treated in the manner provided for in Bankruptcy Code §§ 365 and 502. The Debtors, the Estates, the Liquidating Trustee, and all

other parties-in-interest in these Chapter 11 Cases reserve the right to object or otherwise assert any defenses with respect to any such Claim.

### D.    Insurance Policies

Nothing in the Plan, the Disclosure Statement, or the Confirmation Order alters the rights and obligations of the Debtors and the Debtors' insurers (and third-party claims administrators) under any Insurance Policies or Vested Insurance Agreements or modifies the coverage or benefits provided thereunder or the terms and conditions thereof or diminishes or impairs the enforceability of the Insurance Policies and the Vested Insurance Agreements.

For the avoidance of doubt, all of the Debtors' rights and any third party's rights under any Insurance Policy and Vested Insurance Agreement to which the Debtors may be beneficiaries, including any directors and officers liability insurance policy, shall vest with the Liquidating Trust for the benefit of the Estates and all of the beneficiaries of such policies; and the Liquidating Trustee and/or the Debtors shall not take any action that would impair or alter the coverage currently in place for the Debtors' current or former directors and officers under any directors and officers liability insurance and/or similar policies, as such coverage shall remain in full force and effect for benefit of such directors and officers and for the Estates for the duration and term of all such policies.  The Debtors and the Liquidating Trust shall have no monetary obligations with respect to the Insurance Policies and the Vested Insurance Agreements other than with respect to any General Unsecured Claims and/or Other Secured Claims (as applicable, and to the extent set forth in the subsequent sentence) properly and timely asserted in the Chapter 11 Cases, to the extent that such Claims are Allowed.  Specifically, to the extent that a Claim of an insurer (or third-party administrator) is properly secured by virtue of such party's having previously been granted collateral (including letters of credit), such Claim shall continue to be secured by and to the extent of such collateral and shall be deemed to be (a) an Other Secured Claim in accordance with the Plan and Bankruptcy Code § 506(a) and shall be treated as Class 2 Claims under the Plan, provided that any excess collateral shall be returned to the Debtors or the Liquidating Trustee, as applicable, in accordance with the Insurance Policies and the Vested Insurance Agreements or court order (to be further distributed in the manner set forth in Section III.B.1(b) of the Plan) and (b) to the extent of any collateral deficiency, a General Unsecured Claim to be treated as a Class 4 Claim under the Plan, in each case subject to the filing of a Proof of Claim therefor and the Allowance thereof.

Any injunction set forth in the Plan and the automatic stay of Bankruptcy Code § 362(a), if and to the extent applicable, shall be lifted, without further order of the Bankruptcy Court, to permit (a) claimants with valid outstanding workers' compensation claims that are covered by any of the Insurance Policies or the Vested Insurance Agreements to undertake any actions that are necessary in order to proceed with their claims under such Insurance Policies or Vested Insurance Agreements and thereafter solely to collect thereon from any third party other than the Debtors, the Liquidating Trust, the Liquidating Trustee, or the Estates, (b) the applicable insurers and/or third-party administrators to administer, handle, defend, settle, and/or pay all workers' compensation claims arising under the Insurance Policies and the costs related thereto without further order of the Bankruptcy Court, (c) the applicable insurers and/or third-party

-47-

administrators to draw upon paid loss deposit funds and/or other collateral for payments of the claims, costs, and expenses described in subclauses (b) and (d) of this paragraph, in accordance with the applicable Insurance Policies and the Vested Insurance Agreements, and (d) all applicable insurers and third-party administrators to pay claims and/or defense costs and expenses related to claims arising under any Insurance Policies (other than with respect to workers' compensation claims, which are, for the avoidance of doubt, addressed in subclauses (a) and (c) of this paragraph), provided that such payments are permitted under the terms and conditions of such Insurance Policies or Vested Insurance Agreements; provided, however, that defense attorneys or claimants shall not be permitted to recover from both the Liquidating Trust and the applicable insurer or third-party administrator on account of the same claim.

### E.    Compensation and Benefits Programs

Except as otherwise expressly provided under the Plan or the Confirmation Order, all Compensation and Benefits Programs, to the extent (i) not previously or otherwise terminated and/or cancelled by the Debtors prior to the Confirmation Date and/or (ii) not the subject of a motion by the Debtors to reject or to otherwise cancel or terminate such program that is pending on the Confirmation Date, shall, on the Confirmation Date but subject to the occurrence of the Effective Date, be cancelled and deemed terminated and/or rejected and of no force or effect as of the Confirmation Date or any applicable prior termination and/or cancellation date, pursuant to the provisions of Bankruptcy Code §§ 365 and 1123, or otherwise, and the Debtors and/or the Liquidating Trustee, as applicable, are authorized and empowered to take all actions necessary to effectuate any such termination, cancellation, and/or rejection, and all third parties are authorized and directed to rely on this Section VII.D of the Plan in connection therewith. For the avoidance of doubt, the Insurance Policies and the Vested Insurance Agreements shall not constitute a Compensation and Benefits Programs and shall not otherwise be terminated on the Effective Date under this Section VII.E of the Plan.

### F.    Return of Deposits by Utility Companies

Except to the extent the Debtors have previously agreed in writing (after having provided notice thereof to the Creditors Committee and the Administrative Agent) that a Utility Company may apply all or a portion of a deposit held thereby against any amounts owed by the Debtors thereto, all Utility Companies shall be required to return to the Liquidating Trustee all deposits previously provided by any of the Debtors within 30 days after the Effective Date (and the Debtors shall provide notice of this requirement to all Utility Companies as soon as practicable following the occurrence of the Effective Date, which notice may be part of the general notice of occurrence of the Effective Date for these Chapter 11 Cases). Such returned deposits shall constitute Transferred Property to be administered and utilized by the Liquidating Trustee in the manner set forth in the Plan and the Liquidating Trust Agreement. The Liquidating Trustee shall be authorized to take any and all actions to enforce this provision.

