# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CB HOLDING CORP., et al.,[1] | ) | Case No. 10-13683 (MFW) |
| | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | **Re: Docket Nos. 944, 1149, 1157 & 1204** |

## ORDER CONFIRMING DEBTORS' MODIFIED
## FIRST AMENDED JOINT PLAN OF LIQUIDATION

The above-captioned debtors and debtors-in-possession (collectively, the **"Debtors"**),

having filed with this Court separate, voluntary petitions under Chapter 11 of Title 11 of the United States

Code (the **"Bankruptcy Code"**) on November 17, 2011 (the **"Petition Date"**); and the Debtors' having

---

[1]     The other Debtors, and the last four digits of each of their tax identification numbers, are: 1820 Central
Park Avenue Restaurant Corp. (5151); Bugaboo Creek Acquisition, LLC (4629); Bugaboo Creek Holdings,
Inc. (0966); Bugaboo Creek of Seekonk, Inc. (1669); CB Holding Corp. (8640); CB VII, Inc. (9120); CB
VIII, Inc. (1468); Charlie Brown North (6721); Charlie Brown's Acquisition Corp. (8367); Charlie
Brown's at Clifton, Inc. (7309); Charlie Brown's Mark Corp. (3569); Charlie Brown's Montclair, Inc.
(4223); Charlie Brown's 1981, Inc. (7781); Charlie Brown's of Allentown, L.L.C. (8420); Charlie Brown's
of Alpha, Inc. (9083); Charlie Brown's of Berwyn, LLC (3347); Charlie Brown's of Blackwood, L.L.C.
(5698); Charlie Brown's of Bloomsburg, LLC (3326); Charlie Brown's of Brielle, Inc. (8115); Charlie
Brown's of Carlstadt, Inc. (6936); Charlie Brown's of Chatham, Inc. (2452); Charlie Brown's of Commack
LLC (4851); Charlie Brown's of Denville, Inc. (1422); Charlie Brown's of East Windsor, LLC (2747);
Charlie Brown's of Edison, Inc. (8519); Charlie Brown's of Egg Harbor Twp, LLC (none); Charlie
Brown's of Franklin, LLC (5232); Charlie Brown's of Garden City, LLC (7440); Charlie Brown's of
Hackettstown, L.L.C. (7493); Charlie Brown's of Harrisburg, LLC (1085); Charlie Brown's of
Hillsborough, Inc. (0344); Charlie Brown's of Holtsville, LLC (0138); Charlie Brown's of Jackson, LLC
(3478); Charlie Brown's of Lacey, L.L.C. (6282); Charlie Brown's of Lakewood, Inc. (0156); Charlie
Brown's of Langhorne, LLC (3392); Charlie Brown's of Lynbrook LLC (2772); Charlie Brown's of Maple
Shade, Inc. (0404); Charlie Brown's of Matawan, Inc. (8337); Charlie Brown's of Middletown LLC
(7565); Charlie Brown's of Oradell, Inc. (0348); Charlie Brown's of Pennsylvania, Inc. (6918); Charlie
Brown's of Piscataway, LLC (8285); Charlie Brown's of Reading, LLC (1214); Charlie Brown's of
Scranton, LLC (3917); Charlie Brown's of Selinsgrove, LLC (6492); Charlie Brown's of Springfield, LLC
(9892); Charlie Brown's of Staten Island, LLC (1936); Charlie Brown's of Tinton Falls, Inc. (6981);
Charlie Brown's of Toms River, LLC (5492); Charlie Brown's of Union Township, Inc. (8910); Charlie
Brown's of Trexlertown, LLC (6582); Charlie Brown's of Wayne, Inc. (4757); Charlie Brown's of West
Windsor, Inc. (0159); Charlie Brown's of Williamsport LLC (8218); Charlie Brown's of Woodbury, Inc.
(0601); Charlie Brown's of York, LLC (0980); Charlie Brown's of Yorktown, LLC (7855); Charlie
Brown's Restaurant Corp. (7782); Charlie Brown's Steakhouse Fishkill, Inc. (9139); Charlie Brown's
Steakhouse Woodbridge, Inc. (1906); Charlie Brown's, Inc. (4776); Jonathan Seagull Property Corp.
(7248); Jonathan Seagull, Inc. (9160); The Office at Bridgewater, Inc. (3132); The Office at Cranford, Inc.
(3131);  The Office at Keyport, Inc. (1507); The Office at Montclair, Inc. (3128); The Office at
Morristown, Inc. (3127); The Office at Ridgewood, Inc. (2949); The Office at Summit, Inc. (3126); and
What's Your Beef V, Inc. (4719).  The Debtors' address is 1450 Route 22 West, Mountainside, NJ 07092.

filed with this Court a joint plan of liquidation under the Bankruptcy Code, dated August 1, 2011 (ECF

No. 944), a first amended joint plan of liquidation under the Bankruptcy Code, dated December 29, 2011

(ECF No. 1149), and a modified first amended joint plan of liquidation under the Bankruptcy Code, dated

January 4, 2012 (ECF No. 1157) (as modified and amended, together with all exhibits and supplements

thereto, the "**Plan**"),[2] a true and correct copy of which is attached hereto as <u>Exhibit A</u> and is incorporated

herein by reference; and the Debtors' having also filed with this Court a disclosure statement, dated

August 1, 2011 (ECF No. 945), a first amended disclosure statement, dated December 29, 2011 (ECF No.

1149), and a modified first amended disclosure statement, dated January 4, 2012 (ECF No. 1157) (as

modified and amended, the "**Disclosure Statement**"), by which the Debtors have solicited votes on the

Plan; and the Debtors' having given notice to all parties-in-interest of the date, time, and place for the

hearing to consider approval of the Disclosure Statement and the deadline for objecting to same; and a

hearing to consider approval of the Disclosure Statement, the form of Ballots to be used for voting with

respect to the Plan, the form and manner of notice with respect to matters concerning confirmation of the

Plan, and related matters having been held before this Court on January 5, 2012 (the "**Disclosure**

**Statement Hearing**"), after due notice and all parties-in-interest having had an opportunity to appear and

be heard at such hearing; and this Court's having approved the Disclosure Statement and related matters

by entry of the Disclosure Statement Order (as such term is defined below), which order has since become

a Final Order; and the Debtors' having solicited votes to accept or to reject the Plan from parties-in-

interest that are impaired under the Plan and that were entitled to vote on the Plan in accordance with the

requirements of Bankruptcy Code § 1126(b); and the Debtors' having given notice of the date, time, and

place for the hearing to consider confirmation of the Plan and the deadline for objecting to same; and the

Debtors' having filed the Plan Supplement on February 10, 2012 (ECF No. 1204), and the Notice of

Filing of Proposed Confirmation Order (ECF No. 1221) on February 21, 2012; and upon the affidavits or

declarations (as applicable) of (i) Gary Lembo of CRG Partners Group LLC ("**CRG**"), the Debtors' Chief

---

[2]     All capitalized terms not otherwise defined in this Order shall have the meanings ascribed to them in the
        Plan.

Restructuring Officer, in support of confirmation of the Plan, dated February 21, 2012 (ECF No. 1220) (the "**Lembo Declaration**"), and (ii) Jeffrey S. Stein of The Garden City Group, Inc., the Debtors' claims, notice, and balloting agent (the "**Balloting Agent**"), certifying the tabulations of votes on the Plan, dated February 21, 2012 (ECF No. 1217) (the "**Stein Declaration**"); and the Debtors' having filed a memorandum of law in support of confirmation of the Plan on February 21, 2012 (ECF No. 1218); and a hearing to consider confirmation of the Plan and other matters relating to confirmation having been held before this Court on February 23, 2012 (the "**Confirmation Hearing**"), after due notice, and all parties-in-interest having had an opportunity to appear and to be heard at the Confirmation Hearing; and this Court's having considered the Plan and the Plan Supplement; and based upon all other pleadings and papers heretofore filed herein, all proceedings heretofore had herein, and the record of the Confirmation Hearing; and after due deliberation and good and sufficient cause appearing therefor; and

IT APPEARING and the Court's having found and determined that:

Jurisdiction and Notice

A.      This Court has jurisdiction over these Chapter 11 Cases, the Plan, and the confirmation of same pursuant to 28 U.S.C. § 1334.  Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (b)(2)(L).  Venue of these Chapter 11 Cases in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      The Court takes judicial notice of the docket of these Chapter 11 Cases maintained by the Clerk of the Bankruptcy Court, including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the various hearings held before this Court during the pendency of these Chapter 11 Cases.

C.      Due, proper, and adequate notice of the date and time for voting on, and filing objections to, the Plan and of the date and time of the Confirmation Hearing was given pursuant to:   (1) Rule 2002(b)(2) of the Federal Rules of Bankruptcy Procedure (the

-3-

"**Bankruptcy Rules**") and (2) that certain Order (I) Approving Disclosure Statement, (II) Scheduling Hearing to Consider Plan Confirmation, (III) Establishing Deadline for Objecting to Plan, (IV) Approving Forms of Ballots and Other Solicitation Forms, (V) Approving Voting Deadline, Solicitation Procedures, And Tabulation Procedures, and (VI) Approving Form and Manner of Notices, dated January 5, 2012 (ECF No. 1162) (the "**Disclosure Statement Order**").

D.    The Plan and Ballots for voting thereon were properly and timely transmitted to holders of Impaired Claims in Classes 1, 2, and 4 of the Plan that were entitled to vote to accept or to reject the Plan in accordance with the requirements of the Bankruptcy Code and this Court's orders, including the Disclosure Statement Order, and votes on the Plan were properly solicited and tabulated. Specifically, in accordance with the Disclosure Statement Order, and as evidenced by the certificate of service of Jeffrey S. Stein that was filed with the Court (the "**Disclosure Statement Certificate of Service**") (ECF No. 1191), on January 26, 2012, the Balloting Agent caused the Notice of Confirmation Hearing (the "**Confirmation Hearing Notice**"), and in applicable instances, the Disclosure Statement (on CD-Rom) enclosing the Plan as an exhibit, the Disclosure Statement Order, the appropriate Ballot with a postage prepaid return mailing envelope pre-addressed to the Balloting Agent (and an instructional letter in the case of Class 1 voters), the Notice of Deemed Rejection, and/or the Notice of Non-Voting Status, to be mailed to: (a) to all known parties-in-interest (b) all persons or entities that had served and filed notices of appearance in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002; (c) all creditors known to the Debtors; and (d) all holders of record of Equity Interests in the Debtors. See Stein Declaration, ¶ 4.

E.    The notices given pursuant to the Disclosure Statement Order or otherwise by the Debtors with respect to the Plan and the Transactions (as defined below) provided adequate disclosure thereof and of the Confirmation Hearing within the meaning of Bankruptcy Code § 1125.

Plan Solicitation

F.    The solicitation of votes on the Plan, all distributions thereunder, and the issuance of any securities under the Plan were conducted appropriately and in good faith within the meaning of Bankruptcy Code §§ 1125 and 1126, all other provisions of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Local Rules, the Disclosure Statement, and all other applicable rules, laws, and regulations, and the Released Parties (as such term is amended by this Order) are entitled to the protections afforded by Bankruptcy Code § 1125(e).

Objections

G.    The Internal Revenue Service (the "IRS") filed an objection on February 10, 2012 [ECF No. 1203]. The Debtors and the IRS have consensually resolved this objection by agreeing to include certain language in this Order with respect thereto, and the IRS has filed a notice of withdrawal of its objection [ECF No. 1213].

H.    Sysco Atlanta, LLC, Sysco Boston, LLC, Sysco Central Pennsylvania, LLC, Sysco Connecticut, LLC, and Sysco Metro New York, LLC (collectively, "Sysco") filed an objection on February 16, 2012 [ECF No. 1207] (the "Sysco Objection").

I.    The United States Trustee filed an objection on February 17, 2012 [ECF No. 1212] (the "U.S. Trustee Objection"). The DIP Facility Lender filed a response to the U.S. Trustee Objection on February 21, 2012 [ECF No. 1215].

-5-

Plan of Reorganization

J.      The Debtors have met their burden of proving, by a preponderance of the evidence, their satisfaction of, and compliance with, the elements of Bankruptcy Code § 1129(a) and (b), as further set forth herein.  Without limiting the generality of the foregoing, the Plan complies with the applicable provisions of the Bankruptcy Code, including Bankruptcy Code §§ 1122 and 1123, the Bankruptcy Rules, and the Local Rules, in accordance with Bankruptcy Code § 1129(a)(1).

K.      The classification of Claims and Equity Interests in Article III of the Plan satisfies the requirements of Bankruptcy Code § 1122.