# ARTICLE VIII.
## ACCEPTANCE OR REJECTION OF THE PLAN

**A.      Acceptance by Impaired Classes**

An Impaired Class of Claims will have accepted the Plan if the Holders of at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in the Class actually voting on the Plan have voted to accept the Plan, in each case not counting the vote of any Holder designated under Bankruptcy Code § 1126(e).

**B.      Elimination of Classes**

Any Class that does not contain any Allowed Claims or any Claims temporarily allowed for voting purposes under Bankruptcy Rule 3018, as of the date of the commencement of the Confirmation Hearing, shall be deemed not included in the Plan for purposes of (i) voting to accept or to reject the Plan and (ii) determining whether such Class has voted to accept or to reject the Plan under Bankruptcy Code § 1129(a)(8).

**C.      Nonconsensual Confirmation**

A court may confirm a Chapter 11 plan over the dissent of, or deemed rejection by, any Impaired Class of Claims or Equity Interests if all of the requirements for consensual confirmation under Bankruptcy Code § 1129(a), other than Bankruptcy Code § 1129(a)(8), and for nonconsensual confirmation under Bankruptcy Code § 1129(b), have been satisfied.  In the event that any Impaired Class of Claims or Equity Interests fails to vote to accept the Plan, or is deemed to reject the Plan pursuant to Bankruptcy Code § 1126(g), in accordance with Bankruptcy Code § 1129(a), the Debtors reserve the right to (i) request that the Bankruptcy Court confirm the Plan in accordance with Bankruptcy Code § 1129(b), (ii) amend the Plan, or (iii) withdraw the Plan and take any other action they deem necessary or appropriate in their discretion in the Chapter 11 Cases.

# ARTICLE IX.
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND THE EFFECTIVE DATE

**A.      Conditions Precedent to the Confirmation Date of the Plan**

The occurrence of the Confirmation Date shall be subject to satisfaction of the following conditions precedent:

1.      The Confirmation Order, the provisions of which are nonseverable and mutually independent, is entered in form and substance reasonably satisfactory to the Debtors, the Administrative Agent, and the Creditors Committee.

2.      All provisions, terms, and conditions of the Plan are approved in the Confirmation Order or in another order of the Bankruptcy Court.

3.      The Debtors obtain authority to take all actions necessary or appropriate to enter into, implement, and consummate the Plan and other agreements or documents created in connection with, or as contemplated by, the Plan.

**B.      Conditions Precedent to the Effective Date of the Plan**

The occurrence of the Effective Date and the Consummation of the Plan are subject to satisfaction of the following conditions precedent:

1.      The Confirmation Order, as entered by the Bankruptcy Court, shall be a Final Order in full force and effect with no stay thereof then in effect.

2.      All actions, documents, and agreements necessary or appropriate to implement the Plan, including the Liquidating Trust Agreement, shall have been effected or executed.

3.      The Plan Fund shall have been established and funded in the manner set forth in the Plan, in accordance with the terms of the Plan and the Liquidating Trust Agreement, respectively (as applicable).

**C.      Waiver of Conditions Precedent**

To the extent legally permissible, any of the conditions precedent in this Article IX of the Plan may be waived, in whole or in part, by the Debtors (in consultation with the Administrative Agent and the Creditors Committee).  Any such waiver of a condition precedent may be effected at any time, without notice or leave or order of the Bankruptcy Court and without any formal action, other than proceeding as if such condition did not exist.  The failure of the Debtors to exercise any of the foregoing rights shall not be deemed a waiver of any other rights.  Upon the waiver of any conditions to the Effective Date set forth in this Article IX of the Plan, and subject to the satisfaction in full of each of the remaining conditions set forth in this Article IX, the Plan shall become effective in accordance with its terms, without any notice to third parties or any other formal action.

**ARTICLE X.**
**EFFECT OF PLAN CONFIRMATION**

**A.      Settlement of Claims**

Except as otherwise expressly set forth in the Plan or in the Confirmation Order, the classification and/or manner of satisfying all Claims and Equity Interests, and the respective distributions and treatments hereunder, shall take into account and/or conform to the relative priority and rights of the Claims and Equity Interests in each Class in connection with any contractual, legal, and subordination rights relating thereto, whether arising under general

principles of equitable subordination, Bankruptcy Code § 510, contractual agreement, the DIP Facility Order (with respect to the Other Assets Resolution Consideration), or otherwise, and any and all such rights are not settled, compromised, or released pursuant to the Plan.