L.      Article III of the Plan adequately designates classes of Claims and Equity Interests, in accordance with Bankruptcy Code § 1123(a)(1), other than Administrative Claims, DIP Facility Claims, and Priority Tax Claims, which Claims are not required to be designated into classes thereunder.

M.      Article III of the Plan specifies the unimpaired Classes, in accordance with Bankruptcy Code § 1123(a)(2).

N.      Article III of the Plan specifies the treatment of each impaired Class of Claims and Equity Interests, in accordance with Bankruptcy Code § 1123(a)(3).

O.      The Plan provides the same economic treatment of each Claim or Equity Interest in a particular Class, except to the extent that holders of particular Claims or Equity Interests have agreed to a less favorable treatment of such particular Claims or Equity Interests, in accordance with Bankruptcy Code § 1123(a)(4).

P.      The Plan provides adequate means for its implementation in accordance with Bankruptcy Code § 1123(a)(5), including, among other things, the substantive consolidation of the Debtors (as provided herein), the establishment of the Liquidating Trust, the

RLF1 5849410v. 3

appointment of the Liquidating Trustee and the Liquidating Trust Professionals, the formation

of the Oversight Committee, the issuance of one new share of stock in CB Holding to the

Liquidating Trustee, and the implementation of various settlements by and between the Debtors,

the Creditors Committee, the DIP Facility Lender, and the Pre-Petition Lenders.  The Plan and

all of the transactions contemplated therein and to be consummated thereunder (collectively, the

"**Transactions**") are supported by the sound and prudent exercise of the Debtors' business

judgment and are in the best interests of Debtors and of their Estates and Creditors.

   **Q.**  Because the Plan is a liquidating plan that provides for the dissolution of

the Debtors (as set forth in Plan Section IV.F), Bankruptcy Code § 1123(a)(6) is inapplicable to

these Chapter 11 Cases.

   **R.**  The provisions for the selection of the Liquidating Trustee and successors

thereto, as set forth in Plan Section IV.D and the Liquidating Trust Agreement, satisfy

Bankruptcy Code § 1123(a)(7).

   **S.**  The Debtors have complied with the applicable provisions of the

Bankruptcy Code, in accordance with Bankruptcy Code § 1129(a)(2).

   **T.**  The Plan has been proposed in good faith and not by any means forbidden

by law, in accordance with Bankruptcy Code § 1129(a)(3).  The Plan was proposed with the

legitimate and honest purpose of maximizing the remaining value of the Estates and to

effectuate an orderly liquidation of the Debtors and their remaining Assets.

   **U.**  Except to the extent otherwise provided in the Plan, and pursuant to

previous orders of this Court, any payment made or to be made by the Debtors, or by any Person

issuing securities (if any) or acquiring property under the Plan, for services or for costs and

expenses in or in connection with these Chapter 11 Cases or in connection with the Plan and

incident to these Chapter 11 Cases to be paid by the Debtors, has been approved by, or is subject to the approval of, this Court as reasonable, in accordance with Bankruptcy Code § 1129(a)(4).

V.    The Debtors have publicly disclosed the identity of the initial Liquidating Trustee.  The Debtors have further disclosed that Edmund Schwartz, Chief Financial Officer, will continue to serve as an officer for those Debtors that continue to own any liquor licenses. The Debtors have further disclosed the initial members of the Oversight Committee.  The appointment, and continuance in office, as applicable, of these parties is consistent with the interests of creditors and interest holders in these Chapter 11 Cases and with public policy, in accordance with Bankruptcy Code § 1129(a)(5)(A).

W.    Plan Section IV.F provides for the dissolution of each Debtor and therefore there will be no "reorganized debtor" for any insider to serve.  As a result, Bankruptcy Code § 1129(a)(5)(B) does not apply in these Chapter 11 Cases.

X.    There are no rate changes provided for in the Plan, and there is no governmental regulatory commission with jurisdiction, after confirmation of the Plan, over any rates of the Debtors in any event, pursuant to Bankruptcy Code § 1129(a)(6).

Y.    With respect to each impaired Class of Claims and each Class of Equity Interests under the Plan, each Holder of a Claim or Equity Interest in such Class (i) has accepted the Plan or (ii) will receive or retain under the Plan on account of such Claim or Equity Interest property of a value, as of the Effective Date of the Plan, that is not less than the amount that such Holder would so receive or retain if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on such date, in accordance with Bankruptcy Code § 1129(a)(7).  No Creditor has made an election pursuant to Bankruptcy Code § 1111(b)(2).

RLF1 5849410v. 3

**Z.**     With respect to Bankruptcy Code § 1129(a)(8), three Classes of Claims under the Plan, other than those Classes of Claims and Equity Interests that have been deemed to either accept or reject the Plan (as applicable), have voted to accept the Plan, or the Claims in such Class are not impaired under the Plan. Class 3 is not impaired under the Plan and is thus conclusively presumed to have voted to accept the Plan. Classes 1, 2, 4, 5, and 6 are impaired under the Plan. Classes 1, 2, and 4 are entitled to vote with respect to the Plan. With Sysco's vote on the Plan being deemed an acceptance in accordance with the resolution of the Sysco Objection, Classes 1, 2, and 4 each voted to accept the Plan. Because Class 5 and Class 6 neither receive nor retain any property under the Plan, these Classes are deemed to have rejected the Plan under Bankruptcy Code § 1126(g). For Classes 5 and 6, the requirements of Bankruptcy Code § 1129(a)(8) have not been met, thereby requiring application of Bankruptcy Code § 1129(b). As more fully set forth below, the Plan satisfies Bankruptcy Code § 1129(b) with respect to Classes 5 and 6 and all other Impaired Classes.

**AA.**     The Plan does not discriminate unfairly and is fair and equitable with respect to Intercompany Claims in Class 5 and Equity Interests in Class 6 in that not all Holders of Claims senior to these Classes will be paid in full or receive more than 100% of their Claims, and there are no Classes of Claims or equity interests, as applicable, junior to Classes 5 and 6 that are receiving any distribution on account of such Claims or Equity Interests, in each instance in accordance with Bankruptcy Code § 1129(b)(2)(B).

**BB.**     Where applicable, except to the extent that the Holder of a particular Claim has agreed to less favorable treatment of such Claim, the Plan provides that:

i.     in accordance with Bankruptcy Code § 1129(a)(9)(A), pursuant to Article II.A of the Plan, each holder of a Claim of a kind specified in Bankruptcy Code § 507(a)(2) or §

507(a)(3), if any, shall receive Cash equal to the amount of such Allowed Claim on the later of the Initial Distribution Date or 10 days after the Allowance Date of such Allowed Claim.

ii.    in accordance with Bankruptcy Code § 1129(a)(9)(B), pursuant to Plan Section III.B.3(b), each holder of a Claim arising under Bankruptcy Code § 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7), if any, shall, on the later of the Initial Distribution Date or 10 days after the Allowance Date of such Allowed Claim, receive Cash from (i) the Plan Fund or (ii) any other escrows that may be established for the payment of any particular remaining unpaid Allowed Other Priority Claims, equal to the unpaid portion of such Allowed Claim;

iii.    in accordance with Bankruptcy Code § 1129(a)(9)(C), pursuant to Plan Section II.C, each holder of a Claim arising under Bankruptcy Code § 507(a)(8), if any, shall receive Cash from the Estate Shared Proceeds equal to the unpaid portion of such Allowed Claim.

CC.    At least one Class of Claims or Equity Interests that is impaired has accepted the Plan, determined without including any acceptance of the Plan by any insider, in accordance with Bankruptcy Code § 1129(a)(10). See Stein Declaration, ¶ 13.

DD.    The Plan satisfies Bankruptcy Code § 1129(a)(11), as the Plan proposes a liquidation of the Debtors, to be implemented by the Liquidating Trust, as the successor to the Debtors under the Plan.

EE.    Pursuant to Plan Section XI.B, all fees payable under 28 U.S.C. § 1930 have been or will be paid in accordance with Bankruptcy Code § 1129(a)(12).

FF.    The Debtors have no future obligation to provide retiree benefits, as that term is defined in Bankruptcy Code § 1114, and therefore the Plan satisfies Bankruptcy Code § 1129(a)(13).

RLF1 5849410v. 3

**GG.** The Debtors are not individuals, making Bankruptcy Code § 1129(a)(14)–(15) inapplicable in these Chapter 11 Cases.

**HH.** Because the Debtors are commercial corporations or limited liability companies, Bankruptcy Code § 1129(a)(16) is inapplicable.

**II.** The Debtors' respective decisions regarding the rejection of their remaining Executory Contracts as provided in and contemplated by the Plan and herein are based on, and are within, the sound and prudent business judgment of the Debtors and are in the best interests of the Debtors and their respective Estates.

**JJ.** The substantive consolidation of the Estates and the Chapter 11 Cases as approved herein will not prejudice any of the Debtors' creditors and is beneficial to the Debtors' creditor body as a whole.

**KK.** The establishment of the Liquidating Trust in accordance with the Liquidating Trust Agreement is approved.

**LL.** The Creditors Committee, with the consent of the Debtors, has chosen CRG as the initial Liquidating Trustee, and this designation shall be effective, as of the Effective Date, without the need for any further order of this Court.

**MM.** The release, indemnification, injunction, exculpation, and related provisions in the Plan (including in Article X thereof) as modified herein are fair and equitable, appropriate, are important components of the global settlements embodied in the Plan (including the Unsecured Creditor Settlement), and are necessary to maximize the value of the Estates and to successfully resolve these Chapter 11 Cases, and such provisions shall be effective and binding in the manner set forth in the Plan and herein.  There is an identity of interest between the Debtors and certain of the Released Parties; the Released Parties have made a substantial

-11-

contribution to the Debtors' Chapter 11 Cases; the Plan has been accepted by Classes 1, 2, and 4, and the releases and related provisions are necessary to the effectuation of the compromises and settlements embodied in the Plan (including the Unsecured Creditor Settlement). The releases pursuant to Plan Section X.F are limited to the Releasing Parties, who affirmatively consented thereto in voting to accept the Plan, and were expressly informed thereof on the Ballots.

NN.    The principal purpose of the Plan is not the avoidance of taxes or of the requirements of Section 5 of the Securities Act of 1933, and no governmental unit has requested that this Court deny confirmation on such basis, thus satisfying the requirements of Bankruptcy Code § 1129(d). Also, the Debtors will satisfy all Allowed Priority Tax Claims in the manner provided for in Plan Section II.C.

OO.    The Plan is dated and identifies the proponents, and the injunctions and related provisions granted under the Plan are set out in specific and conspicuous language, thereby complying with all requirements of Bankruptcy Rule 3016.

PP.    The Debtors, the Administrative Agent, and the Creditors Committee, have determined that this Order is reasonably satisfactory to them in form and substance. In addition, this Order authorizes the Debtors to take all actions necessary or appropriate to enter into, implement, and consummate the Plan and other agreements or documents created in connection with, or as contemplated by, the Plan. Accordingly, the condition precedents to Confirmation of the Plan set forth in Plan Section IX.A have been satisfied.

THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

General Provisions Regarding Plan Approval and Authorizations

1.    The findings of this Court as set forth herein shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, which is applicable to this matter by virtue of

Bankruptcy Rule 9014. Each finding of fact set forth or incorporated herein, to the extent that it is or may be deemed a conclusion of law, shall also constitute a conclusion of law. Each conclusion of law set forth or incorporated herein, to the extent that it is or may be deemed a finding of fact, shall also constitute a finding of fact.

2.     The Plan, all supplements and exhibits thereto (including the Plan Supplement and the agreements, lists, and other documents contained therein), and all provisions, terms, and conditions thereof, are hereby CONFIRMED in all respects, and all provisions thereof are incorporated herein by reference. All provisions, terms, and conditions of the Plan are approved in this Order.

3.     To the extent not withdrawn prior to the entry of this Order, all objections that were filed have been resolved, are resolved by the relief granted herein, or are hereby overruled and denied with prejudice, including the UST Objection, which was denied in part and sustained in part, as set forth on the record at the Confirmation Hearing. Objections that have been withdrawn or not pursued at the Confirmation Hearing, if any, are hereby deemed withdrawn with prejudice.

4.     All notices previously provided by the Debtors in connection with, or otherwise relating to, the Plan, the Plan Supplement, the Disclosure Statement, the Executory Contracts, the Confirmation Hearing, and/or any other Plan-related document are hereby approved in all respects.

5.     Form of Plan Documents. The forms of the Plan and the documents contained in the Plan Supplement (including the Liquidating Trust Agreement) and/or otherwise created in connection with, to be entered in connection with, or as contemplated by, the Plan (the "**Plan Documents**"), are hereby approved, and the execution and delivery of such documents is hereby authorized without the need for any further corporate action or Court order. Each such document, including, without limitation, the Liquidating Trust Agreement, shall become effective and binding upon the parties thereto simultaneously in accordance with their respective terms and conditions as of the Effective Date.