B.    **General Plan Injunction**

**Except as may otherwise be provided in the Plan or in the Confirmation Order, upon the occurrence of the Effective Date, the rights afforded and the payments and distributions to be made under the Plan shall be in complete exchange for, and in full and unconditional settlement, satisfaction, and release of, any and all existing debts, Claims, and Equity Interests of any kind, nature, or description whatsoever against the Debtors or any of the Debtors' Assets or other property and shall effect a full and complete release and termination of all Liens, security interests, or other Claims, Equity Interests, interests, or encumbrances upon all of the Debtors' Assets and property except for the security interests and Liens preserved in favor of the Pre-Petition Lenders pursuant to Section III.B.(1)(d) of the Plan. No Creditor or Equity Interest Holder of the Debtors nor any other Person may receive any distribution from the Debtors, the Estates, the Liquidating Trustee, the Liquidating Trust, or their respective Assets or seek recourse against the Debtors, the Estates, the Liquidating Trustee, the Liquidating Trust, or any of their respective Assets, except for those distributions expressly provided for under the Plan. All Persons are precluded from asserting against any property that is to be distributed under the terms of the Plan any Claims, obligations, rights, Causes of Action, liabilities, Liens, or Equity Interests based upon any act, omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, other than to the extent expressly provided for in the Plan or the Confirmation Order, whether or not (a) a Proof of Claim or proof of Equity Interest based upon such debt or Equity Interest (as applicable) is filed or deemed filed under Bankruptcy Code § 501; (b) a Claim or Equity Interest based upon such debt or Equity Interest (as applicable) is allowed under Bankruptcy Code § 502; or (c) the Holder of a Claim or Equity Interest based upon such debt or Equity Interest (as applicable) has voted to accept the Plan or is deemed to have accepted the Plan under Bankruptcy Code § 1126(f).** *All Holders of Liens, Claims, and/or Equity Interests arising prior to the Effective Date shall be permanently barred and enjoined from asserting against the Debtors, the Estates, the Liquidating Trustee, the Liquidating Trust, or their respective Assets any of the following actions on account of such Claim or Equity Interest: (a) commencing or continuing in any manner any action or other proceeding on account of such Lien, Claim, or Equity Interest against property to be distributed under the terms of the Plan or the property of any of the Debtors, the Estates, the Liquidating Trustee, or the Liquidating Trust, other than to enforce any right to distribution with respect to such property under the Plan; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, Lien, or order against any of the property to be distributed under the terms of the Plan or the property of any of the Debtors, the Liquidating Trustee, or the Liquidating Trust, other than as permitted under subclause (a) of this sentence; (c) creating, perfecting, or enforcing any Lien, claim, or encumbrance against any property to be distributed under the terms of the Plan or the property of any of the Debtors, the Liquidating Trustee, or the Liquidating Trust; (d) asserting any right of setoff or subrogation of any kind, directly or indirectly, against any*

-51-

*obligation due the Debtors, the Liquidating Trustee, the Liquidating Trust, or any of their respective Assets or any other property of the Debtors or the Liquidating Trust, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons; and (e) acting or proceeding in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan, the Confirmation Order, and the Liquidating Trust Agreement.*

C.    **Terms of Existing Injunctions or Stays**

Unless otherwise provided in the Plan, all injunctions and stays provided for in the Chapter 11 Cases pursuant to Bankruptcy Code §§ 105, 362, and 525, and otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date. *The Confirmation Order shall permanently enjoin the commencement or prosecution by any Entity, whether directly, derivatively, or otherwise, of any Claims, Equity Interests, obligations, suits, judgments, damages, demands, debts, rights, causes of action, or liabilities released pursuant to the Plan.*

D.    **Exculpation**

*NEITHER THE DEBTORS, THE ESTATES, THE LIQUIDATING TRUST, THE LIQUIDATING TRUSTEE, THE CREDITORS COMMITTEE AND ITS MEMBERS SOLELY IN THEIR CAPACITIES AS MEMBERS OF THE CREDITORS COMMITTEE AND NOT IN ANY OTHER CAPACITY, THE ADMINISTRATIVE AGENT, THE PRE-PETITION LENDERS, THE DIP FACILITY LENDER, THE SECOND LIEN NOTEHOLDERS, NOR ANY OF THEIR RESPECTIVE PRESENT OR FORMER OFFICERS, DIRECTORS, SHAREHOLDERS, MEMBERS, EMPLOYEES, ADVISORS, PROFESSIONALS, ATTORNEYS, OR AGENTS ACTING IN SUCH CAPACITY OR THEIR RESPECTIVE AFFILIATES, SHALL HAVE OR INCUR ANY LIABILITY (WHETHER ARISING UNDER CONTRACT, TORT, OR FEDERAL OR STATE SECURITIES OR EMPLOYMENT AND/OR LABOR LAWS OR REGULATIONS, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, NOW EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE) TO, OR BE SUBJECT TO ANY RIGHT OF ACTION BY, THE DEBTORS, THE LIQUIDATING TRUST, THE LIQUIDATING TRUSTEE, OR ANY HOLDER OF A CLAIM OR AN EQUITY INTEREST, OR ANY OTHER PARTY-IN-INTEREST IN THESE CHAPTER 11 CASES, OR ANY OF THEIR RESPECTIVE AGENTS, SHAREHOLDERS, EMPLOYEES, REPRESENTATIVES, FINANCIAL ADVISORS, PROFESSIONALS, ATTORNEYS, OR AFFILIATES, OR ANY OF THEIR SUCCESSORS OR ASSIGNS, FOR ANY PRE-PETITION OR POST-PETITION ACT TAKEN OR OMITTED TO BE TAKEN OR ANY OTHER TRANSACTION, EVENT, OR OCCURRENCE IN ANY WAY CONNECTED WITH, ARISING FROM, OR RELATING TO (A) THE DEBTORS, (B) THE CHAPTER 11 CASES OR THE COMMENCEMENT OR ADMINISTRATION THEREOF, (C) THE DISCLOSURE STATEMENT, THE PLAN (EITHER PRIOR TO CONFIRMATION OR APPROVAL OF SAME OR AS THE SAME MAY BE CONFIRMED OR OTHERWISE APPROVED BY THE BANKRUPTCY COURT), INCLUDING THE NEGOTIATION AND FORMULATION THEREOF, OR ANY ORDERS*