6.     Implementation of the Plan, the Plan Documents, and the Transactions. The Debtors, the Creditors Committee, the Liquidating Trustee, and all other parties-in-interest in these Chapter 11 Cases are hereby authorized to take all actions and to enter into and execute all documents and

-13-

agreements, including appropriate releases and certificates, reasonably necessary or appropriate to effectuate the provisions contained in the Plan and the Plan Supplement, and to otherwise implement, and consummate the Plan and the Plan Documents.

       7.    Substantive Consolidation.  This Order shall constitute an order substantively consolidating the Estates and the Chapter 11 Cases for the purposes of all actions associated with Confirmation and Consummation of the Plan, including voting and distribution.  On and subject to the occurrence of the Effective Date, (1) all remaining assets and liabilities of the Debtors shall be treated as if they were aggregated together, (2) all guaranties of any Debtor of the payment, performance, or collection of obligations of any other Debtor shall be eliminated and cancelled, (3) any obligation of any Debtor and all guaranties thereof executed by one or more of the other Debtors shall be treated as a single obligation, and such guaranties shall be deemed a single Claim against the consolidated Debtors, (4) all joint obligations of two or more Debtors and all multiple Claims (including any and all multiple Proofs of Claim that were filed by the same party against more than one Debtor asserting the same underlying Claim) against such entities on account of such allegedly joint obligations shall be treated and (to the extent such Claim is allowable) Allowed only as a single Claim against the consolidated Debtors, and (5) each Claim filed or scheduled in the Chapter 11 Case of any Debtor shall be deemed filed or scheduled against the consolidated Debtors and treated as a single obligation of the consolidated Debtors on and after the Effective Date.  The foregoing substantive consolidation (x) shall not affect the rights of any Holder of any remaining Allowed DIP Facility Claim, Allowed Senior Creditor Claims, or Allowed Other Secured Claim with respect to any collateral securing its Claim (or the priorities of the applicable Holders' respective Liens on such collateral as of the Effective Date), or the terms and implementation of any settlement or any Final Order and the rights and obligations of the parties thereto entered into in connection with the Confirmation of the Plan or otherwise in the Chapter 11 Cases and (y) shall not, and shall not be deemed to, prejudice the Avoidance Actions or any other Causes of Action (subject to the release, waiver, exculpation, and related provisions of the Plan, this Order, the DIP Facility Order, and

-14-

any other order of this Court), which shall survive entry of this Order for the benefit of the Debtors and the Estates, as if there had been no substantive consolidation.

8.     Resignation of Directors and Managers; Closing of the Affiliate Debtors' Chapter 11 Cases.  Notwithstanding anything to the contrary set forth in the Plan (including Plan Section IV.A(b)), on the later of the Effective Date and the applicable Sale Closing Date for the Sale or portion thereof, as applicable, of the Assets of a particular Debtor, (1) all the officers, directors, or managers, as the case may be, of each such Debtor shall be deemed to have resigned, except for Edmund Schwartz, Chief Financial Officer, for those Debtors that continue to own any liquor licenses; (2) the Liquidating Trustee shall be deemed appointed the sole director, officer, and/or manager of CB Holding and of the applicable Affiliate Debtors for which all Sales have Closed, until certificates of cancellation, dissolution, or merger for such Debtors shall have been filed in accordance with Plan Section IV.F(a); and (3) notwithstanding any stay of this Order, the Chapter 11 Case of the applicable Affiliate Debtor shall be closed, pursuant to separate orders issued in connection with Local Rule 1017-3 (the "Final Decree and Case Closure Orders"), as of the Confirmation Date, following which any and all proceedings that could have been brought or otherwise commenced in the Chapter 11 Case of any such Affiliate Debtor shall be brought or otherwise commenced in the CB Holding Chapter 11 Case, in each instance without any other or further action by the stockholders, members, or directors (or other governing body) of any of the Debtors, and any and all remaining Assets of such Affiliate Debtor shall be transferred to CB Holding (other than liquor licenses that cannot be transferred or assigned under applicable law) for further distribution or liquidation in accordance with the terms of the Plan.  The Final Decree and Case Closure Orders shall constitute final decrees with respect to all of the Debtors whose Chapter 11 Cases are closed pursuant to the Final Decree and Case Closure Orders as of the Confirmation Date, and the Estates of all such Chapter 11 Cases shall be deemed fully administered as of the Effective Date.  The Liquidating Trustee and/or his designee (including any employee of, or any other Person that may be engaged by, CRG) and Edmund Schwartz, as applicable, are authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be

-15-

necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, any remaining Sales, and any corporate action required by the Debtors, without any requirement of further action by the stockholders, members, or directors (or other governing body) of the Debtors, as applicable.

   **9.**  Upon the entry of this Order, all matters provided under the Plan or with respect to any remaining Sales involving the corporate structure of, or corporate action by, the Debtors shall be deemed authorized and approved without any requirement of further action by the Debtors, the Debtors' shareholders, or the Debtors' boards of directors or managers (as applicable).  During the period prior to the Effective Date, the Debtors shall remain debtors-in-possession and shall remain subject to the jurisdiction of this Court.  The Debtors, the Creditors Committee, the Administrative Agent, and all other parties-in-interest are authorized and directed to take such actions during the period prior to the Effective Date as may be necessary and consistent with the Plan to prepare to effectuate and/or implement the Plan upon the Effective Date.  To the extent the manner of performance is not specified in the Plan or in any Sale Orders, the Debtors and/or the Liquidating Trustee (subject to any Oversight Committee guidance or approval required under the Liquidating Trust Agreement), as applicable and appropriate, shall have the discretion to carry out and perform all obligations and duties imposed on them, and actions contemplated or authorized, by the Plan, this Order, any Plan Document, the Sale Orders, or by law, in any manner they so choose.

   **10.**  In addition, the Debtors (including Edmund Schwartz, Chief Financial Officer, where applicable), as applicable and appropriate, are authorized to take such action during the period on and after the Confirmation Date as may be necessary and consistent with the Plan to effectuate and/or implement the Plan, this Order, and the Sale Orders.  The Debtors, the Chief Restructuring Officer, and any other individuals serving the Debtors in such capacity on and after the Confirmation Date, as the case may be, and any professionals retained thereby, shall not be liable for actions taken or omitted in such capacity as, or on behalf of, the Debtors or the Estates following the Confirmation Date, except those acts arising out of its or their own willful misconduct, bad faith, actual fraud, self-dealing, breach of fiduciary duty, or *ultra vires* acts, and each shall be entitled to indemnification and reimbursement for fees and

expenses in defending any and all of its actions or inactions in its or their capacity as, or on behalf of, the Debtors or the Estates, except for any actions or inactions involving willful misconduct, bad faith, actual fraud, self-dealing, breach of fiduciary duty, or *ultra vires* acts. Any indemnification claim of the Entities entitled to indemnification under the Plan shall be satisfied, first, from any applicable insurance proceeds; second, from the Plan Fund; and, finally, to the extent permitted under the Plan, from any Transferred Property (to the extent provided in Plan Section IV.D.2(h)(4)).

    **11.**  <u>The Establishment of the Liquidating Trust</u>. On the Effective Date or immediately prior thereto, (i) the Liquidating Trust shall be created and established in accordance with Plan Section IV.D, and (ii) all Transferred Property shall be transferred to the Liquidating Trust free of all Liens, Claims, and interests (except those security interests and Liens preserved in favor of the Pre-Petition Lenders pursuant to Plan Section III.B.(1)(d)) for the benefit of Holders of Allowed General Unsecured Claims (subject to the limitations set forth in Plan Section III.B.4(b) with respect to the Estate Resolution Consideration, and except as otherwise set forth in Plan Section IV.D.2(e) with respect to the Avoidance Actions and other Transferred Causes of Action). The Liquidating Trust shall hold, manage, administer, receive, maintain, reduce to Cash, or otherwise liquidate, sell, monetize, transfer, or abandon the Transferred Property (including any remaining Preserved Collateral) in accordance with, and subject to, the Plan, without the need for any additional Bankruptcy Court order or approval other than this Order, and receive, hold, manage, and distribute such liquidated property and the proceeds and products thereof (including all of the Cash that is obtained by the Liquidating Trustee after the Effective Date relating to any of the Transferred Property through the exercise of its power and authority under the Plan or the Liquidating Trust Agreement or otherwise) in accordance with and subject to the terms and provisions of the Plan (including Plan Section III.B.4(b)) and the Liquidating Trust Agreement; <u>provided</u>, <u>however</u>, that the Liquidating Trustee shall utilize and distribute the Plan Fund in the manner set forth in the Plan, this Order, and/or the Liquidating Trust Agreement and shall not distribute the Plan Fund to the Holders of Allowed General Unsecured Claims. As provided in Plan Sections IV.E and IV.F, upon the entry of a

Final Decree by this Court with respect to the Chapter 11 Case of CB Holding, the Liquidating Trust shall be dissolved without further action by the Liquidating Trustee or action or order of this Court.

12. **Funding of the Plan Fund to the Liquidating Trustee**. In accordance with Plan Sections II.B. and III.B.1(b), on the Effective Date, the Plan Fund shall be funded, and transferred to the Liquidating Trustee. The Plan Fund shall be used by the Liquidating Trustee in the manner provided for in the Plan and in the Liquidating Trust Agreement. The Plan Fund shall be increased by $29,250 from $1,777,000 to $1,806,250, specifically for the payment of additional 28 U.S.C. § 1930 fees in accordance with the record of the Confirmation Hearing, to be funded by the DIP Facility Lender.

13. **The Transfer of the Liquidating Trust Assets to the Liquidating Trust**. The Liquidating Trust, upon its creation in accordance with Plan Section IV.D and this Order, shall be funded initially with the Liquidating Trust Assets. Except as otherwise set forth in the Plan (including Plan Section IV.D.2(e)), on the Effective Date, subject to any exceptions contained in the Plan and subject to the security interests and Liens preserved in favor of the Pre-Petition Lenders pursuant to Plan Section III.B.(1)(d), the Debtors shall transfer and shall be deemed to have irrevocably transferred the Liquidating Trust Assets (including any remaining Preserved Collateral) to the Liquidating Trust, for and on behalf of the beneficiaries of the Liquidating Trust in Class 4 (subject to the limitations set forth in Plan Section III.B.4(b)) and to the Holders of Allowed Senior Creditor Claims with respect to the Preserved Collateral, with no reversionary interest in the Debtors. Without limiting the generality of the foregoing, the Debtors shall remit to the Liquidating Trust any sums that constitute the Office Shared Proceeds, the D&O Shared Proceeds, and the Sharing Percentage Recovery that they may receive on and after the Effective Date from the Sales or otherwise.

14. As of the Effective Date, the Liquidating Trust shall have the power and authority as set forth in the Plan, the Liquidating Trust Agreement, and this Order.

15. **Role of the Liquidating Trustee**. The Liquidating Trustee shall have the powers, authorities, responsibilities, and roles described in Plan Section IV.D and in the Liquidating Trust Agreement, subject to any Oversight Committee guidance or approval required under the Liquidating

-18-

Trust Agreement.  The Liquidating Trustee shall be authorized to take such action during the period on and after the Effective Date as may be necessary and consistent with the Plan to effectuate and/or implement the Plan, this Order, and the Sale Orders.  In all circumstances, the Liquidating Trustee shall act in the best interests of the Estates and the beneficiaries of the Liquidating Trust, and in furtherance of the purposes of the Plan and may do so without the need for any notice other than to the Administrative Agent and/or the Oversight Committee to the extent required in the Plan or in the Liquidating Trust Agreement, or for any additional order of this Court or otherwise other than this Order.

16.    Subject to the provisions of the Liquidating Trust Agreement and the powers of the Oversight Committee set forth therein, the Liquidating Trustee shall be authorized and empowered to pursue and prosecute, to settle, or to decline to pursue, all Avoidance Actions and other Transferred Causes of Action, whether or not such causes of action have been commenced prior to the Effective Date, and shall be substituted as the real party-in-interest in any such action, commenced by or against the Debtors, the Estates, or the Creditors Committee prior to the Effective Date.  In connection therewith, the Liquidating Trustee may act in accordance with its business judgment, without any other or further notice or Bankruptcy Court approval, subject to the provisions of the Liquidating Trust Agreement and the powers of the Oversight Committee set forth therein and in the Plan (including any requirements pertaining to the need for prior Oversight Committee approval before instituting or settling any particular Avoidance Action or other Transferred Cause of Action).