*OF THE BANKRUPTCY COURT RELATED THERETO (INCLUDING THE CONFIRMATION ORDER), AND THE DOCUMENTS NECESSARY TO EFFECTUATE THE PLAN (INCLUDING THE LIQUIDATING TRUST AGREEMENT) OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY, (D) THE SOLICITATION OF ACCEPTANCES AND REJECTIONS OF THE PLAN AND THE RELEASES AND WAIVERS PROVIDED FOR IN THE PLAN, (E) THE IMPLEMENTATION AND ADMINISTRATION OF THE PLAN AND THE LIQUIDATING TRUST, (F) THE DISTRIBUTION OF PROPERTY UNDER THE PLAN (INCLUDING WITH RESPECT TO THE PRESERVED COLLATERAL), (G) ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN, THE LIQUIDATING TRUST, OR THE CHAPTER 11 CASES, (H) THE SALES, INCLUDING THE NEGOTIATION AND CONSUMMATION THEREOF, AND THE SALE ORDERS, OR (I) ANY OTHER ORDER OF THE BANKRUPTCY COURT ENTERED IN THE CHAPTER 11 CASES, EXCEPT FOR ANY LIABILITY ARISING FROM CONDUCT CONSTITUTING FRAUD OR WILLFUL MISCONDUCT AS DETERMINED BY A FINAL ORDER.*

**E.      Releases by the Debtors and the Estates**

*NOTWITHSTANDING ANYTHING CONTAINED IN THE PLAN TO THE CONTRARY, ON THE CONFIRMATION DATE AND EFFECTIVE AS OF THE EFFECTIVE DATE (SUCH THAT THE DEBTORS, THE LIQUIDATING TRUSTEE AND THE LIQUIDATING TRUST, OR ANY OTHER PARTY ACTING ON BEHALF OF THE ESTATES SHALL NOT RECEIVE OR OTHERWISE BE ENTITLED TO ASSERT ANY CLAIM OR CAUSE OF ACTION RELEASED HEREUNDER), FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY EACH OF THE RELEASED PARTIES (INCLUDING THE WAIVER OF THE SECOND LIEN NOTE CLAIMS AND OTHERWISE PURSUANT TO THE UNSECURED CREDITOR SETTLEMENT), THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, INCLUDING:  (1) THE SATISFACTION AND RELEASE OF DEBT AND ALL OTHER GOOD AND VALUABLE CONSIDERATION PAID AND TRANSACTIONS UNDERTAKEN (INCLUDING THE CREATION AND FUNDING OF THE LIQUIDATING TRUST) PURSUANT HERETO; (2) THE UNSECURED CREDITOR SETTLEMENT; AND (3) THE SERVICES OF THE DEBTORS' PRESENT AND FORMER OFFICERS, DIRECTORS, MANAGERS, PROFESSIONALS, ATTORNEYS, SHAREHOLDERS, AND ADVISORS IN FACILITATING THE EXPEDITIOUS IMPLEMENTATION OF THE PLAN AND THE LIQUIDATING TRUST AND THE ASSOCIATED TRANSACTIONS CONTEMPLATED HEREBY AND BY THE LIQUIDATING TRUST AGREEMENT, EACH OF THE DEBTORS, IN THEIR INDIVIDUAL CAPACITIES AND AS DEBTORS-IN-POSSESSION, RELEASE AND SHALL BE DEEMED TO HAVE PROVIDED A FULL RELEASE TO EACH RELEASED PARTY (AND EACH SUCH RELEASED PARTY SO RELEASED SHALL BE DEEMED FULLY RELEASED BY THE DEBTORS AND THE ESTATES) AND THEIR RESPECTIVE PROPERTY FROM ANY AND ALL CLAIMS OR CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, LIQUIDATED OR UNLIQUIDATED, CONTINGENT OR NON-CONTINGENT, EXISTING OR OTHERWISE*

***ASSERTABLE AS OF THE EFFECTIVE DATE IN LAW, AT EQUITY, WHETHER FOR TORT, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR OTHERWISE, ARISING FROM OR RELATED IN ANY WAY TO THE DEBTORS OR THE ESTATES, INCLUDING THOSE THAT ANY OF THE DEBTORS WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR THAT ANY HOLDER OF A CLAIM OR AN EQUITY INTEREST OR OTHER ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (DERIVATIVELY OR OTHERWISE) ON BEHALF OR IN THE NAME OF ANY OF THE DEBTORS OR ANY OF THE ESTATES;*** PROVIDED, HOWEVER, THAT NOTHING IN THE PLAN SHALL RELEASE OR BE DEEMED TO RELEASE LIABILITY OF ANY PERSON ARISING FROM CONDUCT CONSTITUTING FRAUD OR WILLFUL MISCONDUCT, AS DETERMINED BY A FINAL ORDER.

Notwithstanding anything contained in the Plan to the contrary, the Plan does not release the D&O Claims or any Avoidance Actions or any other Causes of Action, whether direct, derivative, or otherwise, that the Debtors, the Estates, or the Liquidating Trustee have or may have now or in the future solely to the extent that any such claims or actions are against any Non-Released Parties.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtors' releases provided for in this Section X.E (the "*Debtors' Releases*"), which include by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtors' Releases are:  (1) in exchange for the good and valuable consideration provided by the Released Parties (including the waiver of the Second Lien Note Claims and otherwise pursuant to the Unsecured Creditor Settlement); (2) a good-faith settlement and compromise of the claims released by the Debtors hereby; (3) in the best interests of the Debtors, the Estates, and all Holders of Claims and Equity Interests; (4) fair, equitable, and reasonable under the circumstances of these Chapter 11 Cases; (5) given and made after due notice and an opportunity for a hearing; *and (6) a bar to any of the Debtors' or the Liquidating Trustee's asserting any claim or cause of action released pursuant to this Section X.E.*