17.    Vesting of Assets.  Upon the Effective Date and the execution of the Liquidating Trust Agreement, the Liquidating Trustee, in its capacity as the trustee of the Liquidating Trust and not personally, shall be vested with all right, title, and interest in all Liquidating Trust Assets and all rights to enforce any orders of this Court entered in these Chapter 11 Cases in accordance with the Plan the Liquidating Trust Agreement, and this Order.

18.    Retention of Professionals by the Liquidating Trustee.  The Liquidating Trustee shall be responsible for all decisions and duties with respect to the Liquidating Trust and the Liquidating Trust Assets, subject to any Oversight Committee guidance or approval required under the Liquidating

-19-

Trust Agreement.   Subject to any Oversight Committee guidance or approval required under the Liquidating Trust Agreement, the Liquidating Trustee may retain such law firms, accounting firms, experts, advisors, consultants, investigators, appraisers, auctioneers, translators, or other professionals as it may deem necessary (collectively, the "**Liquidating Trust Professionals**"), in its discretion, and (except as otherwise set forth in Plan Section IV.D.1(f))) to be paid from the Plan Fund, to aid in the performance of its responsibilities pursuant to the terms of the Plan and the Liquidating Trust Agreement, including, without limitation, the liquidation and distribution of the Liquidating Trust Assets.   The Liquidating  Trustee may, without application by any of the Liquidating Trust Professionals to, or approval by, this Court, pay the Liquidating Trust Professionals' fees that are incurred after the Effective Date.

19.    Tax-Related Authority of the Liquidating Trustee.   For U.S. federal and applicable state and local income tax purposes, the Liquidating Trust shall be classified as a liquidating trust under Treasury Regulation Section 301.7701-4 and that the trust assets be treated as owned by its beneficiaries.  Accordingly, for U.S. federal income tax purposes, the beneficiaries of the Liquidating Trust shall be treated as if they had received a distribution of an undivided interest in the Transferred Property in which they have an interest and then contributed such interests to the Liquidating Trust.

20.    Nontransferability of Liquidating Trust Interests.  The beneficial interests of the Liquidating Trust shall be nontransferable, and any transfer in violation of this provision or Plan Section IV.D.1(k) may be disregarded by the Liquidating Trustee, except with respect to a transfer by will or under laws of descent and distribution; provided, however, such transfer shall not be effective unless and until the Liquidating Trustee receives written notice of such transfer under the applicable law of descent and distribution.

21.    Costs and Expenses of the Liquidating Trust.   Except as otherwise set forth in Article IV of the Plan (including as set forth in Plan Section IV.D.2(h)), all costs and expenses associated with the winding down of the Estates, the administration of the Liquidating Trust, and all other actions referenced in Plan Sections IV.D, IV.E, and IV.F shall be the responsibility of, and paid for by, the

Liquidating Trustee in accordance with the Plan from the Plan Fund or from any other cash of the Liquidating Trust on hand that does not otherwise constitute Transferred Property or is not to be distributed to any Holder of an Allowed Claim pursuant to the Plan (including any Allowed Pre-Petition Lenders Claims), the DIP Facility Order, the Sale Orders, or any other order of the Bankruptcy Court. The Liquidating Trustee is authorized to utilize the Plan Fund to perform such functions as are provided in, or contemplated by, the Plan (including in Plan Section IV.D.1(e)), this Order, and/or the Liquidating Trust Agreement. Without limiting the generality of the foregoing, the Liquidating Trustee and the Liquidating Trust Professionals shall be compensated as set forth in the Plan and the Liquidating Trust Agreement and shall not be required to file fee applications to receive compensation. Such compensation shall be subject to the review of the Oversight Committee.

22.    <u>Oversight Committee</u>. On the Effective Date, the Oversight Committee (which shall initially consist of three members) shall be formed and constituted, without the need for a further order of this Court other than this Order.

23.    <u>Release of Liens</u>. Except as may otherwise be provided in the Plan, including, without limitation, Article III.B.1(d) of the Plan, the Liquidating Trust Agreement, or this Order, or in any contract, instrument, release or other agreement or document created or assumed in connection with the Plan, any and all mortgages, deeds of trust, liens, pledges, or other security interests against the property of any Debtor or any Estate shall be fully released and discharged on the Effective Date.

24.    <u>Undeliverable Distributions</u>. If any distribution pursuant to the Plan to any Holder is returned to the Liquidating Trustee or the Debtors (as applicable) as undeliverable, no further distributions shall be made to such Holder unless and until the Liquidating Trustee is notified by such Holder, in writing, of such Holder's then-current address. Nothing contained in the Plan, this Order, or the Liquidating Trust Agreement shall require the Debtors or the Liquidating Trustee to attempt to locate any Holder of an Allowed Claim. *Any Holder of an Allowed Claim entitled to an undeliverable or unclaimed distribution that does not provide notice of such Holder's correct address to the Liquidating Trustee within the later of six (6) months after (i) the Effective Date or (ii) the date of the initial attempted*

-21-

*distribution made by the Debtors or the Liquidating Trustee (as applicable) to such Holder shall be deemed to have forfeited its claim for such undeliverable or unclaimed distribution or any other distribution, and shall be forever barred and enjoined from asserting any such claim for an undeliverable or unclaimed distribution or any other distribution against any of the Debtors, the Estates, the Liquidating Trustee, or the Liquidating Trust.* In such cases, the Forfeited Distributions shall be distributed in accordance with the terms of the Plan and/or the Liquidating Trust Agreement (as applicable).

25.    Unclaimed Property. Notwithstanding any local, state, federal, or other laws or regulations regarding unclaimed property or escheatment of property, all funds or other property possessed by the Debtors or the Liquidating Trust on and after the Effective Date (including any unclaimed pay checks; any unclaimed or returned distributions or other benefits under any Compensation and Benefits Program or otherwise; or customer gift, club, or similar cards in connection with any customer promotion, similar activity, or otherwise that is unclaimed, unutilized, returned, or unredeemed (as the case may be) or otherwise remaining outstanding), in each case subject to escheatment or potentially subject to escheatment, as of the Effective Date, shall be treated as property of the Debtors under the Plan, and shall accordingly be deemed transferred to, vested with, and become the property of the Debtors or the Liquidating Trust (as applicable) to be either destroyed and of no force and effect or held and distributed pursuant to the terms of the Plan, in each case free and clear of any such laws or regulations. *No local, state, federal, or other regulatory or other administrative agency may assert any claims or causes of action against the Debtors, the Estates, the Liquidating Trust, the Liquidating Trustee, and/or any of the Debtors' or the Liquidating Trustee's respective officers, directors, employees, agents, or professionals with respect to any such funds or other property that is the subject of Plan Section XI.H, and such agencies are hereby enjoined and estopped from doing so.*

26.    Time Bar to Cash Payments. Checks issued by the Liquidating Trustee or the Debtors (as applicable) on account of Allowed Claims shall be null and void if not negotiated within the date that is 90 days from and after the date of issuance thereof. Any claim relating to such voided check

-22-

shall be made on or before the later of:  (i) six months after the Effective Date; or (ii) 180 days after the date of issuance of such check.  After such date, all claims relating to such voided checks shall be discharged and forever barred, and the Liquidating Trustee or the Debtors (as applicable) shall treat all such moneys as Forfeited Distributions.

        27.    <u>Interest and Late Charges</u>.  Unless otherwise required by applicable law or as otherwise set forth in the Plan, post-petition interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim, <u>provided</u>, <u>however</u>, that the DIP Facility Lender is entitled to interest at the rates set forth in the DIP Facility on the terms set forth in the DIP Facility Order up until April 21, 2011.  Except as expressly stated in the Plan or allowed by a Final Order of this Court, no late charge is to be allowed on any Claim subsequent to the Petition Date.

        28.    <u>Fractional Dollars; *De Minimis* Distributions</u>.  Notwithstanding anything contained in the Plan to the contrary, payments of fractions of dollars shall not be made.  Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made shall reflect a rounding of such fraction to the nearest dollar (up or down), with half dollars being rounded down.  The Liquidating Trustee and the Debtors (as applicable) shall not make any payment of less than $50 on account of any Allowed Claim, unless a specific request therefor is made in writing to the Liquidating Trustee on or before 90 days after the Effective Date.

        29.    <u>Allocation of Distributions</u>. All distributions paid to Holders of Allowed Claims in satisfaction thereof pursuant to the Plan shall be allocated, first, to the principal amounts of such Claims (as determined for U.S. federal income tax purposes) and, second, to the portion of such Claims comprising interest (as determined for U.S. federal income tax purposes), if any (but solely to the extent that interest is a portion of such Allowed Claim), including, without limitation, any portion of the Claim representing accrued original issue discount or accrued but unpaid interest; any excess thereafter shall be allocated to the remaining portion of such Claims.

-23-

      **30.**    <u>Preservation of Causes of Action</u>.  Except as may otherwise be provided in Article X of the Plan and this Order, the potential Avoidance Actions and other Causes of Action that may be pursued by the Debtors, prior to the Effective Date, and by the Liquidating Trust and the Liquidating Trustee, after the Effective Date, include, without limitation, any Causes of Action, whether legal, equitable, or statutory in nature, arising out of, or in connection with, the Debtors' businesses or operations, including, without limitation, the following:  possible claims against vendors, landlords, sublessees, assignees, customers, or suppliers for warranty, indemnity, back charge/set-off issues, overpayment, or duplicate payment issues, and collections/accounts receivable matters; deposits, rebates, refunds, sales incentives, or other amounts owed by any creditor, lessor, utility, supplier, vendor, landlord, sublessee, assignee, or other Entity; claims against landlords, sublessees, and assignees arising from the various leases, subleases, and assignment agreements relating thereto, including, without limitation, claims for overcharges relating to taxes, common area maintenance, and other similar charges; financial reporting; environmental and product liability matters; actions against insurance carriers relating to coverage, indemnity, or other matters; counterclaims and defenses relating to any Claims or other obligations; contract or tort claims that may exist or subsequently arise; and any and all Avoidance Actions pursuant to any applicable section of the Bankruptcy Code arising from any transaction involving or concerning the Debtors; <u>provided</u>, <u>however</u>, *that neither the Debtors nor the Liquidating Trustee nor any other party may pursue any Causes of Action that have been waived, relinquished, released, compromised, abandoned, transferred, or settled pursuant to the Plan, the DIP Facility Order, the Sale Orders, or any other Final Order of this Court.*

      **31.**    Unless a claim against a Creditor or other Entity or Avoidance Action or other Cause of Action is expressly waived, relinquished, released, compromised, abandoned, transferred, or settled in the Plan, the Sale Orders, the DIP Facility Order, or any other order of this Court, the Debtors expressly reserve such claim or Avoidance Action or other Cause of Action for later enforcement by the Debtors, prior to the Effective Date, or by the Liquidating Trust, thereafter (including, without limitation, claims and Avoidance Actions and other Causes of Action that may be set forth in the Plan Supplement or

not specifically identified or that the Debtors may presently be unaware of or that may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances that may change or be different from those which the Debtors now believe to exist), and therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such claims, Avoidance Actions, or other Causes of Action upon or after the Confirmation or Consummation of the Plan based on the Disclosure Statement, the Plan Supplement, the Plan, this Order, or any other document Filed in the Chapter 11 Cases, except where such claims or Avoidance Actions or other Causes of Action have been expressly waived, relinquished, released, compromised, abandoned, transferred, or settled in the Plan, this Order, the DIP Facility Order, or any other order of this Court.  In addition, the Liquidating Trust and the Liquidating Trustee expressly reserve the right to pursue or adopt any claim, crossclaim, or counterclaims alleged in any lawsuit in which the Debtors are a defendant or an interested party, against any person or entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits, subject to the provisions of the Plan, the DIP Facility Order, the Sale Orders, or any Final Order.

> **32.**     Prosecution of Causes of Action.  Pursuant to Plan Section IV.G, the Liquidating Trustee retains all rights of and on behalf of the Debtors and the Liquidating Trust to commence and pursue (subject to any consultation obligations and the receipt of any approvals by the Oversight Committee required under the Liquidating Trust Agreement) any and all Avoidance Actions and under all other Transferred Causes of Action (under any theory of law, including, without limitation, the Bankruptcy Code, and in any court or other tribunal, including, without limitation, in an adversary proceeding filed in these Chapter 11 Cases in this Court) discovered in such investigation to the extent the Liquidating Trustee deems appropriate.  Neither the Debtors nor the Liquidating Trustee nor any other party may pursue any Causes of Action that have been waived, relinquished, released, compromised, abandoned, transferred, or settled pursuant to the Plan, the DIP Facility Order, the Sale Orders, or any other Final Order of this Court.