F.      **Releases by the Releasing Parties**

***NOTWITHSTANDING ANYTHING CONTAINED IN THE PLAN TO THE CONTRARY, ON THE CONFIRMATION DATE AND EFFECTIVE AS OF THE EFFECTIVE DATE, THE RELEASING PARTIES (REGARDLESS OF WHETHER A RELEASING PARTY IS ALSO A THIRD-PARTY RELEASEE) SHALL PROVIDE A FULL RELEASE (AND EACH ENTITY SO RELEASED SHALL BE DEEMED RELEASED BY THE RELEASING PARTIES) TO ALL OF THE RELEASED PARTIES AND THEIR RESPECTIVE PROPERTY FROM ANY AND ALL CLAIMS OR CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, LIQUIDATED OR UNLIQUIDATED, CONTINGENT OR NON-CONTINGENT, EXISTING OR OTHERWISE ASSERTABLE AS OF THE EFFECTIVE DATE IN LAW, AT EQUITY, WHETHER FOR TORT, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS OR***

*EMPLOYMENT AND/OR LABOR LAWS OR REGULATIONS, OR OTHERWISE, ARISING FROM OR RELATED IN ANY WAY TO THE DEBTORS OR THE ESTATES, INCLUDING THOSE IN ANY WAY RELATED TO THE CHAPTER 11 CASES OR THE PLAN.* **NOTWITHSTANDING ANYTHING IN THE PLAN TO THE CONTRARY, THE PLAN DOES NOT RELEASE THE D&O CLAIMS OR ANY CLAIMS, AVOIDANCE ACTIONS, OR OTHER CAUSES OF ACTION, WHETHER DIRECT, DERIVATIVE, OR OTHERWISE, THAT THE RELEASING PARTIES MAY HAVE NOW OR IN THE FUTURE AGAINST ANY NON-RELEASED PARTIES, OR ANY LIABILITY OF ANY PERSON ARISING FROM CONDUCT CONSTITUTING FRAUD OR WILLFUL MISCONDUCT AS DETERMINED BY A FINAL ORDER.**

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases provided for in this Section X.F, which include by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties (including the waiver of the Second Lien Note Claims and otherwise pursuant to the Unsecured Creditor Settlement); (2) a good-faith settlement and compromise of the claims released in this Section X.F; (3) in the best interests of the Debtors, the Estates, and all Holders of Claims and Equity Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and an opportunity for a hearing; *(6) a bar to any of the Releasing Parties' asserting any claim released pursuant to this Section X.F; and (7) be deemed to have been entered into consensually, by virtue of the applicable Releasing Party's having voted to accept the Plan.*

**ALL RELEASING PARTIES SHALL BE FOREVER PRECLUDED FROM ASSERTING ANY OF THE CLAIMS RELEASED PURSUANT TO THIS SECTION X.F AGAINST ANY OF THE RELEASED PARTIES OR ANY OF THE RELEASED PARTIES' RESPECTIVE ASSETS. TO THE EXTENT THAT ANY RELEASING PARTY RECEIVES MONETARY DAMAGES FROM ANY RELEASED PARTY ON ACCOUNT OF ANY CLAIM RELEASED PURSUANT TO THIS SECTION X.F, SUCH RELEASING PARTY HEREBY ASSIGNS ALL OF ITS RIGHT, TITLE, AND INTEREST IN AND TO SUCH RECOVERY TO THE RELEASED PARTIES AGAINST WHOM SUCH MONEY IS RECOVERED.**

G.     **Injunction Related to Releases**.

**The Confirmation Order will enjoin, and shall be deemed to enjoin, permanently the commencement or prosecution by any Person, whether directly, derivatively, or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to the Plan (including the releases set forth in this Article X).**

H.     **Limits to Release and Exculpation Provisions**

Notwithstanding anything to the contrary in the Plan or in the Confirmation Order, nothing in the Plan (including anything set forth in Article X of the Plan) shall or shall be

deemed to (i) constitute a release, discharge, or waiver by any Debtor, Estate, Releasing Party, the Liquidating Trustee, the Liquidating Trust, or any other Person of, or (ii) impose any injunction against the enforcement of, any claim or cause of action or any potential claim or cause of action against Messrs. Michael Mulligan, Russell D'Anton, or Michael D'Anton and their respective family members or relatives or any entity in which they may have an ownership, partnership, shareholder, membership, pecuniary, or other interest.  In addition, nothing in the Plan or the Confirmation Order shall or shall be deemed to constitute a release, discharge, or waiver by (i) any Professional of any Professional Fee Claim against the Debtors, the Estates, or any other party or (ii) any of the Pre-Petition Lenders of any claim or cause of action that any of them may have against any other Pre-Petition Lender.

I.    **Indemnification of Debtors' Officers and Directors.**

Pursuant to an indemnity agreement to be executed between the Debtors and the Administrative Agent in form and substance acceptable to the parties thereto, the Administrative Agent shall indemnify and hold harmless all officers and directors of any of the Debtors serving as of October 1, 2010, or at any time thereafter, in an aggregate amount of up to $500,000 (the "*Indemnity Amount*"), with respect to all costs of defense, settlements, and/or payments upon any judgments that may be entered against any such parties, in connection with certain causes of action, claims, liabilities, losses, expenses, and damages asserted against any such officer or director on account of, or otherwise arising out of or in connection with their relationship with the Debtors.

## ARTICLE XI.
## MISCELLANEOUS

A.    **Settlement of Claims and Controversies**

Pursuant to Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan shall constitute a good-faith compromise of all claims or controversies relating to the contractual, legal, and other rights that a Holder of a Claim may have with respect to any Allowed Claim or any distribution to be made on account thereof.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of this compromise and settlement of all such claims or controversies, and the Bankruptcy Court's finding that such compromise and settlement is in the best interests of the Debtors, the Estates, and Holders of Claims and Equity Interests, a proper exercise of the Debtors' business judgment, and is fair, equitable, and reasonable.  The entry of the Confirmation Order shall also constitute the Bankruptcy Court's approval of the Unsecured Creditor Settlement.