-25-

**33.** <u>Privileges as to Certain Causes of Action</u>. Privileges relating solely to any existing Avoidance Actions or other Transferred Causes of Action pursued, investigated, or considered by the Debtors prior to the Confirmation Date (not otherwise resolved) shall be transferred, assigned, and delivered to the Liquidating Trust, without waiver or release, and shall vest with the Liquidating Trust. The Liquidating Trustee shall hold and be the beneficiary of all such Privileges and entitled to assert such Privileges. No such Privilege shall be waived by disclosures to the Liquidating Trustee of the Debtors' documents, information, or communications subject to attorney-client privileges, work product protections or other immunities (including those related to common interest or joint defense with third parties), or protections from disclosure held by the Debtors.

**34.** <u>Cancellation of Notes, Instruments, Debentures, and Equity Interests</u>. Except as may be otherwise set forth in the Plan, on the Effective Date, all Notes and all other notes, instruments, debentures, certificates, stock certificates, Liens, mortgages, deeds of trust, pledges, security interests, and other documents evidencing Claims and all Equity Interests in any of the Debtors (including, without limitation, the DIP Agreement, the Financing Agreement, the Subordinated Notes Purchase Agreement, and the Second Lien Note Purchase Agreement) shall be cancelled and deemed terminated, released, and of no force and effect and surrendered (regardless of whether such notes, instruments, debentures, certificates, or other documents are in fact surrendered for cancellation to the appropriate indenture trustee, agent, or other such Person) and shall instead represent only the right to participate in the distributions contemplated by the Plan, if any. On the Effective Date, any indentures or other agreements relating to any of the Notes or any other notes to which any Debtor is a party shall be deemed cancelled as permitted by Bankruptcy Code § 1123(a)(5).

**35.** Except as may otherwise be set forth in the Plan, all distributions under the Plan on account of any Allowed DIP Facility Claims or Allowed Pre-Petition Lenders Claims shall be made by the Debtors or the Liquidating Trustee (on account of the Pre-Petition Lenders Deficiency Claims or with respect to the distribution of net proceeds from the sale or other disposition, liquidation, or monetization of Preserved Collateral, in the manner set forth in Plan Section III.B.1(b)) to the Administrative Agent,

for further distribution to the Holders of the Allowed DIP Facility Claims or Allowed Pre-Petition Lenders Claims (as applicable) as of the Distribution Record Date. All distributions, if any, under the Plan on account of the Allowed Subordinated Notes Claims shall be made by the Liquidating Trustee to the administrative agent for the Subordinated Notes, for further distribution to the Holders of the Allowed Subordinated Notes Claims as of the Distribution Record Date in accordance with the Subordinated Notes Purchase Agreement and in accordance with, and subject to, any subordination provisions set forth therein or in any separate, applicable subordination agreement. *Upon the delivery of the foregoing distributions, if any, to the applicable agents or similar parties, the Debtors and the Liquidating Trustee shall be released of all liability and responsibility with respect to their obligations relating to such distributions.*

      **36.** <u>Resolution of Disputed Claims</u>. Pursuant to Plan Section V.A, (i) prior to the Effective Date, the Debtors may object to any Claims, and (ii) on and after the Effective Date, the Liquidating Trustee may object (and shall take over, and continue prosecuting and settling or otherwise resolving, any outstanding objections of the Debtors) to the allowance of any Claims, without notice to any party or any further order or approval of this Court (subject to any consultation obligations and the receipt of any approvals by the Oversight Committee required under the Liquidating Trust Agreement).

      **37.** The Debtors, prior to the Effective date, and the Liquidating Trustee, on and after the Effective Date, shall have the sole and complete discretion to decide not to review and/or to object to proofs of General Unsecured Claims or any other Claims, in each instance, to the extent they believe that such review and/or objection would be uneconomical or not otherwise warranted under the circumstances (but in the case of the Liquidating Trustee, subject to any consultation obligations and the receipt of any approvals by the Oversight Committee required under the Liquidating Trust Agreement).

      **38.** Unless otherwise provided by the Plan or the Liquidating Trust Agreement, no Bankruptcy Court approval shall be required in order for the Debtors or the Liquidating Trustee (as applicable) to settle and/or compromise any Claim, objection to Claim, cause of action, or right to payment of or against the Debtors, the Estates, or the Liquidating Trust.

-27-

**39.** This Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. Subject to the provisions of Bankruptcy Code § 502(j), in the event that this Court estimates any contingent or unliquidated Claim, and the amount so estimated shall constitute the maximum allowable amount of such Claim, the Debtors or the Liquidating Trustee (as applicable) may pursue supplementary proceedings to object to the allowance of such Claim.

**40.** <u>Securities Law Exemption</u>. The creation or issuance of (i) any beneficial interests in the Liquidating Trust to the Holders of Allowed General Unsecured Claims or otherwise under the Plan and (ii) the New CB Holding Share, to the extent, if any, either of such interests constitute "securities" under applicable law, in each instance satisfies the requirements of Bankruptcy Code § 1145, and therefore, such creation or issuance shall be exempt from registration under the Securities Act of 1933, as amended, and any state or local law requiring registration for the offer or sale of securities.

**41.** <u>Exemption from Transfer Taxes</u>. Pursuant to Bankruptcy Code § 1146(a), (i) the creation, modification, consolidation, or recording of any mortgage, deed of trust, lien, pledge, or other security interest; (ii) the making, recording, or assignment of any lease or sublease; or (iii) the making, recording, or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan and the remaining Sales or portions thereof that have not closed as of the Confirmation Date, including, without limitation, any merger agreements; assignments; agreements of consolidation, restructuring, disposition, liquidation, or dissolution; deeds; bills of sale; and transfers of tangible property by the Debtors or the Liquidating Trustee, shall not be subject to any stamp tax, recording tax, personal property tax, real estate transfer tax, sales or use tax, or other similar tax. Any transfers from the Debtors to the Liquidating Trust or any other Person (including any Purchaser) following the Confirmation Date or by the Liquidating Trust to a creditor or other Entity or otherwise pursuant to the Plan, the Sale Orders, this Order, any other order of this Court, or the Liquidating Trust Agreement shall not be subject to any such taxes, and all appropriate state or local governmental officials or agents are hereby and by this Order directed to forego the collection of any such tax or governmental

-28-

assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. Any of the foregoing sales or transactions taken or closing on or after the Confirmation Date shall be deemed to have been in furtherance of, or in connection with, the Plan.

42.    Dissolution of the Creditors Committee. On the first Business Date following the Effective Date, and provided the Liquidating Trust has become effective as provided under the Plan, the Creditors Committee shall be dissolved, and the Creditors Committee and its members shall be released and discharged from the rights and duties arising from or related to the Chapter 11 Cases, and the retention or employment of the Creditors Committee's Professionals shall terminate, except with respect to final applications for Professional Fee Claims. After the Effective Date, the Professionals retained by the Creditors Committee and the members thereof shall only be entitled to compensation or reimbursement of expenses or fees for any services rendered or expenses incurred in their capacity as such after the Effective Date that exclusively relate to the prosecution of any final applications by such Professionals or Creditors Committee members for allowance of Professional Fees and reimbursement of expenses (as applicable) pending on the Effective Date or timely filed after the Effective Date as provided for in the Plan.

43.    Claims for Professional Fees. All Persons seeking an award by this Court of Professional Fees shall be required to file their respective final applications for allowance of Professional Fees for services rendered and reimbursement of expenses incurred by the date that is 30 days after the Effective Date (the "**Professional Fee Bar Date**") and, in full satisfaction, settlement, and release of, and in exchange for, such Allowed Claim, shall be paid in full from separate escrow accounts funded by a portion of the Plan Fund (in an amount to be determined by the Debtors, the Creditors Committee, and the Administrative Agent) (the "**Professional Fee Escrows**"), in such amounts as are allowed by this Court (i) within 10 days of the date upon which the order relating to any such Professional Fee Claim is entered or (ii) upon such other terms as may be mutually agreed upon between the Holder of such Claim for Professional Fees and the Debtors. Unless otherwise expressly set forth in the Plan, a Professional Fee

Claim will be Allowed only if: (i) on or before the Professional Fee Bar Date the entity holding such Professional Fee Claim files with the Court a final fee application and serves the application on counsel to the Debtors, counsel to the Creditors Committee, counsel to the Administrative Agent, the Liquidating Trustee, and the United States Trustee; and (ii) this Court enters an order allowing the Claim. *Entities holding Professional Fee Claims that do not timely file and serve a fee application by the Professional Fee Bar Date in the foregoing manner will be forever barred from asserting any such Professional Fee Claim against the Debtors, the Estates, the Liquidating Trust, the Liquidating Trust Assets (including the Preserved Collateral), or the respective property thereof.*

44.     Until all Professional Fee Claims have been Allowed, Disallowed, expunged, settled, resolved, or otherwise adjudicated pursuant to a Final Order of this Court, the funds contained in the Professional Fee Escrows shall not be utilized for any purpose by the Liquidating Trustee or otherwise other than the payment of Allowed Professional Fee Claims. To the extent any funds remain in the Professional Fee Escrows after all Professional Fee Claims have been Allowed, Disallowed, expunged, settled, resolved, or otherwise adjudicated pursuant to a Final Order of this Court and subsequently paid to the applicable Professional, the Liquidating Trustee may utilize such funds in a manner consistent with the Plan, this Order, and the Liquidating Trust Agreement.

45.     In accordance with the Unsecured Creditor Settlement, notwithstanding anything to the contrary set forth in Paragraph 6 of the DIP Facility Order, the Professional Fee Claims of the Professionals retained by the Creditors Committee shall not exceed $250,000 (less amounts previously Allowed and paid to such Professionals in these Chapter 11 Cases). To the extent the final Allowed Professional Fee Claims of the Professionals retained by the Creditors Committee are less than $250,000, the difference between the ultimately-Allowed amount and $250,000 shall be deemed to constitute Liquidating Trust Assets to be distributed to the beneficiaries of the Liquidating Trust in the manner set forth in the Plan and in the Liquidating Trust Agreement. To the extent the final Allowed Professional Fee Claims of Professionals retained by the Creditors Committee exceeds $250,000, any such excess over $250,000 shall be paid from the Estate Resolution Consideration.

Executory Contracts and Leases

        **46.**    <u>Rejection of Executory Contracts</u>.  Any Executory Contracts that (i) have not expired or been terminated by their own terms on or prior to the Effective Date, (ii) have not been assumed, assumed and assigned, rejected, or deemed rejected and terminated pursuant to a Sale Order, any other order of this Court, or letter agreement (including the Mountainside Letter Agreement) by and between the applicable Debtor and non-Debtor party thereto prior to the Confirmation Date, or (iii) are not the subject of a motion by the Debtors to either assume and assign or to reject such Executory Contract that is pending on the Confirmation Date, shall be deemed rejected by the Debtors as of the Confirmation Date, subject to the occurrence of the Effective Date, and the entry of this Order shall constitute approval of the rejections of such Executory Contracts pursuant to Bankruptcy Code §§ 365(a) and 1123 or otherwise.

        **47.**    <u>Rejection Claims</u>.  Each Entity that is a party to an Executory Contract that is rejected as of the Confirmation Date pursuant to Article VII of the Plan and this Order shall be entitled to file, not later than 30 days after service of notice of the entry of this Order (the "**Rejected Contract Claim Bar Date**"), a Proof of Claim against the Liquidating Trust for damages alleged to have been suffered due to such rejection or in any other way relating to or arising from such Executory Contract; <u>provided</u>, <u>however</u> that the opportunity afforded an Entity whose Executory Contract is rejected as of the Confirmation Date pursuant to the Plan and this Order to file a Proof of Claim shall in no way apply to Entities that were required to assert a claim on account of an Executory Contract that was previously or otherwise rejected by the Debtors by a prior or other bar date that was established by a separate order of this Court, which such other bar date shall remain unaffected by the Plan and this Order. *Any Entity that has a Claim for (i) damages as a result of the rejection of an Executory Contract pursuant to Article VII of the Plan or (ii) that in any way relates to, or arises from an Executory Contract being rejected hereby, that in either instance does not file a Proof of Claim in accordance with the terms and provisions of the Plan with this Court (and serve such Proof of Claim upon the Liquidating Trustee) shall be forever*

RLF1 5849410v. 3

*barred from asserting that Claim against, and such Claim shall be unenforceable against, the Debtors or the Liquidating Trust, and the Debtors and Liquidating Trust shall have no obligation to pay the same.*

48.    Insurance. Nothing in the Plan, the Disclosure Statement, or this Order alters the rights and obligations of the Debtors and the Debtors' insurers (and third-party claims administrators) under any Insurance Policies or Vested Insurance Agreements or modifies the coverage or benefits provided thereunder or the terms and conditions thereof or diminishes or impairs the enforceability of the Insurance Policies and the Vested Insurance Agreements.