B.    **Payment of Statutory Fees**

All fees payable pursuant to 28 U.S.C. § 1930 shall be paid on or before the Effective Date, to the extent required by applicable law, or, if not required to be paid on or prior to the Effective Date, by the Debtors or the Liquidating Trustee as soon as practicable following the

Effective Date, as and when such fees become due and payable in accordance with applicable law.

### C.    Exemption from Securities Laws

The creation or issuance of (i) any beneficial interests in the Liquidating Trust to the Holders of Allowed General Unsecured Claims or otherwise under the Plan and (ii) the New CB Holding Share, to the extent, if any, either of such interests constitute "securities" under applicable law, in each instance satisfies the requirements of Bankruptcy Code § 1145, and therefore, such creation or issuance shall be exempt from registration under the Securities Act of 1933, as amended, and any state or local law requiring registration for the offer or sale of securities.

### D.    Bankruptcy Code § 1146 Exemption

Pursuant to Bankruptcy Code § 1146(a), (a) the creation, modification, consolidation, or recording of any mortgage, deed of trust, lien, pledge, or other security interest; (b) the making, recording, or assignment of any lease or sublease; or (c) the making, recording, or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan and the remaining Sales or portions thereof that have not closed as of the Confirmation Date, including, without limitation, any merger agreements; assignments; agreements of consolidation, restructuring, disposition, liquidation, or dissolution; deeds; bills of sale; and transfers of tangible property by the Debtors or the Liquidating Trustee, shall not be subject to any stamp tax, recording tax, personal property tax, real estate transfer tax, sales or use tax, or other similar tax. Any transfers from the Debtors to the Liquidating Trust or any other Person (including any Purchaser) following the Confirmation Date or by the Liquidating Trust to a creditor or other Entity or otherwise pursuant to the Plan, the Sale Orders, the Confirmation Order, any other order of the Bankruptcy Court, or the Liquidating Trust Agreement shall not be subject to any such taxes, and all appropriate state or local governmental officials or agents are hereby and by the Confirmation Order directed to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. Any of the foregoing sales or transactions taken or closing on or after the Confirmation Date shall be deemed to have been in furtherance of, or in connection with, the Plan.

### E.    Books and Records

On the Effective Date, the Debtors' books and records (excluding any electronic mail or other correspondence among the Debtors and their counsel subject to Privilege other than those referred to in Section XI.F of the Plan) (the "*Books and Records*") shall be transferred to the Liquidating Trust, except to the extent any such Books and Records were transferred to the various Purchasers under the respective Asset Purchase Agreements. With respect to the Books and Records that were transferred to a Purchaser under an Asset Purchase Agreement, such Purchaser shall provide the Liquidating Trustee and the Debtors reasonable access to the Books and Records in the manner provided in the applicable Asset Purchase Agreement to enable the

Liquidating Trustee and the Debtors to carry out their respective duties under the Liquidating Trust Agreement or otherwise under the Plan (as applicable).

With respect to all other Books and Records retained by the Debtors after the Confirmation Date, the Liquidating Trustee shall be free, in its discretion, upon prior notice to the Administrative Agent, to abandon, destroy, or otherwise dispose of any such Books and Records in compliance with applicable non-bankruptcy law at any time on and after the Effective Date, without the need for any other or further court order; provided, however, that in the Liquidating Trustee's discretion, these Books and Records so retained may otherwise be destroyed or disposed of beginning six (6) months after the Effective Date, notwithstanding any applicable laws, rules, or regulations that potentially would have required the Debtors to retain such Books and Records for longer.  The Liquidating Trustee shall also be free, in its discretion, upon prior notice the Administrative Agent, and in compliance with applicable non-bankruptcy law, to abandon, destroy, or otherwise dispose of all Books and Records previously transferred thereto by the Debtors in accordance with this Section XI.E, without the need for any other or further court order.

**F.    Privileges as to Certain Causes of Action**

Privileges relating solely to any existing Avoidance Actions or other Transferred Causes of Action pursued, investigated, or considered by the Debtors prior to the Confirmation Date (not otherwise resolved) shall be transferred, assigned, and delivered to the Liquidating Trust, without waiver or release, and shall vest with the Liquidating Trust.  The Liquidating Trustee shall hold and be the beneficiary of all such Privileges and entitled to assert such Privileges.  No such Privilege shall be waived by disclosures to the Liquidating Trustee of the Debtors' documents, information, or communications subject to attorney-client privileges, work product protections or other immunities (including those related to common interest or joint defense with third parties), or protections from disclosure held by the Debtors.  The Liquidating Trustee shall reserve the right to request other materials that may be subject to Privilege for appropriate reasons, but representatives of the Debtors and the Debtors' Professionals shall maintain the ability to oppose any such request on any grounds or to seek compensation in connection with such production, with any disputes to be decided by the Bankruptcy Court.

**G.    New Employee Agreements**

The Debtors and the Liquidating Trustee are authorized to negotiate employment, consulting, or similar contracts or arrangements with any current or former employees or officers of the Debtors or any Professionals, to the extent necessary, beneficial, or appropriate to wind down the Estates or otherwise fulfill their respective duties and responsibilities under the Plan or the Liquidating Trust Agreement (as applicable).   To the extent the Debtors and/or the Liquidating Trustee, as applicable, enter into any such arrangements with any current officers of the Debtors, such parties would remain and continue as officers, until such time as their services are no longer needed by the Debtors and/or the Liquidating Trustee, as applicable.