49.    For the avoidance of doubt, all of the Debtors' rights and any third party's rights under any Insurance Policy and Vested Insurance Agreement to which the Debtors may be beneficiaries, including any directors and officers liability insurance policy, shall vest with the Liquidating Trust for the benefit of the Estates and all of the beneficiaries of such policies; and the Liquidating Trustee and/or the Debtors shall not take any action that would impair or alter the coverage currently in place for the Debtors' current or former directors and officers under any directors and officers liability insurance and/or similar policies, as such coverage shall remain in full force and effect for benefit of such directors and officers and for the Estates for the duration and term of all such policies. The Debtors and the Liquidating Trust shall have no monetary obligations with respect to the Insurance Policies and the Vested Insurance Agreements other than with respect to any General Unsecured Claims and/or Other Secured Claims (as applicable, and to the extent set forth in the subsequent sentence) properly and timely asserted in the Chapter 11 Cases, to the extent that such Claims are Allowed. Specifically, to the extent that a Claim of an insurer (or third-party administrator) is properly secured by virtue of such party's having previously been granted collateral (including letters of credit), such Claim shall continue to be secured by and to the extent of such collateral and shall be deemed to be (a) an Other Secured Claim in accordance with the Plan and Bankruptcy Code § 506(a) and shall be treated as Class 2 Claims under the Plan, provided that any excess collateral shall be returned to the Debtors or the Liquidating Trustee, as applicable, in accordance with the Insurance Policies and the Vested Insurance Agreements or court order (to be further distributed in the manner set forth in Plan Section III.B.1(b)) and (b) to the extent of any

-32-

collateral deficiency, a General Unsecured Claim to be treated as a Class 4 Claim under the Plan, in each case subject to the filing of a Proof of Claim therefor and the Allowance thereof.

50.    Any injunction set forth in the Plan and the automatic stay of Bankruptcy Code § 362(a), if and to the extent applicable, shall be lifted, without further order of this Court, to permit (a) claimants with valid outstanding workers' compensation claims that are covered by any of the Insurance Policies or the Vested Insurance Agreements to undertake any actions that are necessary in order to proceed with their claims under such Insurance Policies or Vested Insurance Agreements and thereafter solely to collect thereon from any third party other than the Debtors, the Liquidating Trust, the Liquidating Trustee, or the Estates, (b) the applicable insurers and/or third-party administrators to administer, handle, defend, settle, and/or pay all workers' compensation claims arising under the Insurance Policies and the costs related thereto without further order of this Court, (c) the applicable insurers and/or third-party administrators to draw upon paid loss deposit funds and/or other collateral for payments of the claims, costs, and expenses described in subclauses (b) and (d) of this paragraph, in accordance with the applicable Insurance Policies and the Vested Insurance Agreements, and (d) all applicable insurers and third-party administrators to pay claims and/or defense costs and expenses related to claims arising under any Insurance Policies (other than with respect to workers' compensation claims, which are, for the avoidance of doubt, addressed in subclauses (a) and (c) of this paragraph), provided that such payments are permitted under the terms and conditions of such Insurance Policies or Vested Insurance Agreements; provided, however, that defense attorneys or claimants shall not be permitted to recover from both the Liquidating Trust and the applicable insurer or third-party administrator on account of the same claim.

51.    Compensation and Benefits Programs.  Except as otherwise expressly provided under the Plan or this Order, all Compensation and Benefits Programs, to the extent (i) not previously or otherwise terminated and/or cancelled by the Debtors prior to the Confirmation Date and/or (ii) not the subject of a motion by the Debtors to reject or to otherwise cancel or terminate such program that is pending on the Confirmation Date, shall, on the Confirmation Date but subject to the occurrence of the

-33-

Effective Date, be cancelled and deemed terminated and/or rejected and of no force or effect as of the Confirmation Date or any applicable prior termination and/or cancellation date, pursuant to the provisions of Bankruptcy Code §§ 365 and 1123, or otherwise, and the Debtors and/or the Liquidating Trustee, as applicable, are authorized and empowered to take all actions necessary to effectuate any such termination, cancellation, and/or rejection, and all third parties are authorized and directed to rely on Plan Section VII.E and this Order in connection therewith.  For the avoidance of doubt, the Insurance Policies and the Vested Insurance Agreements shall not constitute a Compensation and Benefits Programs and shall not otherwise be terminated on the Effective Date under Plan Section VII.E.

52.    Return of Deposits by Utility Companies.  Except to the extent the Debtors have previously agreed in writing (after having provided notice thereof to the Creditors Committee and the Administrative Agent) that a Utility Company may apply all or a portion of a deposit held thereby against any amounts owed by the Debtors thereto, all Utility Companies shall be required to return to the Liquidating Trustee all deposits previously provided by any of the Debtors within 30 days after service of notice of the Effective Date.

Release, Injunction, and Exculpation Provisions

53.    General Plan Injunction.  **No Creditor or Equity Interest Holder of the Debtors nor any other Person may receive any distribution from the Debtors, the Estates, the Liquidating Trustee, the Liquidating Trust, or their respective Assets, except for those distributions expressly provided for under the Plan.  All Persons are precluded from asserting against any property that is to be distributed under the terms of the Plan (including, without limitation, against any of the Transferred Property) or under the Liquidating Trust Agreement any Claims, obligations, rights, Causes of Action, liabilities, Liens, or Equity Interests based upon any act, omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, other than to the extent expressly provided for in the Plan or this Order, whether or not (a) a Proof of Claim or proof of Equity Interest based upon such debt or Equity Interest (as applicable) is filed or deemed filed under Bankruptcy Code § 501; (b) a Claim or Equity Interest based upon**

-34-

such debt or Equity Interest (as applicable) is allowed under Bankruptcy Code § 502; or (c) the Holder of a Claim or Equity Interest based upon such debt or Equity Interest (as applicable) has voted to accept the Plan or is deemed to have accepted the Plan under Bankruptcy Code § 1126(f). *Except as otherwise provided in the Plan, all Holders of Liens, Claims, and/or Equity Interests arising prior to the Effective Date shall be permanently barred and enjoined from asserting against any property that is to be distributed under the terms of the Plan (including, without limitation, the Transferred Property) or under the Liquidating Trust Agreement, the Liquidating Trustee, the Liquidating Trust, or their respective Assets any of the following actions on account of such Claim or Equity Interest: (a) commencing or continuing in any manner any action or other proceeding on account of such Lien, Claim, or Equity Interest against property to be distributed under the terms of the Plan (including, without limitation, the Transferred Property) or under the Liquidating Trust Agreement, other than to enforce any right to distribution with respect to such property under the Plan; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, Lien, or order against any of the property to be distributed under the terms of the Plan (including, without limitation, the Transferred Property) or under the Liquidating Trust Agreement, other than as permitted under subclause (a) of this sentence; (c) creating, perfecting, or enforcing any Lien, claim, or encumbrance against any property to be distributed under the terms of the Plan (including, without limitation, the Transferred Property) or under the Liquidating Trust Agreement; (d) asserting any right of subrogation of any kind, directly or indirectly, against any obligation due the Debtors, the Liquidating Trustee, the Liquidating Trust, or any of their respective Assets or any other property of the Debtors or the Liquidating Trust, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons; and (e) acting or proceeding in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan, this Order, and the Liquidating Trust Agreement.*

54.    <u>Exculpation</u>.    *NEITHER THE CREDITORS COMMITTEE AND ITS MEMBERS SOLELY IN THEIR CAPACITIES AS MEMBERS OF THE CREDITORS*

-35-

*COMMITTEE AND NOT IN ANY OTHER CAPACITY, OR ANY OF THE DEBTORS' OFFICERS OR DIRECTORS SERVING IN SUCH CAPACITY AS OF THE PETITION DATE, OR THE DEBTORS' OR THE CREDITORS COMMITTEE'S ADVISORS, PROFESSIONALS, ATTORNEYS, OR AGENTS, SHALL HAVE OR INCUR ANY LIABILITY (WHETHER ARISING UNDER CONTRACT, TORT, OR FEDERAL OR STATE SECURITIES OR EMPLOYMENT AND/OR LABOR LAWS OR REGULATIONS, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, NOW EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE) TO, OR BE SUBJECT TO ANY RIGHT OF ACTION BY, THE DEBTORS, THE LIQUIDATING TRUST, THE LIQUIDATING TRUSTEE, OR ANY HOLDER OF A CLAIM OR AN EQUITY INTEREST, OR ANY OTHER PARTY-IN-INTEREST IN THESE CHAPTER 11 CASES, OR ANY OF THEIR RESPECTIVE AGENTS, SHAREHOLDERS, EMPLOYEES, REPRESENTATIVES, FINANCIAL ADVISORS, PROFESSIONALS, ATTORNEYS, OR AFFILIATES, OR ANY OF THEIR SUCCESSORS OR ASSIGNS, FOR ANY POST-PETITION ACT TAKEN OR OMITTED TO BE TAKEN OR ANY OTHER POST-PETITION TRANSACTION, EVENT, OR OCCURRENCE IN ANY WAY CONNECTED WITH, ARISING FROM, OR RELATING TO (A) THE DEBTORS, (B) THE CHAPTER 11 CASES OR THE COMMENCEMENT OR ADMINISTRATION THEREOF, (C) THE DISCLOSURE STATEMENT, THE PLAN (EITHER PRIOR TO CONFIRMATION OR APPROVAL OF SAME OR AS THE SAME MAY BE CONFIRMED OR OTHERWISE APPROVED BY THIS COURT), INCLUDING THE NEGOTIATION AND FORMULATION THEREOF, OR ANY ORDERS OF THIS COURT RELATED THERETO (INCLUDING THIS ORDER), AND THE DOCUMENTS NECESSARY TO EFFECTUATE THE PLAN (INCLUDING THE LIQUIDATING TRUST AGREEMENT) OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY, (D) THE SOLICITATION OF ACCEPTANCES AND REJECTIONS OF THE PLAN AND THE RELEASES AND WAIVERS PROVIDED FOR IN THE PLAN, (E) THE IMPLEMENTATION AND ADMINISTRATION OF THE PLAN AND THE LIQUIDATING TRUST, (F) THE DISTRIBUTION OF PROPERTY UNDER*

-36-

*THE PLAN (INCLUDING WITH RESPECT TO THE PRESERVED COLLATERAL), (G) ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN, THE LIQUIDATING TRUST, OR THE CHAPTER 11 CASES, (H) THE SALES, INCLUDING THE NEGOTIATION AND CONSUMMATION THEREOF, AND THE SALE ORDERS, OR (I) ANY OTHER ORDER OF THIS COURT ENTERED IN THE CHAPTER 11 CASES, EXCEPT FOR ANY LIABILITY ARISING FROM CONDUCT CONSTITUTING FRAUD OR WILLFUL MISCONDUCT AS DETERMINED BY A FINAL ORDER.*

55.    Injunction Related to Releases.  **This Order enjoins, and shall be deemed to enjoin, permanently the commencement or prosecution by any Entity, whether directly, derivatively, or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to the Plan (including the releases set forth in Article X of the Plan).**

56.    Releases by the Debtors and the Estates.  **NOTWITHSTANDING ANYTHING CONTAINED IN THE PLAN TO THE CONTRARY, ON THE CONFIRMATION DATE AND EFFECTIVE AS OF THE EFFECTIVE DATE (SUCH THAT THE DEBTORS, THE LIQUIDATING TRUSTEE AND THE LIQUIDATING TRUST, OR ANY OTHER PARTY ACTING ON BEHALF OF THE ESTATES SHALL NOT RECEIVE OR OTHERWISE BE ENTITLED TO ASSERT ANY CLAIM OR CAUSE OF ACTION RELEASED UNDER THE PLAN), FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY EACH OF THE RELEASED PARTIES (INCLUDING THE WAIVER OF THE SECOND LIEN NOTE CLAIMS AND OTHERWISE PURSUANT TO THE UNSECURED CREDITOR SETTLEMENT), THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, INCLUDING:    (1) THE SATISFACTION AND RELEASE OF DEBT AND ALL OTHER GOOD AND VALUABLE CONSIDERATION PAID AND TRANSACTIONS UNDERTAKEN (INCLUDING THE CREATION AND FUNDING OF THE LIQUIDATING TRUST) PURSUANT TO THE PLAN; (2)**

-37-

THE UNSECURED CREDITOR SETTLEMENT; AND (3) THE SERVICES OF THE DEBTORS' OFFICERS AND DIRECTORS SERVING IN SUCH CAPACITY AS OF THE PETITION DATE, MANAGERS, PROFESSIONALS, ATTORNEYS, AND ADVISORS IN FACILITATING THE EXPEDITIOUS IMPLEMENTATION OF THE PLAN AND THE LIQUIDATING TRUST AND THE ASSOCIATED TRANSACTIONS CONTEMPLATED HEREBY AND BY THE LIQUIDATING TRUST AGREEMENT, EACH OF THE DEBTORS, IN THEIR INDIVIDUAL CAPACITIES AND AS DEBTORS-IN-POSSESSION, RELEASE AND SHALL BE DEEMED TO HAVE PROVIDED A FULL RELEASE TO EACH RELEASED PARTY (AND EACH SUCH RELEASED PARTY SO RELEASED SHALL BE DEEMED FULLY RELEASED BY THE DEBTORS AND THE ESTATES) AND THEIR RESPECTIVE PROPERTY FROM ANY AND ALL CLAIMS OR CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, LIQUIDATED OR UNLIQUIDATED, CONTINGENT OR NON-CONTINGENT, EXISTING OR OTHERWISE ASSERTABLE AS OF THE EFFECTIVE DATE IN LAW, AT EQUITY, WHETHER FOR TORT, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR OTHERWISE, ARISING FROM OR RELATED IN ANY WAY TO THE DEBTORS OR THE ESTATES, INCLUDING THOSE THAT ANY OF THE DEBTORS WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR THAT ANY HOLDER OF A CLAIM OR AN EQUITY INTEREST OR OTHER ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (DERIVATIVELY OR OTHERWISE) ON BEHALF OR IN THE NAME OF ANY OF THE DEBTORS OR ANY OF THE ESTATES; provided, however, that nothing in the Plan shall release or be deemed to release liability of any Person arising from conduct constituting fraud or willful misconduct, as determined by a Final Order.