### H.     Unclaimed Property

Notwithstanding any local, state, federal, or other laws or regulations regarding unclaimed property or escheatment of property, all funds or other property possessed by the Debtors or the Liquidating Trust on and after the Effective Date (including any unclaimed pay checks; any unclaimed or returned distributions or other benefits under any Compensation and Benefits Program or otherwise; or customer gift, club, or similar cards in connection with any customer promotion, similar activity, or otherwise that is unclaimed, unutilized, returned, or unredeemed (as the case may be) or otherwise remaining outstanding), in each case subject to escheatment or potentially subject to escheatment, as of the Effective Date, shall be treated as property of the Debtors under the Plan, and shall accordingly be deemed transferred to, vested with, and become the property of the Debtors or the Liquidating Trust (as applicable) to be either destroyed and of no force and effect or held and distributed pursuant to the terms of the Plan, in each case free and clear of any such laws or regulations.  *No local, state, federal, or other regulatory or other administrative agency may assert any claims or causes of action against the Debtors, the Estates, the Liquidating Trust, the Liquidating Trustee, and/or any of the Debtors' or the Liquidating Trustee's respective officers, directors, employees, agents, or professionals with respect to any such funds or other property that is the subject of this Section XI.H, and such agencies are hereby enjoined and estopped from doing so.*

### I.     Business Day

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### J.     Severability

The provisions of the Plan shall not be severable, unless such severance is agreed to by the Debtors, and such severance would constitute a permissible modification of the Plan pursuant to Bankruptcy Code § 1127.

### K.     Conflicts

Except as expressly set forth in the Plan or in the Confirmation Order, to the extent that any provision of the Disclosure Statement conflict with or are in any way inconsistent with the terms of the Plan, the Plan shall govern and control; and to the extent that any provision of the Disclosure Statement, the Plan, the Liquidating Trust Agreement, or the Confirmation Order (or any exhibits, schedules, appendices, supplements, or amendments to the foregoing) or any other order referenced in the Plan conflict with or are in any way inconsistent with the respective terms thereof, the Confirmation Order shall govern and control.

**L.      Evidence**

In the event the Plan shall not take effect or be consummated for whatever reason, nothing here shall constitute an admission or denial with respect to whether any of the Claims or Liens held by the Holders of any Claims or Equity Interests are (a) entitled to Allowance or Disallowance, (b) Secured or not Secured, (c) entitled to priority treatment under the Bankruptcy Code or otherwise, (d) liable to subordination, or (e) liable for any claims or Causes of Action, including but not limited to claims under Bankruptcy Code §§ 506, 510, 522, 542, 543, 544, 545, 547, 548, 549, and/or 550.

**M.      Further Assurances**

The Debtors, the Creditors Committee, the Administrative Agent, the Pre-Petition Lenders, the DIP Facility Lender, the Liquidating Trustee, all Holders of Claims receiving distributions under the Plan, all beneficiaries of the Liquidating Trust, and all other parties-in-interest shall, from time to time, prepare, execute, and deliver agreements or documents and take other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan and the Liquidating Trust Agreement (as applicable).

**N.      Notices**

All notices, requests, and demands required by the Plan to be effective shall be in writing, including by facsimile transmission or electronic mail and, unless otherwise expressly provided in the Plan, shall be deemed to have been duly given or made when actually delivered to all of the following, or in the case of notice by facsimile transmission or electronic mail, when received by all of the following, addressed as follows or to such other addresses as Filed with the Bankruptcy Court:

**To the Debtors:**

Cahill Gordon & Reindel LLP
Eighty Pine Street
New York, New York  10005
Attn:  Joel H. Levitin, Stephen J. Gordon,
Richard A. Stieglitz Jr., and Maya Peleg
Telephone:  (212) 701-3000
Facsimile:  (212) 369-5420

Richards, Layton & Finger, P.A.
One Rodney Square,
920 North King Street
Wilmington, Delaware  19801
Attn:  Mark D. Collins, Christopher
M. Samis, and Tyler D. Semmelman
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

**To the Administrative Agent:**

Vedder Price P.C.
222 N. LaSalle Street, Suite 2600
Chicago, Illinois  60601
Attn:  Douglas J. Lipke and Jonathan E. Aberman
Telephone:  (312) 609-7500

Facsimile:  (312) 609-5005

**To the Official Committee of**
**Unsecured Creditors:**

Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Boulevard, 11th Floor
Los Angeles, California  90067
Attn:  Jeffrey N. Pomerantz
Telephone:  (310) 277-6910
Facsimile:  (310) 201-0760

Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
Wilmington,   Delaware   19899-8705
(courier 19801)
Attn:  Bradford J. Sandler
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400

## O.      Filing of Additional Documents

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan or that are otherwise contemplated by the Plan.

## P.      Successors and Assigns

The rights, benefits, and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such entity.

## Q.      Exclusivity Period

The Debtors shall retain the exclusive rights under Bankruptcy Code § 1121 to amend or modify the Plan and to solicit acceptances of any amendments to or modifications of the Plan, through and until the Effective Date.

## R.      Section Headings

The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

## S.      Further Information

Requests for further information regarding the Debtors should be directed to counsel to the Debtors as set forth on the cover page hereof and herein.