      57.    Notwithstanding anything contained in the Plan to the contrary, the Plan does not release the D&O Claims or any Avoidance Actions or any other Causes of Action, whether direct,

-38-

derivative, or otherwise, that the Debtors, the Estates, or the Liquidating Trustee have or may have now or in the future solely to the extent that any such claims or actions are against any Non-Released Parties.

58.    Entry of this Order shall constitute this Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtors' releases provided for in Plan Section X.E (the "**Debtors' Releases**"), which include by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute this Court's finding that the Debtors' Releases are:  (1) in exchange for the good and valuable consideration provided by the Released Parties (including the waiver of the Second Lien Note Claims and otherwise pursuant to the Unsecured Creditor Settlement); (2) a good-faith settlement and compromise of the claims released by the Debtors hereby; (3) in the best interests of the Debtors, the Estates, and all Holders of Claims and Equity Interests; (4) fair, equitable, and reasonable under the circumstances of these Chapter 11 Cases; (5) given and made after due notice and an opportunity for a hearing; and (6) *a bar to any of the Debtors' or the Liquidating Trustee's asserting any claim or cause of action released pursuant to Plan Section X.E.*

59.    <u>Releases by the Releasing Parties</u>.  **NOTWITHSTANDING ANYTHING CONTAINED IN THE PLAN TO THE CONTRARY, ON THE CONFIRMATION DATE AND EFFECTIVE AS OF THE EFFECTIVE DATE, THE RELEASING PARTIES (REGARDLESS OF WHETHER A RELEASING PARTY IS ALSO A THIRD-PARTY RELEASEE) SHALL PROVIDE A FULL RELEASE (AND EACH ENTITY SO RELEASED SHALL BE DEEMED RELEASED BY THE RELEASING PARTIES) TO ALL OF THE RELEASED PARTIES AND THEIR RESPECTIVE PROPERTY FROM ANY AND ALL CLAIMS OR CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, LIQUIDATED OR UNLIQUIDATED, CONTINGENT OR NON-CONTINGENT, EXISTING OR OTHERWISE ASSERTABLE AS OF THE EFFECTIVE DATE IN LAW, AT EQUITY, WHETHER FOR TORT, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS OR EMPLOYMENT AND/OR LABOR LAWS OR REGULATIONS,  OR OTHERWISE, ARISING FROM OR RELATED IN ANY WAY TO THE DEBTORS OR THE ESTATES, INCLUDING**

-39-

**THOSE IN ANY WAY RELATED TO THE CHAPTER 11 CASES OR THE PLAN. NOTWITHSTANDING ANYTHING IN THE PLAN TO THE CONTRARY, THE PLAN DOES NOT RELEASE THE D&O CLAIMS OR ANY CLAIMS, AVOIDANCE ACTIONS, OR OTHER CAUSES OF ACTION, WHETHER DIRECT, DERIVATIVE, OR OTHERWISE, THAT THE RELEASING PARTIES MAY HAVE NOW OR IN THE FUTURE AGAINST ANY NON-RELEASED PARTIES, OR ANY LIABILITY OF ANY PERSON ARISING FROM CONDUCT CONSTITUTING FRAUD OR WILLFUL MISCONDUCT AS DETERMINED BY A FINAL ORDER.**

60.    Entry of this Order shall constitute this Court's approval, pursuant to Bankruptcy Rule 9019, of the releases provided for in Plan Section X.F, which include by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute this Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties (including the waiver of the Second Lien Note Claims and otherwise pursuant to the Unsecured Creditor Settlement); (2) a good-faith settlement and compromise of the claims released in Plan Section X.F; (3) in the best interests of the Debtors, the Estates, and all Holders of Claims and Equity Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and an opportunity for a hearing; (6) *a bar to any of the Releasing Parties' asserting any claim released pursuant to Plan Section X.F*; and (7) be deemed to have been entered into consensually, by virtue of the applicable Releasing Party's having voted to accept the Plan.

61.    **ALL RELEASING PARTIES SHALL BE FOREVER PRECLUDED FROM ASSERTING ANY OF THE CLAIMS RELEASED PURSUANT TO PLAN SECTION X.F AGAINST ANY OF THE RELEASED PARTIES OR ANY OF THE RELEASED PARTIES' RESPECTIVE ASSETS.    TO THE EXTENT THAT ANY RELEASING PARTY RECEIVES MONETARY DAMAGES FROM ANY RELEASED PARTY ON ACCOUNT OF ANY CLAIM RELEASED PURSUANT TO PLAN SECTION X.F, SUCH RELEASING PARTY HEREBY**

-40-

**ASSIGNS ALL OF ITS RIGHT, TITLE, AND INTEREST IN AND TO SUCH RECOVERY TO THE RELEASED PARTIES AGAINST WHOM SUCH MONEY IS RECOVERED**

62.    <u>Injunction Against Interference with the Plan</u>.  Upon the entry of this Order, all holders of Claims and Equity Interests and other parties-in-interest, along with their respective present and former employees, agents, officers, directors, and principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

63.    <u>Limits to Release and Exculpation Provisions</u>.  Notwithstanding anything to the contrary in the Plan or in this Order, nothing in the Plan (including anything set forth in Article X of the Plan) shall or shall be deemed to (i) constitute a release, discharge, or waiver by any Debtor, Estate, Releasing Party, the Liquidating Trustee, the Liquidating Trust, or any other Person of, or (ii) impose any injunction against the enforcement of, any claim or cause of action or any potential claim or cause of action against Messrs. Michael Mulligan, Russell D'Anton, or Michael D'Anton and their respective family members or relatives or any entity in which they may have an ownership, partnership, shareholder, membership, pecuniary, or other interest.  In addition, nothing in the Plan or this Order shall or shall be deemed to constitute a release, discharge, or waiver by (i) any Professional of any Professional Fee Claim against the Debtors, the Estates, or any other party or (ii) any of the Pre-Petition Lenders of any claim or cause of action that any of them may have against any other Pre-Petition Lender.

64.    <u>Revisions to the Plan Regarding the Injunction, Exculpation, and Release Provisions</u>.  Notwithstanding anything contained in the Plan (including Plan Section I.B.36) or this Order to the contrary, the terms "Debtor Releasees" and "Released Parties" shall not include the Debtors' subsidiaries, affiliates, the Debtors' employees or shareholders in their capacities as such, or the Debtors' former officers and directors that did not serve in such capacity as of the Petition Date for any purposes in these Chapter 11 Cases.

65.    Notwithstanding anything contained in the Plan (including Plan Section I.B.113) or this Order to the contrary, the term "Released Parties" shall not include the Creditors Committee for any purposes in these Chapter 11 Cases.

-41-

66.    Notwithstanding anything contained in the Plan (including Plan Section X.B) or this Order to the contrary, the injunction provision set forth in Plan Section X.B shall be replaced by Paragraph 53 of this Order (entitled "General Plan Injunction") for all purposes in these Chapter 11 Cases.

67.    Notwithstanding anything contained in the Plan (including Plan Section X.D) or this Order to the contrary, the exculpation provision set forth in Plan Section X.D shall be replaced by Paragraph 54 of this Order (entitled "Exculpation") for all purposes in these Chapter 11 Cases.

68.    Notwithstanding anything contained in the Plan (including Plan Section X.E) or this Order to the contrary, the debtors' and estates' releases provision set forth in Plan Section X.E shall be replaced by Paragraph 56 of this Order (entitled "Releases by the Debtors and the Estates") for all purposes in these Chapter 11 Cases.

69.    Notwithstanding anything contained in the Plan (including Plan Section X.F) or this Order to the contrary, the third-party releases provision set forth in Plan Section X.F shall be replaced by Paragraph 59 of this Order (entitled "Releases by the Releasing Parties") for all purposes in these Chapter 11 Cases.

70.    <u>Indemnification of Debtors' Officers and Directors</u>.  Pursuant to an indemnity agreement to be executed between the Debtors and the Administrative Agent in form and substance acceptable to the parties thereto, the Administrative Agent shall indemnify and hold harmless all officers and directors of any of the Debtors serving as of October 1, 2010, or at any time thereafter, in an aggregate amount of up to $500,000 (the "**Indemnity Amount**"), with respect to all costs of defense, settlements, and/or payments upon any judgments that may be entered against any such parties, in connection with certain causes of action, claims, liabilities, losses, expenses, and damages asserted against any such officer or director on account of, or otherwise arising out of or in connection with their relationship with the Debtors.

-42-

Retention of Bankruptcy Court Jurisdiction.

71.     Notwithstanding the entry of this Order and the occurrence of the Effective Date, following the Effective Date, this Court shall retain such jurisdiction over the Chapter 11 Cases as is legally permissible, including, without limitation, such jurisdiction as is necessary to ensure that the intents and purposes of the Plan and the Liquidating Trust Agreement are carried out.

72.     This Court shall also retain and have exclusive jurisdiction after the Effective Date over any matter arising under the Bankruptcy Code, arising in or related to the Chapter 11 Cases, the Plan, this Order, or the Liquidating Trust Agreement, or that otherwise relates to any of the items set forth in Article XII of the Plan.

73.     Failure of this Court to Exercise Jurisdiction.    If this Court abstains from exercising or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter arising out of these Chapter 11 Cases, including the matters set forth in Article XII of the Plan, such Article XII shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

74.     Successors and Assigns.    The rights, benefits, and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such entity.

75.     Administrative Claims Bar Date.    Each holder of an *Administrative Claims* (except for an Administrative Claim based upon (i) Professional Fee Claims, the allowance and timing for filing of applications for Professional Fees being governed by Plan Section II.A(b), (ii) DIP Facility Claims, and (iii) fees or charges asserted against the respective Estates under 28 U.S.C. § 1930) *incurred through and including the Confirmation Date* must file a request for payment on or before 4:00 P.M. (prevailing Eastern time) on the date that is 30 days after service of notice of the Confirmation Date for such Administrative Claim to be eligible to be considered an Allowed Claim.  If no such request for payment is timely filed against the applicable Debtor, the applicable party shall not be entitled to receive

-43-

any distributions under the Plan on account thereof from the Debtors, the Liquidating Trust, or their respective Estates or Assets.

      **76.**    For the avoidance of doubt, the Administrative Claims Bar Date shall not apply to any DIP Facility Claims, Professional Fee Claims, claims of governmental units for the payment of an expense described in Bankruptcy Code § 503(b)(1)(B) or (C) and the Internal Revenue Service or any state or local taxing authorities for tax obligations that arose after the Petition Date, or fees or charges asserted against the respective Estates under 28 U.S.C. § 1930.

Miscellaneous

      **77.**    <u>Waiver of Conditions Precedent</u>.  To the extent legally permissible, any of the conditions precedent in Article IX of the Plan may be waived, in whole or in part, by the Debtors (in consultation with the Administrative Agent and the Creditors Committee).  Any such waiver of a condition precedent may be effected at any time, without notice or leave or order of this Court and without any formal action, other than proceeding as if such condition did not exist.  The failure of the Debtors to exercise any of the foregoing rights shall not be deemed a waiver of any other rights.  Upon the waiver of any conditions to the Effective Date set forth in Article IX of the Plan, and subject to the satisfaction in full of each of the remaining conditions set forth in Article IX, the Plan shall become effective in accordance with its terms, without any notice to third parties or any other formal action.