## ARTICLE XII.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, following the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the

Chapter 11 Cases as is legally permissible, including, without limitation, such jurisdiction as is necessary to ensure that the intents and purposes of the Plan and the Liquidating Trust Agreement are carried out.  The Bankruptcy Court shall also retain and have exclusive jurisdiction after the Effective Date over any matter arising under the Bankruptcy Code, arising in or related to the Chapter 11 Cases, the Plan, the Confirmation Order, or the Liquidating Trust Agreement, or that otherwise relates to any of the following:

    1.    to enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan, the Confirmation Order, the Liquidating Trust Agreement, and the Sale Orders and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan and the Liquidating Trust;

    2.    to determine any and all motions, adversary proceedings (including all Avoidance Actions and all other Causes of Action, regardless of whether such action is pending or has otherwise been commenced or instituted as of the Effective Date), applications, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by Debtors, the Liquidating Trustee, or the Liquidating Trust after the Effective Date, including, without limitation, among others, any claims or causes of action against Sysco Corporation and all related entities, and any other claims or causes of action, whether actual or hypothetical, as disclosed in the Plan Supplement; provided, however, that the Debtors, the Liquidating Trust, and the Liquidating Trustee reserve the right to commence collection actions, actions to recover receivables, and other similar actions in any and all other appropriate jurisdictions;

    3.    to ensure that distributions to Holders of Allowed Claims are accomplished as provided for in the Plan and in the Liquidating Trust Agreement;

    4.    to hear and determine any objections to Claims or Equity Interests Filed, both before and after the Confirmation Date, including any objections to the classification of any Claim or Equity Interest, and to allow, disallow, determine, liquidate, classify, estimate, or establish the priority of or Secured or unsecured or priority or non-priority status of any Claim, in whole or in part, and any related proceedings, judicial, quasi-judicial, regulatory, administrative, or other;

    5.    to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed, or vacated;

    6.    to issue such orders in aid of execution of the Plan and the Sales, to the extent authorized by Bankruptcy Code § 1142;

7.      to consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

8.      to hear and determine all applications for awards of Professional Fees or other compensation for services rendered and reimbursement of expenses incurred prior to the Confirmation Date;

9.      to hear and determine disputes arising in connection with or relating to the Plan or the Liquidating Trust or the interpretation, implementation, or enforcement of the Plan or the Liquidating Trust Agreement (including to enforce the release, injunction, and exculpation provisions set forth in Article X of the Plan) whether explicitly referenced in the Plan or not of any Entity's obligations incurred in connection with or released, enjoined, and/or exculpated under the Plan;

10.     to issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan (including with respect to the release and exculpation provisions set forth in Article X of the Plan), the Sale Orders, and the Liquidating Trust Agreement, including, without limitation, with respect to any asserted Claim for unused vacation pay or time and any related proceedings, judicial, quasi-judicial, regulatory, administrative, or other;

11.     to determine any other matters that may arise in connection with or are related to the Plan, the Disclosure Statement, the Liquidating Trust, the Liquidating Trust Agreement, the Confirmation Order, the Sales, the Sale Orders, the Asset Purchase Agreements, or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Disclosure Statement to be executed in connection with the Plan or the Liquidating Trust;

12.     to hear and determine matters concerning state, local, or federal taxes in accordance with Bankruptcy Code §§ 346, 505, and 1146;

13.     to hear and determine any disputes or other matters arising in connection with the interpretation, implementation, consummation, or enforcement of all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered pursuant to the Plan and/or in any way in connection with the Chapter 11 Cases; and

14.     to hear any other matter or for any purpose specified in the Disclosure Statement, the Confirmation Order, the Plan, the Liquidating Trust Agreement, or any other document entered into in connection with any of the foregoing.

## ARTICLE XIII.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

**A.      Modification of Plan**

The Debtors reserve the right, in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, to amend or modify the Plan at any time prior to the entry of the Confirmation Order (with the consent of the Creditors Committee and the Administrative Agent in the event such amendment or modification would materially affect either of their respective substantive rights, which consent may not unreasonably be withheld); provided, however, that in the event they make any material amendments to the Plan prior to the Confirmation Hearing, the Debtors will file a motion or other pleading with the Bankruptcy Court requesting that the Bankruptcy Court find that no resolicitation of votes with respect to the Plan is required.  Upon the entry of the Confirmation Order, the Debtors (or, after the Effective Date, the Liquidating Trustee) may, after notice and a hearing, amend or modify the Plan, in accordance with Bankruptcy Code § 1127(b), remedy any defect or omission, or reconcile any inconsistency in the Plan or the Liquidating Trust Agreement, in such manner as may be necessary to carry out the purpose and intent of the Plan.  A Holder of a Claim that has voted to accept the Plan shall be deemed to have voted to accept the Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim of such Holder, and the votes of each Class for or against the Plan shall be counted and used in connection with the modified plan.

**B.      Revocation, Withdrawal, or Non-Consummation**

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to file subsequent or different plans (in consultation with the Administrative Agent and the Creditors Committee).  If the Debtors revoke or withdraw the Plan, or if (1) the Confirmation Order shall not have become a Final Order or is otherwise vacated for any reason, or (2) the Effective Date shall not otherwise have occurred within 180 days of the Confirmation Date, then (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Equity Interest or Class of Claims or Equity Interests), assumption or rejection of Executory Contracts affected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void, and (c) nothing contained in the Plan or the Disclosure statement, and no acts taken in preparation for the Consummation of the Plan, shall (i) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors or any other Entity, (ii) prejudice in any manner the rights of the Debtors or the Estates, (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors, the Estates, or any Debtor Releasees, or (iv) constitute a release of any Causes of Action possessed or maintained by the Debtors or the Estates.

Dated:  January 4, 2012                    Respectfully submitted,


                                           CB HOLDING CORP.
                                           On behalf of itself and all of the Affiliate Debtors


                                           By: /s/ Gary Lembo_____
                                                Name:  Gary Lembo
                                                Title:  Chief Restructuring Officer


                                           Debtors and Debtors-in-Possession