      **78.**    <u>Modification of Plan</u>.  Upon the entry of this Order, the Debtors (or, after the Effective Date, the Liquidating Trustee) may, after notice and a hearing, amend or modify the Plan, in accordance with Bankruptcy Code § 1127(b), remedy any defect or omission, or reconcile any inconsistency in the Plan or the Liquidating Trust Agreement, in such manner as may be necessary to carry out the purpose and intent of the Plan.  A Holder of a Claim that has voted to accept the Plan shall be deemed to have voted to accept the Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim of such Holder, and the votes of each Class for or against the Plan shall be counted and used in connection with the modified plan.

-44-

79.    <u>Revocation, Withdrawal, or Non-Consummation</u>.    If the Debtors revoke or withdraw the Plan, or if (1) this Order shall not have become a Final Order or is otherwise vacated for any reason, or (2) the Effective Date shall not otherwise have occurred within 180 days of the Confirmation Date, then (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Equity Interest or Class of Claims or Equity Interests), assumption or rejection of Executory Contracts affected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void, and (c) nothing contained in the Plan or the Disclosure statement, and no acts taken in preparation for the Consummation of the Plan, shall (i) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors or any other Entity, (ii) prejudice in any manner the rights of the Debtors or the Estates, (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors, the Estates, or any Debtor Releasees (as such term is amended by this Order), or (iv) constitute a release of any Causes of Action possessed or maintained by the Debtors or the Estates.

80.    <u>Validity</u>.  This Order constitutes a judicial determination that each provision of the Plan is valid and enforceable in accordance with its terms.

81.    <u>Compromise of Controversies</u>.    Pursuant to Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan shall constitute a good-faith compromise of all claims or controversies relating to the contractual, legal, and other rights that a Holder of a Claim may have with respect to any Allowed Claim or any distribution to be made on account thereof.  The entry of this Order shall constitute this Court's approval of this compromise and settlement of all such claims or controversies, and this Court's finding that such compromise and settlement is in the best interests of the Debtors, the Estates, and Holders of Claims and Equity Interests, a proper exercise of the Debtors' business judgment, and is fair, equitable, and reasonable.  The entry of this Order shall also constitute this Court's approval of the Unsecured Creditor Settlement.

-45-

**82.**    _Applicability of Bankruptcy Code § 1125(e)_.    The protection afforded by Bankruptcy Code § 1125(e) with regard to the solicitation of acceptances or rejections of the Plan shall apply to the fullest extent provided by law, and the entry of this Order shall constitute the determination by this Court that the Debtors and all Released Parties acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code pursuant to Bankruptcy Code § 1125(e) and, therefore, are not liable on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing solicitation of acceptance or rejection of a plan or the offer, issuance, sale, or purchase of securities.

**83.**    _Corporate Action_.    The Debtors are authorized to perform all actions and effect all transfers that are reasonably necessary or desirable to effectuate or implement the Plan.  All matters provided for under the Plan that would or may otherwise require approval by the shareholders, boards of directors or managers (or other governing body) of the Debtors shall be deemed authorized and approved without any requirement of further action by the shareholders, boards of directors or managers (or other governing body) of the Debtors.  Pursuant to Plan Section IV.F(a), the Debtors shall be authorized to file certificates of cancellation, dissolution or merger without further action under applicable law, regulation, order or rule, including without express or implied limitation, any action by the shareholders, boards of directors or managers (or other governing body) of the Debtors.

**84.**    _Final Administration of the Liquidating Trust_.    Upon the entry of a Final Decree by this Court closing the CB Holding Chapter 11 Case, the Liquidating Trust shall be deemed terminated without further notice, and the Liquidating Trustee shall thereupon be forever discharged of, and released from, all power, duties, and responsibilities under the Liquidating Trust Agreement and the Plan.

**85.**    _Dissolution_.    Within 30 days after the later of their completion of any acts required of them by the Plan (including in Plan Section IV.A) and the Sale Closing Date of any remaining Sale (or portion thereof) of its Assets, or as soon thereafter as is practicable, each of the Debtors shall be deemed automatically dissolved for all purposes, without the necessity for any other or further actions to be taken by or on behalf of each Debtor, including without any requirement of further action by the

-46-

stockholders, members, or directors (or other governing body) of the Debtors (the **"Dissolution"**) or any compliance with any notice or waiting periods; provided, however, that each Debtor shall file with the office of the applicable Secretary of State or other appropriate office for the state of its organization a certificate of cancellation or dissolution or, alternatively, it may be merged with and into another Debtor and file an appropriate certificate of merger.

86.    Closing of the CB Holding Chapter 11 Case.  When all Disputed Claims filed against the Debtors have become Allowed Claims or have been disallowed by order of this Court or otherwise resolved or withdrawn in the manner provided for in the Plan, and all of the proceeds of the Liquidating Trust Assets have been distributed in accordance with the Plan (including, without limitation, pursuant to Plan Sections III.B.4(b) and IV.F(c)), all aspects of any remaining Sales have closed, and all Transferred Causes of Action have been prosecuted, settled, resolved, withdrawn, or abandoned, the CB Holding Chapter 11 Case and any other of the Chapter 11 Cases that were not previously closed pursuant to Plan Section IV.A(d) and the Final Decree and Case Closure Orders and this Order shall be deemed closed, and the Liquidating Trustee shall file with this Court a notice thereof with respect to such Chapter 11 Case(s); provided, however, that nothing in the Plan, this Order, or the Liquidating Trust Agreement shall prevent the Debtors and the Liquidating Trustee from seeking authority from this Court at any time prior thereto to close the CB Holding Chapter 11 Case or any other of the Chapter 11 Cases that were not previously closed pursuant to Plan Section IV.A(d).

87.    Notwithstanding anything to the contrary in Plan Section IV.F(b) or this Order, if at any time after (i) the Dissolution and (ii) such time as all Disputed Claims filed against the Debtors have become Allowed Claims or have been disallowed by an order or otherwise resolved or withdrawn in the manner provided for in the Plan, the Liquidating Trustee, after consultation with the Administrative Agent and the Oversight Committee and upon the receipt of any approvals required under the Liquidating Trust Agreement, determines that the expense of administering the Liquidating Trust so as to make a further or final distribution to the Holders of Allowed General Unsecured Claims or Allowed Senior Creditor Claims (with respect to the Preserved Collateral) is likely to exceed the value of the assets

-47-

remaining in the Liquidating Trust or the Preserved Collateral (as applicable), the Liquidating Trustee may apply to this Court for authority to (i) reserve any amounts necessary to close the CB Holding Chapter 11 Case and any other of these Chapter 11 Cases that were not previously closed (if any), (ii) donate any balance to a charitable organization exempt from U.S. federal income tax under Section 501(c)(3) of the Tax Code that is unrelated to any of the Debtors, the Creditors Committee or its members, CRG, the Pre-Petition Lenders, the Holders of the Equity Interests as of the Effective Date, and the Liquidating Trustee, and (iii) close the CB Holding Chapter 11 Case and any of the Chapter 11 Cases that were not previously closed, in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. Notice of such application shall be required to be given only electronically, to the extent practicable, to those parties that have filed requests for notices in these Chapter 11 Cases and whose electronic addresses then remain current and operating.

88. _Effectuating Documents and Further Transactions_. The Debtors and/or the Chief Restructuring Officer and/or his designee is authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, without any requirement of further action by (as applicable) the shareholders, boards of directors or managers (or other governing body) of the Debtors.

89. _Severability_. The provisions of the Plan and this Order, including the findings of fact and conclusions of law set forth above, are non-severable and mutually dependent. The classification of Claims and Equity Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan. Under Bankruptcy Code §§ 1123(a) and 1142(a) and the provisions of this Order, the Plan, and all Plan Documents shall apply in accordance with the terms thereof and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

90. _Notice of Confirmation Order_. The Debtors are hereby authorized to mail to all parties-in-interest in these Chapter 11 Cases and/or, at their discretion, publish notice of the entry of this Order and/or of the Effective Date (which may be the same notice), together with notice of the last day for

-48-

filing Administrative Expense Claims, Professional Fee Claims, and Rejection Claims, all as contained herein.

91.    Specific Provision Regarding the Internal Revenue Service. Notwithstanding any provision to the contrary in the Plan, this Order, or any Plan Documents, nothing shall: (1) affect the ability of the IRS to pursue any non-debtors to the extent allowed by applicable non-bankruptcy law for any liabilities that may be related to any federal tax liabilities owed by the Debtors; or (2) affect the rights of the IRS to assert setoff and recoupment and such rights are expressly preserved.

92.    Resolution of the Sysco Objection. In full resolution of the Sysco Objection, which is hereby deemed resolved in accordance herewith, and in full satisfaction, settlement, and release of, and in exchange for, any Allowed Sysco 503(b)(9) Claims, the Liquidating Trustee shall deposit in a segregated escrow account, in accordance with the Plan, $525,039.19, as security for the payment of any Allowed Sysco 503(b)(9) Claims, as soon as practicable after the Effective Date. The Liquidating Trustee shall, no later than 20 days from the Effective Date, unless such date is extended by agreement of Sysco and the Liquidating Trustee or by order of the Bankruptcy Court, determine whether to Allow the Sysco 503(b)(9) Claims and/or what portion thereof to Allow, and during such time period, the parties shall reasonably cooperate with each other. Should the Liquidating Trustee and Sysco fail to reach an agreement on the Allowed Sysco 503(b)(9) Claims during such time period, either party may request a hearing as soon as the Bankruptcy Court is available for a determination whether the Sysco 503(b)(9) Claims should be Allowed and paid and/or what portion of the Sysco 503(b)(9) Claims should be Allowed and paid. Once Allowed by agreement of the parties or by order of the Bankruptcy Court, the Allowed portion of the Sysco 503(b)(9) Claims shall be paid from the above-described escrow account on the date that is no later than 14 days after the Sysco 503(b)(9) Claims are Allowed, or as directed by the Bankruptcy Court and in accordance herewith. Should the Liquidating Trustee appeal the ruling of the Bankruptcy Court regarding what portion of the Sysco 503(b)(9) Claims are Allowed, and such ruling is reversed or modified on appeal, Sysco shall return that portion of the Allowed Sysco 503(b)(9) Claims that had been paid but is ultimately not Allowed. The Section 502(d) defense shall not be asserted by the

-49-

Debtors or the Liquidating Trustee as an offset to the payment of the Allowed Sysco 503(b)(9) Claims. Further, Sysco shall be deemed to have voted to accept the Plan as part of the resolution of the Sysco Objection.

93.    <u>Omission of Plan Provisions</u>.  The failure to specifically include or reference any particular provision of the Plan in this Order does not in any way diminish or impair the efficacy of such provision, it being understood that the intent of this Order and this Court is that the Plan be confirmed and approved in its entirety.

94.    <u>Binding Effect of Order</u>.  The provisions of the Plan and this Order shall be deemed binding against the Debtors any and all Holders of Claims against, or Equity Interests in, the Debtors (irrespective of whether such Claims or Equity Interests accepted, rejected, or are deemed to have accepted or rejected the Plan), any and all non-Debtor parties to Executory Contracts with the Debtors, and any and all Persons that are parties to, or are subject to, the releases, discharges, and injunctions described in the Plan.

95.    The Debtors are authorized to consummate the Plan at any time after the cessation of any stays created by Bankruptcy Rules 3020(e), 6004, 6006, or 7062, subject to the satisfaction or waiver of the conditions precedent to consummation as set forth in Article VIII of the Plan. The Effective Date shall occur on the date that all conditions set forth in Plan Section VIII.B have been satisfied, waived, or modified pursuant to Plan Section VIII.C.  On the Effective Date, the Plan shall be deemed substantially consummated under Bankruptcy Code §§1101 and 1127(b).

96.    This Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and any other Plan Documents, instruments, or agreements thereto, and any other acts referred to in or contemplated by the Plan, the Plan Documents, and any other documents, instruments, or agreements thereto.

97.    <u>Payment of Statutory Fees</u>.  All fees payable pursuant to 28 U.S.C. § 1930 shall be paid on or before the Effective Date, to the extent required by applicable law, or, if not required to be

-50-

paid on or prior to the Effective Date, by the Debtors or the Liquidating Trustee as soon as practicable following the Effective Date, as and when such fees become due and payable in accordance with applicable law.

          **98.**    <u>Headings</u>.  Captions and headings are inserted for convenience of reference only and are not intended to be a part of, or to affect the interpretation of, this Order.

Dated: ‾‾‾‾‾‾‾‾‾‾ ‾‾, 2012
       Wilmington, Delaware

                                       _____
                                       THE HONORABLE MARY F. WALRATH
                                       UNITED STATES BANKRUPTCY JUDGE

RLF1 5849410v. 3